**Case No. 15-15534**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

Joseph Saveri Law Firm, Inc. and Joseph R. Saveri,

*Plaintiffs/Counter-Defendants--Appellees*

v.

Michael E. Criden, P.A. d/b/a Criden & Love, P.A.,

*Defendant/Counter-Plaintiff--Appellant*

---

Appeal from the United States District Court
for the Northern District of California, San Francisco Division
Case No. 3:14-cv-01740-EDL

---

### OPENING BRIEF OF DEFENDANT/COUNTER-PLAINTIFF--
### APPELLANT MICHAEL E. CRIDEN, P.A. d/b/a CRIDEN & LOVE, P.A.

---

Kevin B. Love
**Criden & Love, P.A.**
7301 S.W. 57th Court, Suite 515
South Miami, FL  33143
Telephone: 305-357-9000
Facsimile: 305-357-9050
Email: klove@cridenlove.com

Robert T. Sullwold (88139)
**Sullwold & Hughes**
1999 Harrison Street, 18th Floor
Oakland, CA  94612
Telephone: 510-496-4616
Facsimile: 415-762-5338
Email: rts@greenstamps.com

*Attorneys for Defendant/Counter-Plaintiff--Appellant*

## I. <u>CORPORATE DISCLOSURE STATEMENT</u>

Appellant Michael E. Criden, P.A., d/b/a Criden & Love, P.A., is a Florida corporation. It has no parent corporation and no publicly held corporation owns 10% or more of its stock.

## II. TABLE OF CONTENTS

I.      CORPORATE DISCLOSURE STATEMENT……..………………….…….i

II.     TABLE OF CONTENTS …………………………………..………..ii

III.    TABLE OF AUTHORITIES………………………………..………iv

IV.     INTRODUCTION……………………………………………….………...1

V.      STATEMENT OF JURISDICTION……………………………….....6

VI.     ISSUES PRESENTED FOR REVIEW ……………………………...7

VII.    PERTINENT RULES………………………………………………...8

VIII.   STATEMENT OF THE CASE ……………………………………….9

        A.      Factual Summary……………………………….……………..9

        B.      Procedural Background…………………………….…………20

IX.     SUMMARY OF THE ARGUMENT…………………………….……23

X.      ARGUMENT…………………………………...…...………..……..26

        A.      The District Court Erred In Exercising
                Personal Jurisdiction Over Criden & Love………..……..……...26

                1.  Standard of Review………………….…………………..…26

                2.  Purposeful Availment Versus Purposeful Direction………......26

                3.  Equitable Claims Are Not Necessarily Tort Claims………......28

                4.  Saveri's Claims Are Contract Claims…………………..…..29

                5.  Under a Purposeful Availment Analysis
                    The District Court Lacked Personal Jurisdiction......…………31

B.    The District Court Erred In Granting
Summary Judgment Based On Rule 2-200…………………….…33

    1. Standard Of Review……………………..….………………33

    2. Rule 2-200………………………………….…………………..34

    3. Isaac Industries' Written Consent To the Referral Agreement
Between Saveri And Criden & Love Satisfies Rule 2-200……..35

    4. Rule 2-200 Does Not Require The Consent Of
Breen To the Isaac Industries' Referral Agreement…..…………35

    5. Even If Rule 2-200 Requires The Consent Of Breen, Saveri
Should Be Equitably Estopped From Relying On Rule 2-200…37

    6. If The Referral Agreement Is Unenforceable Under Rule
2-200, Criden & Love Is Still Entitled To Quantum Meruit ..…40

C.    The District Court Erred By Granting Summary Judgment
On Criden & Love's Fraudulent Concealment Claim…....………..42

XI.    CONCLUSION……………….…..……………………….………………46

XII.    STATEMENT OF RELATED CASES…………………………….....47

XIII.    CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)………....…….47

XIV.    CERTIFICATE OF SERVICE ……………..……………………48

# III.    TABLE OF AUTHORITIES

## CASES

*Barnes, Crosby v. Ringler*,
  212 Cal.App.4th 172 (2012) ……………………………….……….. 24, 34, 37-40

*Church of Scientology v. Adams*,
  584 F.2d 893 (1978)……………………………...………….……………………...32

*Evans Analytical Group v. Green Plant Farms*,
  No. 12-5023, 2013 WL 3963822
  (N.D. Cal. July 29, 2013) …………………………...………..…………………..29

*Hernandez v. City of Beaumont*,
  No. 13-967, 2014 WL 6943881
  (C.D. Cal. Dec. 8, 2014)……….……………………………………………… 27

*Holland America Line v. Wartsila North America*,
  485 F.3d 450 (9th Cir. 2007) …………………………………………………….27

*Huskinson & Brown v. Wolf*,
  32 Cal.4th 453 (2004) …………………………………………….……4, 6, 24, 41

*Margolin v. Shemaria*,
  85 Cal.App.4th 891(2000) ……..…………………………………….….34, 40, 41

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ……………………………………………………………8

*Moran v. Harris*,
  131 Cal.App.3d 872(1982) ………..…………………………………………..37

*Novak v. NanoLogix, Inc.*,
  No. 13-1971, 2014 WL 991119
  (N.D. Cal Mar. 11, 2014)…………………………………………………...32

*Olsen v. Idaho State Bd. of Medicine*,
  363 F.3d 916 (9th Cir. 2004)…………………………………………………34

*Peterson v. Kennedy*,
  771 F.2d 1244 (9th Cir. 1985)…………………………………………....…31

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015) …………………………….……………… 30

*Roth v. Garcia Marquez*,
  942 F.2d 617 (9th Cir. 1991) ……...…………………………………………26, 28

*Rugroden v. State Bank of Park Rapids*,
  No. 08-1964, 2008 WL 4542971
  (N.D. Cal. Oct. 1, 2008)……………………………..………………………..32

*Sarkis v. Lajcak*,
  425 Fed. Appx. 557 (9th Cir. 2011)………………………….……………….31

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ……………………………………………26-28, 30

*Sher v. Johnson*,
  911 F.2d 1357 (9th Cir. 1990)……………………………………………...…31

*Stanford Ranch v. Md. Cas. Co.*,
  89 F.3d 618 (9th Cir. 1996) ………...…………………………………………1, 30

*Sutcliffe v. Honeywell Int'l, Inc.*,
  No. 13-1029, 2015 WL 1442773
  (D. Ariz. Mar. 30, 2015) ……………………………………………………27

*Suzuki Motor Corp. v. Consumers Union*,
  330 F.3d 1110 (9th Cir. 2003)…………………………………………………...33

*Szajer v. City of Los Angeles*,
  632 F.3d 607 (9th Cir. 2011)………………………………………………………33

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014) …………………………………………………………..31-33

*Yahoo! Inc. v. La Ligue Contre*,
  433 F.3d 1199 (9th Cir. 2006) ……………………………………………...27, 29, 30

v

**STATUTES**

28 U.S.C. § 1291………………………………….…………………………………..5

28 U.S.C. § 1332………………………………………….. ……………..…...5

28 U.S.C. § 1404(a)………………………………………………………………….21

**OTHER AUTHORITIES**

Rule 2-200……………………………………..……………………………..passim

# IV.   <u>INTRODUCTION</u>

In 2012, Criden & Love,[1] a small Florida law firm, referred its client Isaac Industries to Joseph Saveri and his new eponymous law firm,[2] which generated a $10 million fee for Saveri in an antitrust class action involving titanium dioxide ("TIO2").  (ER269-278.)  Criden & Love also referred Isaac Industries to two other law firms in the case.  (ER270-271.)  Both of these firms paid Criden & Love a referral fee, but Saveri refused to honor his referral obligation.  (ER278.)  Criden & Love attempted to resolve this dispute in arbitration, but Saveri filed this action seeking to enjoin the arbitration and requesting a declaration that he did not owe Criden & Love a referral fee.

Because Criden & Love lacks minimum contacts with California, the case should have been dismissed for lack of personal jurisdiction.  But the district court decided that Saveri's claims, which allege that no contract exists between the parties, sounded in tort.  Ignoring *Stanford Ranch v. Md. Cas. Co.*, 89 F.3d 618, 625 (9th Cir. 1996), which holds that "[i]f a claim is dependent on the existence of an underlying contract, the claim sounds in contract, as opposed to tort," the

---

[1] Appellant Michael E. Criden, P.A. d/b/a Criden & Love, P.A. is hereinafter referred to as "Criden & Love."

[2] Appellees Joseph R. Saveri and the Joseph Saveri Law Firm, Inc. are hereinafter referred to as "Saveri," unless otherwise noted.

district court utilized a jurisdictional analysis designed for tort claims and found personal jurisdiction over Criden & Love. (ER56-63.)

After the court found personal jurisdiction, Criden & Love filed a Counterclaim, seeking recovery of its referral fee. Saveri then filed a motion for summary judgment to dismiss all of Criden & Love's claims. In response, Criden & Love submitted evidence demonstrating that Saveri agreed to pay Criden & Love a referral fee, and even if there were no agreement, Criden & Love could recover under theories of unjust enrichment, quantum meruit and fraud. Required to view this evidence in the light most favorable to Criden & Love, obliged to give Criden & Love the benefit of all reasonable inferences, and instructed not to weigh the evidence, the district court should have denied the motion for summary judgment.

Nonetheless, the district court held that, even assuming Saveri agreed to the referral agreement, Rule 2-200 of the Rules of Professional Conduct of the State Bar of California voided the agreement. (ER2-11.) Rule 2-200 prohibits a California lawyer from sharing a legal fee with another lawyer unless *the client* has consented to the division of fees in writing. Isaac Industries -- "the client" -- consented to the division of fees in writing. (ER72-77, 280-281, 383.) Rule 2-200 therefore should not have been an issue in this case (in fact, Saveri devoted less

than one page of his summary judgment motion to discussing Rule 2-200). (ER384-386.)

Despite Isaac Industries' written consent, the district court interpreted Rule 2-200 to require not only the consent of the client referred between the two firms, but also to require the written consent of every other client the lawyers represented in the case. (ER7-11, 14, 23.) Because Saveri filed a notice of appearance for another plaintiff, East Coast Colorants LLC ("Breen"), and because Breen did not consent to the division of fees between Saveri and Criden & Love, the district court ruled that Rule 2-200 had been violated (even though Breen had no connection whatsoever to the Isaac Industries' referral agreement). (ER11.)

By its own terms, Rule 2-200 does not require the consent of <u>all</u> plaintiffs in a case. Instead, Rule 2-200 requires that "the client" consent. Common sense would dictate that "the client" for Rule 2-200 purposes means the particular plaintiff who is responsible for the need for the division of fees in the first place, not all of the plaintiffs who are participating in the case, or a subset of those plaintiffs that also happen to be clients of the lawyers. This is especially true for a class action, where plaintiffs can number in the hundreds, and Lead Counsel represents all plaintiffs. Indeed, in the TIO2 Class Action, Saveri filed papers *as counsel* for all three plaintiffs.

Even if Rule 2-200 nullifies the Isaac Industries' referral agreement because Criden & Love did not secure Breen's consent, California law still allows Criden & Love to recover in quantum meruit. But the district court dismissed Criden & Love's quantum meruit claim too. It held that California law does not allow a quantum meruit recovery when a referral agreement is found unenforceable under Rule 2-200. (ER9-11.) This holding, however, is in direct conflict with *Huskinson & Brown v. Wolf*, 32 Cal.4th 453 (2004), wherein the California Supreme Court held that lawyers may recover in quantum meruit even if their referral agreement is found unenforceable under Rule 2-200.

Criden & Love also asserted a fraudulent concealment claim. That claim was also dismissed by the district court on summary judgment. The court held that Saveri's Notice of Appearance for Breen could not be reasonably interpreted as anything other than a rejection of Criden & Love's referral offer. (ER12-13.) The court made this ruling despite all of the evidence submitted by Criden & Love supporting the conclusion that Saveri misled Criden & Love into believing that he had accepted their offer so that Criden & Love would not oppose his request to become Lead Counsel in the TIO2 Action. (ER69-383.)

In sum, because claims relating to the existence of a contract are *not* tort claims, because the district court did *not* have personal jurisdiction over Criden & Love, because Rule 2-200 does *not* require the consent of anyone other than the

client who is the subject of the referral agreement, because quantum meruit *is* permitted even when Rule 2-200 invalidates a referral agreement, and because Criden & Love *could* have interpreted the Notice of Appearance for Breen as something other than an unstated rejection of Criden & Love's referral offer, it was error for the district court to rule that Saveri was entitled to judgment as a matter of law.

## V.   <u>STATEMENT OF JURISDICTION</u>

This is an appeal taken on March 19, 2015, pursuant to 28 U.S.C. § 1291, from the Judgment entered on March 12, 2015, by the district court, and the orders it entered on July 23, 2014, and March 9, 2015.

The district court's subject matter jurisdiction was based on 28 U.S.C. § 1332 in that the matter was between citizens of different states and the matter in controversy exceeded the sum of $75,000.

## VI.    ISSUES PRESENTED FOR REVIEW

1.      Whether the district court erred when it used the Purposeful Direction Test instead of using the Purposeful Availment Test in determining that it could exercise personal jurisdiction over Criden & Love.

2.      Whether the district court erred when it dismissed Criden & Love's contract claims under Rule 2-200 because Criden & Love, which obtained Isaac Industries' written consent to the referral agreement, did not also secure the consent of Breen (which had no connection to the referral agreement).

3.      Whether the district court erred when it held that, as a matter of law, no reasonable juror could find that Saveri should be equitably estopped from relying on Rule 2-200, despite evidence that suggested Saveri manufactured non-compliance with Rule 2-200.

4.      Given the holding in *Huskinson & Brown v. Wolf*, 32 Cal.4th 453 (2004), that lawyers may recover in quantum meruit even if their referral agreements are found unenforceable under Rule 2-200, whether the district court erred in dismissing Criden & Love's quantum meruit claim under Rule 2-200.

5.      Whether the district court erred in dismissing Criden & Love's fraudulent concealment claim by holding that Saveri's act of filing a notice of appearance for Breen could not, as a matter of law, be reasonably interpreted by Criden & Love as anything other than a rejection of Criden & Love's referral offer.

# VII.  <u>PERTINENT RULES</u>

## *Rule 2-200(A).  Financial Arrangement Among Lawyers*

(A) A member shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless:

(1) The client has consented in writing thereto after a full disclosure has been made in writing that a division of fees will be made and the terms of such division; and

(2) The total fee charged by all lawyers is not increased solely by reason of the provision for division of fees and is not unconscionable as that term is defined in rule 4-200.

# VIII. <u>STATEMENT OF THE CASE</u>[3]

## A.    <u>Factual Summary</u>

### <u>Background</u>

Federal antitrust law grants standing only to those companies that purchase a price-fixed product directly from an antitrust defendant. Although there are many law firms that prosecute federal antitrust class actions, they cannot file a case without a client who has standing. (ER89.) Criden & Love's law practice focuses on referring clients to other larger antitrust law firms with the expectation that the law firm will become a Lead Counsel in an antitrust class action. (ER95, 114, 270.) In exchange for referring clients to these law firms, Criden & Love generally receives a 12.5% referral fee. Given how difficult it is to acquire an antitrust plaintiff, it is not uncommon for Criden & Love to refer a single client to several firms, each of which will pay Criden & Love a referral fee. (ER269-270, 167-169.) Criden & Love will generally also perform work in the antitrust case for which it is separately compensated. (ER270.)

---

[3]   Because the district court granted summary judgment, Criden & Love is presenting the facts in the light most favorable to Criden & Love (the non-moving party). See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Criden & Love does not believe there are any disputed facts related to the personal jurisdiction issue, but to the extent that any exist, they will be noted.

## TIO2 Action – Lieff Cabraser Referral Agreement

Criden & Love is a Florida law firm. Isaac Industries is Criden & Love's client. On February 7, 2010, Isaac Industries retained Criden & Love, Lieff Cabraser and any other law firm Criden & Love decided to associate with to prosecute the TIO2 action. (ER283, 72-73.) It was Isaac Industries' understanding that Criden & Love would receive referral fees from Lieff Cabraser and any other law firms representing Isaac Industries in the TIO2 Action. (ER72.) On February 8, 2010, Criden & Love and Lieff Cabraser entered into a referral agreement wherein Lieff Cabraser agreed to pay Criden & Love 12.5% of its fee in the TIO2 Action. (ER285.) Joseph Saveri, who was Chairman of Lieff Cabraser's Antitrust Group at the time of filing, agreed to the 12.5% referral that same day. (ER262, 100.)

The referral agreement did not require Criden & Love to engage in any acts in California in furtherance of the referral agreement. (ER285.)

## Berger & Montague Referral Agreement

On February 9, 2010, in exchange for referring Isaac Industries to Berger & Montague, P.C. ("B&M") so that it could participate in the TIO2 Class Action, B&M agreed to pay Criden & Love a 12.5% referral fee. (ER287-288.)

### Isaac Industries Files A Complaint In The TIO2 Action

Gold Bennett Cera & Sidener, LLP ("Gold Bennett") filed the first TIO2 complaint on behalf of Haley Paint Company in Baltimore on February 9, 2010. (ER271.)  Three days later, Lieff Cabraser, B&M and Criden & Love filed a complaint in Baltimore with Isaac Industries as the plaintiff.  Saveri is listed as counsel for Isaac Industries.  (ER290-337, 271, 127).

### Saveri Files A Motion For Admission
### *Pro Hac Vice* On Behalf Of Isaac Industries

A week after the Isaac Industries Complaint was filed, Saveri filed a Motion for *Pro Hac Vice* "as counsel for Isaac Industries, Inc."  (ER339-340, 271.)

### Lieff Cabraser And Gold Bennett
### Become Lead Counsel In The TIO2 Action

On April 1, 2011, the Court in the TIO2 Action entered CMO No. 2, which appointed Lieff Cabraser and Gold Bennett as Lead Counsel.  (ER271.)

### Breen Intervenes In The TIO2 Action

On July 13, 2011, East Coast Colorants LLC ("Breen") filed a motion to intervene in the TIO2 Action.  On July 14, 2011, Vince Esades of Heins Mills & Olson, P.L.C. filed a Motion for *Pro Hac Vice* on behalf of Breen.  On July 29,

2011, the Parties to the TIO2 Action entered into a Stipulation wherein Defendants consented to the intervention. Saveri signed the Stipulation on behalf of Isaac Industries. Esades signed it on behalf of Breen. The Court granted the motion to intervene and approved the Stipulation on July 29th. (ER342-343, 345-353, 272.)

## The May 2012 Telephone Conversation
## Between Kevin Love And Joseph Saveri

In May 2012, Joseph Saveri initiated a telephone call with Kevin Love ("Love") of Criden & Love to discuss Saveri leaving Lieff Cabraser. (ER115, 185, 267-268, 272.) In that conversation, Saveri informed Love that he was leaving Lieff Cabraser to start his own law firm and that he intended to file a motion to be appointed Lead Counsel in the TIO2 Action while representing Isaac Industries. (ER272, 276, 115-116.) Love responded that if Saveri moved for Lead Counsel while representing Isaac Industries, Criden & Love would expect him to pay Criden & Love a 12.5% referral fee. (ER272, 276, 185-186, 116.)

It was important to Saveri to remain in the case as a Lead Counsel. (ER118.) Specifically, Saveri told Love he wanted to continue the same structure: "A co-lead structure with Gold Bennett as one lead, Lieff Cabraser, me, as the other . . . and I wanted to continue that in the future." (ER116-117.) In fact, Saveri did not consider his switching firms as actually ever leaving the TIO2

Action: "Well, I don't know[,] as I would [not] characterize it as coming back in because I don't think I ever left." (ER130.)

### Saveri Files A Notice Of Appearance For Breen
### (Already Represented By Esades)

Since July 2011 Breen had been represented by Vince Esades in the TIO2 Action. Nonetheless, on June 1, 2012, Saveri filed a Notice of Appearance on behalf of Breen. (ER354.) Criden & Love did not become aware of the Notice until after the case was over. (ER273.)

### Saveri Never Files A Notice Of Withdrawal
### Of His Representation Of Isaac Industries

Neither on June 1, 2012 (when Saveri filed his Notice of Appearance on behalf of Breen), nor at any point after June 1, 2012, did Saveri file a notice of withdrawal of his appearance on behalf of Isaac Industries. (ER273-274.) Saveri did not think filing a notice of withdrawal of his representation of Isaac Industries would be "prudent." (ER119.) Consequently, Criden & Love never doubted that Saveri continued to represent Isaac Industries. (ER191, 213-214, 215.)

### Saveri Lawyers File *Pro Hac Vice* Motions
### <u>As Counsel For Isaac Industries</u>

On June 29, 2012, about a month after Saveri's Notice of Appearance for Breen, lawyers in Saveri's new law firm filed Motions for Admission *Pro Hac Vice* not only as counsel for Breen, but also as counsel for Isaac Industries and Haley Paint.  (ER360-361, 363-364.)

### The June 2012 Telephone Conversation
### <u>Between Kevin Love and Joseph Saveri</u>

In June 2012, the same month that Saveri filed his Notice of Appearance on behalf of Breen, Saveri and Love had another phone call.  At no time during the call did Saveri even mention the Notice of Appearance, let alone that it was his way of rejecting the referral offer Love made to Saveri in the May 2012 call. (ER273-275.)

### While Representing Isaac Industries, Saveri Moves
### To Become Lead Counsel And Represents To
### <u>The Court That Criden & Love Approves Of His Request</u>

Consistent with the offer made by Love to Saveri in the May 2012 conversation, Saveri, while still representing Isaac Industries, moved the TIO2 Court to add his new law firm as a Lead Counsel.  (ER366-368, 275.)  In fact, Saveri represented to the TIO2 Court that Criden & Love did not object to his

Motion: **"All Plaintiffs' counsel of record here support the present request that the Joseph Saveri Law Firm be included with Lieff Cabraser and [Gold Bennett] as Interim Co-Lead Class Counsel**." (emphasis added) (ER366-368, 275-276, 122.) Criden & Love was counsel of record when Saveri filed his motion. (ER122-123.)

Saveri had been told by Criden & Love that it would only support his request to become a Lead Counsel while still representing Isaac Industries if he agreed to pay Criden & Love a 12.5% referral fee. (ER276.) Criden & Love interpreted and understood Saveri's conduct in moving for Lead Counsel, along with his representations to the court, as acceptance of Criden & Love's offer. Criden & Love therefore expected Saveri to pay Criden & Love a 12.5% referral fee on any recovery his new law firm recovered in the TIO2 Action. (ER276, 159.)

When asked how he secured Criden & Love's approval for the Motion, Saveri responded:

> "Well, look, I – I believed frankly that – and I still believe that I and my firm did an excellent job and that the – that the work we did spoke for itself, **and there was no reason to believe that anybody would not support my motion, particularly if the issue was on the payment of a – of a referral fee."**

(ER123.) Had Saveri told Criden & Love that he was not intending to pay Criden & Love a referral fee before he filed his motion for Lead Counsel, Criden & Love would have told Saveri that Criden & Love opposed Saveri's request, and, if necessary, would have also informed the Court in the TIO2 Action of Criden & Love's opposition. (ER276, 158-159, 193, 224.)

### Filing A Notice Of Appearance On Behalf Of Breen Had Nothing To Do With Saveri Becoming A Lead Counsel

Saveri did not rely on his Notice of Appearance for Breen in his Motion for Lead Counsel. (ER273, 124.) Likewise, the Notice was irrelevant to the decision by Lieff Cabraser and Gold Bennett to support Saveri's request to become a Lead Counsel. (ER256, 243, 276-277.)

### Criden & Love's Practice of Sending Out Reminder E-Mails

Given that antitrust actions can take several years to resolve, it is Criden & Love's practice to send out e-mails to remind firms of their referral obligations. (ER192, 217, 219.) These reminder e-mails usually include a request to confirm the obligation. In most cases, lawyers do not bother responding to the e-mails even though they all honor their referral obligations at the end of the case. (ER277, 190-191, 196, 217-218.) For example, in the TIO2 case, Criden & Love sent out a reminder e-mail to B&M. B&M did not respond to the e-mail even though it

requested B&M to confirm their referral obligation. At the end of the case, B&M paid Criden & Love a 12.5% referral obligation. (ER278.)

### Saveri's First Reminder E-Mail

Love sent Saveri an e-mail on August 8, 2012, congratulating him on his imminent promotion to Lead Counsel and reminding him of his 12.5% referral fee. Saveri did <u>not</u> send Love a response informing Love that Saveri did not intend to pay Criden & Love a referral fee. (ER277, 125.)

### Saveri Second Reminder E-Mail

In October 2013, after the TIO2 Action settled, Love sent Saveri a second reminder e-mail, which again referenced his referral obligation. Saveri did <u>not</u> send Love a response informing him that he did not intend to pay Criden & Love a referral fee. (ER277-278, 125.)

### Saveri Recovers Approximately $10 Million in Attorney Fees

Of the $54 million in attorney fees awarded by the Court in the TIO2 Action, Saveri recovered approximately $10 million. In requesting fees from the Court, Saveri noted that, at his new law firm, he was simply continuing the Lead Counsel role he had enjoyed at Lieff Cabraser: "I have continued my leadership position in

the case, exercising day-to-day management and supervision over the litigation."
(ER376-381, 278.)

### Saveri Finally Informs Criden & Love That He
### Does Not Intend To Honor His Referral Obligation

In early 2014, Saveri and Love again spoke on the phone. (ER279, 122.)
At this point, Saveri had received his $10 million fee. Love asked Saveri when he
planned to pay his 12.5% referral fee. (ER122.) *For the first time*, Saveri told
Criden & Love that he had filed a Notice of Appearance on behalf of Breen back in
June 2012 and that it was intended as a rejection of Criden & Love's offer.
(ER279, 153-154.)

It was at this point (*after* Saveri had at last informed Love that he did not
intend to pay the referral fee because of the Notice of Appearance for Breen) that
Criden & Love realized that Saveri must have filed the Notice of Appearance in an
attempt to avoid his referral obligation. (ER154, 162, 214.)

Even if Criden & Love had seen the Notice of Appearance before Saveri
moved to become a Lead Counsel, it would not have occurred to Criden & Love
that it was a rejection of Criden & Love's referral offer. Saveri never filed a notice
of withdrawal of appearance for Isaac Industries, and then represented to the Court
in his Motion for Lead Counsel that Criden & Love supported the Motion. In fact,
had Criden & Love become aware of Saveri's Notice of Appearance for Breen at

the time Saveri filed his Motion for Lead Counsel, Criden & Love would have likely thought that Saveri did it simply to help his chances of convincing the Court to grant his request for Lead Counsel.   (ER279, 276-277, 123-124.)

### Isaac Industries' Notice And Consent Letter

On July 28, 2014, David Avan, President of Isaac Industries, executed a Notice and Assent Letter, agreeing to Saveri paying a 12.5% referral fee to Criden & Love.  (ER383, 280-281, 72-73.)

### Criden & Love's Recovery

Criden & Love was paid for the work it performed in the case (based on its lodestar).   It also received referral fees from Lieff Cabraser and Berger & Montague pursuant to their respective referral agreements.  (ER278.)

### Saveri's Excuse For Not Paying Criden & Love A Referral Fee

In response to Love's demand for Criden & Love's referral fee, Saveri said that he would have "a proposal" to Love by the close of the next day.  Saveri never sent Criden & Love a proposal because, according to Saveri, Criden & Love had already received referral fees from Lieff Cabraser and Berger & Montague and had received payment for the hours it put into the case. (ER280, 160-161, 197, 224,

122.)  Saveri admits, however, that it is not unusual for referring firms also to work on antitrust cases.  (ER96, 270.)  It is also not unusual for firms to receive more than one referral fee in a single case. (ER270, 72-73.)

### Saveri Recovers $10 Million in Fees, But Pays No Referral Fee

Despite the fact that Saveri did not have his own client, and having recovered approximately $10 million as a Lead Counsel, Saveri did not pay any law firm a referral fee. (ER122, 129.)

### Final Distribution To Class Members

The TIO2 Action came to an end in October 2014 with the final distribution to Class Members.  (ER132.)

B.      **Procedural Background**

### Criden & Love Files An Arbitration Claim Against Saveri

On February 28, 2014, Criden & Love initiated an arbitration before the American Arbitration Association, alleging that Saveri owed Criden & Love a 12.5% referral fee in connection with the TIO2 Action.  (ER443.)

### Saveri Files a Court Action to Stop the Arbitration

On April 15, 2014, Saveri filed a two-count complaint seeking an injunction to stop the arbitration and a declaration that Saveri was not obligated to pay a referral fee to Criden & Love in connection with the TIO2 Action.  (ER440-449.)

### Motion To Dismiss

On May 13, 2014, Criden & Love filed a motion to dismiss for lack of personal jurisdiction.[4]  On July 23, 2014, the district court entered an order denying the motion to dismiss.  (ER54-66.)   After finding that Saveri's claims were equitable claims akin to torts, the court held that it could exercise personal jurisdiction over Criden & Love under the purposeful direction test.  (ER56-63)

### Criden & Love's Counterclaim

On August 29, 2014, Criden & Love answered Saveri's Complaint and filed a Counterclaim.  The Counterclaim asserted seven counts: Count I – (Contract Implied in Fact; Count II – (Money Had and Received; Count III – (Unjust Enrichment/Restitution; Count IV – (Quantum Meruit); Count V – (Material

---

[4]  The Motion also requested that the action be transferred to the Southern District of Florida under 28 U.S.C. § 1404(a).  The district court's denial of the request under §1404(a) is not at issue in this appeal.

Misrepresentation); Count VI – (Constructive Fraud); and Count VII – (Fraudulent Concealment).  (ER398-421.)


## Motion For Summary Judgment

On January 6, 2015, Saveri filed a Motion for Summary Judgment on Criden & Love's Counterclaim (all seven counts), along with two declarations from Saveri and Robert Bunzel (Saveri's counsel).  Criden & Love filed its Opposition Memorandum on January 20, 2015.  Criden & Love filed two declarations from Kevin Love in support of its Opposition Memorandum.  (ER69-268, 269-383.) Saveri filed his Reply Brief on January 27, 2015.  The district court held a hearing on the motion on February 24, 2015.  (ER14-53.)

On March 9, 2015, the district court entered an order granting Saveri's motion for summary judgment on all seven counts of Criden & Love's Counterclaim.  (ER2-13.)


## Judgment

On March 12, 2015, the district court entered a Judgment dismissing Criden & Love's Counterclaim.  (ER1.)  On March 19, 2015, Criden & Love took a timely appeal of the judgment.  (ER67-68.)

## IX.  <u>SUMMARY OF THE ARGUMENT</u>

A.    To determine whether a court may exercise specific personal jurisdiction over a defendant, a purposeful availment analysis is most often used for claims sounding in contract.  A purposeful direction analysis, on the other hand, is most often used for tort claims (intentional torts in particular).  The district court determined that because Saveri's claims were "equitable" in nature, they sounded in tort, and, therefore, the purposeful direction test applied.  Because equitable claims may sound in either contract or tort, and because a claim relating to the existence of a contract is a claim sounding in contract, the district court committed reversible error when it used the purposeful direction test to find personal jurisdiction over Criden & Love.

B.    Rule 2-200 requires that "the client" consent to a referral agreement.  Criden & Love fully complied with Rule 2-200 by having Isaac Industries, the client referred to Saveri, consent in writing to the referral agreement.  Rule 2-200 requires nothing more.  Isaac Industries' consent notwithstanding, the district court ruled that the referral agreement was unenforceable under Rule 2-200 because Breen (for which Saveri had also filed a Notice of Appearance) did not consent to the referral agreement.  Because Rule 2-200 does not require the consent of Breen

23

to the Isaac Industries' referral agreement, the district court committed reversible error in dismissing Criden & Love's contract claims.

C.     In *Barnes, Crosby v. Ringler*, 212 Cal.App.4th 172 (2012), the California Court of Appeals held that if a lawyer manufactures non-compliance with Rule 2-200, then that lawyer should be equitably estopped from using Rule 2-200 as a defense to a claim seeking recovery on a referral agreement.  Criden & Love submitted evidence from which a reasonable juror could find that Saveri filed his Notice of Appearance for Breen in order to manufacture non-compliance with Rule 2-200.  The district court therefore committed reversible error when it held, as a matter of law, that Criden & Love could not prove equitable estoppel.

D.     The district court dismissed Criden & Love's quantum meruit claim under Rule 2-200.  In *Huskinson & Brown v. Wolf*, 32 Cal.4th 453 (2004), the California Supreme Court held that a law firm may recover in quantum meruit against another law firm even if the parties' fee-sharing agreement does not comply with Rule 2-200.  The district court therefore committed reversible error when it dismissed the quantum meruit claim based on Rule 2-200.

E.    In support of its fraudulent concealment claim, Criden & Love submitted evidence to the district court demonstrating that Saveri misled Criden & Love into believing that he would pay Criden & Love a referral fee.  Ignoring this evidence, the district court held that, as a matter of law, the Notice of Appearance could not be interpreted as anything other than a rejection of Criden & Love's referral offer.  Because the Notice of Appearance for Breen, considered in connection with Saveri's other conduct, could have been interpreted by Criden & Love as something other than an implied rejection of Criden & Love's referral offer, the district court committed reversible error dismissing the fraudulent concealment claim.

# X. ARGUMENT

**A. The District Court Erred In Exercising
Personal Jurisdiction Over Criden & Love**

### 1. Standard of Review

Where the underlying facts are undisputed, the denial of a motion to dismiss for lack of personal jurisdiction is reviewed de novo. *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991).

### 2. Purposeful Availment Versus Purposeful Direction

For a court to exercise personal jurisdiction over a nonresident defendant, the defendant must have "minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 801 (9th Cir. 2004).[5] The Ninth Circuit uses a three-prong test to determine whether specific jurisdiction exists: (1) the non-resident must have either <u>purposefully availed</u> itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or the non-resident must have <u>purposefully directed</u> its activities toward the forum, even if those activities took place elsewhere; (2) the claim must be one which arises out of the defendant's

---

[5] Because California's long-arm statute is coextensive with federal due process requirements, the jurisdictional analysis under state law and federal due process are the same. *Id*. at 800-01. Only specific jurisdiction is at issue in this appeal.

forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Id*. at 802.

With regard to the first prong, the Ninth Circuit has made clear that purposeful availment and purposeful direction are "two distinct concepts." *Id*. "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id*. (citations omitted); *see also Hernandez v. City of Beaumont*, No. 13-967, 2014 WL 6943881, at *3 (C.D. Cal. Dec. 8, 2014) (observing that the Ninth Circuit applies the purposeful direction test only to intentional torts); *Holland America Line v. Wartsila North America*, 485 F.3d 450, 460 (9th Cir. 2007) (holding that it is well established that the purposeful direction test applies only to intentional torts, not to contract and negligence claims); *Sutcliffe v. Honeywell Int'l, Inc*., No. 13-1029, 2015 WL 1442773, at *7 (D. Ariz. Mar. 30, 2015) (applying the purposeful availment standard to a negligence claim); *see also Yahoo! Inc. v. La Ligue Contre*, 433 F.3d 1199, 1206 (9th Cir. 2006) (applying the purposeful direction analysis to a First Amendment claim that was neither a tort nor a contract claim).

Evidence of purposeful availment generally consists of a defendant engaging in acts in the forum, such as performing a contract in the forum. Evidence of purposeful direction, on the other hand, usually focuses on a defendant's actions

outside the forum that are directed at the forum, such as the distribution of goods in the forum that originated elsewhere. *Schwarzenegger*, 374 F.3d at 802-03.

As the Ninth Circuit has repeatedly noted: "It is important to distinguish contract from tort actions." *See, e.g., Garcia Marquez*, 942 F.2d at 621-22 (observing that a defendant's contact that could satisfy a purposeful direction test might not be a sufficient contact to satisfy the purposeful availment standard).

### 3. Equitable Claims Are Not Necessarily Tort Claims

After recognizing that purposeful availment and purposeful direction are two distinct concepts, and that purposeful availment generally applies to contract cases and purposeful direction generally applies to tort cases, the district court held that both of Saveri's claims (Count I - Preliminary Injunction; Count II - Declaratory Relief) "sound in equity." (ER57-61)   From this premise, the district court held that the claims sound in tort and that therefore a purposeful direction analysis should apply.  (ER61.)

Of course, the fact that Saveri's claims might sound in equity does not determine whether the claims sound in tort or contract.  Equitable claims sound in both contract and tort.  Thus, knowing that Saveri's claims sound in equity should not have led the district court to conclude that Saveri's claims sound in tort, and that therefore, a purposeful direction test applied.

28

As shown below, both of Saveri's claims actually sound in contract.

### 4. Saveri's Claims Are Contract Claims

The district court acknowledged that Saveri's claims "bear some relationship to a contract because they seek both to enjoin an arbitration proceeding related to a contract and a declaration that they 'have not agreed nor are obligated to pay any referral fee' to Criden & Love." (ER59) (district court deeming Saveri's claims as seeking equitable relief to "declar[e] that [a contractual relationship] never existed."). Nevertheless, the district court held that because Saveri's claims related to the *existence* of a contract (as opposed to the breach of a contract), they were more like torts than contract claims.[6] (ER59-61)

---

[6] Criden & Love cited *Evans Analytical Group v. Green Plant Farms*, No. 12-5023, 2013 WL 3963822 (N.D. Cal. July 29, 2013), to the district court to support its argument that Saveri's claims were contract claims and not tort claims. In *Evans*, the court applied the purposeful availment test to equitable claims relating to a lease contract. *Id*. at *5-7. The district court distinguished *Evans*, however, by finding that there was no dispute as to the contract's <u>existence</u> in *Evans*. In this case, the district court held, Saveri seeks "equitable relief declaring that such a relationship <u>never existed</u>." (emphasis supplied) (ER59.). Based on this distinction, the district court concluded that Saveri's equitable claims were more akin to torts than contract claims.

Rather than follow *Evans*, the district court chose to rely on *Yahoo! Inc. v. La Ligue Contre*, 433 F.3d 1199 (9th Cir. 2006), wherein this Court found that claims that seek a declaration that a foreign court's orders are unenforceable under the First Amendment are neither contract nor tort claims. *Id*. at 1206. But Saveri's claims do not involve foreign court's orders or any constitutional amendments.

The Ninth Circuit, however, has held that equitable claims relating to the *existence* of contracts are, in fact, contract claims. In *Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015), this Court held that: "A claim for declaratory judgment as to the ***existence*** of a contract is an action sounding in contract." *Id*. at 1212 (emphasis supplied) (applying a purposeful availment analysis to a declaratory judgment claim) (citing *Stanford Ranch v. Md. Cas. Co.*, 89 F.3d 618, 625 (9th Cir. 1996) ("[A] claim dependent on the existence of an underlying contract, sounds in contract, as opposed to tort.")).

The district court thus erred when it held that Saveri's equitable claims are more akin to torts, mandating the use of the purposeful direction test. Instead, the district court should have held that Saveri's equitable claims are contract claims, requiring the use of the purposeful availment test. Had it done so, it would have determined that personal jurisdiction was lacking over Criden & Love.[7]

And, more importantly, as discussed below, this Court has already held that equitable claims relating to the existence of a contract are in fact contract claims.

[7] Even if a purposeful direction test applied in this case, which it clearly does not, the district court did not have personal jurisdiction over Criden & Love. Under *Schwarzenegger*, to satisfy the purposeful direction standard, a plaintiff must show that the defendant (1) committed an intentional tort (2) expressly aimed at the forum state (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 803. The district court held that the mere fact that Saveri was a California resident was sufficient to satisfy the third factor. (ER61.)

But the Supreme Court in *Walden v. Fiore*, 134 S. Ct. 1115 (2014), held that the "proper question is not where the plaintiff experienced a particular injury or

### 5. Under A Purposeful Availment Analysis The District Court Lacked Personal Jurisdiction

Had the district court analyzed this case under purposeful availment, it would have found that it did not have personal jurisdiction over Criden & Love. Saveri argued that the purposeful availment test was met because: (1) Criden & Love sent two emails to Saveri and one email to Lieff Cabraser; (2) Criden & Love filed appearances in other California cases; and (3) Saveri performed legal services in California. None of these arguments have merit.

First, the fact that Criden & Love sent two emails to Saveri to confirm its referral fee does not establish personal jurisdiction. *See Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) ("Both this court and the courts of California have concluded that ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'"); *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (same); *Sarkis v. Lajcak*, 425 Fed. Appx. 557, 558-59 (9th Cir. 2011)

---

effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 1124-25 ("*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum.").

(same); *Rugroden v. State Bank of Park Rapids*, No. 08-1964, 2008 WL 4542971, at *2 (N.D. Cal. Oct. 1, 2008) (same).[8]

Second, the fact that Criden & Love has appeared in unrelated cases in California is irrelevant to a specific jurisdiction analysis. *See Church of Scientology of California v. Adams*, 584 F.2d 893, 896 (1978) ("If a defendant is not present for all purposes in the forum, due process requires that jurisdiction be based on contacts that have some nexus to the cause of action alleged."); *Novak v. NanoLogix, Inc.*, No. 13-1971, 2014 WL 991119, at *3 (N.D. Cal. Mar. 11, 2014) (holding that, for specific jurisdiction purposes, the fact that defendant might have come into California to seek capital and customers is irrelevant because it has no relation to plaintiff's breach of contract claim).

Third, Saveri's own activities in California cannot establish jurisdiction over Criden & Love. The mere fact that a *plaintiff* performs a contract in California cannot serve as a basis for jurisdiction over the defendant. As the Supreme Court recently held: "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 124 S. Ct. at 1121 (citation omitted) ("Put simply, however significant the plaintiff's contacts with the forum may be, those

---

[8]  As for the email confirming the referral obligation between Lieff Cabraser and Criden & Love, the record demonstrates that the agreement did not anticipate or require Criden & Love to do anything in California. (ER285.)

contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'"); *see also id.* at 1122 ("We have consistently rejected attempts to satisfy the defendant-focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.").

Because under the proper standard – the purposeful availment test – the district court cannot exercise personal jurisdiction over Criden & Love, this Court should reverse the district court's Judgment, with instructions to dismiss this case for lack of personal jurisdiction.

### B. The District Court Erred In Granting Summary Judgment Based on Rule 2-200[9]

#### 1. Standard of Review

A district court's decision to grant summary judgment is reviewed de novo. *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011). The appellate court's review is governed by the same standard used by the trial court under Fed. R. Civ. P. 56. *Suzuki Motor Corp. v. Consumers Union,* 330 F.3d 1110, 1131 (9th Cir. 2003). On review, the appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine

---

[9] The district court granted summary judgment under Rule 2-200 on the following claims: Count I - Implied Contract; Count II - Money Had and Received; Count III - Unjust Enrichment/Restitution; and Count IV - Quantum Meruit.

issues of material fact and whether the district court correctly applied the relevant substantive law.  *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004)

Interpretations of Rule 2-200 by a district court are questions of law and are therefore reviewed de novo.  *Barnes*, 212 Cal.App.4th at 179.

### 2.  Rule 2-200

In response to Criden & Love's Counterclaim, Saveri raised the affirmative defense of Rule 2-200.  (ER396.)  Rule 2-200 of the Rules of Professional Conduct of the State Bar of California provides that a lawyer shall not divide a fee with another lawyer who is not a member of his law firm unless "the client has consented in writing" after a "full disclosure" of the terms of the division of fees.  *See* Cal. Rules of Prof. Conduct, Rule 2-200.[10]

Saveri devoted less than one page to Rule 2-200 in its Motion for Summary Judgment.  (ER384-385.)

---

[10] The California Rules of Professional Conduct is a code of conduct for members of the California State Bar.  *Margolin v. Shemaria*, 85 Cal.App.4th 891, 894 n.2 (2000).  Thus, for purposes of the referral agreement at issue in this case, Saveri, a member of the California Bar, cannot divide a fee with Criden & Love unless the division of fees either complies with Rule 2-200, an exception applies or the recovery is in quantum meruit.

### 3. Isaac Industries' Written Consent to the Referral Agreement Between Saveri and Criden & Love Satisfies Rule 2-200

On July 28, 2014, Isaac Industries consented in writing to the referral agreement between Criden & Love and Saveri after full disclosure. (ER383.) Rule 2-200 therefore does not prevent Saveri from honoring his referral obligation.

### 4. Rule 2-200 Did Not Require The Consent Of Breen To the Isaac Industries' Referral Agreement

In granting summary judgment, the district court held that Rule 2-200 not only required the consent of Isaac Industries -- the actual client subject to the referral -- but also the consent of Breen, for which Saveri filed a Notice of Appearance. (ER6-10.) But Criden & Love did not refer Breen to Saveri, and Breen was not the client who was the subject of the referral agreement. Breen's only "connection" to the referral agreement was that Saveri, the lawyer who made that agreement, had filed a Notice of Appearance on its behalf. Nonetheless, the district court held that Breen's consent to the referral agreement was required under Rule 2-200. But Rule 2-200 does not require the consent of *every* client in a case. Only *the client subject to the referral agreement* must consent to the referral arrangement.

The district court's approach – consent must be obtained by every plaintiff represented by the lawyers[11] – not only finds no basis in the wording of Rule 2-200, but it would also be virtually impossible to implement, especially in a class action. Saveri was Lead Counsel in the TIO2 litigation. He represented all three named plaintiffs.[12] Does that mean Rule 2-200 also required Criden & Love to obtain the consent of Haley Paint, the third plaintiff in the action, who also had no connection with the referral agreement?[13]

Moreover, the TIO2 litigation was unusual in having just three plaintiffs. Some class actions have hundreds of plaintiffs. If Rule 2-200 required law firms to secure the consent of every plaintiff in a typical class action, class action referrals

---

[11] When asked rhetorically by Criden & Love's counsel at the hearing: "We certainly are not going to have every class plaintiff be required to assent to a referral fee", the district court responded: "Why not every named class [plaintiff]? Named Plaintiff? Why not? You could." (ER22-23.)

[12] The Saveri Law Firm filed two *pro hac vice* motions as counsel for all three plaintiffs. (ER360-361, 363-364.)

[13] Moreover, should Rule 2-200 be interpreted to impose a duty on the referring attorney to make certain that the other attorney never enters an agreement to represent another plaintiff in an action? How exactly would the referring attorney accomplish such a task? What if the other attorney entered into a retention agreement, but did not bother filing a notice of appearance? What if the attorney did not file a notice of appearance but filed a *pro hac vice* motion as counsel for another plaintiff? Should the referring attorney be subject to a duty, hitherto unknown, to periodically send out requests to all plaintiffs in a class action to discover whether the other attorney was surreptitiously retained by one of them?

in California might stop overnight.  Rule 2-200 was obviously not intended to end

referrals in class actions.[14]

Because Rule 2-200 only requires the consent of the client subject to the

referral, Breen's consent to the referral agreement was not necessary.

### 5. Even If Rule 2-200 Required The Consent Of Breen, Saveri Should Be Equitably Estopped From Relying on Rule 2-200

In *Barnes, Crosby v. Ringler*, 212 Cal.App.4th 172 (2012), the Barnes Law

Firm referred a client, Cordell Meredith, to another lawyer named Ringler.  In

exchange for the referral of the client, Ringler agreed to pay the Barnes Law Firm

one third of any attorney fee it recovered in a class action against a company called

RSM EquiCo.  Meredith consented to the referral in writing, thus complying with

Rule 2-200.  *Id.* at 174.

Ringler filed an individual action with Meredith against EquiCo with the

understanding that the action would be converted into a class action.  Ringler

settled Meredith's individual action, and then found other class members to file a

class action against EquiCo.  The class case settled and generated $13.5 million in

---

[14]  There is no indication that Rule 2-200 was intended to undermine California's policy to encourage referrals in difficult cases.  *Moran v. Harris*, 131 Cal.App.3d 872, 921-22 (1982) (observing that one can reasonably argue that a referral fee is an economic incentive to lawyers to seek out experienced specialists to handle a case, which ultimately benefits the client by providing the best possible representation).

legal fees. *Id*. at 174-79. The Barnes Law Firm asked for its one third referral, but Ringler refused to pay it because the two new class representatives never consented in writing to the referral agreement. In fact, Ringler refused to disclose the referral agreement to the two class representatives and told the Barnes Law Firm not to contact them on their own. *Id*.

The trial court held that since the Barnes Law Firm had not obtained the written consent of the two new class representatives, the referral agreement violated Rule 2-200. *Id*. at 177-78. On appeal, the Barnes Law Firm argued that unlike the usual situations in Rule 2-200 cases, Ringler was "in a position [in the class action] to manufacture non-compliance with [Rule 2-200] by switching clients." *Id*. at 183.

The Court of Appeals agreed, and held that the trial court should have held a trial to determine whether Ringler should be "equitably estopped" from claiming the contract was unenforceable under Rule 2-200. *Id*. at 186. The Court of Appeals concluded that any attorney who purposefully manufactures non-compliance with Rule 2-200 should be equitably estopped from wielding Rule 2-200 as a sword to obtain unjust enrichment:

> Defendants assert there is no "bad guy" exception to Rule 2-200. Under the unique circumstances presented by this case, defendants are wrong.

*Id*. at 186.

Saveri's conduct, at the very least, raises a genuine issue regarding whether he should be equitably estopped from relying on Rule 2-200 to argue that the referral agreement is unenforceable. For example: (1) before leaving Lieff Cabraser, Saveri told Criden & Love that, once he started his new law firm, he intended to move for Lead Counsel while representing Isaac Industries (ER272, 276, 115-116.); (2) Criden & Love told Saveri that if he moved for Lead Counsel while representing Isaac Industries, Criden & Love would expect a 12.5% referral fee (ER272, 276, 116, 185-186.); (3) Saveri filed a Notice of Appearance for Breen (a plaintiff already represented by other counsel) (ER272-273, 274, 277, 278-279.); (4) In a conversation with Criden & Love in June 2012, after Saveri had filed the Notice of Appearance, Saveri did not tell Criden & Love that he filed a Notice of Appearance or that it was intended to be a rejection of Criden & Love's referral offer (ER274-275.); (5) Saveri remained silent in response to emails sent by Criden & Love reminding him of the referral agreement (ER277-278.); (6) Saveri never filed a notice of withdrawal from his representation of Isaac Industries (ER273-274); (7) Attorneys at The Saveri Law Firm filed two *pro hac vice* motions as counsel for all plaintiffs, including Isaac Industries (ER274, 360-361, 363-364); (8) Saveri moved for Lead Counsel while representing Isaac Industries, and informed the court that all plaintiffs' counsel (including Criden & Love) supported his request for Lead Counsel (ER275-276, 366-368.); and (9) only after Saveri

received a $10 million fee did Saveri inform Criden & Love that any referral agreement between them would be unenforceable under Rule 2-200 because Breen had not consented to the Isaac Industries referral (ER277-281).

These facts, taken in the light most favorable to Criden & Love, evince a lawyer trying to manufacture non-compliance with Rule 2-200. The district court therefore erred by finding, as a matter of law, that no reasonable juror could find that Saveri should be equitably estopped from relying on Rule 2-200.[15]

### 6. If the Referral Agreement Is Unenforceable Under Rule 2-200, Criden & Love Is Still Entitled To Quantum Meruit

Assuming that Isaac Industries' written consent to the Referral Agreement does not satisfy Rule 2-200, and assuming that Saveri's attempt to switch clients should not equitably estop him from relying on Rule 2-200, California law still allows Criden & Love to sue Saveri in quantum meruit for the value of the referral.

---

[15] The district court interpreted *Barnes* as permitting the defense of equitable estoppel only under its particular circumstances. (RE9.) ("Defendant does not claim that it tried to obtain Breen's consent but Plaintiff frustrated such an attempt.") But the holding in *Barnes* is not so limited. Admittedly, the court notes the case's "unique circumstances," but nowhere in *Barnes* does the court limit the application of equitable estoppel to only those situations where one lawyer prevents another lawyer from obtaining a client's consent by threatening to sue him for tortious interference. Instead, the court held that Rule 2-200 has a "bad guy" exception. And since the tactic a particular bad guy might take to escape his referral obligation is only limited by that particular bad guy's imagination, it would make no sense to limit the *Barnes'* equitable exception to just one specific fact pattern. *See, e.g., Margolin*, 85 Cal.App.4th at 903 n. 7 (noting that the court might in the future apply equitable estoppel to a different set of facts).

In *Huskinson & Brown v. Wolf*, 32 Cal.4th 453 (2004), the California Supreme Court held that one law firm may share in another law firm's fees in quantum meruit even if the fee-sharing agreement does not comply with Rule 2-200:

> We conclude that, even though rule 2-200 precludes plaintiff from recovering on its fee-sharing agreement with defendants, plaintiff may nonetheless recover from defendants the reasonable value of the legal services it rendered on the client's behalf.

*Id*. at 464.

The district court dismissed Criden & Love's quantum meruit claim under Rule 2-200, citing *Margolin v. Shemaria*, 85 Cal.App.4th 891 (2000) (ER9,11.) ("For the same reason, Rule 2-200 prevents the Court from granting equitable relief. See Margolin, 85 Cal.App.4th at 901-02."). *Margolin*, however, deals with the defense of equitable estoppel. The *Margolin* court held that the fact that one lawyer says he will make sure Rule 2-200 is complied with (and then fails to follow through) is insufficient to equitably estop him from relying on Rule 2-200. *Margolin* does not involve equitable claims (like quantum meruit).

Because the California Supreme Court permits plaintiffs to recover in quantum meruit where a referral agreement is found to be unenforceable under Rule 2-200, the district court erred when it dismissed Criden & Love's claim for quantum meruit.

### C. The District Court Erred By Granting Summary Judgment On Criden & Love's Fraudulent Concealment Claim[16]

In Count VII, Criden & Love argues that Saveri concealed the fact that he did not intend to honor his referral obligation. The district court held that Criden & Love's fraudulent concealment claim should be dismissed because the Notice of Appearance for Breen could not be reasonably interpreted as anything other than a rejection of Criden & Love's referral offer. But whether viewed in isolation (as the district court did) or in context, the Notice of Appearance does not preclude the fraudulent concealment claim as a matter of law.

First, the Notice of Appearance does not mention Criden & Love's offer, let alone reject it. In fact, if a trier of fact eventually agrees with Saveri, it may likely be the first time that a lawyer has rejected, *sub silentio*, a referral agreement by the filing of a notice of appearance.

Second, the district court failed to consider the filing of the Notice of Appearance in the context of Saveri's other conduct that indicated his acceptance of the referral offer:

- In May 2012, Saveri told Criden & Love that, after he left Lieff Cabraser, he intended to file a motion to become Lead Counsel while representing Isaac Industries (ER272, 276, 115-116.);

---

[16] Out of the three fraud claims alleged, Criden & Love only appeals the dismissal of Count VII (Fraudulent Concealment).

- Criden & Love responded that his proposal was acceptable so long as Saveri agreed to pay it a 12.5% referral fee (ER272, 276, 116, 185-186.);

- In June 2012, after Saveri left Leiff Cabraser, Saveri filed a Notice of Appearance for Breen (who had intervened in the TIO2 case back in July 2011 and who was already represented by another attorney) (ER272-273, 274, 277, 278-279.);

- In a conversation with Criden & Love in June 2012, after Saveri had filed the Notice of Appearance, Saveri did not tell Criden & Love that he filed a Notice of Appearance or that it was intended to be a rejection of Criden & Love's referral offer (ER274-275.);

- Although Saveri filed a Notice of Appearance for Breen, he did not withdraw from his representation of Isaac Industries (ER273-274.);

- At the end of June 2012, Saveri filed *pro hac vice* motions as counsel for Isaac Industries (ER274, 360-361, 363-364.);

- In August 2012, Saveri moved for Lead Counsel while still representing Isaac Industries (ER275-276, 366-368.);

- In his Motion for Lead Counsel, Saveri represented to the Court that Criden & Love approved of his request to become a Lead Counsel (ER275-276, 366-368.);

- Saveri remained silent in response to emails sent by Criden & Love reminding him of the referral agreement (ER277-278.); and

- Saveri never once told Criden & Love that the Notice of Appearance was intended to be a rejection of Criden & Love's offer until after he received his $10 million attorney fee award (ER272-279.).

Although Criden & Love submitted this evidence in opposition to Saveri's

Motion for Summary Judgment, supporting the conclusion that Saveri's Notice of

Appearance was just part of an overall scheme to mislead Criden & Love into believing that he had accepted the referral offer, the district court did not consider this evidence in its decision dismissing the claim.

Instead, the district court held that, as a matter of law, the Notice of Appearance could be reasonably interpreted <u>only</u> as a rejection because Criden & Love testified in deposition that, <u>after</u> Saveri told Criden & Love he would not pay them because of the Notice of Appearance, Criden & Love realized that Saveri had defrauded them. That realization – that Saveri had intentionally engaged in conduct to make Criden & Love believe that he had accepted their offer, while also filing a notice of appearance for a plaintiff already in the case so that he could later argue that he rejected the offer – does *not* lead to the conclusion that the Notice could only be reasonably interpreted at the time it was filed as a rejection of Criden & Love's referral offer.

Put differently, Criden & Love argues that the act of filing the Notice of Appearance by Saveri was intended by Saveri to fly under the radar so that Criden & Love would not immediately react to it (*i.e*., opposing his request for Lead Counsel). Indeed, Saveri *himself* testified that the filing of the Notice of Appearance for Breen could have been interpreted by Criden & Love as nothing more than a "significant" step in his goal of achieving a Lead Counsel position in the TIO2 Class Action. (ER123-124.) Likewise, Criden & Love testified that,

had they actually reviewed the Notice of Appearance when it was filed, they would have likely thought it was just Saveri trying to increase his chances of becoming Lead Counsel.  (ER279, 276-277).

In dismissing the fraudulent concealment claim, the district court gave the Notice of Appearance a legal significance it did not deserve.  Because the filing of the Notice of Appearance could have reasonably been interpreted by Criden & Love as something other than a rejection of its referral offer, the district court erred when it dismissed the fraudulent concealment claim.

## XI. <u>Conclusion</u>

Claims relating to the existence of a contract are *not* tort claims. Rule 2-200 does *not* require the consent of anyone other than the client who is the subject of the referral agreement. Quantum meruit *is* permitted when Rule 2-200 invalidates a referral agreement. And Criden & Love reasonably could have interpreted the Notice of Appearance for Breen as just an attempt by Saveri to bolster his request to become Lead Counsel, as opposed to a rejection of their referral offer.

For these reasons, Criden & Love respectfully requests that the Court reverse the District Court's Judgment.

Dated: July 28, 2015

**CRIDEN & LOVE, P.A.**

By: <u>s/ Kevin B. Love</u>
     Kevin B. Love

7301 SW 57th Court, Suite 515
South Miami, FL 33143
Telephone: 305-357-9000
Facsimile: 305-357-9050

Robert T. Sullwold
**SULLWOLD & HUGHES**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
Telephone: 510-496-4616
Facsimile: 415-762-5338
*Attorneys for Defendant/Counter-Plaintiff – Appellant Criden & Love, P.A.*

## XII.   STATEMENT OF RELATED CASES PURSUANT TO CIRCUIT RULE 28-2.6

Appellant Criden & Love is unaware of any related cases pending in this Court.

## XIII.   CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)

This brief complies with the type volume limitations set forth in Federal Rule of Appellate Procedure 32(a)(7)(B).  This brief, including all section of the brief, contains 10,606 words.

This brief also complies with the typeface and typestyle limitations in FRAP 32(a)(5) and (a)(6) because this brief has been prepared in a proportionally spaced face in 14-point Times New Roman.

## XIV.  CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2015, I electronically filed:

**OPENING BRIEF OF DEFENDANT/COUNTER-PLAINTIFF--
APPELLANT MICHAEL E. CRIDEN, P.A., D/B/A CRIDEN & LOVE, P.A**.

with the Clerk of the Court for the United States Court of Appeals for the Ninth

Circuit by using the appellate CM/ECF system.   I certify that all participants in

this case are registered CM/ECF users and that service will be accomplished by the

appellate CM/ECF system.

By: s/Kevin B. Love
Kevin B. Love
