Case No. 15-15534

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

Joseph Saveri Law Firm, Inc. and Joseph R. Saveri,

*Plaintiffs—Counter-Defendants—Appellees*,

v.

Michael E. Criden, P.A. d/b/a Criden & Love, P.A.,

*Defendant—Counter-Plaintiff—Appellant*

---

On appeal from the United States District Court
for the Northern District of California, San Francisco Division
Case No. 3:14-cv-01740-EDL

---

## SUPPLEMENTAL EXCERPTS OF RECORD
## VOLUME 1 of 2 (pages 001- 242)

---

Robert H. Bunzel (SBN 99395)
 *rbunzel@bzbm.com*
Charles G. Miller (SBN 39272)
 *cmiller@bzbm.com*
**BARTKO, ZANKEL, BUNZEL &
MILLER**
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

*Attorneys for Plaintiffs—Counter-Defendants—Appellees*
JOSEPH SAVERI LAW FIRM, INC. and JOSEPH R. SAVERI

| Dkt. No. | Document Description[1] | Page No. |
|:---:|:---|:---|
| | **VOLUME 1** | |
| 7 | Declaration of Joseph R. Saveri in Support of Plaintiffs' Motion for Preliminary Injunction, filed April 16, 2014 | SER 001 |
| 6 | Plaintiffs' Motion for Preliminary Injunction; Memorandum of Points and Authorities in Support, filed April 16, 2014 | SER 041 |
| 19 | Declaration of Robert H. Bunzel in Support of Plaintiffs' Opposition to Motion of Defendant Criden & Love to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer to Southern District of Florida, filed May 30, 2014 | SER 076 |
| 20 | Declaration of Joseph R. Saveri in Support of Plaintiffs' Opposition to Motion of Defendant Criden & Love to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer to Southern District of Florida, filed May 30, 2014 | SER 133 |
| 31 | Transcript of Court Proceedings re Hearing on Motion to Dismiss on July 1, 2014 | SER 178 |
| 36 | Stipulation and Order Extending Defendant's Time to File Responsive Pleading, filed August 8, 2014 | SER 205 |
| 51 | Defendant's Rule 26(a) Initial Disclosures, filed October 3, 2014 | SER 208 |
| 57 | Plaintiffs and Counter-Defendants' Notice of Motion and Motion for Summary Judgment or, Alternatively, Summary Adjudication; Memorandum of Points and Authorities in Support, filed January 6, 2015 | SER 213 |

---

[1] Certain of the briefs filed in the district court are included in Appellees' Supplemental Excerpts of Record, "necessary to the resolution of an issue on appeal" because the Judgment of the district court on summary judgment may be affirmed on other grounds supported by the record, and to establish absence of Appellant's objection to personal jurisdiction after answer. Ninth Circuit Rule 30-1.5.

| Dkt. No. | Document Description | Page No. |
|---|---|---|
| | **VOLUME 2** | |
| 58 | Declaration of Robert H. Bunzel and Request for Judicial Notice in Support of Plaintiffs and Counter-Defendants' Notice of Motion and Motion for Summary Judgment or, Alternatively, Summary Adjudication, filed January 6, 2015 | SER 243 |
| 59 | Declaration of Joseph R. Saveri in Support of Plaintiffs and Counter-Defendants' Notice of Motion and Motion for Summary Judgment or, Alternatively, Summary Adjudication, filed January 6, 2015 | SER 427 |
| 60 | Defendant Criden & Love's Opposition Memorandum to Plaintiffs' Motion for Summary Judgment or, Alternatively, Summary Adjudication, filed January 20, 2015 | SER 484 |
| 64 | Plaintiffs and Counter-Defendants' Reply Brief in Support of Summary Judgment or, Alternatively, Summary Adjudication, filed January 27, 2015 | SER 514 |
| 72 | Minute Entry for Court Proceedings re Hearing on Motion for Summary Judgment, filed February 24, 2015 | SER 533 |
| 73 | Defendant Criden & Love's Letter Brief re Florida Law, filed February 27, 2015 | SER 535 |
| 74 | Plaintiffs' Joseph Saveri Law Firm, Inc. and Joseph R. Saveri's Letter Brief re Florida Law, filed March 2, 2015 | SER 537 |

Robert H. Bunzel, State Bar No. 99395
Charles G. Miller, State Bar No. 39272
BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

Attorneys for Plaintiffs
JOSEPH SAVERI LAW FIRM, INC.
and JOSEPH R. SAVERI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

| | |
|---|---|
| JOSEPH SAVERI LAW FIRM, INC., a California corporation, and JOSEPH R. SAVERI,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL E. CRIDEN, P.A. dba CRIDEN & LOVE, P.A., a Florida corporation,<br><br>Defendant. | No. 3:14-cv-1740 EDL<br><br>**DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: May 27, 2014<br>Time: 9:00 a.m.<br>Courtroom: E, 15th Floor<br>Judge: Elizabeth D. Laporte, Chief Magistrate Judge |

I, JOSEPH R. SAVERI, declare:

1. I am one of the plaintiffs in this action, and am an attorney, licensed to practice law in the State of California. I am an officer of plaintiff Joseph Saveri Law Firm, Inc., which has its offices in San Francisco, California. If called as a witness in this matter, I am competent to testify to the facts set forth below on my personal knowledge, except as to those matters stated to be on information and belief.

2. Prior to June 2012, I was a partner in the San Francisco office of the law firm Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser"). Lieff Cabraser is a registered

1   California limited liability partnership.  One of Lieff Cabraser's areas of specialization, and mine

2   as well, is representing plaintiffs in class actions arising under federal or state antitrust laws.

3          3.      I am informed and believe that on or about February 8, 2010, Lieff Cabraser

4   and defendant Michael Criden ("Criden"), a lawyer in Miami, Florida, engaged in an email

5   exchange (the "Email") whereby Lieff Cabraser purportedly agreed to pay defendant Criden a

6   referral fee of 12.5 percent of any fees Lieff Cabraser received in connection with a lawsuit

7   ultimately known as *In re Titanium Antitrust Litigation*, No. 10-cv-00318 RDB, pending in the

8   United States District Court for the District of Maryland (the "TiO2 Action").  Attached hereto as

9   Exhibit 1 is a true and correct copy of the Email, which was attached to the Demand for

10  Arbitration referred to in paragraph 11 hereof.  I am further informed and believe that Criden

11  referred Isaac Industries, Inc. ("Isaac") as a client in the TiO2 Action to be represented by Lieff

12  Cabraser.  The Email communication was not to or from me or Joseph Saveri Law Firm.  The

13  Email does not refer to any law firm other than Lieff Cabraser.  It does not provide that the

14  purported referral obligation applies to any other law firm, person, or lawyers who may depart

15  Lieff Cabraser.

16         4.      The Email between Lieff Cabraser and Criden also provides in one sentence,

17  without an attorney's fees clause, that Lieff Cabraser and Criden shall arbitrate before the

18  American Arbitration Association ("AAA") any disputes related to or arising from their purported

19  agreement.  It does not provide for or mention in any way arbitration between Criden and any

20  other entity or person.

21         5.      Neither Joseph Saveri Law Firm nor I signed or made any agreement with

22  Criden.

23         6.      On or about February 9, 2010, an antitrust class action complaint was filed

24  by plaintiff Haley Paint Company in the United States District Court for the District of Maryland

25  against a number of defendants, alleging a conspiracy to fix prices of titanium dioxide in violation

26  of Section 1 of the Sherman Act (15 U.S.C. § 1),  and commencing the TiO2 Action

27

28

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL TARRER WALSH
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

-2-

7.      On February 12, 2010, Isaac filed a complaint in the District of Maryland, which was consolidated with the Haley Paint complaint in the TiO2 Action. Shortly thereafter, Lieff Cabraser appeared in the TiO2 Action on behalf of Isaac. Lieff Cabraser was appointed one of the co-lead counsels, and I functioned as the senior and chief lawyer at Lieff Cabraser on the matter.

8.      Prior to June 1, 2012, I withdrew as a partner of Lieff Cabraser. On June 1, 2012, Joseph Saveri Law Firm entered an appearance in the TiO2 Action as co-counsel for plaintiff East Coast Colorants LLC dba Breen Color Concentrates ("Breen") along with Vincent J. Esades of Heins, Mills & Olson of Minneapolis, Minnesota ("Heins"). Breen had intervened in the TiO2 Action as plaintiff on July 29, 2011, represented by Heins. Joseph Saveri Law Firm assumed the role of co-lead counsel in the TiO2 Action as counsel of record on behalf of Breen, and thereafter devoted the time of numerous lawyers and advanced expenses of hundreds of thousands of dollars related to the TiO2 Action. Attached hereto as Exhibit 2 is a copy of my Declaration filed October 18, 2013 in the TiO2 Action detailing the legal services performed and expenses advanced by Joseph Saveri Law Firm after I disassociated from Lieff Cabraser.

9.      In the fall of 2013, after extensive discovery and motion practice (over 90 depositions were taken worldwide), a settlement in the TiO2 Action for $163.5 million was approved by the District Court, and $54.5 million in attorney's fees were awarded. The action, including the award of attorney's fees, is final, and a Final Judgment has been entered resolving all claims in the TiO2 Action. The attorney's fees have been allocated and paid to twelve plaintiff law firms, including Criden

10.     I am informed and believe that Criden has received approximately $2 million in referral fees related to the TiO2 Action, including sums paid to Criden by Lieff Cabraser related to the purported Email referral agreement for work performed by Lieff Cabraser, including work performed by me while a partner at Lieff Cabraser. Criden has, in addition, received approximately $1 million in attorney's fees for legal work performed by Criden in the TiO2 Action.

-3-

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

DECL. OF JOSEPH R. SAVERI ISO MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:14-cv-1740 EDL

11.     Joseph Saveri Law Firm has also received attorney's fees for legal work performed by it in the TiO2 Action subsequent to June 1, 2012.

12.     On or about February 28, 2014, I received from the American Arbitration Association ("AAA") an arbitration demand filed by Criden in Miami, Florida, in proceeding No. 32-194 Y 00123-14.   Criden asserts that Criden is entitled to a referral fee equal to 12.5 percent of the attorney's fees received by Joseph Saveri Law Firm and by me.  Criden in the AAA arbitration demand seeks $1.2 million from Joseph Saveri law firm and from me.  A true and correct copy of the Demand is attached hereto as Exhibit 3.

13.     The sole basis for the contention that that Joseph Saveri Law Firm and I are required to arbitrate is the Email between Lieff Cabraser and Criden.  Neither Joseph Saveri Law Firm nor I are parties or signatories to the Email. The Email does not mention plaintiffs, refer to plaintiffs, or contemplate them in any manner or form. We are not parties and are not bound. We have not consented to arbitration.

14.     On March 14, 2014, plaintiffs timely objected to the jurisdiction of the AAA, and objected to venue for the arbitration in Florida.  Attached hereto as Exhibit 4 is plaintiffs' Answering Statement, attached to which is the Ojbection to Arbitration and Objection to Miami, Florida as Arbitration Locale.  On March 24, 2014, Criden restated its position that Miami, Florida, is the appropriate venue for arbitration with plaintiffs.

15.     On April 2, 2014, the AAA issued a decision that venue for the arbitration between Criden and plaintiffs is Miami, Florida.  On April 4, 2014, the AAA submitted a list of ten potential arbitrators, the majority of whom reside in Florida. Attached hereto as Exhibits 5 and 6 are true and correct copies of the venue decision and list of potential arbitrators sent by the AAA.

16.     Plaintiffs will suffer irreparable harm if we are forced to arbitrate claims that are not arbitrable, depriving us of our right to have those claims heard in a court of law.  We have incurred substantial legal fees and costs to date and will incur more in the future in contesting the arbitration, if not enjoined, which we will not recover or get back once it is ultimately determined

-4-

2400.001/806364.1

DECL. OF JOSEPH R. SAVERI ISO MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:14-cv-1740 EDL

SER 004

1   that the AAA has no jurisdiction over plaintiffs.  Further, I will have to spend time and resources

2   in the arbitration, including travel to Florida, that is not compensable by any monetary award.

3           I declare under penalty of perjury under the laws of the United States of America

4   that the foregoing is true and correct and that this Declaration is executed this 16th day of April,

5   2014, at San Francisco, California.

6                                                    _____
                                                     JOSEPH R. SAVERI
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-5-

DECL. OF JOSEPH R. SAVERI ISO MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:14-cv-1740 EDL

# EXHIBIT 1

SER 006

## Kevin Love

| | |
|---|---|
| **From:** | Fastiff, Eric B. [EFASTIFF@lchb.com] |
| **Sent:** | Monday, February 08, 2010 4:17 PM |
| **To:** | Kevin Love |
| **Subject:** | RE: TIO2 Antitrust Action |

Agreed.

Eric B. Fastiff
Lieff, Cabraser, Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000 x.2207
Fax: (415) 956-1008
www.lieffcabraser.com

---

**From:** Kevin Love [mailto:KLove@cridenlove.com]
**Sent:** Monday, February 08, 2010 1:10 PM
**To:** Fastiff, Eric B.
**Subject:** TIO2 Antitrust Action

Eric,

Below is our standard referral agreement. If you agree with the terms below, please confirm by reply e-mail.
Thanks.

Lieff Cabraser Heimann & Bernstein, LLP agrees to pay Criden & Love, P.A. a referral fee of 12.5% (Twelve and One Half Percent) of its fees, including any multiples on hours that it receives in this matter ("Total Fees"). Total Fees does not include any monies received for reimbursement of expenses. Lieff Cabraser agrees to pay the referral fee to Criden & Love even if Lieff Cabraser later procures another client in this matter. If Lieff Cabraser receives significantly less than its lodestar in the case, Criden & Love agrees to discuss in good faith a reasonable accommodation to the amount of the referral fee.

Both law firms agree that all disputes related to or arising from this referral agreement shall be resolved by arbitration conducted by the American Arbitration Association ("AAA").

Please confirm this referral arrangement before you file the complaint by reply e-mail.

Thanks.

Kevin

Kevin Bruce Love
Criden & Love, P.A.
7301 SW 57th Court, Suite 515
South Miami, Florida 33143
(t) 305-357-9010
(f) 305-357-9050
klove@cridenlove.com

2/8/2010

**SER 007**

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| IN RE: TITANIUM DIOXIDE ANTITRUST LITIGATION | Master Docket No. 10-CV-00318 (RDB) |
| THIS DOCUMENT RELATES TO: All Actions | |

**DECLARATION OF JOSEPH R. SAVERI**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF**
**ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**
**FILED ON BEHALF OF THE JOSEPH SAVERI LAW FIRM, INC.**

I, Joseph R. Saveri, declare and state as follows:

1.      I am the founder of the Joseph Saveri Law Firm, Inc., one of the counsel to Plaintiffs in this litigation. I am over 18 years of age and competent to testify as to the matters and facts set forth herein. I submit this Declaration in support of Plaintiffs' Motion For An Award Of Attorneys' Fees And Reimbursement Of Expenses, concerning services rendered and expenses incurred by my firm in connection with this litigation on behalf of Plaintiffs. The matters stated in this declaration are true based on my personal knowledge. If called to testify about them, I can and will competently do so.

2.      I have worked intensively on this case since its inception, participating in all phases of the litigation. At the outset of this litigation, I was a partner and chair of the Antitrust

and Intellectual Property Practice Group at the law firm Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"), which was appointed as Co-Lead Counsel in this action. In May 2012, I established my own law firm, the Joseph Saveri Law Firm, Inc. (the "Joseph Saveri Law Firm"). Since then, my firm was appointed as Co-Lead Counsel by this Court, and I have continued my leadership position in this case, exercising day-to-day management and supervision over the litigation together with the law firms of Gold Bennett Cera & Sidener, LLP, and LCHB, the other court-appointed Co-Lead Counsel with whom I have served.

3.      During the period May 2012 (when I started the Joseph Saveri Law Firm) through September 30, 2013, my firm has been involved in the following activities, among others, on behalf of Plaintiffs: (1) analyzing and organizing documents produced by the parties and non-parties during discovery; (2) drafting discovery, meeting and conferring with Defendants regarding that discovery; (3) drafting responses to Defendants' interrogatories, and meeting and conferring regarding that discovery; (4) engaging in developing expert testimony and extensive expert discovery; (5) working with professional economists to analyze economic information and transactional data from Defendants and Tronox; (6) defending and taking depositions; (7) engaging in extensive motion practice addressing class certification before this Court and the Fourth Circuit; (8) briefing and arguing oppositions to *Daubert* motions; (9) opposing Defendants' motions to amend the class definition to exclude class members who had arbitration, forum selection, class action waiver, and jury waiver clauses within their contracts with Defendants; opposing joint and individual summary judgment motions; participating in mock trial work; (10) completion of a wide variety of pretrial tasks, including drafting the jury questionnaire and *voir dire* questions, briefing and arguing *in limine* and other pretrial motions, and attending the pretrial conference; (11) engaging in extensive settlement discussions that ultimately led to settlements with each Defendant; (12) preparing the papers in connection with

**SER 010**

class action settlement approval procedures and requirements for the settlements reached in this case; and (13) addressing Class member inquiries. I also regularly participated in case management conferences, both in person or by telephone, as set by the Court.

4.     The schedule attached hereto as **Exhibit 1** is a detailed summary indicating the amount of time spent by the partners, attorneys and other professional support staff of the Joseph Saveri Law Firm in connection with this litigation, and the lodestar calculation based on the firm's current billing rates for the period from May 2012 through September 30, 2013.  All the time expended was wholly contingent.  The Joseph Saveri Law Firm has not received any compensation or reimbursement for such time. The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm and which are available for review by the Court.  The schedule does not include any of the work that I or others performed while I was working at LCHB.  It only includes work performed by the Joseph Saveri Law Firm.

5.     The hourly rates for the partners, attorneys and professional support staff in my firm included in **Exhibit 1** are the same as the usual and customary hourly rates charged for their services in non-contingent billable matters.

6.     The total number of hours expended on this litigation by my firm from May 2012 through September 30, 2013 is 6,425.88 hours. The total lodestar for my firm is $3,777,403.50. My firm's lodestar figures are based on the firm's current billing rates.

7.     As detailed in **Exhibit 2**, my firm has incurred a total of $434,266.82 in unreimbursed expenses during the period May 2012 through September 9, 2013, in connection with the prosecution of this litigation on behalf of Plaintiffs.  The Joseph Saveri Law Firm has not received any compensation or reimbursement for such expenses.

3

**SER 011**

8.     The expenses incurred in this action are reflected on the books and records of my firm. These books and records are prepared from contemporaneously maintained expense vouchers, check records, invoices, automated cost recovery systems, and other source materials, and they represent an accurate recordation of the expenses incurred.

I declare under penalty of perjury under the laws of the United States of America and on personal knowledge that the foregoing is true and correct.

Executed on this 16th day of October, 2013.

Joseph R. Saveri

4

# JOSEPH SAVERI
### L A W   F I R M

505 MONTGOMERY STREET
SUITE 625
SAN FRANCISCO, CA 94111

TEL 415.500.6800
FAX 415.395.9940

*In re Titanium Dioxide Antitrust Litigation*
**Master Docket No. 10-cv-00318**

**Lodestar Summary**
**Inception through September 30, 2013**

| Attorney | Rate | Hours | Total |
|----------|------|-------|-------|
| Joseph Saveri | $900.00 | 2206.89 | $1,986,201.00 |
| Joshua Davis | $700.00 | 15.3 | $10,710.00 |
| Kevin Rayhill | $450.00 | 2295.47 | $1,032,961.50 |
| Lisa Leebove | $600.00 | 274.75 | $164,850.00 |
| Ryan McEwan | $450.00 | 569.8 | $256,410.00 |
| James Dallal | $450.00 | 47.8 | $21,510.00 |
| Doug Clevenger | $300.00 | 5.3 | $1,590.00 |
| Gabrielle Saveri | $300.00 | 432.72 | $129,816.00 |
| Prem Lall | $300.00 | 340.1 | $102,030.00 |
| Marielena Adriano | $300.00 | 237.75 | $71,325.00 |
| | | | |
| **TOTAL** | | **6,425.88** | **$3,777,403.50** |

**Exhibit 1**

SAVERILAWFIRM.COM

SER 013

# JOSEPH SAVERI
## LAW FIRM

505 MONTGOMERY STREET
SUITE 625
SAN FRANCISCO, CA 94111

TEL 415.500.6800
FAX 415.395.9940

*In re Titanium Dioxide Antitrust Litigation*
**Master Docket No. 10-cv-00318**

**Expense Summary**
**Inception through September 30, 2013**

| Description | Cumulative Total |
|---|---|
| Court Reporters/Transcripts | $9,060.14 |
| Court Fees | $392.00 |
| Commercial Copies | $13,512.69 |
| Photocopies | $21,051.25 |
| Postage/Express/Delivery/Messenger | $13,598.20 |
| Travel Expenses | $78,047.77 |
| Telephone | $535.43 |
| Miscellaneous/Other | $3,520.94 |
| Computer Research | $44,548.40 |
| Litigation Fund | $250,000.00 |
| | |
| **TOTAL** | **$434,266.82** |

**Exhibit 2**

SAVERILAWFIRM.COM

# EXHIBIT 3

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

Please visit our website at www.adr.org if you
would like to file this case online. AAA Case Filing
Services can be reached at 877-495-4185.

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

*MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box. ☐*
*There is no additional administrative fee for this service.*

| Name of Respondents | Name of Representative (if known) |
|---|---|
| JOSEPH SAVERI LAW FIRM + JOSEPH | |
| Address SAVERI | Name of Firm (if applicable) |
| 505 MONTGOMERY ST, #625 | |
| | Representative's Address |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| SAN FRANCISCO | CA | 94111 | | | |

| Phone No. | Fax No. | Phone No. | Fax No. |
|---|---|---|---|
| 415-500 6900 | 415 500 6903 | | |

| Email Address: | Email Address: |
|---|---|
| JSAVERI@SAVERILAWFIRM.COM | |

The named claimant, a party to an arbitration agreement dated ___2/8/10___, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE   CRIDEN + LOVE SEEKS A 12.5% REFERRAL FEE FROM THE SAVERI LAW FIRM + JOSEPH SAVERI BASED ON THEIR RECOVERY IN THE TITANIUM DIOXIDE ANTITRUST LITIGATION.

| Dollar Amount of Claim $ ~~$~~ $1.2 MILLION | Other Relief Sought: ☒Attorneys Fees ☐Interest ☒Arbitration Costs ☐Punitive/ Exemplary ☐Other |
|---|---|

Amount Enclosed $ 8,200.00 In accordance with Fee Schedule: ☐Flexible Fee Schedule ☒Standard Fee Schedule

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
ATTORNEYS

Hearing locale   MIAMI FL   (check one) ☒Requested by Claimant   ☐Locale provision included in the contract

| Estimated time needed for hearings overall: | Type of Business:  Claimant   LAW FIRM |
|---|---|
| _____ hours or   2   days | Respondents   LAW FIRM / LAWYER |

Is this a dispute between a business and a consumer? ☐Yes ☒No  Does this dispute arise out of an employment relationship? ☐Yes ☒No
If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☐Less than $100,000  ☐ $100,000 - $250,000  ☐ Over $250,000

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Signature (may be signed by a representative)   Date: | Name of Representative |
|---|---|
| [signature]   2/20/14 | CURTIS J. MASE , ESQ. |
| Name of Claimant | Name of Firm (if applicable) |
| CRIDEN + LOVE, P.A. | MASE, LARA + EVERSOLE, P.A. |
| Address (to be used in connection with this case) | Representative's Address |
| 7301 SW 57th CT, #515 | 2601 S. BAYSHORE Dr, #800 |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| South MIAMI | FL | 33143 | MIAMI | FL | 33133 |

| Phone No. | Fax No. | Phone No. | Fax No. |
|---|---|---|---|
| 305 357 9000 | 305 357 9050 | 305 377-3770 | 305 377-0080 |

| Email Address: | Email Address: |
|---|---|
| KLOVE@CRIDENLOVE.COM | CMASE@MLETRIAL.COM |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043.  Send the original Demand to the Respondent.

# EXHIBIT 4

SER 017

American Arbitration Association
*Dispute Resolution Services Worldwide*

## ARBITRATION
### Answering Statement and Counterclaim Request

**MEDIATION:** *If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box.* ☐
*There is no additional administrative fee for this service.*

| Name of Claimant | Name of Representative (if known) |
|---|---|
| Michael E. Criden, P.A., d/b/a Criden & Love, P.A. | Curtis J. Mase, Esq. |
| Address: | Name of Firm (if applicable) |
| 7301 SW 57th Court, Suite 515 | Mase Lara Eversole, PA |
| | Representative's Address: |
| | 2601 South Bayshore Drive, Suite 800 |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| South Miami | FL | 33143 | Miami | FL | 33133 |

| Phone No. | Fax No. | Phone No. | Fax No. |
|---|---|---|---|
| (305) 357-9000 | (305) 357-9050 | (305) 377-3770 | (305) 377-0080 |

| Email Address: | Email Address: |
|---|---|
| klove@cridenlove.com | cmase@mletrial.com |

| AAA CASE # (if known)  32 194 Y 00123 14 | Filing a Counterclaim: ☐ Yes  ☒ No |
|---|---|
| | *If yes, please describe nature of counterclaim in space below.* |

**PLEASE ANSWER CLAIMANT DEMAND FOR ARBITRATION (AND DESCRIBE COUNTERCLAIM, IF APPLICABLE):**
*Attach additional pages as necessary.*

Respondents Joseph Saveri Law Firm, Inc. ("Law Firm") and Joseph R. Saveri, a natural person ("Saveri") deny in its entirety the Claim of Michael E. Criden d/b/a Criden & Love, P.A. ("Criden").  Law Firm and Saveri object to arbitration jurisdiction and to Miami as the arbitration venue.  See attachments. Law Firm and Saveri reserve the right to assert any applicable defenses and counterclaims should this matter proceed to arbitration.

Attachment A (Objection to Arbitration) R-7(c)
Attachment B (Fixing of Locale) R-11

| Dollar Amount of Claim or Counterclaim $ 1,200,000.00 | Other Relief Sought: ☒ Attorneys Fees  ☒ Interest |
|---|---|
| | ☒ Arbitration Costs  ☐ Punitive/ Exemplary  ☐ Other |

Amount Enclosed $_____     In accordance with Fee Schedule: ☐ Flexible Fee Schedule   ☐ Standard Fee Schedule

**PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:**

Antitrust; Complex Attorney Fee Disputes; Arbitrability Objections

Hearing locale  San Francisco, CA          (check one) ☒ Requested by Respondent     ☐ Locale provision included in the contract

Estimated time needed for hearings overall: _____ hours or _____ days    (premature to estimate)

| Signature (may be signed by a representative) | Date: 03/14/2014 | Name of Representative |
|---|---|---|
| [signature] | | Robert H. Bunzel, Esq. |

| Name of Respondent | Name of Firm (if applicable) |
|---|---|
| Joseph Saveri Law Firm, Inc. and Joseph R. Saveri | Bartko, Zankel, Bunzel & Miller |
| Address (to be used in connection with this case) | Representative's Address: |
| c/o Representative @ One Embarcadero Center, Suite 800 | One Embarcadero Center, Suite 300 |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| San Francisco | CA | 94111 | San Francisco | CA | 94111 |

| Phone No. | Fax No. | Phone No. | Fax No. |
|---|---|---|---|
| (415) 956-1900 | (415) 956-1152 | (415) 956-1900 | (415) 956-1152 |

| Email Address: | Email Address: |
|---|---|
| rbunzel@bzbm.com | rbunzel@bzbm.com |

PLEASE SEND TWO COPIES OF THIS ANSWERING STATEMENT, WITH THE FILING FEE FOR ANY COUNTERCLAIM, AS PROVIDED FOR IN THE RULES, TO THE AAA. SEND THE ORIGINAL ANSWERING STATEMENT TO THE CLAIMANT.

Please visit our website at www.adr.org if you would like to file this counterclaim online.     AAA Customer Service can be reached at 800-778-7879

# ATTACHMENT A

Robert H. Bunzel, State Bar No. 99395
Charles G. Miller, State Bar No. 39272
BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

Attorneys for Respondents
JOSEPH SAVERI LAW FIRM, INC.
and JOSEPH R. SAVERI

# AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| MICHAEL E. CRIDEN, P.A., d/b/a CRIDEN & LOVE, P.A., a Florida corporation, <br><br> Claimant, <br><br> v. <br><br> JOSEPH SAVERI LAW FIRM, INC., a California corporation, and JOSEPH R. SAVERI, an individual, <br><br> Respondents. | Case No. 32 194 Y 00123 14 <br><br> **ATTACHMENT A TO ANSWERING STATEMENT: RESPONDENTS' OBJECTION TO ARBITRATION** |

Respondents Joseph Saveri Law Firm, Inc. ("Law Firm"), a California corporation, and Joseph R. Saveri, a natural person ("Saveri"), timely object to the jurisdiction of the arbitrator and the arbitrability of the February 25, 2014 claim ("Claim") of Michael E. Criden, dba Criden & Love, P.A. ("Criden") on each of the following grounds:

1.    Neither Law Firm nor Saveri is a party to an agreement providing for arbitration of the Claim.

2.    Neither Law Firm nor Saveri is a signatory to the referral "agreement" – an email communication between Criden and another law firm, Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB").

-1-

**SER 020**

3.      Any agreement which the communication might have created is not binding on Law Firm or Saveri and does not provide any direct benefits, create any rights or impose any obligations on Law Firm or Saveri.

4.      The communication—between Criden and LCHB—does not contain any arbitration provision binding Law Firm or Saveri.

5.      Even were there an agreement to arbitrate between Criden and LCHB, Law Firm has no obligations under such agreement.

6.      Law Firm was formed in June 2012, long after the email exchange which Criden claims created an agreement to pay a referral fee.

7.      Even were there an agreement to arbitrate between Criden and LCHB, Saveri has no obligations under such agreement.

8.      Saveri is not individually obligated to arbitrate as a partner or former partner of LCHB, a Limited Liability Partnership.

9.      Neither Law Firm nor Saveri is a signatory to the alleged arbitration agreement -- an email attached to the Claim.  The email exchange on its face describes LCHB as an "LLP", which is a California Limited Liability Partnership.  California Corporations Code § 16306(c) provides:

> **a partner in a registered limited liability partnership is not liable** or accountable, directly or indirectly, including by way of indemnification, contribution, assessment, or otherwise, for debts, **obligations, or liabilities of or chargeable to the partnership** or another partner in the partnership, whether arising in tort, contract, or otherwise, that are incurred, created, or assumed by the partnership while the partnership is a registered limited liability partnership, by reason of being a partner or acting in the conduct of the business or activities of the partnership.

10.     LCHB is a registered LLP.   Unlike general partners, limited liability partners are not responsible for obligations of the partnership.

11.     Saveri withdrew from LCHB by June 2012.   Saveri cannot be compelled to arbitrate a dispute that arose after he withdrew.   A withdrawing partner is not liable for obligations

-2-

incurred by the partnership after he withdraws. Cal. Corp. Code § 16703(a). In this case, the obligation to arbitrate arose when the Claim in arbitration was made -- over one year after Saveri withdrew from LCHB.

12.     Absent an agreement to arbitrate, neither Law Firm nor Saveri can be compelled to arbitrate on other grounds, including, but not limited to the estoppel doctrine. In order to be estopped to deny an obligation to arbitrate, a party must receive direct benefits from the contract in issue. *Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061, 1069-1070. Neither Law Firm nor Saveri *directly* benefited from the referral agreement between Criden and LCHB regarding legal fees paid to Law Firm. Accordingly, neither Law Firm nor Saveri is bound to arbitrate and cannot be compelled to do so.

13.     Since neither Law Firm nor Saveri has agreed to arbitrate, the rules of the American Arbitration Association ("AAA") that permit arbitrators to decide questions of jurisdiction are not applicable. See, *e.g.*, *Roe v. Ladymon*, 318 SW3d 502, 514 (2010).

By this objection, as permitted by AAA Commercial Rules, R-7(c), Saveri does not concede that AAA or the Arbitrator(s) have the authority to rule that Saveri is compelled to arbitrate. Saveri reserves all rights to seek appropriate judicial relief to restrain the parties from pursuing this arbitration or from entering or enforcing an arbitral award, if any.

DATED: March 14, 2014

BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Law Corporation

By: _____
                Robert H. Bunzel
             Attorneys for Respondents
        JOSEPH SAVERI LAW FIRM, INC.
          and JOSEPH R. SAVERI

2400.001/797212.1

ATTACHMENT A TO ANSWERING STATEMENT
Case No. 32 194 Y 00123 14

**SER 022**

# ATTACHMENT B

Robert H. Bunzel, State Bar No. 99395
Charles G. Miller, State Bar No. 39272
BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

Attorneys for Respondents
JOSEPH SAVERI LAW FIRM, INC.
and JOSEPH R. SAVERI

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| MICHAEL E. CRIDEN, P.A., d/b/a CRIDEN & LOVE, P.A., a Florida corporation,<br><br>       Claimant,<br><br>v.<br><br>JOSEPH SAVERI LAW FIRM, INC., a California corporation, and JOSEPH R. SAVERI, an individual,<br><br>       Respondents. | Case No. 32 194 Y 00123 14<br><br>**ATTACHMENT B TO ANSWERING STATEMENT: OBJECTION TO MIAMI, FLORIDA AS ARBITRATION LOCALE** |

Respondents Joseph Saveri Law Firm, Inc. ("Law Firm") and Joseph R. Saveri ("Saveri"), have timely objected to the jurisdiction of the arbitrator and the arbitrability of the February 25, 2014 claim ("Claim") of Michael E. Criden, dba Criden & Love, P.A. ("Criden"). See Attachment A and American Arbitration Association ("AAA") Commercial Rules, R-7(c).

To the extent an arbitration proceeds on the Claim, the arbitration locale should not be in Miami, Florida for the reasons that follow.

### Introduction

This is a claim by a Miami law firm seeking a referral fee from a San Francisco law firm and San Francisco lawyer, neither of whom were ever in contract with claimant, following settlement of a class action antitrust suit regarding a global conspiracy to fix prices for titanium

-1-

ATTACHMENT B TO ANSWERING STATEMENT
Case No. 32 194 Y 00123 14

**SER 024**

dioxide, used in paints and other products (the "TiO2 Action").[1]  The legal work in the TiO2 Action was substantially performed in San Francisco, was the subject of 90 depositions in Canada, England, Italy, 16 U.S. states and the District of Columbia (with only one deposition in Florida). The cases were consolidated for trial and settled in the District of Maryland federal court.

The present Claim concerns work at three San Francisco law firms as co-lead counsel in the TiO2 Action (Statement of Claim p. 10, ¶¶ 32-33), and the relationship of the Law Firm and Saveri to another San Francisco firm, Lieff Cabraser Heimann and Bernstein ("LCHB"), where Saveri previously worked.

Criden does not claim that it entered into an agreement with Law Firm or with Saveri.  Criden only asserts claims against Law Firm and Saveri arising out of the alleged contract between LCHB and Criden for a referral fee.  (*Id.* at ¶¶ 28-31.)  That referral fee has been paid by LCHB.  Criden now wants a referral fee from non-signatories Law Firm and Saveri for work done in the TiO2 Action after Saveri left LCHB and while Saveri and Law Firm were representing another client.

The co-lead counsel work that is the subject of the Claim was largely performed in San Francisco.  Criden and its client had but minor roles in the prosecution of the litigation involved in the TiO2 Action.[2]  In proof or defense of the current AAA Claim, there is virtually no relationship to Miami or Florida, other than the fact Criden and its client in the TiO2 Action may have happened to reside there.

### Applicable Standard for Fixing Arbitration Locale

The arbitration agreement alleged by Criden and attached as Exhibit A to the Statement of Claim calls for arbitration between the signatory law firms—Criden on the one hand, and LCHB on the other—and does not mention a venue nor contain a forum selection clause. Moreover, because there is no writing or agreement between the parties to this arbitration—Criden

---

[1]     *In re Titanium Antitrust Litigation,* No. 10-cv-00318 RDB, USDC Maryland; *see* http://www.tio2antitrustlitigation.com.
[2]     Criden alleges that "referral fees are" its "primary source of income." (Statement of Claim ¶ 5.)

-2-

ATTACHMENT B TO ANSWERING STATEMENT
Case No. 32 194 Y 00123 14

**SER 025**

on one hand and Law Firm and Saveri on the other—there is no agreement regarding venue or forum selection between the parties.

In its February 15, 2014 Demand for Arbitration form, Criden seeks to designate "Miami, FL" as "Hearing locale." Law Firm and Saveri object to arbitration jurisdiction and to selection of Miami as the arbitral location. San Francisco, California, is the far more appropriate venue if there is to be an arbitration.

"When the parties' arbitration agreement is silent with respect to locale, and if the parties disagree as to the locale, the AAA may initially determine the place of arbitration, subject to the power of the arbitrator after appointment, to make a final appointment on the locale." AAA Commercial Rules, R-7(a); *accord, Reed & Martin, Inc. v. Westinghouse Elec. Corp.*, 439 F.2d 1268, 1273-4 (2d.Cir. 1971). Arbitral venue determinations are generally made by the institution's administrative staff or someone designated by the institution to determine the issue. *Id*; Alternative Dispute Resolution, The Rutter Group (2013) ¶ 5:384.9, p. 5-252. Factors considered in fixing locale for a disputed arbitration venue are:

> ...criteria such as location of the parties, witnesses, counsel and documents, and convenience of the parties.

*Id.* Here, the majority of witnesses and documents are in California. There is very little association with Florida. The vast weight of convenience and efficient use of resources favors arbitration, if there is to be one, venued in San Francisco. Alternatively, Baltimore, Maryland, is the locus of the underlying legal filings, where settlement approval of legal fees for the TiO2 Action occurred and where other potential witnesses are officed or are located.

### Relevant Witnesses and Documents

Here, the parties and their counsel are in different states. Forum *non conveniens* decisions often look to third party convenience when determining proper venue. "In balancing the convenience of the witnesses, primary consideration is given to third part[ies], as opposed to employee witnesses." *Kannar v. Alticor, Inc.*, No. 08–5505, 2009 WL 975426 (N.D.Cal. Apr. 9, 2009); *Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc.*, 42 F.Supp.2d 821, 834

-3-

ATTACHMENT B TO ANSWERING STATEMENT
Case No. 32 194 Y 00123 14

**SER 026**

(N.D.Ill.1999).   All third party witnesses are outside Florida.  Many, if not most, are in San Francisco.

### a.   The TiO2 Action Did Not Concern Florida

The TiO2 Action concerned multiple cases filed in the United States District Court for the District of Maryland, presided over by Judge Richard Bennett.  The plaintiffs were Haley Paint ("Haley") , Isaac Industries ("Isaac") (referred by Criden to LCHB) and Breen Color Concentrates ("Breen").  Haley is in Lancaster, Pennsylvania, and Breen is in Lambertville, New Jersey.  Only Isaac is in Florida.

Haley filed the complaint initiating the  TiO2 Action on February 9, 2010. (Dkt. 1, TiO2 Action).  Isaac, represented by LCHB, filed its TiO2 complaint on February 12, 2010, and a Consolidated Complaint was filed by Haley and Isaac on April 12, 2010.  (Dkt. 51.)  On July 13, 2011, almost a year before Law Firm was in existence or Saveri left LCHB, Breen (represented by separate counsel) moved to intervene in the TiO2 Action (Dkt. 164), and intervention was granted on July 29, 2011.  (Dkt. 180.)

Saveri was one of the lawyers representing Isaac at LHCB.  Saveri withdrew as a partner of LCHB by June 2012, and began to practice at Law Firm shortly thereafter.  Law Firm and Saveri  entered an appearance in the TiO2 Action on behalf of Breen, an existing and separately represented party to the TiO2 Action, on June 1, 2012. (Dkt. 294.)  LCHB continued to prosecute the case on behalf of Isaac after Saveri's withdrawal from LCHB.

Defendants in the TiO2 Action were E. I. duPont de Nemours and Company ("DuPont"), Cristal USA, Inc. ("Cristal USA"); Kronos Worldwide, Inc. ("Kronos"), and Huntsman International LLC ("Huntsman").  DuPont is headquartered in Wilmington, Delaware. Cristal USA's locus of operations is in Hunts Valley, Maryland, with its global headquarters in Jeddah, Saudi Arabia. Kronos is headquartered in Dallas, Texas.  Huntsman is headquartered in Salt Lake City, Utah, and The Woodlands, Texas.  No Defendant had a business operation in Florida.

-4-

ATTACHMENT B TO ANSWERING STATEMENT
Case No. 32 194 Y 00123 14

**SER 027**

The TiO2 Action settled in Summer and Fall of 2013 for $163.5 million.  Attorney's fees of $54.5 million in fees and costs of $4,569,271.86 were awarded and have been allocated and paid to multiple plaintiff law firms.  Only one such firm, Criden, is in Florida.

In its Claim, Criden alleges that the legal work done by Law Firm and Saveri in the TiO2 action after he left LCHB would or should have been done by LCHB which had a contract with Criden.  (Statement of Claim, ¶¶ 34-35.)  While implausible and speculative, this allegation raises facts relevant to prosecution and defense of the Claim and thus concern the parties, lawyers and work performed in the case.

No meetings, emails or telephone calls regarding the conspiracy alleged in the TiO2 Action occurred in or emanated from Florida.  Rather, those meetings and conspiratorial conduct took place at the defendants' headquarters in diverse other states and at meetings of trade associations and other contacts in cities throughout Europe.  None were alleged to have occurred in Florida.  The only contact with Florida at issue in the TiO2 Action were limited purchases of TiO2 by Isaac.

The litigation had no nexus to Florida.  Discovery took place all over the world.  Ninety depositions were taken in Canada, England, Italy, 16 separate U.S. states and the District of Columbia (with only one deposition, Isaac, in Florida).  Attached hereto as Exh. 1 are pages 37-40 from Dkt. 545-3, filed October 18, 2013 in the TiO2 action, describing by date and situs the many depositions in the case.  Only one was in Florida (Isaac).

**b.  Relevant Lawyer Witnesses in the TiO2 Action Are Not in Florida.**

Plaintiffs' lawyers in the TiO2 Action are located in San Francisco, Baltimore, Minneapolis, Philadelphia, and New York City.  Other than Criden, none of the lawyers with information relevant to the present Claim are in Florida.

Lead Counsel, who are the most knowledgeable, were Gold Bennett Cera & Sidener, LLP, LCHB, and the Joseph Saveri Law Firm, Inc.  Criden alleges at ¶¶ 33 and 34 of the Statement of Claim that calculation of fees paid to the three lead counsel firms is central to its

-5-

ATTACHMENT B TO ANSWERING STATEMENT
Case No. 32 194 Y 00123 14

**SER 028**

Claim. All would be witnesses were this matter arbitrated, and all are in San Francisco as are all of the individual lawyers in the lead counsel firms.[3]

Likewise, defense lawyers in the TiO2 action with potentially relevant knowledge are outside Florida: DuPont was represented by Crowell & Moring out of its Washington, DC, office, Cravath, Swaine & Moore out of its New York City office, and local counsel in Baltimore; Cristal USA was represented by Arnold & Porter out of its Washington DC office, and James Ulwick of Baltimore, Maryland. Kronos was represented by Locke Lord of Dallas, Texas; Huntsman was represented by Ray Quinney of Salt Lake City, Utah, and Vinson & Elkins of Houston, Texas.

All court proceedings were in Baltimore. No third party discovery or other proceedings took place in Florida. (The only work in Florida was that done by Criden associated with the agreement and the preparation of Isaac for deposition and document review.) The chart below shows where potential lawyer witnesses reside -- almost entirely outside Florida -- and is substantially San Francisco-centric:

| Name | Location | Affiliation | Located in Florida |
|------|----------|-------------|--------------------|
| Joseph Saveri | San Francisco | Lieff, Cabraser, Heimann & Bernstein LLP ("LCHB"); Joseph Saveri Law Firm, Inc. ("JSLF") | No |
| Lisa Leebove | San Francisco | JSLF | No |
| Kevin Rayhill | San Francisco | JSLF | No |
| Ryan McEwan | San Francisco | JSLF | No |
| Douglas Clevenger | San Francisco | JSLF | No |
| Eric Fastiff | San Francisco | LCHB | No |

---

[3]     Plaintiffs' Liaison Counsel was Shapiro Sher Guinot & Sandler, LLP, of Baltimore, MD; the Plaintiff Executive Committee was Berger & Montague of Philadelphia, PA, and Grant & Eisenhoffer of New York, NY.

2400.001/797214.1

ATTACHMENT B TO ANSWERING STATEMENT
Case No. 32 194 Y 00123 14

**SER 029**

| Name | Location | Affiliation | Located in Florida |
|------|----------|-------------|--------------------|
|  | Francisco |  |  |
| Daniel Hutchinson | San Francisco | LCHB | No |
| Eduardo Santancana | San Francisco | LCHB | No |
| Brendan Glackin | San Francisco | LCHB | No |
| Solomon Cera | San Francisco | Gold, Bennett, Cera & Sidener, LLP ("GBSS") | No |
| Andrew Dirksen | San Francisco | GBSS | No |
| Paul Sandler | Baltimore | Shapiro Sher Guinot & Sandler ("SSGS") | No |
| Robert Levin | Baltimore | SSGS | No |
| Linda Nussbaum | New York City | Kaplan Fox; Grant & Eisenhofer | No |
| Robert Kaplan | New York City | Kaplan Fox | No |
|  | Washington, DC | Crowell & Moring | No |
|  | New York City | Cravath, Swaine & Moore | No |
|  | Washington, DC | Arnold & Porter | No |
|  | Dallas, TX | Locke Lorde | No |
|  | Salt Lake City, UT | Ray Quinney | No |
|  | Houston, TX | Vinson & Elkins | No |
| Michael Criden | South Miami, FL | Criden & Love, P.A. | Yes |
| Kevin Love | South Miami, FL | Criden & Love, P.A. | Yes |

### c.   No Florida Contacts Concerning Law Firm Client Breen

Criden in its Claim seeks to recover from Law Firm 12.5% of the legal fees
allocated to Law Firm while it was representing Breen and after Saveri left LCHB. (Statement of
Claim, ¶ 28.) Breen is in Lambertville, New Jersey. It was represented by counsel from
Minneapolis when it intervened in the TiO2 Action in 2011. Criden did not represent Breen.
Relevant facts regarding Saveri's representation of Breen, which is a key subject of the Claim,
have no relationship to Florida whatsoever.

-7-

ATTACHMENT B TO ANSWERING STATEMENT
Case No. 32 194 Y 00123 14

**SER 030**

### d.  Application of California Law to the Claim

The alleged referral fee agreement (Statement of Claim, Exh. A) was made, if at all, by Eric Fastiff, who is located in California, when he responded to Criden.  There were no meetings or discussions of the referral agreement in Florida at the time made, and no correspondence other than the email of which Saveri is aware.

The referral agreement concerns the legal work of licensed California attorneys, who are subject to the California Rules of Professional Conduct, which differ from the ABA Model Rules of other states.  The legal work was substantially done in California.  The arbitration clause is silent regarding choice of law, and, in such instance, the law of the state with the greatest interest in application of its law should govern.  *See*, Restatement Conflict of Laws 2d, § 188 [consider which state has "the most significant relationship to the transaction"].  Here, California has the greatest connection and interest in application of its laws including as to the sharing of fees earned by attorneys licensed in the state.   California arbitrators should be required.

### Conclusion

For the above reasons, if the Claim is arbitrable, arbitrator selection should be without reference to any geographical nexus to Florida.  Any arbitrator should be conversant in antitrust, complex fee disputes and the enforceability of referral fee agreements under California law. [4]

DATED:  March 14, 2014

> BARTKO, ZANKEL, BUNZEL & MILLER
> A Professional Law Corporation
>
> By: _____
> Robert H. Bunzel
> Attorneys for Respondents
> JOSEPH SAVERI LAW FIRM, INC.
> and JOSEPH R. SAVERI

---

[4]   Objection to Miami as a venue and preference of San Francisco is made without prejudice to the rights of Law Firm and Saveri to contest arbitration jurisdiction and arbitrability of the Claim.

<div align="center">-8-</div>

# EXHIBIT 1

SER 032

The motions requested judicial assistance from authorities in Canada, the United Kingdom and

Italy in an effort to obtain testimony from these four Huntsman former employees. On August 3,

2012, the Court granted Plaintiffs' Motions for Issuance of Letters Rogatory to assist Plaintiffs'

effort to obtain testimony from these four Huntsman former employees, who were located in

British Columbia (ECF No. 317), the United Kingdom (ECF Nos. 318, 319), and Italy (ECF No.

320). Although Plaintiffs were required to retain (or at least confer with) counsel in these

countries in the meantime, recourse to the courts of these countries largely proved to be

unnecessary, because the witnesses eventually were represented by Huntsman's counsel and

agreed to be deposed pursuant to the Federal Rules in their respective home countries in the three

months following the formal close of merits discovery on September 1, 2012. (*See* the table

below summarizing depositions.)

### 4.   Depositions

74.     Plaintiffs conducted or participated in depositions of over ninety (90) individuals

over the course of nearly one hundred (100) days. Depositions were conducted in Maryland,

Pennsylvania, California, Texas, Florida, Nevada, Illinois, New York, New Jersey, Ohio,

Kentucky, Oklahoma, and other states.  For example, Plaintiffs' Counsel conducted (20)

depositions of DuPont's current and former employees, seventeen (17) depositions of both

Millennium's and Huntsman's current and former employees, and fourteen (14) depositions of

Kronos's current and former employees. Plaintiffs also conducted or participated in more than

one dozen depositions of experts in this case, as well as Defendants' six (6) depositions of the

Plaintiffs' current and former employees, and several depositions of non-parties.

75.     The depositions taken in this case are summarized in the following table:

| DATE | NAME | ENTITY | LOCATION |
|---|---|---|---|
| 03/27/2012 | Haley, Robert | Haley Paint | Philadelphia, PA |

**SER 033**

| DATE | NAME | ENTITY | LOCATION |
|---|---|---|---|
| 04/12/2012 | Giandonato, Joe | Haley Paint (f)[4] | Philadelphia, PA |
| 04/13/2012 | McManus, Dan | Haley Paint (f) | Philadelphia, PA |
| 04/19/2012 | Werts, Bill | Haley Paint (f) | Philadelphia, PA |
| 04/20/2012 | Lamb, Russell | Plaintiffs' Expert | Philadelphia, PA |
| 04/24/2012 | Avan, David | Isaac Industries, Inc. | South Miami, FL |
| 04/24/2012 | Phillips, Curtis | Kronos | Dallas, TX |
| 04/25/2012 | Rogers, Lawrence | Kronos | Dallas, TX |
| 04/30/2012 | Lux, Darryl | Kronos (f) | Atlanta, GA |
| 05/03/2012 | Legnetti, Paul | Breen Color | Flemington, NJ |
| 05/16/2012 | Clover, Jim | Millennium | Baltimore, MD |
| 05/17/2012 | Kuhnen, Rob | Huntsman (f) | Houston, TX |
| 05/18/2012 | Snell, Eugene Bryan | DuPont | Washington, D.C. |
| 05/22/2012 | Bassett, Jerry | Millennium | Baltimore, MD |
| 05/22/2012 | Herrmann, Doug | Millennium | Baltimore, MD |
| 05/23/2012 | Daney, Colette | DuPont | Washington, D.C. |
| 05/23/2012 | Sanzalone, David | Kronos | Dallas, TX |
| 05/24/2012 | Card, Michael | Millennium (f) | Chicago, IL |
| 05/30/2012 | Lopez, Ann | DuPont | Washington, D.C. |
| 05/31/2012 | Alexander, Samuel | Millennium (f) | Birmingham, AL |
| 05/31/2012 | Taylor, Stewart | Huntsman (f) | Houston, TX |
| 06/07/2012 | Lambert, Chris | Huntsman (f) | Houston, TX |
| 06/12/2012 | Corona, Ben | Kronos | Dallas, TX |
| 06/13/2012 | Andrushko, Wendy | DuPont | Toronto, Ontario Canada |
| 06/13/2012 | Zwicker, Bruce | Millennium (f) | Baltimore, MD |
| 06/15/2012 | Vercollone, David | Millennium (f) | Boston, MA |
| 06/19/2012 | Gillette, Richard | Millennium | Baltimore, MD |
| 06/21-22/2012 | Cianfichi, Gary | Millennium (f) | Baltimore, MD |
| 06/26/2012 | O'Sullivan, Peter | DuPont | Washington, D.C. |
| 06/26/2012 | Valente, Agostino | Kronos | Cranbury, NJ |
| 06/27/2012 | Dixon, Michael | Huntsman | New York, NY |
| 06/28/2012 | Maiter, Mahomed | Huntsman | New York, NY |
| 06/29/2012 | Burtis, Michelle | Defendants' Expert | Washington, D.C. |
| 07/03/2012 | Edwards, Ian | DuPont (f) | London, England UK |
| 07/10/2012 | Severance, Sam | DuPont (f) | Wilmington, DE |
| 07/10/2012 | Wigdor, Larry | Kronos (f) | Dallas, TX |
| 07/11/2012 | Rowe, Richard | Millennium | Baltimore, MD |
| 07/12/2012 | Imes, John | DuPont (f) | Columbus, OH |
| 07/12/2012 | Underhill, Wayne | Kronos (f) | Dallas, TX |

[4] "(f)" means that the witness was a former employee of the identified party or non-party at the time of their deposition.

SER 034

Case 1:10-cv-00318-RDB   Document 545-3   Filed 10/18/13   Page 42 of 69

| DATE | NAME | ENTITY | LOCATION |
|------|------|--------|----------|
| 07/13/2012 | Stoll, Mark | Millennium | Baltimore, MD |
| 07/17/2012 | DeJong, Bart | Millennium (f) | Reno, NV |
| 07/17/2012 | Keefer, Jeffrey | DuPont (f) | Washington, D.C. |
| 07/17-18/2012 | Fisher, Jim | IBMA | Savannah, GA |
| 07/18/2012 | Heyes, Stuart | Huntsman (f) | Houston, TX |
| 07/19/2012 | Hubbard, Connie | DuPont | Washington, D.C. |
| 07/24/2012 | Hall, John | Millennium | Baltimore, MD |
| 07/24/2012 | Weaver, Douglas | Kronos | Dallas, TX |
| 07/27/2012 | Maas, Joseph | Kronos | Dallas, TX |
| 07/27/2012 | Quinn, Mike | Huntsman | Houston, TX |
| 07/30/2012 | Narkin, John | Bolognese & Associates (f) | Baltimore, MD |
| 07/31/2012 | Cronshaw, Paul | DuPont (f) | Washington, D.C. |
| 08/01/2012 | Portsmouth, Robert | Huntsman | New York, NY |
| 08/02/2012 | Cerny, Thomas | Kronos | Dallas, TX |
| 08/03/2012 | Woodward, Peter | Kerr-McGee (f) | Oklahoma City, OK |
| 08/06/2012 | Lamb, Russell | Plaintiffs' Expert | Washington, D.C. |
| 08/07/2012 | Verrett, Chad | Millennium | Chicago, IL |
| 08/07/2012 | Olson, Richard | DuPont | Washington, D.C. |
| 08/07/2012 | Shurak, Norm | DuPont (f) | Wilmington, DE |
| 08/08/2012 | Keenan, Tom | Huntsman (f) | Houston, TX |
| 08/10/2012 | Gravel, Jean-Pierre | Kronos | Dallas, TX |
| 08/10/2012 | Perillo, Dorothy | DuPont | Washington, D.C. |
| 08/10/2012 | Spenla, William | DuPont | Washington, D.C. |
| 08/13/2012 | Shankar, Subramaniam | DuPont | Singapore (via telephone) |
| 08/14/2012 | Turner, Simon | Huntsman | New York, NY |
| 08/15/2012 | Parks, Greg | Millennium | Baltimore, MD |
| 08/16/2012 | Goodwin, Ian | Huntsman | New York, NY |
| 08/16/2012 | Hofmann, Michael | DuPont | Singapore (via telephone) |
| 08/20/2012 | Watson, Steve | Kronos | Dallas, TX |
| 08/21/2012 | Gallagher, John | DuPont | New York, NY |
| 08/21/2012 | Williamson, Augustus | Millennium (f) | Baltimore, MD |
| 08/24/2012 | Murrer, David | Millennium | Louisville, KY |
| 08/29/2012 | Rebollar, Luis | DuPont | London, England UK |
| 08/30/2012 | Fisher, Jim | IBMA | Hilton Head Island, SC |
| 08/31/2012 | Beneito, Miguel | DuPont | London, England UK |
| 09/03/2012 | Basson, Henry | Kronos (f) | London, England UK |
| 09/06/2012 | Bradley, Paul | Huntsman | Newcastle upon Tyne, England UK |
| 09/07/2012 | Corvesor, John | Huntsman | Newcastle upon Tyne, |

39

SER 035

| DATE | NAME | ENTITY | LOCATION |
|---|---|---|---|
|  |  |  | England UK |
| 09/12/2012 | Mitsch, Frank | Wells Fargo | New York, NY |
| 10/03/2012 | Kerr, Dan | Guild CPO | Cleveland, OH |
| 10/10/2012 | Romano, John | Tronox | Oklahoma City, OK |
| 10/18/2012 | Arenson, Greg | Kaplan Fox | New York, NY |
| 10/18/2012 | Gibney, Robert | Tronox (f) | New York, NY |
| 11/05/2012 | Hamilton, Bruce | Plaintiffs' Expert | Baltimore, MD |
| 11/06/2012 | Cutrone, Luigi | Huntsman (f) | Milan, Italy |
| 11/09/2012 | Dean, Jonathan | Huntsman (f) | Newcastle upon Tyne, England UK |
| 11/09/2012 | Lamb, Russell | Plaintiffs' Expert | Washington, D.C. |
| 11/12/2012 | Gray, Kimberly | Plaintiffs' Expert | Chicago, IL |
| 11/13/2012 | Louw, Rob | Huntsman (f) | Newcastle upon Tyne, England UK |
| 11/27/2012 | Coombs, Douglas | Huntsman (f) | Vancouver, British Columbia Canada |
| 01/11/2013 | Detiveaux, Scott | Defendants' Expert | New York, NY |
| 01/22/2013 | Rubinfeld, Daniel | Defendants' Expert | San Francisco, CA |
| 02/07-08/2013 | Willig, Robert | Defendants' Expert | New York, NY |
| 02/13/2013 | Murphy, Kevin | Defendants' Expert | Chicago, IL |
| 03/01/2013 | Hamilton, Bruce | Plaintiffs' Expert | Baltimore, MD |
| 03/05/2013 | Lamb, Russell | Plaintiffs' Expert | Philadelphia, PA |
| 03/19/2013 | Priest, George | Plaintiffs' Expert | New York, NY |
| 09/05/2013 | Rubinfeld, Daniel | Defendants' Expert | New York, NY |

76.     Most of these depositions involved individuals whom Plaintiffs believed had

information relevant to proving the price-fixing claim in this case. A substantial amount of time

was required by Plaintiffs' Counsel at depositions simply to get witnesses to authenticate records

that they had authored or received, and to confirm and corroborate facts that were explicitly

detailed in those records, including facts helpful to establishing economic indicia of cartelization

and collusion, and to proving Defendants' alleged agreement on TiO2 price increases. Many of

these records were critically important in opposing Defendants' *Daubert* Motions and Motions

for Summary Judgment and, indeed, some of these records were cited by the Court in denying

Defendants' Motions for Summary Judgment.

40

**SER 036**

# EXHIBIT 5

SER 037



**American Arbitration Association**
*Dispute Resolution Services Worldwide*

Rebecca Storrow, Vice President
RebeccaStorrow@adr.org

April 2, 2014

American Arbitration Association
100 SE 2nd St., Ste. 2300
Miami, FL 33131
Ph: 305-358-7777
Fx: 305-358-4931
internet: http://www.adr.org/

Curtis J. Mase, Esq.
Mase Lara Eversole, PA
2601 South Bayshore Drive
Suite 800
Miami, FL  33133

Robert H. Bunzel
Bartko, Zankel, Bunzel & Miller
1 Embarcadero Center
Suite 800
San Francisco, CA  94111

Re: 32 194 Y 00123 14
    Michael E. Criden, P.A.,
    d/b/a Criden & Love, P.A.,
    a Florida corporation
    and
    Joseph Saveri Law Firm,
    a California corporation,
    and Joseph R. Saveri, an individual

Dear Parties:

Respondent's objection to the locale requested by Claimant and any response received was
considered by the AAA's Administrative Review Council ("Council") on April 1, 2014.

The AAA's Rules provide the AAA the authority to determine the locale for the hearing subject
to the power of the arbitrator to finally determine the locale.  Based upon the Council's Review
Standards available at www.adr.org/arc that the parties were previously referred to, the Council
has determined that the locale for this matter will be Miami, FL, subject to the power of the
arbitrator to finally determine the locale.

The next step for this case is selection of arbitrators and a list will be sent to parties shortly.

As a reminder, cases may be viewed and managed online through AAA's WebFile.

Please do not hesitate to contact the undersigned should you have any questions.


Sincerely,

Rebecca Storrow                          Maria Rivero
Vice President                           Director of ADR Services
305 358 7777                             305 358 7777
RebeccaStorrow@adr.org                   RiveroM@adr.org

**SER 038**

# EXHIBIT 6

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

Re: 32 194 Y 00123 14
    Michael E. Criden, P.A.,
    d/b/a Criden & Love, P.A.,
    a Florida corporation
    and
    Joseph Saveri Law Firm,
    a California corporation,
    and Joseph R. Saveri, an individual

DATE LIST SUBMITTED: April 4, 2014
VIC PRESIDENT: Rebecca Storrow

## LIST FOR SELECTION OF ARBITRATOR
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Once you have made your strikes please indicate your order of preference by number. We will make every effort to appoint the mutually acceptable arbitrator who can hear your case promptly, please leave as many names open as possible. Biographical information about the arbitrators listed below is attached. **If your list is not received by the Association on or before April 18, 2014, all names submitted shall be deemed acceptable.** If appointment cannot be made from this list, the Association may appoint without the submission of an additional list, in accordance with the rules. The parties are to exchange copies of all correspondence except the checklist for conflicts and this arbitrator selection list. For your convenience, this form may be completed online through AAA's WebFile.

<div align="center">

John Arrastia
W. Barry Blum
Edith N. Dinneen
Joel Levine
Joseph M. Matthews
Robert A. Merring
Edward M. Mullins
Hon. Charles B. Renfrew
Deborah C. Saxe
Geoffrey B. Schwartz

</div>

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Arbitrators are compensated at the rate stated on their biographical data. The compensation is an independent obligation of the parties and it is understood that the American Arbitration Association has no liability, direct or indirect, for such payments. Each party shall promptly make such deposits with the AAA as required by the case manager, pursuant to the Rules, subject to final apportionment by the arbitrator in the award.

Party: _____

By: _____  Title: _____

**SER 040**

1   Robert H. Bunzel, State Bar No. 99395
    Charles G. Miller, State Bar No. 39272
2   BARTKO, ZANKEL, BUNZEL & MILLER
    A Professional Law Corporation
3   One Embarcadero Center, Suite 800
    San Francisco, California  94111
4   Telephone:     (415) 956-1900
    Facsimile:     (415) 956-1152
5
    Attorneys for Plaintiffs
6   JOSEPH SAVERI LAW FIRM, INC.
    and JOSEPH R. SAVERI
7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12   JOSEPH SAVERI LAW FIRM, INC., a          )   No. 3:14-cv-1740 EDL
     California corporation, and JOSEPH R.    )
13   SAVERI,                                  )   **PLAINTIFFS' MOTION FOR**
                                              )   **PRELIMINARY INJUNCTION;**
14              Plaintiffs,                    )   **MEMORANDUM OF POINTS AND**
                                              )   **AUTHORITIES IN SUPPORT**
15        v.                                   )
                                              )   Date:      May 27, 2014
16   MICHAEL E. CRIDEN, P.A. dba CRIDEN &     )   Time:      9:00 a.m.
     LOVE, P.A., a Florida corporation,       )   Courtroom: E, 15th Floor
17                                            )   Judge:     Elizabeth D. Laporte
                Defendant.                     )              Chief Magistrate Judge
18   _____ )

19

20

21

22

23

24

25

26

27

28

**SER 041**

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 27, 2014 at 9:00 a.m. in Courtroom E of this Court located at 450 Golden Gate Avenue, 15th Floor, San Francisco, California, plaintiffs Joseph Saveri Law Firm, Inc. and Joseph R. Saveri (individually referred to herein as "Saveri" and collectively referred to herein as "plaintiffs") will and hereby move for a preliminary injunction enjoining defendant from proceeding with arbitration proceeding number 32-194-Y-00123-14 pending in Miami, Florida before the American Arbitration Association ("AAA").  This motion is based on the grounds that the AAA has no jurisdiction over plaintiffs in that plaintiffs did not execute any agreement to arbitrate a dispute with defendant Michael E. Criden, P.A. dba Criden & Love, P.A. ("Criden"), that no agreement to arbitrate any dispute with Criden was entered into by or on behalf of plaintiffs, nor were plaintiffs directly benefitted by any other firm's agreement to arbitrate.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Joseph R. Saveri and exhibits attached thereto, the pleadings and records on file herein, the argument of counsel, and any other material presented at the hearing of this matter.

DATED:  April 16, 2014

> BARTKO, ZANKEL, BUNZEL & MILLER
> A Professional Law Corporation
>
>
> By: ____/s/ Robert H. Bunzel____
> Robert H. Bunzel
> Attorneys for Plaintiffs
> JOSEPH SAVERI LAW FIRM, INC. and
> JOSEPH R. SAVERI

BARTKO ZANKEL BUNZEL
BARTKO·ZANKEL·BUNZEL·MILLER
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

-1-

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................1

II. FACTUAL BACKGROUND ..................................................................3

III. PLAINTIFFS SATISFY THE APPLICABLE LEGAL STANDARDS ........................................................................................5

    A. The Question of Arbitrability Is for the Court to Decide .......................5

    B. Plaintiffs Have Established the Requisite Elements for Issuance of a Preliminary Injunction .........................................6

        1. Plaintiffs Are Likely to Succeed on the Merits...........................7

            a. Plaintiffs Are Not Signatories to the Email or Otherwise Bound by It....................................................7

            b. Plaintiffs Are Not Estopped From Denying an Obligation to Arbitrate ...........................................9

        2. Plaintiffs Will Suffer Irreparable Harm If Criden Is Not Preliminarily Enjoined From Proceeding With the Miami Arbitration ...........................................................11

        3. The Balance of Hardships Tips Sharply in Favor of Plaintiffs.......................................................................................12

        4. The Public Interest Favors Granting the Injunction...................12

IV. CONCLUSION.....................................................................................12

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL WALES
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-i-

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION; MPA
Case No. 3:14-cv-1740 EDL

**SER 043**

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Bureau Shipping v. Tencara Shipyard S.P.A.*
170 F.3d 349 (2d Cir. 1999) ..................................................................9

*AT&T Mobility LLC v. Bernardi*
2011 WL 5079549 (N.D. Cal. Oct. 26, 2011, Breyer, J.)............................2, 6, 11, 12

*AT&T Technologies, Inc. v. Communications Workers of Am.*
475 U.S. 643 (1986)..........................................................................6, 12

*Comer v. Micor, Inc.*
436 F.3d 1098 (9th Cir. 2008) ...........................................................7, 9

*Crowley Maritime Corp. v. Boston Old Colony Ins. Co.*
158 Cal.App.4th 1061 (2008) ............................................................7, 10

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*
269 F.3d 187 (3d Cir.2001) ...............................................................9

*Elgohary v. Herrera*
405 S.W.3d 785 (Tex. Ct. App. 2013)...................................................6

*Herbert J. Sims & Co., Inc. v. Roven*
548 F.Supp.2d 759 (N.D. Cal. 2008, Jenkins, J.) ....................................2

*Howsam v. Dean Witter Reynolds, Inc.*
537 U.S. 79 (2002)............................................................................5

*Keller Construction Co. v. Kashani*
220 Cal.App.3d 222 (1990) ...............................................................8

*MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*
268 F.3d 58 (2d Cir. 2001) ...............................................................10

*Maryland Cas. Co. v. Realty Advisory Bd. on Labor Rels.*
107 F.3d 979 (2d Cir. 1977) ..............................................................2

*NORCAL Mutual Ins. Co. v. Newton*
84 Cal.App.4th 64 (2000) ................................................................10

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*
64 F.3d 773 (2d Cir.1995) .............................................................9, 10, 11

*In re Titanium Antitrust Litigation*
No. 10-cv-00318 RDB ......................................................................3

-ii-

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

*Volt Info. Sciences v. Board of Trustees of Leland Stanford Jr. Univ.*
    489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).................................................7

*Wachovia Secs. LLC v. Raifman*
    2010 WL 4502360 (N.D. Cal. Nov. 1 2010, Armstrong, J.) ...............................2, 6, 12

*Winter v. Natural Res. Def. Council, Inc.*
    555 U.S. 7 (2008)...........................................................................................................6

*Zurich American Ins. Co. v. Watts Industries, Inc.*
    417 F.3d 682 (7th Cir. 2005) .........................................................................................9

**Statutes**

9 United States Code
    § 1, *et seq.*....................................................................................................................7
    § 4 ...................................................................................................................................9

15 United States Code
    § 1 ...................................................................................................................................3

California Civil Code
    § 1559 .............................................................................................................................2

California Code of Civil Procedure
    § 1281.2 ..........................................................................................................................9

California Corporations Code
    § 16306(c)....................................................................................................................2, 8
    § 16703(a)....................................................................................................................2, 8

**Other Authorities**

American Arbitration Association Commercial Rules
    Rule 7(a) .........................................................................................................................6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-iii-

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.       **INTRODUCTION**

The *relief* sought by this motion is straightforward: plaintiffs, non-signatories to an asserted arbitration agreement, entered into by the defendant and another firm, seek this Court's order enjoining the defendant from compelling plaintiffs to arbitrate a dispute.  The central *issue* raised in the Complaint is also straightforward:   can a non-signatory law firm and its principal attorney, who is a former limited liability partner of a firm that made an asserted arbitration agreement, be compelled to arbitrate a dispute regarding work subsequently performed by another law firm after the lawyer left the former firm?  No.

Defendant law firm Criden & Love, P.A. ("Criden") demands that plaintiffs Joseph Saveri Law Firm, Inc. and Joseph R. Saveri ("plaintiffs") arbitrate before the AAA Criden's interest in legal fees earned by plaintiffs for work performed *after* plaintiff Joseph R. Saveri left his former firm Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser").

The sole basis for the demand to arbitrate is an email between Lieff Cabraser and Criden (the "Email").  Criden asserts that, by the email, *Lieff Cabraser* purportedly agreed to pay *Criden* a 12.5% fee for referring an antitrust client to *Lieff Cabraser*, and that "all disputes related to or arising from this referral agreement shall be resolved by arbitration conducted by the American Arbitration Association ("AAA"). Criden has been paid the referral fee by Lieff Cabraser.  The email does not refer to or mention plaintiffs in any fashion.  Criden now demands arbitration with plaintiffs in Miami, Florida, where Criden practices law, to enforce the 12.5% referral fee against plaintiffs for work *subsequently* done in the same case.  All of that subsequent work was performed *after* Joseph R. Saveri had left Lieff Cabraser and had appeared on behalf of another client.

An injunction restraining Criden from arbitrating with plaintiffs is proper because:

- •       Plaintiffs were not parties to or signatories to the Email.  Plaintiff Joseph R. Saveri was a partner in Lieff Cabraser at the time of the Email, but later withdrew as a partner of that firm.  Lieff Cabraser is and was a limited liability partnership ("LLP"), and under the California

-1-

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION: MPA
Case No. 3:14-cv-1740-EDL

**SER 046**

BARTKO ZANKEL BUNZEL

A LAW CORPORATION

One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   Limited Liability Partnership law (Cal. Corp. Code § 16306(c)), an LLP partner is *not* liable for

2   the obligations of the partnership.

3           •      Joseph R. Saveri is not liable for obligations incurred by the partnership after he

4   withdrew.  Cal. Corp. Code § 16703(a).  Mr. Saveri left Lieff Cabraser before June 1, 2012.

5   Criden seeks from plaintiffs a piece of the fees paid to Joseph Saveri Law Firm solely for work

6   performed by Joseph Saveri Law Firm after Mr. Saveri withdrew.  The present dispute arose only

7   after arbitration was demanded more than 18 months after he left Lieff Cabraser.

8           •      Plaintiffs are not third party beneficiaries of the Email, which was not "made

9   expressly for the benefit" of plaintiffs.  Cal. Civ. Code § 1559.  While the Email may have been

10  expressly intended to benefit Lieff Cabraser, no benefit *to plaintiffs* is expressed anywhere in the

11  Email in any form or manner.

12          •      Plaintiffs are not estopped to deny an obligation to arbitrate, because they did not

13  receive any *direct* benefit under the Email.  Any attorney's fees received by plaintiffs in the

14  antitrust action were for work performed exclusively by Joseph Saveri Law Firm after Joseph R.

15  Saveri left Lieff Cabraser and on behalf of a client not procured by Criden or Lieff Cabraser.

16          Plaintiffs seek a Preliminary Injunction restraining and enjoining Criden from

17  proceeding with the AAA arbitration.  Plaintiffs satisfy each requirement for this injunctive relief.

18          First, plaintiffs' claims enjoy a high likelihood of success on the merits as Criden

19  can demonstrate no right to arbitrate against plaintiffs.

20          Second, there is immediate and irreparable harm to plaintiffs in the absence of the

21  requested injunctive relief.  It is well established in the Ninth Circuit that a party suffers immediate

22  and irreparable harm—as a matter of law—when  forced to arbitrate claims that are not arbitrable.[1]

23  Here, the AAA proceeding will commence very shortly, if not enjoined, and there is no attorney's

24  fees provision in the Email.

25  _____

26  [1]    *AT&T Mobility LLC v. Bernardi*, 2011 WL 5079549, (N.D. Cal. Oct. 26, 2011, Breyer, J.);
    *Wachovia Secs. LLC v. Raifman*, 2010 WL 4502360 (N.D. Cal. Nov. 1 2010, Armstrong, J.);

27  *Herbert J. Sims & Co., Inc. v. Roven*, 548 F.Supp.2d 759, 766 (N.D. Cal. 2008, Jenkins, J.)
    (finding irreparable harm in forcing FINRA arbitration where plaintiff was not defendant's

28  "customer" under FINRA rules), citing *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Rels.*,
    107 F.3d 979, 985 (2d Cir. 1977).

-2-

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1    Third, the balance of hardships tips strongly in plaintiffs' favor.  While plaintiffs

2    will suffer immediate and irreparable injury in the absence of an injunction, Criden can point to no

3    harm it is likely to suffer if the Court enjoins it from proceeding with its claims.  Criden can

4    adjudicate its claims here, which are embraced within the Complaint's second claim for

5    declaratory relief.

6    The Court should grant the requested relief.

7    II.    **FACTUAL BACKGROUND**

8    Prior to June 1, 2012, Joseph R. Saveri was a partner in the San Francisco office of

9    Lieff Cabraser.  One of Lieff Cabraser's areas of specialization, and that of Mr. Saveri, is

10   representing plaintiffs in class actions arising under state or federal antitrust laws.  (Declaration of

11   Joseph R. Saveri, filed herewith, paragraph 2, hereinafter referred to as "Saveri Decl. ¶ 2.")

12   On February 8, 2010, Lieff Cabraser and Criden engaged in an email exchange

13   whereby Lieff Cabraser purportedly agreed to pay Criden a referral fee of 12.5 percent of any fees

14   it received in connection with a lawsuit known as *In re Titanium Antitrust Litigation,* No. 10-cv-

15   00318 RDB, which was filed in the United States District Court for the District of Maryland (the

16   "TiO2 Action").  (Saveri Decl. ¶ 3, Ex. 1.)  Criden referred Isaac Industries, Inc. ("Isaac") as a

17   plaintiff in the TiO2 Action to be represented by Lieff Cabraser.  While the Email between Lieff

18   Cabraser and Criden provides for a referral fee if *Lieff Cabraser* later procures another client in the

19   "matter," it says nothing about plaintiffs.

20   The Email between Lieff Cabraser and Criden also provides in one sentence,

21   without an attorney's fees clause, that Lieff Cabraser and Criden shall arbitrate before the AAA

22   any disputes related to or arising from their purported agreement.  (Saveri Decl. ¶ 4, Ex. 1.)

23   Plaintiffs did not sign, adopt, or authorize the Email or make any other agreement with Criden for

24   the payment of a referral fee or to arbitrate.  (Saveri Decl. ¶ 5.)

25   On or about February 9, 2010, an antitrust class action complaint was filed by

26   plaintiff Haley Paint Company ("Haley") in the United States District Court for the District of

27   Maryland against a number of defendants, alleging a conspiracy to fix prices of titanium dioxide in

28   violation of Section 1 of the Sherman Act (15 U.S.C. § 1), and commencing the TiO2 Action.

-3-

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

(Saveri Decl. ¶ 6.)  Haley was represented by other lawyers.  On February 12, 2010, Isaac filed a similar complaint in the District of Maryland, which was consolidated with the Haley Paint complaint in the TiO2 Action.  Shortly thereafter, plaintiff Joseph R. Saveri and Lieff Cabraser appeared in the TiO2 Action on behalf of Isaac, Lieff Cabraser assumed a co-lead counsel role, and Saveri functioned as the chief and senior lawyer at Lieff Cabraser on the matter.  (Saveri Decl. ¶ 7.)

Prior to June 2012, Joseph R. Saveri withdrew as a partner of Lieff Cabraser.  On June 1, 2012, Saveri entered an appearance in the TiO2 Action as co-counsel for plaintiff East Coast Colorants LLC dba Breen Color Concentrates ("Breen") along with Vincent J. Esades of Heins, Mills & Olson of Minneapolis, Minnesota ("Heins").  Previously, on July 29, 2011, Breen had intervened in the TiO2 Antitrust Action, represented by Heins.  Saveri assumed the role of co-lead counsel in the TiO2 Action on behalf of Breen.  (Saveri Decl. ¶ 8.)

In the fall of 2013, after extensive discovery and motion practice (over 90 depositions were taken worldwide), the TiO2 Action settled for $163.5 million, and $54.5 million in attorney's fees were awarded and have been allocated and paid to multiple plaintiff law firms.  (Saveri Decl. ¶ 9.)  That case is resolved, and a Final Judgment has been entered.  (*Id.*)

Criden has received approximately $2 million in referral fees related to the TiO2 Action, including sums paid to Criden by Lieff Cabraser related to the purported Email referral agreement for work performed by Lieff Cabraser, including work performed by Joseph R. Saveri while he was a partner at Lieff Cabraser.  Criden has in addition received approximately $1 million in attorney's fees for legal work performed by Criden in the TiO2 Action (Saveri Decl. ¶ 10.)  Plaintiff Joseph Saveri Law Firm, Inc. was awarded and paid attorney's fees related to the TiO2 Action for work performed after plaintiffs had appeared for client Breen and after Mr. Saveri left Lieff Cabraser.  (Saveri Decl. ¶ 11.)

On or about February 28, 2014, plaintiffs received from the AAA an arbitration demand filed by Criden in Miami, Florida, in proceeding No. 32-194 Y 00123-14.  Criden claims that Criden is entitled to a referral fee equal to 12.5 percent of the fee received by the Saveri Law

BARTKO ZANKEL BUNZEL

BARTKO ZANKEL BUNZEL MILLER

One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

-4-

1    Firm and Joseph Saveri in the TiO2 Action.   Criden demands $1.2 million from plaintiffs.[2]

2    (Saveri Decl. ¶ 12, Ex. 3.)  Criden asserts plaintiffs are required to arbitrate based on the Email

3    between Lieff Cabraser and Criden, to which plaintiffs were clearly not parties and are not

4    otherwise bound.  (Saveri Decl. ¶ 13.)

5            On March 14, 2014, plaintiffs objected to the jurisdiction of the AAA and the

6    location of the arbitration in Florida.  (Saveri Decl. ¶ 14, Ex. 4.)  On April 7, 2014, the AAA

7    decided that the arbitration would be held in Miami, Florida and submitted names of arbitrators to

8    be selected.  (Saveri Decl. ¶ 15, Exs. 5 and 6.)

9            By this action, plaintiffs seek to enjoin Criden from proceeding with the arbitration

10   because the AAA has no jurisdiction over plaintiffs.  Plaintiffs have not agreed to arbitrate any

11   dispute with Criden, have not signed any arbitration provision, and are not bound by any

12   agreement Lieff Cabraser made in the Email.

13           Furthermore, plaintiffs were not directly benefitted from the Email so as to estop

14   them from denying they are not required to arbitrate.  The fees paid to the Joseph Saveri Law Firm

15   in the TiO2 Action were directly related to plaintiffs' representation of a client after Mr. Saveri left

16   Lieff Cabraser and which was not procured by or referred by Criden.  (Saveri Decl. ¶ 8.)  Plaintiffs

17   will suffer irreparable harm if they are forced to arbitrate claims that are not arbitrable.  They have

18   incurred and will incur legal fees and costs in contesting the arbitration, which they will not

19   recover or get back once it is ultimately determined that the AAA has no jurisdiction over

20   plaintiffs.  (Saveri Decl. ¶ 16.) Further, plaintiffs will incur time and resources in arbitration that

21   are not compensable by any monetary award. (Saveri Decl. ¶ 16.)

22   III.   **PLAINTIFFS SATISFY THE APPLICABLE LEGAL STANDARDS**

23           A.   <u>The Question of Arbitrability Is for the Court to Decide</u>

24           Plaintiffs are asking the Court to determine the gateway issue of arbitrability.  As

25   noted in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)  "[A] gateway dispute

26   _____

27   [2]      Plaintiffs contend that Criden is not entitled to any referral fee, from plaintiffs or Lieff
     Cabraser, because the referral fee agreement was not executed by the client as is required under
     both Florida and California law.  The Complaint in this case seeks declaratory relief on that basis.
28   (Complaint ¶ 34, Prayer ¶ 2.)

-5-

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1  about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability'

2  for a court to decide."  "Unless the parties clearly and unmistakably provide otherwise, the

3  question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."

4  *AT&T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 649 (1986).  Here, the

5  Email is between Lieff Cabraser and Criden.  Not plaintiffs and Criden.  The Email only provides:

6  > Both law firms [Lieff Cabraser and Criden] agree that all disputes
7  > related to or arising from this referral agreement shall be resolved by
   > arbitration conducted by the American Arbitration Association
8  > ("AAA").

9  (Saveri Decl. ¶ 3, Ex. 1).  There is no agreement between plaintiffs and Criden.  There is no

10  agreement that the arbitrator should decide arbitrability.  *See, e.g., Elgohary v. Herrera,* 405

11  S.W.3d 785, 702 (Tex. Ct. App. 2013) (parties agreeing to arbitrate pursuant to AAA rules were

12  not the same parties being compelled to arbitrate, who were not bound by the AAA rules).[3]

13          In similar circumstances, several courts in this District have held that when the

14  question of arbitrability is for the Court, the Court should determine whether a pending arbitration

15  should be enjoined.  *See, e.g., AT&T Mobility LLC v. Bernardi*, 2011 WL 5079549, *supra*;

16  *Wachovia Secs. LLC v. Raifman,* 2010 WL 4502360, *supra*.

       B.      Plaintiffs Have Established the Requisite Elements for Issuance of a
17                  Preliminary Injunction

18          "A plaintiff seeking a preliminary injunction must establish that he is likely to

19  succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

20  relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

21  *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).  Plaintiffs show in this motion

22  that they satisfy each of these requirements.

23

24

25

26

---

27  [3]      While Rule 7(a) of the AAA Commercial Rules gives the Arbitrator the power to rule on
   his or her jurisdiction, that would only be binding on plaintiffs if they had agreed to arbitrate under
28  the AAA Rules.  Here, plaintiffs did not so agree.

-6-

BARTKO ZANKEL BUNZEL

One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1.     <u>Plaintiffs Are Likely to Succeed on the Merits</u>

In order to succeed on the merits, plaintiffs will need to establish that there was no agreement obligating them to arbitrate with Criden and that they are not otherwise bound to arbitrate by principles of agency or estoppel.

<div align="center">
a.     Plaintiffs Are Not Signatories to the<br>
<u>Email or Otherwise Bound by It</u>
</div>

As is plainly seen from the Email, it is between Lieff Cabraser and Criden alone. To the extent it is deemed to be an agreement to arbitrate—and it should not be—it is an agreement to arbitrate between Lieff Cabraser and Criden only.  Neither plaintiff signed nor assented to the Email.  As was clearly stated in *Volt Info. Sciences v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), "we have recognized that the FAA does not require parties to arbitrate when they have not agreed to do so."

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, a nonsignatory may be bound to an arbitration agreement by operation of ordinary principles of contract law. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2008).  As noted in *Comer,*

> In *Letizia v. Prudential Bache Securities, Inc.*,802 F.2d 1185 (9th Cir. 1986), we explained that "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Id.* at 1187-88. [Footnote omitted]. Among these principles are "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir.1995). In addition, nonsignatories can enforce arbitration agreements as third party beneficiaries. *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 195 (3d Cir.2001); Fisser v. International **612 Bank (2nd Cir.1960) 282 F.2d 231, 233 & 233–234, fn. 6.)

*See also Crowley Maritime Corp. v. Boston Old Colony Ins. Co.,* 158 Cal.App.4th 1061, 1069-71 (2008).

At the time of the Email, Joseph R. Saveri was a partner in Lieff Cabraser. However, that does not mean that he was bound by Lieff Cabraser's agreement to arbitrate.  While the cases hold that a *general* partner of a partnership is bound to arbitrate where the partnership has agreed to arbitrate, those cases rely on the principle that a general partner is individually liable

<div align="center">-7-</div>

BARTKO ZANKEL BUNZEL

One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

for the obligations of the partnership, which could include an agreement to arbitrate. *See, e.g.,* *Keller Construction Co. v. Kashani,* 220 Cal.App.3d 222, 227-28 (1990) (holding general partner bound by agreement to arbitrate signed by the partnership by virtue of the fact that a general partner is liable for the obligations of the partnership.)  By statute, this principle does not apply to a partner in a registered limited liability partnership.   Under California law, Corporations Code § 16306(c) states:

> (c) Notwithstanding any other section of this chapter, and subject to subdivisions (d), (e), (f), and (h), *a partner in a registered limited liability partnership is not liable* or accountable, directly or indirectly, including by way of indemnification, contribution, assessment, or otherwise, *for debts, obligations, or liabilities of or chargeable to the partnership* or another partner in the partnership, whether arising in tort, contract, or otherwise, that are incurred, created, or assumed by the partnership while the partnership is a registered limited liability partnership, by reason of being a partner or acting in the conduct of the business or activities of the partnership.

Emphasis added.  Lieff Cabraser was and is a registered limited liability partnership.  (Saveri Decl. ¶ 2).  Accordingly, the fact that Lieff Cabraser may have been obligated to arbitrate in no way obligates one of its limited liability partners to arbitrate.  Limited liability protection is, in fact, the very reason many law firms and lawyers choose to conduct business as an LLP.

Moreover, Joseph R. Saveri withdrew from the Lieff Cabraser firm prior to June 2012.  The legal effect of his withdrawal is that he is not bound by obligations of the partnership arising after he withdrew. Cal. Corp. Code § 16703(a), provides in pertinent part:

> (a) A partner's dissociation does not of itself discharge the partner's liability for a partnership obligation incurred before dissociation. *A dissociated partner is not liable for a partnership obligation incurred after dissociation, except as otherwise provided in subdivision (b).*[4]

Emphasis added.  While the Email was sent while Saveri was a limited liability partner in Lieff Cabraser, the obligation to arbitrate did not arise until a demand for arbitration was made.  All of the work for which Criden claims an economic interest was performed by the Joseph Saveri Law Firm by Joseph Saveri law personnel after Joseph Saveri ceased to be a limited liability partner at

---

[4]      Subdivision (b) sets forth the liability of withdrawing partners in partnerships other than registered limited liability partnerships.

-8-

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER

One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   Lieff Cabraser.  This is consistent with C.C.P. § 1281.2 and 9 U.S.C. § 4, which require a refusal

2   to arbitrate as a condition to filing a petition to compel arbitration.  In other words, a party cannot

3   be *compelled* to arbitrate until a demand is made and it is refused.  Thus, a party's obligation to

4   arbitrate does not arise until after a demand is made.  Plaintiffs did not receive the demand or

5   claim in arbitration until February 28, 2014.  That is when any obligation, if there was one, to

6   arbitrate would have arisen, long after Saveri withdrew from Lieff Cabraser.  Moreover, the basis

7   for the claim is solely for work performed after Saveri's disassociation from Lieff Cabraser—for

8   work done by personnel employed by a separate and distinct California corporation.

9               b.      Plaintiffs Are Not Estopped From
                        Denying an Obligation to Arbitrate

10

11          As noted in *Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 688

    (7th Cir. 2005):

12

13              A nonsignatory party is estopped from avoiding arbitration if it
                knowingly seeks the benefits of the contract containing the
14              arbitration clause. *See Thomson–CSF*, 64 F.3d at 778; *see also Indus.
                Elecs. Corp. of Wis. v. iPower Distribution Group,* 215 F.3d 677,
15              680 (7th Cir.2000) (stating in dicta that a third-party beneficiary of a
                contract would be bound by its arbitration provision).
16
                But caselaw consistently requires a *direct benefit under the contract
17              containing an arbitration clause* before a reluctant party can be
                forced into arbitration. *See Thomson–CSF*, 64 F.3d at 779 (holding
18              that although the unwilling party received a benefit, the benefit did
                not derive directly from the agreement containing the arbitration
19              clause and thus arbitration could not be compelled); *accord Am.
                Bureau of Shipping,* 170 F.3d at 353 (ordering arbitration because
20              the nonsignatory received the direct benefits of a lower insurance
                rate and the ability to sail under the French flag as a result of an
21              agreement containing an arbitration provision).

22          As further noted in *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 "*nonsignatories*

23  have been held to arbitration clauses where the nonsignatory 'knowingly exploits the agreement

24  containing the arbitration clause despite having never signed the agreement.' *DuPont,* 269 F.3d at

25  199 [*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates,* 269 F.3d

26  187, 195 (3d Cir. 2001)] (citing *Thomson-CSF*, 64 F.3d at 778);" *American Bureau Shipping v.*

27  *Tencara Shipyard S.P.A.,* 170 F.3d 349, 353 (2d Cir. 1999) (parties suing had obtained a direct

28

BARTKO ZANKEL BUNZEL

One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   benefit in the form of lower insurance rates and French flag status that was embodied in the

2   contract to which they were not a party.)

3          Where the party sought to be bound "exploits the contractual relation of parties to

4   an agreement, but does not exploit (and thereby assume) the agreement itself," estoppel will not be

5   applied. *Thomson-CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 778-79 (2d Cir. 1995).   As

6   noted in *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC,* 268 F.3d 58, 61-62 (2d

7   Cir. 2001):

8          The benefits must be direct -- which is to say, flowing directly from
           the agreement.

9

                                    *   *   *

10

11          [T]he benefit derived from an agreement is indirect where the
           nonsignatory exploits the contractual relation of parties to an
12         agreement, but does not exploit (and thereby assume) the agreement
           itself. *Thomson-CSF,* 64 F.3d at 778-79. In *Thomson-CSF,* for
13         example, two companies agreed to trade exclusively with each other.
           *Id.* at 775. A third-party competitor acquired one of the companies,
14         apparently with the intent of squeezing the remaining company out
           of the market. *Id.* The unacquired signatory was contractually bound
15         to trade only with a company that was now a subsidiary to its
           competitor. *Id.* Thus, interest in trading waned. *Id.* While the
16         agreement was crucial to the benefit the third party gained by
           shutting its competitor out of the market, the agreement was not the
17         direct source of the benefit. *Id.* at 778-79. Rather, the benefit flowed
           from the nonsignatory's exploitation of the contractual relation
18         created through the agreement by acquiring one of the signatories to
           the agreement.

19          The rationale behind the estoppel theory is that a party who acquires the benefits of

20   a contract must accept the burdens.  *See NORCAL Mutual Ins. Co. v. Newton,* 84 Cal.App.4th 64,

21   84 (2000).  If a non-signatory obtains the benefits of a contract, it is only fair or equitable that

22   party be bound by the contract as well, including an arbitration provision.  However, in order for

23   estoppel to apply, the party being estopped must be *directly* benefitted by the contract, *e.g.,* where

24   the party is suing on the contract.  *Crowley, supra.*

25          Here, legal fees paid to the Joseph Saveri Law Firm were directly related to its work

26   on behalf of a client that was not referred by Criden.  While Criden claims that plaintiffs would not

27   have earned such fees if it were not for the fact that plaintiff Joseph R. Saveri had acted as lead

28   counsel while at Lieff Cabraser, that does not equate to plaintiffs receiving a *direct* benefit from

-10-

BARTKO ZANKEL BUNZEL
*A PROFESSIONAL CORPORATION*

One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   the purported referral arrangement.  If plaintiffs had received a fee related to the Ti02 Action from

2   a Lieff Cabraser client or from Lieff Cabraser for which Criden had not been paid a referral fee,

3   that arguably might raise a direct benefit.  But that is not the case here.  Plaintiffs' fees were

4   achieved for work done solely by another entity, a law corporation, after Saveri had ceased to be a

5   limited liability partner at Lieff Cabraser.  The work was performed in connection with the

6   representation of a client not referred by Criden, nor a client of Lieff Cabraser's.  In fact, Lieff

7   Cabraser—the party to the Email—continued to perform work on the case.  Criden received a

8   substantial referral fee, based on the fees generated by Lieff for all of the work Lieff performed.

9   The situation is analogous to the non-direct benefit situation in *Thomson-CSF*, *supra*, where the

10  benefit flowed from the non-signatory's exploitation of the contractual relation, but not directly

11  from the referral agreement itself.

> 2.    Plaintiffs Will Suffer Irreparable Harm If Criden Is
>        Not Preliminarily Enjoined From Proceeding With
>        the Miami Arbitration

14         Plaintiffs will be irreparably harmed as a matter of law.  As held in held in *AT&T*

15  *Mobility, LLC v. Bernardi, supra*:

> ATTM will suffer irreparable harm if the arbitrations are not
> enjoined. First, as other circuits have determined, "[b]eing forced to
> arbitrate a claim one did not agree to arbitrate constitutes an
> irreparable harm for which there is no adequate remedy at law." *UBS
> Secs., LLC v. Voegeli*, 405 F. App'x 550, 552 (2d Cir.2011); *see also
> McLaughlin Gormley King Co. v. Terminix Int'l Co.,* 105 F.3d 1192,
> 1194 (8th Cir.1997). Courts in this district agree that being forced to
> defend an improper arbitration demand requires expending human
> and monetary capital for which there is no adequate remedy at law.
> *Herbert J. Sims & Co., Inc. v. Rovan,* 548 F.Supp.2d 759, 766
> (N.D.Cal.2008); *see also Sykes v. Escueta,* No. 10–3858, 2010 WL
> 4942608, at *4 (N.D.Cal. Nov.29, 2010) (same); *Wachovia Secs.
> LLC v. Raifman,* No. 10– 4573, 2010 WL 4502360, at * 10
> (N.D.Cal. Nov. 1, 2010) (same).

24  2011 WL 5079549 *10, Breyer, J.  Here, plaintiffs will be forced to arbitrate in Miami unless the

25  preliminary injunction is granted.  They have no adequate remedy at law to recover the time spent

26  as well as costs and attorney's fees expended.  There is no attorney's fee clause, for example, and

27  the time spent by plaintiff Joseph R. Saveri in attending  hearings which he otherwise would not be

28

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILER
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

-11-

1    obligated to attend is not compensable.  Further, plaintiffs would lose their right to have the

2    dispute heard in a court of law—something that cannot be compensated for by damages.

3            3.      The Balance of Hardships Tips Sharply in Favor of
4                    Plaintiffs

5            While plaintiffs are likely to suffer irreparable harm in the absence of a preliminary

6    injunction, Criden, on the other hand, is not likely to suffer any harm were the Court to enjoin

7    Criden from proceeding with its claims in arbitration. Criden can and should bring its claims in a

8    court of competent jurisdiction.   It loses nothing.  As in both *Wachovia* and *AT&T Mobility,* the

9    balance of hardships tips in plaintiffs' favor because the defendant can assert its claims in court.

10           4.      The Public Interest Favors Granting the Injunction

11           As noted in *Wachovia*, *supra,* while federal policy favors arbitration, "'[o]ne of the

12   threads running through federal arbitration jurisprudence is the notion that arbitration is a matter of

13   contract and a party cannot be required to submit to arbitration any dispute which he has not

14   agreed so to submit.' *AT&T Technologies*, 475 U.S. at 648 (internal quotations omitted)."

15   *Wachovia Secs. LLC v. Raifman,* 2010 WL 4502360, *10.  There is no agreement and there is no

16   agreement to arbitrate.  Accordingly, the public interest is served if the injunction is granted.

17   IV.    **CONCLUSION**

18           For all of the above reasons, the motion for a preliminary injunction should be

19   granted.

20   DATED:  April 16, 2014

21                                       BARTKO, ZANKEL, BUNZEL & MILLER
22                                       A Professional Law Corporation

23

24                                       By:  ____/s/  Robert H. Bunzel_____
25                                               Robert H. Bunzel
                                                 Attorneys for Plaintiffs
26                                            JOSEPH R. SAVERI AND
                                              JOSEPH SAVERI LAW FIRM, INC.

27

28

-12-

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION: MPA
Case No. 3:14-cv-1740-EDL

BARTKO ZANKEL BUNZEL

One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

Pages Intentionally Omitted

SER 058 - SER 075

1   Robert H. Bunzel, State Bar No. 99395
    Charles G. Miller, State Bar No. 39272
2   BARTKO, ZANKEL, BUNZEL & MILLER
    A Professional Law Corporation
3   One Embarcadero Center, Suite 800
    San Francisco, California  94111
4   Telephone:     (415) 956-1900
    Facsimile:     (415) 956-1152
5
    Attorneys for Plaintiffs
6   JOSEPH SAVERI LAW FIRM, INC.
    and JOSEPH R. SAVERI
7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12   JOSEPH SAVERI LAW FIRM, INC., a          )   No. 3:14-cv-1740 EDL
     California corporation, and JOSEPH R.    )
13   SAVERI,                                  )   **DECLARATION OF ROBERT H.**
                                              )   **BUNZEL IN SUPPORT OF**
14              Plaintiffs,                   )   **PLAINTIFFS' OPPOSITION TO**
                                              )   **MOTION OF DEFENDANT**
15         v.                                 )   **CRIDEN & LOVE TO DISMISS FOR**
                                              )   **LACK OF PERSONAL**
16   MICHAEL E. CRIDEN, P.A. dba CRIDEN &     )   **JURISIDCTION, OR,**
     LOVE, P.A., a Florida corporation,       )   **ALTERNATIVELY, TO TRANSFER**
17                                            )   **TO SOUTHERN DISTRICT OF**
                Defendant.                    )   **FLORIDA**
18                                            )
                                              )   Date:      July 1, 2014
19                                            )   Time:      9:00 a.m.
                                              )   Courtroom: E
20                                            )   Judge:     Hon. Elizabeth D. Laporte
                                              )
21

22

23

24

25

26

27

28

---

2400.001/816262.1            BUNZEL DECL. ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
                             DISMISS/TRANSFER - Case No. 3:14-cv-1740 EDL

**SER 076**

I, ROBERT H. BUNZEL, declare:

1.      I am counsel for plaintiffs in this matter, and have personal knowledge of the within facts, except those asserted on belief which I believe to be true.  I am competent to testify thereto if called upon to do so.

2.      On or about February 28, 2014, my client received from the American Arbitration Association ("AAA") an arbitration demand filed by Criden in Miami, Florida, in proceeding No. 32-194 Y 00123-14.  Criden asserts that Criden is entitled to a referral fee equal to 12.5% of the attorney's fees received by Joseph Saveri Law Firm and by me.  Criden in the AAA arbitration demand seeks $1.2 million from plaintiffs Joseph Saveri and the Joseph Saveri Law Firm.  A true and correct copy of Criden's February 25, 2014 Demand is attached hereto as **Exhibit 1**.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of Criden's February 25, 2014 Statement of Claim in arbitration.  Of significance to the present motion: (i) the only written agreement on which Criden is proceeding is the February 8, 2014 email exchange between Criden and Lieff Cabraser, attached as Exhibit A to the Statement of Claim; (ii) the Statement of Claim alleges no express agreement between Criden and plaintiffs in this action, such that the primary causes of action (Counts I and II, at pp. 14-15) seek relief based on contract rights alleged to be  "implied in law" or "implied in fact;"  and (iii) at ¶¶ 32-35, Criden alleges and makes relevant the lodestars of all of the lead counsel in the TiO2 Action, all of whom are in California.

4.      In response to Criden's arbitration Demand, I caused to be submitted to the AAA an Answering Statement dated March 14, 2014, which included Attachment A "Respondents' Objection to Arbitration" and Attachment B "Objection to Miami, Florida as Arbitration Locale."  True copies of the Answering Statement and the two Attachments are attached hereto as **Exhibit 3**.

5.      In Answering Statement Attachment A, plaintiffs before this Court timely "object[ed] to the jurisdiction of the arbitrator and the arbitrability of [Criden's] February 25, 2014 Claim," on multiple grounds.  Attachment A concludes that "Saveri reserves all rights to seek

BARTKO ZANKEL BUNZEL

One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

-1-

1    appropriate judicial relief to restrain the parties from pursuing this arbitration or from entering or

2    enforcing an arbitrable award if any."

3        6.    The Answering Statement Attachment B incorporates the timely objection

4    to the jurisdiction of the AAA and the arbitrability of Criden's Claim (p. 1) and addresses

5    arbitration locale "to the extent an arbitration proceeds on the Claim."  *Id.*   The Answering

6    Statement concludes at p. 8:

7           For the above reasons, if the claim is arbitrable, arbitrator selection
            should be without reference to any geographical nexus to Florida.
8
     The footnote at the end of that Conclusion states:
9
            Objection to Miami as a venue and preference of San Francisco is
10          made without prejudice to the rights of [Joseph Saveri] Law Firm
            and [Joseph] Saveri to contest arbitration jurisdiction and the
11          arbitrability of the Claim.

12       7.    In submitting the Answering Statement and its Attachments A and B to the

13   AAA, I understood that AAA administrators would determine location of the arbitration, if

14   arbitration were to occur.  My clients and I did not invite such a determination, but rather (i) were

15   obligated to make an Answering Statement "within 14 calendar days after notice of the filing of

16   the Demand is sent by the AAA" (AAA Commercial Rule, R-5(a)); (ii) "a party must object to the

17   jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing

18   of the Answering Statement" (*id.* at R-7(c)); and (iii) "any disputes regarding the locale that are to

19   be decided by the AAA must be submitted to the AAA and all other parties within 14 calendar

20   days from the date of the AAA's initiation of the case or the date established by the AAA."  (*Id.* at

21   R-10.)

22       8.    The initiation letter from AAA was dated February 28, 2014 (**Exhibit 4**

23   hereto), which by rule created necessary responses to objection to arbitration jurisdiction and

24   regarding locale by March 14, 2014.

25       9.    Attached hereto as **Exhibit 5** is my colleague Charles G. Miller's May 16,

26   2014 letter to Criden's counsel Robert T. Sullwold following Criden's submission of the present

27   motion to dismiss.

28

2400.001/816262.1          BUNZEL DECL. ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
                           DISMISS/TRANSFER - Case No. 3:14-cv-1740 EDL

SER 078

1    10.    Attached hereto as **Exhibit 6** is a true copy of Mr. Sullwold's May 20, 2014

2  in response to Mr. Miller's letter.

3    11.    I have caused my office staff to search through publicly available

4  information to determine the matters and frequency of Criden's participation in litigation in

5  California.  A true and correct copy of a chart of such representations and appearances is attached

6  hereto as **Exhibit 7**, and plaintiffs ask that the Court take judicial notice of such facts pursuant to

7  Federal Rules of Evidence, Rule 201.  Pursuant to Federal Rules of Evidence, Rule 1006, the

8  summary chart attached as Exhibit 7 is more convenient than examining voluminous records in

9  court.  The records are publicly available on ECF, and my firm could produce copies if needed in

10  court.

I declare under the laws of the United States of America that the foregoing is true

and correct and that this Declaration was executed on May 30, 2014, at San Francisco, California.

/s/Robert H. Bunzel
ROBERT H. BUNZEL

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

-3-

2400.001/816262.1

BUNZEL DECL. ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS/TRANSFER - Case No. 3:14-cv-1740 EDL

# EXHIBIT 1

SER 080

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

Please visit our website at www.adr.org if you
would like to file this case online. AAA Case Filing
Services can be reached at 877-495-4185.

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

*MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box. ☐
There is no additional administrative fee for this service.*

| Name of Respondent S | Name of Representative (if known) |
|---|---|
| JOSEPH SAVERI LAW FIRM + JOSEPH SAVERI | |
| Address  505 MONTGOMERY ST, #625 | Name of Firm (if applicable) |
| | Representative's Address |

| City SAN FRANCISCO | State CA | Zip Code 94111 | City | State | Zip Code |
|---|---|---|---|---|---|
| Phone No. 415-500 6800 | Fax No. 415 500 6803 | | Phone No. | | Fax No. |
| Email Address: JSAVERI@SAVERI LAW FIRM.COM | | Email Address: | | |

The named claimant, a party to an arbitration agreement dated  2 | 8 | 10 , which provides for arbitration under the
Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE   CRUDEN + LOVE SEEKS A 12.5% REFERRAL
FEE FROM THE SAVERI LAW FIRM + JOSEPH SAVERI BASED ON
THEIR RECOVERY IN THE TITANIUM DIOXIDE ANTITRUST LITIGATION.

| Dollar Amount of Claim $  ~ $1.2 Million | Other Relief Sought: ☒ Attorneys Fees   ☒ Interest |
|---|---|
| | ☒ Arbitration Costs  ☐ Punitive/ Exemplary  ☐ Other |

Amount Enclosed $ 8,200.00  In accordance with Fee Schedule:  ☐ Flexible Fee Schedule  ☒ Standard Fee Schedule

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
ATTORNEY S

| Hearing locale  MIAMI  FL  (check one) ☒ Requested by Claimant  ☐ Locale provision included in the contract |
|---|

| Estimated time needed for hearings overall: _____ hours or  2  days | Type of Business:  Claimant  LAW FIRM |
|---|---|
| | Respondent S  LAW FIRM / LAWYER |

Is this a dispute between a business and a consumer? ☐ Yes ☒ No  Does this dispute arise out of an employment relationship? ☐ Yes ☒ No
If this dispute arises out of an employment relationship, what was/is the employee's annual wage range?  Note: This question is required
by California law. ☐ Less than $100,000  ☐ $100,000 - $250,000  ☐ Over $250,000

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration
Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity
to file an answering statement.

| Signature (may be signed by a representative)  Date: 2/25/14 | Name of Representative  Curtis J. Mase, Esq. |
|---|---|
| Name of Claimant  CRUDEN + LOVE, P.A. | Name of Firm (if applicable)  MASE, LARA + EVERSOLE, P.A. |
| Address (to be used in connection with this case)  7301 SW 57TH CT, #515 | Representative's Address  2601 S. BAYSHORE DR, #800 |
| City South Miami | State FL | Zip Code 33143 | City Miami | State FL | Zip Code 33133 |
| Phone No. 305 357 9000 | Fax No. 305 357 9050 | | Phone No. 305-377-3770 | | Fax No. 305 377-0080 |
| Email Address: KLOVE @ CRUDENLOVE.COM | | Email Address: CMASE @ MLETRIAL.COM | | |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as
provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043.  Send the original Demand to the Respondent.

# EXHIBIT 2

SER 082

# AMERICAN ARBITRATION ASSOCIATION

MICHAEL E. CRIDEN, P.A.,       Case No. _____
d/b/a CRIDEN & LOVE, P.A.,
a Florida corporation,

      Claimant,

v.

JOSEPH SAVERI LAW FIRM,
a California corporation, and
JOSEPH R. SAVERI, an individual,

      Respondents.

_____/

## NOTICE OF ARBITRATION AND STATEMENT OF CLAIM

    Claimant Michael E. Criden, P.A., d/b/a Criden & Love, P.A. ("Criden & Love"), demands the commencement of an arbitration against Joseph Saveri Law Firm ("Saveri Law Firm") and Joseph R. Saveri ("Saveri") under the Commercial Arbitration Rules of the American Arbitration Association for the reasons stated in this Statement of Claim.

## PRELIMINARY STATEMENT

    1.    Landing the coveted lead counsel role in a large antitrust class action is a plaintiffs antitrust law firm's holy grail.  As lead counsel, the law firm not only decides how the case will be prosecuted, but it doles out the work assignments to the other law firms in the case.  Getting as much work as possible in a case is critical because each law firm's fee is based on how many hours that firm works on the case.  Not surprisingly, a lead counsel usually keeps the lion's share of the work for themselves.  Moreover, if the recovery is large enough, its fee will end up being a large multiple

of those hours.  Thus, not securing a lead counsel position in these cases can mean losing the opportunity to make millions of dollars, sometimes tens of millions of dollars.

2.     As lucrative as lead counsel roles can be in antitrust class actions, even the best antitrust law firms cannot obtain a lead counsel position in a case without a client.  And antitrust class action plaintiffs are few and far between.  Federal antitrust law grants standing *only* to those companies that purchased the price-fixed product *directly* from the antitrust defendant.  Although there are several antitrust law firms around the country that have the resources to prosecute an antitrust class action (sufficient number of lawyers, antitrust expertise, funds to pay for expenses, *etc.*), many of these firms never get their foot in the courthouse door because they do not have a client with standing who is willing to sue the defendant.

3.     Certain boutique law firms specialize in referring antitrust plaintiffs to these antitrust law firms.  Criden & Love, the claimant in this action, is one such boutique law firm.  Corporate antitrust plaintiffs are difficult to come by because these companies are faced with the prospect of suing their suppliers.  Most companies, even when confronted with undisputed evidence of price fixing, will not sue the hand that feeds them.  Over the years, Criden & Love has developed relationships with a network of companies that have come to understand the importance of standing up to their suppliers and enforcing the antitrust laws, not just for themselves but for their respective industries.

4.     Thus, once a plaintiffs antitrust law firm determines that an antitrust violation has occurred, they inevitably contact Criden & Love to see whether it has a client that has been damaged by the alleged antitrust violation.  If Criden & Love has such a client, and if it is willing to sue its supplier and incur possible retaliation, Criden & Love then refers that client to the plaintiffs antitrust

-2-

law firm so that it can immediately file a complaint and seek a lead counsel role in the case. Getting on file quickly is critical in these cases because one of the first orders a court enters is the order appointing lead counsel.

5.      In exchange for referring the client, the antitrust law firm agrees to pay Criden & Love a referral fee if the plaintiffs prevail in the case. Referral fees are Criden & Love's primary source of income.[1]

6.      In an antitrust class action styled *In re Titanium Dioxide Antitrust Litigation*, Case No. 10-cv-318 (D. Md.), Criden & Love referred a client to Respondent Saveri and his previous law firm Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser"). The *Titanium Dioxide* referral agreement provided that Lieff Cabraser would pay Criden & Love a 12.5% referral fee.

7.      In February 2010, as the Chair of Lieff Cabraser's antitrust practice, Saveri signed and filed the complaint in *Titanium Dioxide* with Criden & Love's client. The Court ultimately appointed Lieff Cabraser and another law firm, Gold Bennett Cera & Sidener LLP ("Gold Bennett"), as co-lead counsel. Saveri spent close to two and a half years at Lieff Cabraser as lead counsel in *Titanium Dioxide*, yet worked up a lodestar of only $197,315 before he decided to open up his own law firm in June 2012. He then asked Lieff Cabraser and Gold Bennett to support a motion to add his new law firm as a third co-lead counsel. They agreed, and in August 2012, the Joseph Saveri Law Firm became a co-lead counsel in *Titanium Dioxide*.

8.      In 2013, the *Titanium Dioxide* case settled for $163,500,000. The Court awarded

---

[1] Criden & Love's involvement in these cases, however, does not end with its referral. Criden & Love oversees the client's document production, drafts interrogatory responses, and defends the client in deposition. Criden & Love is also the liaison with the client, keeping them up to date on material events and conveying all settlement offers. Criden & Love also is sometimes asked to review and code a defendant's document production. In accordance with its referral agreements, any recovery that Criden & Love receives for time it works in a case is in addition to its referral fee.

SER 085

$54,500,000 in attorney fees. For the 15 months it worked on the case as the third lead counsel, the Saveri Law Firm represented to the Court that it had a $3.77 million lodestar (Saveri, himself, had a lodestar of nearly $2 million). From the $54.5 million in total fees, we believe Saveri and the Saveri Law Firm recovered $9,803,263.10, having received a 2.61 lead counsel multiplier.[2]

9.      But for the fact that in 2010 Criden & Love referred Saveri and Lieff Cabraser a client in the *Titanium Dioxide* action:

*       Saveri and Lieff Cabraser would have never filed a complaint in the case;

*       Saveri and Lieff Cabraser would have never become lead counsel in the case;

*       Saveri would have never worked for more than two years on the case at Lieff Cabraser as a lead counsel;

*       The Saveri Law Firm would have never been added as a third lead counsel in the case;

*       The Saveri Law Firm would have never received enough work assignments to generate a $3.77 million lodestar in the case (in fact, had Saveri not started his own firm, Saveri's $3.77 million lodestar would have been added to Lieff Cabraser's lodestar); and

*       The Saveri Law Firm would have never received a 2.61 lead counsel multiplier on its $3.77 million lodestar.

10.      Without question, therefore, had Criden & Love not referred its client to Saveri and Lieff Cabraser back in February 2010 so that Lieff Cabraser could become a lead counsel, the Saveri

---

[2] Criden & Love does not know the exact amount the Saveri Law Firm received, but it believes that the Saveri Law Firm received a 2.61 multiplier on its $3,777,403.50 lodestar less $55,760.

-4-

SER 086

Law Firm would have never received close to $10 million in 2014 – approximately 20% of the total $54.5 million fee.  Despite this fact, Saveri and the Saveri Law Firm have refused to pay Criden & Love a 12.5% referral fee on its $10 million recovery.

## PARTIES

11.     At all relevant times, Criden & Love was a Florida corporation with its principal place of business in South Miami, Florida.  Criden & Love is a boutique law firm specializing in referring clients to other firms in antitrust class actions.

12.     At all relevant times, the Saveri Law Firm was a California corporation with its principal place of business in San Francisco.  The Saveri Law Firm was founded in June 2012 by Joseph Saveri.  According to its website, it specializes in "fighting anticompetitive business practices throughout the country," serving as co-lead counsel "in a variety of cases [including one that involved the] price-fixing of titanium dioxide."

13.     Saveri is an individual residing in San Francisco, California.  In 1992, Saveri joined Lieff Cabraser, where he founded and chaired the firm's Antitrust Practice Group.  In June 2012, Saveri formed the Saveri Law Firm.

## NATURE OF CLAIM/AMOUNT INVOLVED

14.     Criden & Love seeks a 12.5% referral fee from the Saveri Law Firm and Saveri based on their recovery in the *Titanium Dioxide Antitrust Litigation*.  Criden & Love believes that the Saveri Law Firm and Saveri received an attorney fee of $9,821,249.10.  If the Saveri Law Firm and Saveri in fact recovered $9,821,249.10, then they owe Criden & Love $1,227,656.10.

SER 087

## REQUEST FOR THREE ARBITRATORS

15.     Criden & Love requests that this Arbitration be heard and determined by three arbitrators in accordance with AAA Rule L-2.

## HEARING LOCATION

16.     Criden & Love requests that all hearings in this Arbitration take place in Miami, Florida.

## JURISDICTION

17.     On February 8, 2010, Criden & Love and Lieff Cabraser entered into a referral agreement, wherein Criden & Love referred Isaac Industries to Lieff Cabraser for the *Titanium Dioxide* matter. *See* February 8, 2010 Referral Agreement, attached hereto as Exhibit "A." Lieff Cabraser agreed to pay Criden & Love 12.5% of Total Fees received by Lieff Cabraser.

18.     The referral agreement states:

> Both law firms agree that all disputes related to or arising from this referral agreement shall be resolved by arbitration conducted by the American Arbitration Association ("AAA").

19.     Although neither the Saveri Law Firm nor Saveri are signatories to the referral agreement, both are equitably estopped from denying an obligation to arbitrate because both knew of the referral agreement that contained the arbitration clause, neither objected to the agreement, and both knowingly exploited the referral agreement to their benefit.

-6-

## FACTUAL BACKGROUND

### *Antitrust Class Actions and Lead Counsel*

20.     Plaintiffs antitrust class action law firms regularly contact Criden & Love seeking clients to file their cases. Only companies that purchased a price-fixed product directly from an antitrust defendant have standing to sue for damages under federal antitrust law. Unless a law firm obtains a client soon after a case becomes public, it is almost impossible for that law firm to become a lead counsel. Which firms will request lead counsel roles is generally agreed upon by the lawyers right after the complaints are filed, and one of the first orders that the court enters in this type of case is the appointment of lead counsel. It is almost unheard of to add another law firm as lead counsel years after a case is filed.

### *Criden & Love, Lieff Cabraser and Saveri*

21.     In February 2010, Lieff Cabraser wanted to file a case against several chemical companies for fixing the price of titanium dioxide. Gold Bennett also wanted to file the same case. The two firms agreed that they would file separate complaints with their clients in Baltimore, and then would seek co-lead counsel status. Lieff Cabraser, however, did not have a client.

22.     Lieff Cabraser asked Criden & Love whether it knew of a company willing to file a complaint against its supplier. Criden & Love held several meetings with one of its clients, Isaac Industries, Inc. Isaac Industries eventually agreed to be a plaintiff in Lieff Cabraser's complaint against its suppliers.

-7-

SER 089

*Referral Agreement*

23.    The Referral Agreement provides that:

> Lieff Cabraser Heimann & Bernstein, LLP agrees to pay Criden & Love, P.A. a referral fee of 12.5% (Twelve and One Half Percent) of its fees, including any multiples on hours that it receives in this matter ("Total Fees"). Total Fees does not include any monies received for reimbursement of expenses. Lieff Cabraser agrees to pay the referral fee to Criden & Love even if Lieff Cabraser later procures another client in this matter. If Lieff Cabraser receives significantly less than its lodestar in the case, Criden & Love agrees to discuss in good faith reasonable accommodation to the amount of the referral fee.

*See* Exhibit A.

24.    On February 8, 2010, Eric Fastiff of Lieff Cabraser agreed to the Referral Agreement by reply e-mail. *See* Exhibit A. At the time Fastiff agreed to the terms above, he worked for Saveri, who was Chair of Lieff Cabraser's Antitrust Practice Group.

25.    On February 9, 2010, Gold Bennett filed a complaint with its client Haley Paint Company. *Haley Paint Company v. Kronos Worldwide, Inc. et al.*, 10-cv-318 (D. Md.).

26.    On February 12, 2010, Lieff Cabraser filed a complaint with Isaac Industries as the plaintiff. *Isaac Industries, Inc. v. E.I. Dupont, et al.* 10-cv-323 (D. Md.). Saveri and Fastiff are listed as counsel for Lieff Cabraser on the complaint. No other plaintiffs antitrust law firms filed a complaint (likely a consequence of how difficult it was to find a company with standing that was willing to sue its suppliers), so there was no reason for Lieff Cabraser and Gold Bennett to immediately file a motion for appointment of lead counsel. They simply ran the case as if they had already been appointed.

SER 090

*Lieff Cabraser, with Isaac Industries as its Client, Secures a Co-Lead*
*Counsel Position in the Titanium Dioxide Antitrust Class Action Litigation*

27.    On April 12, 2010, the two law firms filed a consolidated complaint with both plaintiffs. Defendants filed a motion to dismiss. After the motion was denied, Gold Bennett and Lieff Cabraser moved to memorialize their lead counsel roles. On April 1, 2011, the Court entered CMO No. 2, which appointed Lieff Cabraser and Gold Bennett co-lead counsel.

*Saveri Leaves Lieff Cabraser, Opens a New Law Firm and Becomes*
*a Third Co-Lead Counsel in the Titanium Dioxide Antitrust Class Action Litigation*

28.    On June 1, 2012, Saveri left Lieff Cabraser and opened up his own law firm called the Joseph Saveri Law Firm. On that same day, apparently hoping to avoid any referral obligation to Criden & Love, Saveri filed a notice of appearance on behalf of a different plaintiff that had entered the case in July 2011. Saveri, however, never withdrew his appearance on behalf of Isaac Industries in the case.[3]

29.    On June 29th, Kevin Rayhill, Saveri's partner at the Saveri Law Firm, filed a Motion for *Pro Hac Vice* as counsel for all three plaintiffs, including Isaac Industries. On July 25th, Lisa Leebove, another Saveri Law Firm partner, filed a Motion for *Pro Hac Vice* as counsel for all three plaintiffs, including Isaac Industries.

30.    On August 7, 2012, Lieff Cabraser and Gold Bennett filed a motion seeking to add

---

[3] Significantly, the Referral Agreement explicitly provides that Lieff Cabraser agrees to pay the referral fee to Criden & Love even if Lieff Cabraser later obtains another client in the case. Saveri acknowledged this condition of the referral when Lieff Cabraser agreed to the referral agreement. It is therefore puzzling that Saveri now believes that his new law firm's filing of a notice of appearance for another client is somehow relevant. More importantly, Saveri does not seem to understand that the notice of appearance for his new law firm had nothing to do with his new law firm being appointed lead counsel. Rather, as noted below in the discussion of the motion for appointment, Saveri justified his request for a lead counsel role by trumpeting his earlier role as lead counsel for the Plaintiffs, a role he obtained only because Criden & Love referred Isaac Industries to Saveri in 2010.

SER 091

the Joseph Saveri Law Firm as a third co-lead counsel.  In the memorandum in support of the

motion, Saveri represented to the Court that:

> At the time of CMO No.2, attorney Joseph R. Saveri served as head of the
> antitrust and intellectual property group at Lieff Cabraser *and had primary
> responsibility within that firm for representing Plaintiffs in this matter.* Effective
> May 29, 2012, Mr. Saveri left Lieff Cabraser and opened his own law practice, the
> Joseph Saveri Law Firm, *where he continues to play a leadership role in
> representing the Plaintiffs in the present matter,* along with Lieff Cabraser and
> GBCS [Gold Bennett].  All Plaintiffs' counsel of record here support the present
> request that the Joseph Saveri Law Firm be included with Lieff Cabraser and GBCS
> as Interim Co-Lead Class Counsel.

31.     On August 7th, the Court granted the motion, adding the Joseph Saveri Law Firm as

a third co-lead counsel.  On August 8th, Criden & Love sent an e-mail congratulating Saveri and

asked him to confirm in writing that his new law firm would be paying Criden & Love a 12.5%

referral fee.  Saveri never responded to the e-mail, but Saveri also never denied that he owed Criden

& Love the referral obligation until he received his $10 million fee.

### *The Saveri Law Firm's Lodestar*

32.     While at Lieff Cabraser, over a period of 30 months, Saveri worked 254 hours in

*Titanium Dioxide* for a lodestar of $197,315.  At his new law firm, Saveri worked 2,206 hours in less

than 15 months for a lodestar of $2 million.

33.     At the end of the case, Lieff Cabraser had a lodestar of $2.8 million.  The Saveri Law

Firm ended up with a lodestar of $3.77 million.

34.     Not coincidentally, if you add Lieff Cabraser's lodestar ($2,828,807) with the Saveri

Law Firm's lodestar ($3,777,403.50), you get $6,606,210.50, a number that approximates Gold

-10-

**SER 092**

Bennett's total lodestar ($7,455,953.75).[4] Thus, had Saveri stayed at Lieff Cabraser through the end of the case, Lieff Cabraser and Gold Bennett, as the two Co-Lead Counsel would have ended up with similar lodestars, a situation that co-leads usually strive for in these types of matters.

35.     More importantly, had Saveri stayed at Lieff Cabraser through the end of the case, Lieff Cabraser and Saveri would have paid a 12.5% referral fee to Criden & Love on the combined $6.6 million lodestar.

### The Titanium Dioxide Antitrust Class Action Litigation Settles and the Saveri Law Firm Receives a Lead Counsel Multiplier

36.     Plaintiffs settled with each of the defendants in the *Titanium Dioxide* litigation between July 2013 and September 2013. In total, the case settled for $163,500,000.

37.     In his affidavit requesting fees, Saveri noted that he had worked "intensively on the case since its inception" as the Chair of the Antitrust Practice Group at Lieff Cabraser, which had been appointed co-lead counsel. Saveri then notes that, after he established his own law firm, and since his new law firm was appointed co-lead counsel: "I have *continued my leadership position* in the case, exercising day-to-day management and supervision over the litigation."

38.     The Saveri Law Firm reported a total of 6,425 hours for 15 months – about the same amount of hours that Lieff Cabraser reported (6,378 hours) over 30 months. The Saveri Law Firm's lodestar was $3,777,403.50. Lieff Cabraser's lodestar was $2,828,807.00. Both received a 2.61 lead counsel multiplier. Thus, Criden & Love believes that Saveri received close to a $10 million fee.

---

[4] Because Gold Bennett's reporting period was approximately 15 months longer, one would expect Gold Bennett's lodestar to be a bit larger than the aggregate lodestar for the other two co-leads.

*Despite the Fact That Saveri Would Not Have Recovered $10 Million in the Titanium Dioxide Antitrust Litigation Had Criden & Love Not Referred Isaac Industries To Saveri in 2010, Saveri Refuses To Pay Criden & Love a Referral Fee*

39.     The following facts are not in dispute: In 2010, Saveri accepted Criden & Love's referral of Isaac Industries on behalf of Lieff Cabraser and filed a complaint in the *Titanium Dioxide* matter. Lieff Cabraser was appointed co-lead counsel. Saveri, as Chair of Lieff Cabraser's Antitrust Practice Group, worked and managed the case at Lieff Cabraser. In June 2012, Saveri decided he wanted to start his own law firm so long as he could ***continue [his] leadership position in the case.*** The other co-leads agreed to let him come on as a third co-lead only because he had been working as a co-lead on the case since its inception. And, of course, Saveri started the case as a co-lead only because Criden & Love referred him Isaac Industries in 2010.

40.     Saveri ended up with more time in the case in 15 months than Lieff Cabraser had in 30 months. In these cases, only co-lead firms are allowed to put in that much work in such a short amount of time. More importantly, Gold Bennett would never have allowed Saveri to put in that much time unless it was certain that the combined amount of time of the Saveri Law Firm and Lieff Cabraser at the end of case did not end up being more than Gold Bennett's time. Not surprisingly, the combined lodestar of the Saveri Law Firm and Lieff Cabraser did not exceed Gold Bennett's total lodestar.

41.     Without Criden & Love's referral of Isaac Industries to Saveri in 2010, the Saveri Law Firm in 2012 would have never become a co-lead, would have never been given the opportunity to work $3.77 million worth of time, and would have never received a 2.61 multiplier on its $3.77 million lodestar in 2014. In other words, but for Criden & Love's referral of Isaac Industries, Saveri would have never recovered $10 million in attorney fees (or 20% of the total $54.5 million fee

-12-

award).

42.     Saveri refuses to acknowledge these undisputed facts and pay Criden & Love a 12.5%
referral on his $10 million recovery.

43.     Saveri takes the position that by filing a notice of appearance for a client already in
the case, he should not have to pay a referral fee to Criden & Love.  Saveri misses the point.
Whether Saveri continued to represent Isaac Industries (which he did) or whether he chose to
represent another client (already a plaintiff in the case) is irrelevant because his June 1, 2012 notice
of appearance is not the reason Saveri was added as a third lead counsel, was not the reason why he
was permitted to work up a $3.77 million lodestar, and was not the reason why he received a $10
million attorney fee.

44.     Saveri and his new law firm were allowed to become a third lead counsel *because,
and only because*, for two and a half years before he opened his new law firm he had been running
the case at Lieff Cabraser as a lead counsel, and the only reason he had been running the case as a
lead counsel for two and a half years at Lieff Cabraser was because Criden & Love referred Isaac
Industries to him and Lieff Cabraser in 2010.

45.     Under Saveri's view of the law, a plaintiffs antitrust lawyer could ask Criden & Love
for a client, file a complaint with that client, obtain lead counsel status, and then the next day move
to another law firm (or start a new law firm), taking the lead counsel status with him, and would owe
Criden & Love nothing on his new firm's recovery so long as they later made an appearance for a
another client.  Such an outcome is not only inequitable and unfair but it defies common sense.

46.     Moreover, if Saveri were correct, there would be other unintended consequences. For
one thing, there would no longer be a reason for Criden & Love to refer its clients to plaintiffs

-13-

antitrust law firms. If plaintiffs antitrust lawyers could so easily get out of paying referrals, Criden & Love (and other referring law firms) would no longer make referrals in these cases, benefitting no one except the price-fixing defendants who would no longer face class actions by their victims.

## CAUSES OF ACTION

### COUNT I
### (Unjust Enrichment/Contract Implied in Law)

47. Claimant realleges the allegations of paragraphs 1 through 46 as if set forth herein in full.

48. Criden & Love referred Isaac Industries to Saveri and Lieff Cabraser so that they could file a complaint in the *Titanium Dioxide* litigation and become lead counsel.

49. Saveri was aware of the referral and the benefits it conferred.

50. Saveri and the Saveri Law Firm accepted and retained the benefits of Criden & Love's referral of Isaac Industries by using it to become a third lead counsel, amassing a $3.77 million lodestar, and receiving approximately $10 million.

51. The circumstances are such that it would be inequitable for Saveri and the Saveri Law Firm to retain its $10 million fee without paying Criden & Love a 12.5% referral fee.

### COUNT II
### (Contract Implied in Fact)

52. Claimant realleges the allegations of paragraphs 1 through 46 as if set forth herein in full.

53. Criden & Love entered into a referral agreement with Lieff Cabraser which provided

-14-

that in exchange for referring Isaac Industries to Lieff Cabraser, Lieff Cabraser would pay Criden & Love a 12.5% referral fee, even if Lieff Cabraser later made an appearance for another client.

54.    Saveri had knowledge of the referral agreement between Criden & Love and Lieff Cabraser.  Saveri knew that the agreement provided that Criden & Love would expect its referral fee to be paid even if Lieff Cabraser later made an appearance on behalf of another client.

55.    Saveri knew that Criden & Love expected a 12.5% referral fee from Saveri if he continued to work on the *Titanium Dioxide* case after he opened up his new law firm.

56.    Saveri sought and received a lead counsel role in the *Titanium Dioxide* litigation, and generated a $3.77 million lodestar at the Saveri Law Firm that would have otherwise been part of Lieff Cabraser's lodestar.

57.    Saveri understood that if he sought to continue to work in the *Titanium Dioxide* case after he started his new law firm, Criden & Love would expect to be compensated with a 12.5% referral fee on any recovery by his new firm.  With this understanding, Saveri sought lead counsel status, continuing his leadership role in the case, and built up a $3.77 million lodestar.  These acts by Saveri and the Saveri Law Firm demonstrate that they assented to Criden & Love's 12.5% referral fee.

58.    In addition, Criden & Love contacted Saveri after he was appointed a third lead counsel to congratulate him and re-confirm the fact of the referral.  Not once did Saveri disavow the referral fee.

59.    Because Saveri and the Saveri Law Firm have not paid Criden & Love the agreed-upon 12.5% referral fee, Criden & Love has been damaged.

-15-

**SER 097**

## COUNT III
### (Money Had and Received)

60.     Claimant realleges the allegations of paragraphs 1 through 46 as if set forth herein in full.

61.     Saveri and the Saveri Law Firm have received a $10 million fee in the *Titanium Dioxide* antitrust litigation because Criden & Love referred Isaac Industries to Saveri and Lieff Cabraser.

62.     Saveri and the Saveri Law Firm have refused to pay Criden & Love its 12.5% referral fee.

63.     It would work an injustice if Saveri and the Saveri Law Firm were permitted to keep the $10 million fee without paying Criden & Love its 12.5% referral fee.

64.     As a direct result of Saveri and the Saveri Law Firm's refusal to pay Criden and Love its 12.5% referral fee, Criden and Love has suffered damages.

-16-

SER 098

**PRAYER FOR RELIEF**

**WHEREFORE,** Criden & Love demands the following relief:

     (A) actual, incidental and consequential damages;

     (B) restitution and/or disgorgement damages;

     (C) costs, pre-judgment interest, post-judgment interest, and attorneys' fees; and

     (D) such other further relief as the Panel deems appropriate.

Dated: February 25, 2014          Respectfully submitted,

By: _____
         Curtis J. Mase, Esq.

**MASE, LARA, EVERSOLE, P.A.**
2601 S. Bayshore Drive, Suite 800
Miami, FL 33133
Tel: 305-377-3770
Fax: 305-377-0080
E-Mail: cmase@mletrial.com

*Attorneys for Claimant*

-17-

# <u>EXHIBIT A</u>

**Kevin Love**

| | |
|---|---|
| **From:** | Fastiff, Eric B. [EFASTIFF@lchb.com] |
| **Sent:** | Monday, February 08, 2010 4:17 PM |
| **To:** | Kevin Love |
| **Subject:** | RE: TIO2 Antitrust Action |

Agreed.

Eric B. Fastiff
Lieff, Cabraser, Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000 x.2207
Fax: (415) 956-1008
www.lieffcabraser.com

**From:** Kevin Love [mailto:KLove@cridenlove.com]
**Sent:** Monday, February 08, 2010 1:10 PM
**To:** Fastiff, Eric B.
**Subject:** TIO2 Antitrust Action

Eric,

Below is our standard referral agreement. If you agree with the terms below, please confirm by reply e-mail.
Thanks.

Lieff Cabraser Heimann & Bernstein, LLP agrees to pay Criden & Love, P.A. a referral fee of 12.5% (Twelve and One Half Percent) of its fees, including any multiples on hours that it receives in this matter ("Total Fees"). Total Fees does not include any monies received for reimbursement of expenses. Lieff Cabraser agrees to pay the referral fee to Criden & Love even if Lieff Cabraser later procures another client in this matter. If Lieff Cabraser receives significantly less than its lodestar in the case, Criden & Love agrees to discuss in good faith a reasonable accommodation to the amount of the referral fee.

Both law firms agree that all disputes related to or arising from this referral agreement shall be resolved by arbitration conducted by the American Arbitration Association ("AAA").

Please confirm this referral arrangement before you file the complaint by reply e-mail.

Thanks.

Kevin

Kevin Bruce Love
Criden & Love, P.A.
7301 SW 57th Court, Suite 515
South Miami, Florida 33143
(t) 305-357-9010
(f) 305-357-9050
klove@cridenlove.com

2/8/2010

**SER 101**

# EXHIBIT 3

American Arbitration Association
*Dispute Resolution Services Worldwide*

## ARBITRATION
### Answering Statement and Counterclaim Request

| *MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box.* There is no additional administrative fee for this service. | ☐ |
|---|---|

| Name of Claimant | Name of Representative (if known) |
|---|---|
| Michael E. Criden, P.A., d/b/a Criden & Love, P.A. | Curtis J. Mase, Esq. |
| Address: | Name of Firm (if applicable) |
| 7301 SW 57th Court, Suite 515 | Mase Lara Eversole, PA |
|  | Representative's Address: |
|  | 2601 South Bayshore Drive, Suite 800 |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| South Miami | FL | 33143 | Miami | FL | 33133 |

| Phone No. | Fax No. | Phone No. | Fax No. |
|---|---|---|---|
| (305) 357-9000 | (305) 357-9050 | (305) 377-3770 | (305) 377-0080 |

| Email Address: | Email Address: |
|---|---|
| klove@cridenlove.com | cmase@mletrial.com |

| AAA CASE # (if known)  32 194 Y 00123 14 | Filing a Counterclaim: ☐Yes   ☒No  *If yes, please describe nature of counterclaim in space below.* |
|---|---|

**PLEASE ANSWER CLAIMANT DEMAND FOR ARBITRATION (AND DESCRIBE COUNTERCLAIM, IF APPLICABLE):**
*Attach additional pages as necessary.*

Respondents Joseph Saveri Law Firm, Inc. ("Law Firm") and Joseph R. Saveri, a natural person ("Saveri") deny in its entirety the Claim of Michael E. Criden d/b/a Criden & Love, P.A. ("Criden"). Law Firm and Saveri object to arbitration jurisdiction and to Miami as the arbitration venue. See attachments. Law Firm and Saveri reserve the right to assert any applicable defenses and counterclaims should this matter proceed to arbitration.

Attachment A (Objection to Arbitration) R-7(c)
Attachment B (Fixing of Locale) R-11

| Dollar Amount of Claim or Counterclaim $ 1,200,000.00 | Other Relief Sought:  ☒Attorneys Fees   ☒Interest   ☒Arbitration Costs   ☐Punitive/ Exemplary   ☐Other |
|---|---|

| Amount Enclosed $_____    In accordance with Fee Schedule:   ☐Flexible Fee Schedule   ☐Standard Fee Schedule |
|---|

**PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:**

Antitrust; Complex Attorney Fee Disputes; Arbitrability Objections

| Hearing locale  San Francisco, CA | (check one) ☑Requested by Respondent | ☐Locale provision included in the contract |
|---|---|---|

| Estimated time needed for hearings overall: | hours or | days | (premature to estimate) |
|---|---|---|---|

| Signature (may be signed by a representative)   Date: 03/14/2014 | Name of Representative |
|---|---|
|  | Robert H. Bunzel, Esq. |
| Name of Respondent | Name of Firm (if applicable) |
| Joseph Saveri Law Firm, Inc. and Joseph R. Saveri | Bartko, Zankel, Bunzel & Miller |
| Address (to be used in connection with this case) | Representative's Address: |
| c/o Representative @ One Embarcadero Center, Suite 800 | One Embarcadero Center, Suite 300 |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| San Francisco | CA | 94111 | San Francisco | CA | 94111 |

| Phone No. | Fax No. | Phone No. | Fax No. |
|---|---|---|---|
| (415) 956-1900 | (415) 956-1152 | (415) 956-1900 | (415) 956-1152 |

| Email Address: | Email Address: |
|---|---|
| rbunzel@bzbm.com | rbunzel@bzbm.com |

**PLEASE SEND TWO COPIES OF THIS ANSWERING STATEMENT, WITH THE FILING FEE FOR ANY COUNTERCLAIM, AS PROVIDED FOR IN THE RULES, TO THE AAA. SEND THE ORIGINAL ANSWERING STATEMENT TO THE CLAIMANT.**

Please visit our website at www.adr.org if you would like to file this counterclaim online.   AAA Customer Service can be reached at 800-778-7879

*1*

**SER 103**

# ATTACHMENT A

Robert H. Bunzel, State Bar No. 99395
Charles G. Miller, State Bar No. 39272
BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California  94111
Telephone:  (415) 956-1900
Facsimile:  (415) 956-1152

Attorneys for Respondents
JOSEPH SAVERI LAW FIRM, INC.
and JOSEPH R. SAVERI

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| MICHAEL E. CRIDEN, P.A., d/b/a CRIDEN & LOVE, P.A., a Florida corporation,<br><br>Claimant,<br><br>v.<br><br>JOSEPH SAVERI LAW FIRM, INC., a California corporation, and JOSEPH R. SAVERI, an individual,<br><br>Respondents. | Case No. 32 194 Y 00123 14<br><br>**ATTACHMENT A TO ANSWERING STATEMENT: RESPONDENTS' OBJECTION TO ARBITRATION** |

Respondents Joseph Saveri Law Firm, Inc. ("Law Firm"), a California corporation, and Joseph R. Saveri, a natural person ("Saveri"), timely object to the jurisdiction of the arbitrator and the arbitrability of the February 25, 2014 claim ("Claim") of Michael E. Criden, dba Criden & Love, P.A. ("Criden") on each of the following grounds:

1.      Neither Law Firm nor Saveri is a party to an agreement providing for arbitration of the Claim.

2.      Neither Law Firm nor Saveri is a signatory to the referral "agreement" – an email communication between Criden and another law firm, Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB").

-1-

ATTACHMENT A TO ANSWERING STATEMENT
Case No. 32 194 Y 00123 14

**SER 105**

3.      Any agreement which the communication might have created is not binding on Law Firm or Saveri and does not provide any direct benefits, create any rights or impose any obligations on Law Firm or Saveri.

4.      The communication—between Criden and LCHB—does not contain any arbitration provision binding Law Firm or Saveri.

5.      Even were there an agreement to arbitrate between Criden and LCHB, Law Firm has no obligations under such agreement.

6.      Law Firm was formed in June 2012, long after the email exchange which Criden claims created an agreement to pay a referral fee.

7.      Even were there an agreement to arbitrate between Criden and LCHB, Saveri has no obligations under such agreement.

8.      Saveri is not individually obligated to arbitrate as a partner or former partner of LCHB, a Limited Liability Partnership.

9.      Neither Law Firm nor Saveri is a signatory to the alleged arbitration agreement -- an email attached to the Claim. The email exchange on its face describes LCHB as an "LLP", which is a California Limited Liability Partnership. California Corporations Code § 16306(c) provides:

> **a partner in a registered limited liability partnership is not liable** or accountable, directly or indirectly, including by way of indemnification, contribution, assessment, or otherwise, for debts, **obligations, or liabilities of or chargeable to the partnership** or another partner in the partnership, whether arising in tort, contract, or otherwise, that are incurred, created, or assumed by the partnership while the partnership is a registered limited liability partnership, by reason of being a partner or acting in the conduct of the business or activities of the partnership.

10.     LCHB is a registered LLP. Unlike general partners, limited liability partners are not responsible for obligations of the partnership.

11.     Saveri withdrew from LCHB by June 2012. Saveri cannot be compelled to arbitrate a dispute that arose after he withdrew. A withdrawing partner is not liable for obligations

-2-

ATTACHMENT A TO ANSWERING STATEMENT
Case No. 32 194 Y 00123 14

**SER 106**

incurred by the partnership after he withdraws. Cal. Corp. Code § 16703(a). In this case, the obligation to arbitrate arose when the Claim in arbitration was made -- over one year after Saveri withdrew from LCHB.

12.     Absent an agreement to arbitrate, neither Law Firm nor Saveri can be compelled to arbitrate on other grounds, including, but not limited to the estoppel doctrine. In order to be estopped to deny an obligation to arbitrate, a party must receive direct benefits from the contract in issue. *Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061, 1069-1070. Neither Law Firm nor Saveri *directly* benefited from the referral agreement between Criden and LCHB regarding legal fees paid to Law Firm. Accordingly, neither Law Firm nor Saveri is bound to arbitrate and cannot be compelled to do so.

13.     Since neither Law Firm nor Saveri has agreed to arbitrate, the rules of the American Arbitration Association ("AAA") that permit arbitrators to decide questions of jurisdiction are not applicable. See, *e.g., Roe v. Ladymon,* 318 SW3d 502, 514 (2010).

By this objection, as permitted by AAA Commercial Rules, R-7(c), Saveri does not concede that AAA or the Arbitrator(s) have the authority to rule that Saveri is compelled to arbitrate. Saveri reserves all rights to seek appropriate judicial relief to restrain the parties from pursuing this arbitration or from entering or enforcing an arbitral award, if any.

DATED: March 14, 2014

> BARTKO, ZANKEL, BUNZEL & MILLER
> A Professional Law Corporation
>
> By: _____
>         Robert H. Bunzel
>     Attorneys for Respondents
> JOSEPH SAVERI LAW FIRM, INC.
>     and JOSEPH R. SAVERI

-3-

ATTACHMENT A TO ANSWERING STATEMENT
                                                        Case No. 32 194 Y 00123 14

**SER 107**

# ATTACHMENT B

Robert H. Bunzel, State Bar No. 99395
Charles G. Miller, State Bar No. 39272
BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

Attorneys for Respondents
JOSEPH SAVERI LAW FIRM, INC.
and JOSEPH R. SAVERI

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| MICHAEL E. CRIDEN, P.A., d/b/a CRIDEN & LOVE, P.A., a Florida corporation,<br><br>   Claimant,<br><br>  v.<br><br>JOSEPH SAVERI LAW FIRM, INC., a California corporation, and JOSEPH R. SAVERI, an individual,<br><br>   Respondents. | Case No. 32 194 Y 00123 14<br><br>**ATTACHMENT B TO ANSWERING STATEMENT: OBJECTION TO MIAMI, FLORIDA AS ARBITRATION LOCALE** |

Respondents Joseph Saveri Law Firm, Inc. ("Law Firm") and Joseph R. Saveri ("Saveri"), have timely objected to the jurisdiction of the arbitrator and the arbitrability of the February 25, 2014 claim ("Claim") of Michael E. Criden, dba Criden & Love, P.A. ("Criden"). See Attachment A and American Arbitration Association ("AAA") Commercial Rules, R-7(c).

To the extent an arbitration proceeds on the Claim, the arbitration locale should not be in Miami, Florida for the reasons that follow.

### Introduction

This is a claim by a Miami law firm seeking a referral fee from a San Francisco law firm and San Francisco lawyer, neither of whom were ever in contract with claimant, following settlement of a class action antitrust suit regarding a global conspiracy to fix prices for titanium

-1-

dioxide, used in paints and other products (the "TiO2 Action").[1]  The legal work in the TiO2 Action was substantially performed in San Francisco, was the subject of 90 depositions in Canada, England, Italy, 16 U.S. states and the District of Columbia (with only one deposition in Florida). The cases were consolidated for trial and settled in the District of Maryland federal court.

The present Claim concerns work at three San Francisco law firms as co-lead counsel in the TiO2 Action (Statement of Claim p. 10, ¶¶ 32-33), and the relationship of the Law Firm and Saveri to another San Francisco firm, Lieff Cabraser Heimann and Bernstein ("LCHB"), where Saveri previously worked.

Criden does not claim that it entered into an agreement with Law Firm or with Saveri.  Criden only asserts claims against Law Firm and Saveri arising out of the alleged contract between LCHB and Criden for a referral fee.  (*Id.* at ¶¶ 28-31.)  That referral fee has been paid by LCHB.  Criden now wants a referral fee from non-signatories Law Firm and Saveri for work done in the TiO2 Action after Saveri left LCHB and while Saveri and Law Firm were representing another client.

The co-lead counsel work that is the subject of the Claim was largely performed in San Francisco.  Criden and its client had but minor roles in the prosecution of the litigation involved in the TiO2 Action.[2]  In proof or defense of the current AAA Claim, there is virtually no relationship to Miami or Florida, other than the fact Criden and its client in the TiO2 Action may have happened to reside there.

### Applicable Standard for Fixing Arbitration Locale

The arbitration agreement alleged by Criden and attached as Exhibit A to the Statement of Claim calls for arbitration between the signatory law firms—Criden on the one hand, and LCHB on the other—and does not mention a venue nor contain a forum selection clause. Moreover, because there is no writing or agreement between the parties to this arbitration—Criden

---

[1]     *In re Titanium Antitrust Litigation,* No. 10-cv-00318 RDB, USDC Maryland; *see* http://www.tio2antitrustlitigation.com.
[2]     Criden alleges that "referral fees are" its "primary source of income." (Statement of Claim ¶ 5.)

-2-

ATTACHMENT B TO ANSWERING STATEMENT
Case No. 32 194 Y 00123 14

**SER 110**

on one hand and Law Firm and Saveri on the other—there is no agreement regarding venue or forum selection between the parties.

In its February 15, 2014 Demand for Arbitration form, Criden seeks to designate "Miami, FL" as "Hearing locale." Law Firm and Saveri object to arbitration jurisdiction and to selection of Miami as the arbitral location. San Francisco, California, is the far more appropriate venue if there is to be an arbitration.

"When the parties' arbitration agreement is silent with respect to locale, and if the parties disagree as to the locale, the AAA may initially determine the place of arbitration, subject to the power of the arbitrator after appointment, to make a final appointment on the locale." AAA Commercial Rules, R-7(a); accord, Reed & Martin, Inc. v. Westinghouse Elec. Corp., 439 F.2d 1268, 1273-4 (2d.Cir. 1971). Arbitral venue determinations are generally made by the institution's administrative staff or someone designated by the institution to determine the issue. Id; Alternative Dispute Resolution, The Rutter Group (2013) ¶ 5:384.9, p. 5-252. Factors considered in fixing locale for a disputed arbitration venue are:

> ...criteria such as location of the parties, witnesses, counsel and documents, and convenience of the parties.

Id. Here, the majority of witnesses and documents are in California. There is very little association with Florida. The vast weight of convenience and efficient use of resources favors arbitration, if there is to be one, venued in San Francisco. Alternatively, Baltimore, Maryland, is the locus of the underlying legal filings, where settlement approval of legal fees for the TiO2 Action occurred and where other potential witnesses are officed or are located.

### Relevant Witnesses and Documents

Here, the parties and their counsel are in different states. Forum non conveniens decisions often look to third party convenience when determining proper venue. "In balancing the convenience of the witnesses, primary consideration is given to third part[ies], as opposed to employee witnesses." Kannar v. Alticor, Inc., No. 08–5505, 2009 WL 975426 (N.D.Cal. Apr. 9, 2009); Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc., 42 F.Supp.2d 821, 834

<div style="text-align: center">-3-</div>

ATTACHMENT B TO ANSWERING STATEMENT
Case No. 32 194 Y 00123 14

<div style="text-align: right"><strong>SER 111</strong></div>

(N.D.Ill.1999).  All third party witnesses are outside Florida.  Many, if not most, are in San Francisco.

### a. The TiO2 Action Did Not Concern Florida

The TiO2 Action concerned multiple cases filed in the United States District Court for the District of Maryland, presided over by Judge Richard Bennett.  The plaintiffs were Haley, Paint ("Haley") , Isaac Industries ("Isaac") (referred by Criden to LCHB) and Breen Color Concentrates ("Breen").  Haley is in Lancaster, Pennsylvania, and Breen is in Lambertville, New Jersey.  Only Isaac is in Florida.

Haley filed the complaint initiating the  TiO2 Action on February 9, 2010. (Dkt. 1, TiO2 Action).  Isaac, represented by LCHB, filed its TiO2 complaint on February 12, 2010, and a Consolidated Complaint was filed by Haley and Isaac on April 12, 2010.  (Dkt. 51.)  On July 13, 2011, almost a year before Law Firm was in existence or Saveri left LCHB, Breen (represented by separate counsel) moved to intervene in the TiO2 Action (Dkt. 164), and intervention was granted on July 29, 2011.  (Dkt. 180.)

Saveri was one of the lawyers representing Isaac at LHCB.  Saveri withdrew as a partner of LCHB by June 2012, and began to practice at Law Firm shortly thereafter.  Law Firm and Saveri  entered an appearance in the TiO2 Action on behalf of Breen, an existing and separately represented party to the TiO2 Action, on June 1, 2012. (Dkt. 294.)  LCHB continued to prosecute the case on behalf of Isaac after Saveri's withdrawal from LCHB.

Defendants in the TiO2 Action were E. I. duPont de Nemours and Company ("DuPont"), Cristal USA, Inc. ("Cristal USA"); Kronos Worldwide, Inc. ("Kronos"), and Huntsman International LLC ("Huntsman").  DuPont is headquartered in Wilmington, Delaware.  Cristal USA's locus of operations is in Hunts Valley, Maryland, with its global headquarters in Jeddah, Saudi Arabia. Kronos is headquartered in Dallas, Texas.  Huntsman is headquartered in Salt Lake City, Utah, and The Woodlands, Texas.  No Defendant had a business operation in Florida.

-4-

ATTACHMENT B TO ANSWERING STATEMENT
Case No. 32 194 Y 00123 14

**SER 112**

The TiO2 Action settled in Summer and Fall of 2013 for $163.5 million. Attorney's fees of $54.5 million in fees and costs of $4,569,271.86 were awarded and have been allocated and paid to multiple plaintiff law firms. Only one such firm, Criden, is in Florida.

In its Claim, Criden alleges that the legal work done by Law Firm and Saveri in the TiO2 action after he left LCHB would or should have been done by LCHB which had a contract with Criden. (Statement of Claim, ¶¶ 34-35.) While implausible and speculative, this allegation raises facts relevant to prosecution and defense of the Claim and thus concern the parties, lawyers and work performed in the case.

No meetings, emails or telephone calls regarding the conspiracy alleged in the TiO2 Action occurred in or emanated from Florida. Rather, those meetings and conspiratorial conduct took place at the defendants' headquarters in diverse other states and at meetings of trade associations and other contacts in cities throughout Europe. None were alleged to have occurred in Florida. The only contact with Florida at issue in the TiO2 Action were limited purchases of TiO2 by Isaac.

The litigation had no nexus to Florida. Discovery took place all over the world. Ninety depositions were taken in Canada, England, Italy, 16 separate U.S. states and the District of Columbia (with only one deposition, Isaac, in Florida). Attached hereto as Exh. 1 are pages 37-40 from Dkt. 545-3, filed October 18, 2013 in the TiO2 action, describing by date and situs the many depositions in the case. Only one was in Florida (Isaac).

**b.  Relevant Lawyer Witnesses in the TiO2 Action Are Not in Florida.**

Plaintiffs' lawyers in the TiO2 Action are located in San Francisco, Baltimore, Minneapolis, Philadelphia, and New York City. Other than Criden, none of the lawyers with information relevant to the present Claim are in Florida.

Lead Counsel, who are the most knowledgeable, were Gold Bennett Cera & Sidener, LLP, LCHB, and the Joseph Saveri Law Firm, Inc. Criden alleges at ¶¶ 33 and 34 of the Statement of Claim that calculation of fees paid to the three lead counsel firms is central to its

-5-

ATTACHMENT B TO ANSWERING STATEMENT
Case No. 32 194 Y 00123 14

**SER 113**

Claim. All would be witnesses were this matter arbitrated, and all are in San Francisco as are all of the individual lawyers in the lead counsel firms.[3]

Likewise, defense lawyers in the TiO2 action with potentially relevant knowledge are outside Florida: DuPont was represented by Crowell & Moring out of its Washington, DC, office, Cravath, Swaine & Moore out of its New York City office, and local counsel in Baltimore; Cristal USA was represented by Arnold & Porter out of its Washington DC office, and James Ulwick of Baltimore, Maryland. Kronos was represented by Locke Lord of Dallas, Texas; Huntsman was represented by Ray Quinney of Salt Lake City, Utah, and Vinson & Elkins of Houston, Texas.

All court proceedings were in Baltimore. No third party discovery or other proceedings took place in Florida. (The only work in Florida was that done by Criden associated with the agreement and the preparation of Isaac for deposition and document review.) The chart below shows where potential lawyer witnesses reside -- almost entirely outside Florida -- and is substantially San Francisco-centric:

| Name | Location | Affiliation | Located in Florida |
|------|----------|-------------|--------------------|
| Joseph Saveri | San Francisco | Lieff, Cabraser, Heimann & Bernstein LLP ("LCHB"); Joseph Saveri Law Firm, Inc. ("JSLF") | No. |
| Lisa Leebove | San Francisco | JSLF | No |
| Kevin Rayhill | San Francisco | JSLF | No |
| Ryan McEwan | San Francisco | JSLF | No |
| Douglas Clevenger | San Francisco | JSLF | No |
| Eric Fastiff | San Francisco | LCHB | No |

[3]     Plaintiffs' Liaison Counsel was Shapiro Sher Guinot & Sandler, LLP, of Baltimore, MD; the Plaintiff Executive Committee was Berger & Montague of Philadelphia, PA, and Grant & Eisenhoffer of New York, NY.

-6-

**SER 114**

| Name | Location | Affiliation | Located in Florida |
|------|----------|-------------|---------------------|
| | Francisco | | |
| Daniel Hutchinson | San Francisco | LCHB | No |
| Eduardo Santancana | San Francisco | LCHB | No |
| Brendan Glackin | San Francisco | LCHB | No |
| Solomon Cera | San Francisco | Gold, Bennett, Cera & Sidener, LLP ("GBSS") | No |
| Andrew Dirksen | San Francisco | GBSS | No |
| Paul Sandler | Baltimore | Shapiro Sher Guinot & Sandler ("SSGS") | No |
| Robert Levin | Baltimore | SSGS | No |
| Linda Nussbaum | New York City | Kaplan Fox; Grant & Eisenhofer | No |
| Robert Kaplan | New York City | Kaplan Fox | No |
| | Washington, DC | Crowell & Moring | No |
| | New York City | Cravath, Swaine & Moore | No |
| | Washington, DC | Arnold & Porter | No |
| | Dallas, TX | Locke Lorde | No |
| | Salt Lake City, UT | Ray Quinney | No |
| | Houston, TX | Vinson & Elkins | No |
| Michael Criden | South Miami, FL | Criden & Love, P.A. | Yes |
| Kevin Love | South Miami, FL | Criden & Love, P.A. | Yes |

### c.  No Florida Contacts Concerning Law Firm Client Breen

Criden in its Claim seeks to recover from Law Firm 12.5% of the legal fees allocated to Law Firm while it was representing Breen and after Saveri left LCHB. (Statement of Claim, ¶ 28.) Breen is in Lambertville, New Jersey. It was represented by counsel from Minneapolis when it intervened in the TiO2 Action in 2011. Criden did not represent Breen. Relevant facts regarding Saveri's representation of Breen, which is a key subject of the Claim, have no relationship to Florida whatsoever.

-7-

### d.  Application of California Law to the Claim

The alleged referral fee agreement (Statement of Claim, Exh. A) was made, if at all, by Eric Fastiff, who is located in California, when he responded to Criden. There were no meetings or discussions of the referral agreement in Florida at the time made, and no correspondence other than the email of which Saveri is aware.

The referral agreement concerns the legal work of licensed California attorneys, who are subject to the California Rules of Professional Conduct, which differ from the ABA Model Rules of other states. The legal work was substantially done in California. The arbitration clause is silent regarding choice of law, and, in such instance, the law of the state with the greatest interest in application of its law should govern. *See*, <u>Restatement Conflict of Laws 2d</u>, § 188 [consider which state has "the most significant relationship to the transaction"]. Here, California has the greatest connection and interest in application of its laws including as to the sharing of fees earned by attorneys licensed in the state.  California arbitrators should be required.

### Conclusion

For the above reasons, if the Claim is arbitrable, arbitrator selection should be without reference to any geographical nexus to Florida. Any arbitrator should be conversant in antitrust, complex fee disputes and the enforceability of referral fee agreements under California law.[4]

DATED:  March 14, 2014

> BARTKO, ZANKEL, BUNZEL & MILLER
> A Professional Law Corporation
>
> By:  _____
> Robert H. Bunzel
> Attorneys for Respondents
> JOSEPH SAVERI LAW FIRM, INC.
> and JOSEPH R. SAVERI

---

[4]     Objection to Miami as a venue and preference of San Francisco is made without prejudice to the rights of Law Firm and Saveri to contest arbitration jurisdiction and arbitrability of the Claim.

-8-

ATTACHMENT B TO ANSWERING STATEMENT
Case No. 32 194 Y 00123 14

**SER 116**

# EXHIBIT 1

The motions requested judicial assistance from authorities in Canada, the United Kingdom and Italy in an effort to obtain testimony from these four Huntsman former employees. On August 3, 2012, the Court granted Plaintiffs' Motions for Issuance of Letters Rogatory to assist Plaintiffs' effort to obtain testimony from these four Huntsman former employees, who were located in British Columbia (ECF No. 317), the United Kingdom (ECF Nos. 318, 319), and Italy (ECF No. 320). Although Plaintiffs were required to retain (or at least confer with) counsel in these countries in the meantime, recourse to the courts of these countries largely proved to be unnecessary, because the witnesses eventually were represented by Huntsman's counsel and agreed to be deposed pursuant to the Federal Rules in their respective home countries in the three months following the formal close of merits discovery on September 1, 2012. (*See* the table below summarizing depositions.)

### 4.   Depositions

74.   Plaintiffs conducted or participated in depositions of over ninety (90) individuals over the course of nearly one hundred (100) days. Depositions were conducted in Maryland, Pennsylvania, California, Texas, Florida, Nevada, Illinois, New York, New Jersey, Ohio, Kentucky, Oklahoma, and other states.  For example, Plaintiffs' Counsel conducted (20) depositions of DuPont's current and former employees, seventeen (17) depositions of both Millennium's and Huntsman's current and former employees, and fourteen (14) depositions of Kronos's current and former employees. Plaintiffs also conducted or participated in more than one dozen depositions of experts in this case, as well as Defendants' six (6) depositions of the Plaintiffs' current and former employees, and several depositions of non-parties.

75.   The depositions taken in this case are summarized in the following table:

| DATE | NAME | ENTITY | LOCATION |
|------|------|--------|----------|
| 03/27/2012 | Haley, Robert | Haley Paint | Philadelphia, PA |

37

SER 118

Case 1:10-cv-00318-RDB   Document 545-3   Filed 10/18/13   Page 41 of 69

| DATE | NAME | ENTITY | LOCATION |
|------|------|--------|----------|
| 04/12/2012 | Giandonato, Joe | Haley Paint (f)[4] | Philadelphia, PA |
| 04/13/2012 | McManus, Dan | Haley Paint (f) | Philadelphia, PA |
| 04/19/2012 | Werts, Bill | Haley Paint (f) | Philadelphia, PA |
| 04/20/2012 | Lamb, Russell | Plaintiffs' Expert | Philadelphia, PA |
| 04/24/2012 | Avan, David | Isaac Industries, Inc. | South Miami, FL |
| 04/24/2012 | Phillips, Curtis | Kronos | Dallas, TX |
| 04/25/2012 | Rogers, Lawrence | Kronos | Dallas, TX |
| 04/30/2012 | Lux, Darryl | Kronos (f) | Atlanta, GA |
| 05/03/2012 | Legnetti, Paul | Breen Color | Flemington, NJ |
| 05/16/2012 | Clover, Jim | Millennium | Baltimore, MD |
| 05/17/2012 | Kuhnen, Rob | Huntsman (f) | Houston, TX |
| 05/18/2012 | Snell, Eugene Bryan | DuPont | Washington, D.C. |
| 05/22/2012 | Bassett, Jerry | Millennium | Baltimore, MD |
| 05/22/2012 | Herrmann, Doug | Millennium | Baltimore, MD |
| 05/23/2012 | Daney, Colette | DuPont | Washington, D.C. |
| 05/23/2012 | Sanzalone, David | Kronos | Dallas, TX |
| 05/24/2012 | Card, Michael | Millennium (f) | Chicago, IL |
| 05/30/2012 | Lopez, Ann | DuPont | Washington, D.C. |
| 05/31/2012 | Alexander, Samuel | Millennium (f) | Birmingham, AL |
| 05/31/2012 | Taylor, Stewart | Huntsman (f) | Houston, TX |
| 06/07/2012 | Lambert, Chris | Huntsman (f) | Houston, TX |
| 06/12/2012 | Corona, Ben | Kronos | Dallas, TX |
| 06/13/2012 | Andrushko, Wendy | DuPont | Toronto, Ontario Canada |
| 06/13/2012 | Zwicker, Bruce | Millennium (f) | Baltimore, MD |
| 06/15/2012 | Vercollone, David | Millennium (f) | Boston, MA |
| 06/19/2012 | Gillette, Richard | Millennium | Baltimore, MD |
| 06/21-22/2012 | Cianfichi, Gary | Millennium (f) | Baltimore, MD |
| 06/26/2012 | O'Sullivan, Peter | DuPont | Washington, D.C. |
| 06/26/2012 | Valente, Agostino | Kronos | Cranbury, NJ |
| 06/27/2012 | Dixon, Michael | Huntsman | New York, NY |
| 06/28/2012 | Maiter, Mahomed | Huntsman | New York, NY |
| 06/29/2012 | Burtis, Michelle | Defendants' Expert | Washington, D.C. |
| 07/03/2012 | Edwards, Ian | DuPont (f) | London, England UK |
| 07/10/2012 | Severance, Sam | DuPont (f) | Wilmington, DE |
| 07/10/2012 | Wigdor, Larry | Kronos (f) | Dallas, TX |
| 07/11/2012 | Rowe, Richard | Millennium | Baltimore, MD |
| 07/12/2012 | Imes, John | DuPont (f) | Columbus, OH |
| 07/12/2012 | Underhill, Wayne | Kronos (f) | Dallas, TX |

[4] "(f)" means that the witness was a former employee of the identified party or non-party at the time of their deposition.

SER 119

Case 1:10-cv-00318-RDB   Document 545-3   Filed 10/18/13   Page 42 of 69

| DATE | NAME | ENTITY | LOCATION |
|---|---|---|---|
| 07/13/2012 | Stoll, Mark | Millennium | Baltimore, MD |
| 07/17/2012 | DeJong, Bart | Millennium (f) | Reno, NV |
| 07/17/2012 | Keefer, Jeffrey | DuPont (f) | Washington, D.C. |
| 07/17-18/2012 | Fisher, Jim | IBMA | Savannah, GA |
| 07/18/2012 | Heyes, Stuart | Huntsman (f) | Houston, TX |
| 07/19/2012 | Hubbard, Connie | DuPont | Washington, D.C. |
| 07/24/2012 | Hall, John | Millennium | Baltimore, MD |
| 07/24/2012 | Weaver, Douglas | Kronos | Dallas, TX |
| 07/27/2012 | Maas, Joseph | Kronos | Dallas, TX |
| 07/27/2012 | Quinn, Mike | Huntsman | Houston, TX |
| 07/30/2012 | Narkin, John | Bolognese & Associates (f) | Baltimore, MD |
| 07/31/2012 | Cronshaw, Paul | DuPont (f) | Washington, D.C. |
| 08/01/2012 | Portsmouth, Robert | Huntsman | New York, NY |
| 08/02/2012 | Cerny, Thomas | Kronos | Dallas, TX |
| 08/03/2012 | Woodward, Peter | Kerr-McGee (f) | Oklahoma City, OK |
| 08/06/2012 | Lamb, Russell | Plaintiffs' Expert | Washington, D.C. |
| 08/07/2012 | Verrett, Chad | Millennium | Chicago, IL |
| 08/07/2012 | Olson, Richard | DuPont | Washington, D.C. |
| 08/07/2012 | Shurak, Norm | DuPont (f) | Wilmington, DE |
| 08/08/2012 | Keenan, Tom | Huntsman (f) | Houston, TX |
| 08/10/2012 | Gravel, Jean-Pierre | Kronos | Dallas, TX |
| 08/10/2012 | Perillo, Dorothy | DuPont | Washington, D.C. |
| 08/10/2012 | Spenla, William | DuPont | Washington, D.C. |
| 08/13/2012 | Shankar, Subramaniam | DuPont | Singapore (via telephone) |
| 08/14/2012 | Turner, Simon | Huntsman | New York, NY |
| 08/15/2012 | Parks, Greg | Millennium | Baltimore, MD |
| 08/16/2012 | Goodwin, Ian | Huntsman | New York, NY |
| 08/16/2012 | Hofmann, Michael | DuPont | Singapore (via telephone) |
| 08/20/2012 | Watson, Steve | Kronos | Dallas, TX |
| 08/21/2012 | Gallagher, John | DuPont | New York, NY |
| 08/21/2012 | Williamson, Augustus | Millennium (f) | Baltimore, MD |
| 08/24/2012 | Murrer, David | Millennium | Louisville, KY |
| 08/29/2012 | Rebollar, Luis | DuPont | London, England UK |
| 08/30/2012 | Fisher, Jim | IBMA | Hilton Head Island, SC |
| 08/31/2012 | Beneito, Miguel | DuPont | London, England UK |
| 09/03/2012 | Basson, Henry | Kronos (f) | London, England UK |
| 09/06/2012 | Bradley, Paul | Huntsman | Newcastle upon Tyne, England UK |
| 09/07/2012 | Corvesor, John | Huntsman | Newcastle upon Tyne, |

39

Case 1:10-cv-00318-RDB   Document 545-3   Filed 10/18/13   Page 43 of 69

| DATE | NAME | ENTITY | LOCATION |
|------|------|--------|----------|
| | | | England UK |
| 09/12/2012 | Mitsch, Frank | Wells Fargo | New York, NY |
| 10/03/2012 | Kerr, Dan | Guild CPO | Cleveland, OH |
| 10/10/2012 | Romano, John | Tronox | Oklahoma City, OK |
| 10/18/2012 | Arenson, Greg | Kaplan Fox | New York, NY |
| 10/18/2012 | Gibney, Robert | Tronox (f) | New York, NY |
| 11/05/2012 | Hamilton, Bruce | Plaintiffs' Expert | Baltimore, MD |
| 11/06/2012 | Cutrone, Luigi | Huntsman (f) | Milan, Italy |
| 11/09/2012 | Dean, Jonathan | Huntsman (f) | Newcastle upon Tyne, England UK |
| 11/09/2012 | Lamb, Russell | Plaintiffs' Expert | Washington, D.C. |
| 11/12/2012 | Gray, Kimberly | Plaintiffs' Expert | Chicago, IL |
| 11/13/2012 | Louw, Rob | Huntsman (f) | Newcastle upon Tyne, England UK |
| 11/27/2012 | Coombs, Douglas | Huntsman (f) | Vancouver, British Columbia Canada |
| 01/11/2013 | Detiveaux, Scott | Defendants' Expert | New York, NY |
| 01/22/2013 | Rubinfeld, Daniel | Defendants' Expert | San Francisco, CA |
| 02/07-08/2013 | Willig, Robert | Defendants' Expert | New York, NY |
| 02/13/2013 | Murphy, Kevin | Defendants' Expert | Chicago, IL |
| 03/01/2013 | Hamilton, Bruce | Plaintiffs' Expert | Baltimore, MD |
| 03/05/2013 | Lamb, Russell | Plaintiffs' Expert | Philadelphia, PA |
| 03/19/2013 | Priest, George | Plaintiffs' Expert | New York, NY |
| 09/05/2013 | Rubinfeld, Daniel | Defendants' Expert | New York, NY |

76.    Most of these depositions involved individuals whom Plaintiffs believed had information relevant to proving the price-fixing claim in this case. A substantial amount of time was required by Plaintiffs' Counsel at depositions simply to get witnesses to authenticate records that they had authored or received, and to confirm and corroborate facts that were explicitly detailed in those records, including facts helpful to establishing economic indicia of cartelization and collusion, and to proving Defendants' alleged agreement on TiO2 price increases. Many of these records were critically important in opposing Defendants' *Daubert* Motions and Motions for Summary Judgment and, indeed, some of these records were cited by the Court in denying Defendants' Motions for Summary Judgment.

40

# EXHIBIT 4

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

Rebecca Storrow, Vice President
RebeccaStorrow@adr.org

February 28, 2014
VIA EMAIL

American Arbitration Association
100 SE 2nd St., Ste. 2300
Miami, FL 33131
Ph: 305-358-7777
Fx: 305-358-4931
internet: http://www.adr.org/

Curtis J. Mase, Esq.
Mase Lara Eversole, PA
2601 South Bayshore Drive
Suite 800
Miami, FL  33133

Joseph R. Saveri, Esq.
Joseph Saveri Law Firm
505 Montgomery Street
Suite 625
San Francisco, CA  94111

Re: 32 194 Y 00123 14
     Michael E. Criden, P.A.,
     d/b/a Criden & Love, P.A.,
     a Florida corporation
     and
     Joseph Saveri Law Firm,
     a California corporation,
     and Joseph R. Saveri, an individual

Dear Parties:

Thank you for choosing the American Arbitration Association (AAA) to assist you in resolving your dispute.  The AAA is committed to providing you with the highest level of service in order to facilitate the resolution of your dispute.  This letter, along with the included Arbitration Information Sheet, will serve to provide you with some basic information about the AAA's arbitration process.

I will be your primary contact for this matter and am here to serve as your resource during the administration of your case.  There may be times when you are contacted, on my behalf, by the Director of ADR Services, Maria Rivero.  Please do not hesitate to contact us directly with any questions, issues, or concerns.

This will acknowledge receipt on February 27, 2014, of a Demand for Arbitration dated February 25, 2014, of a controversy arising out of a contract between the above-captioned parties, containing a clause providing for administration by the AAA.  We understand a copy has been provided to Respondent.  A copy of our Commercial Rules and Procedures for Large, Complex Commercial Disputes, may be obtained from our website at www.adr.org.

Claimant has requested that the hearing be held in Miami, Florida.  **Please review the Rules and the Arbitration Information Sheet regarding the locale of hearings.  A respondent may file an answering statement with the AAA within 14 days after confirmation of notice of filing of the demand is sent by the AAA.** Pursuant to the rules, if no answering statement is filed within the stated time, respondent will be deemed to deny the claim. If Respondent wishes to counterclaim, please file directly to the undersigned with the appropriate administrative fee. A copy should also be directly sent to Claimant.

**SER 123**

Inasmuch as the claim exceeds $75,000, the parties shall mediate their dispute pursuant to AAA's Commercial Mediation Procedures, or as otherwise agreed upon by the parties, in accordance with Rule R-9 (Mediation). Absent agreement of the parties, the mediation shall take place concurrently with the arbitration and shall not serve to delay the arbitration proceedings. The parties may mediate their dispute at any time while the arbitration is pending. Any party may unilaterally opt-out of this rule upon notification to the AAA and the other parties to the arbitration.

We invite the parties to consider mediation, at this early stage in the arbitration process, in an effort to resolve your dispute more quickly and economically. If you are interested in Mediation at this time, please contact me at your earliest opportunity.

**This will confirm an Administrative Conference is scheduled on Thursday, March 13, 2014 at 1:00pm EST via conference call.** The Association will initiate this call. For your convenience, the enclosed Arbitration Information Sheet covers items to be discussed on the call. If you are not available at this time, please notify us by calling 305-358-7777 or email riverom@adr.org and submit at least three available dates and times during that week.

**Please dial in to the conference call by using the following telephone number and security code:**

Telephone: **1-888-537-7715**
Security code: **15083676 #**

We encourage counsel to invite client and/or in-house counsel attendance at the initial conference call and preliminary hearing as such involvement often facilitates the process. Among other things, such involvement allows the opportunity to observe and provide feedback regarding schedules being developed, and other process related items.

Finally, in order to assist the AAA in providing you with arbitrators free from conflicts, a Checklist for Conflicts must be completed to list those witnesses you expect to be present, as well as any persons or entities with an interest in these proceedings. The checklist is not exchanged between the parties. The Checklist for Conflicts is due within fourteen days from the date of this letter. The AAA will receive notice of your online submission. To complete the Checklist for Conflicts online, or to register, please visit our website at https://apps.adr.org/webfile/.

Please feel free to call if you have any questions. We look forward to assisting you in this matter.

Sincerely,

Rebecca Storrow                                    Maria Rivero
Vice President                                     Director of ADR Services
305 358 7777                                       305 358 7777
RebeccaStorrow@adr.org                             RiveroM@adr.org

Encl.

Arbitration Information Sheet

# EXHIBIT 5

SER 125

**BARTKO**
**ZANKEL**
**BUNZEL**
BARTKO · ZANKEL · BUNZEL · MILLER

Robert H. Bunzel
rbunzel@bzbm.com

Our File: 2400.001

*A Professional Law Corporation*
One Embarcadero Center · Suite 800
San Francisco, CA 94111
main: 415.956.1900
fax: 415.956.1152
www.bzbm.com

May 16, 2014

VIA EMAIL

Robert T. Sullwold, Esq.
Sullwold & Hughes
235 Montgomery Street, Suite 730
San Francisco, CA  94104

> Re:   *Joseph Saveri Law Firm, Inc., et al. v. Michael E. Criden, P.A.*
>        *dba Criden & Love, P.A.*
>        U.S.D.C. Northern District Case No. 14-cv-01740 EDL

Dear Mr. Sullwold:

We are in receipt of your client's motion to dismiss.  The supporting declaration of Kevin Love refers to documents and emails but fails to attach them. See, in particular, Love Declaration, paragraphs 19, 20, 21, 23, 24, 28, 42, and 44.  Other paragraphs refer to discussions and contacts, but it is unclear if those took place through emails or other written form.  Please send us all documents and emails that are referred to in those declarations or on which they rely so we can properly respond to the motion.  In addition, please advise if Criden & Love (or Michael Criden or Kevin Love) are or were parties to referral fee agreements with (i) any other California attorneys and/or (ii) in connection with cases that are or were pending in state or federal courts in California.  We await your response.

Very truly yours,

Bartko · Zankel · Bunzel · Miller
*A Professional Law Corporation*

Charles G. Miller

RHB/bjs

2400.001/814419.1

**SER 126**

# EXHIBIT 6

SULLWOLD & HUGHES
ATTORNEYS AT LAW
235 MONTGOMERY STREET, SUITE 730
SAN FRANCISCO, CALIFORNIA 94104
FAX (415) 989-9798
TELEPHONE (415) 263-1850

DIRECT DIAL
(415) 263-1853

E-MAIL
rts@greenstamps.com

May 20, 2014

Charles G. Miller, Esq.
Bartko, Zankel, Bunzel & Miller
One Embarcadero Center, Suite 800
San Francisco, CA  94111

Re:   Joseph Saveri Law Firm. Inc., et al. v. Michael E. Criden, P.A.
      United States District Court, Northern District Case No. 3:14-CV-01740 EDL

Dear Mr. Miller:

I am writing in response to your letter of the 16th.  My client, Criden & Love ("C&L"), is willing to provide the following jurisdictional discovery informally:

In response to your request for the emails referred to in the Declaration of Kevin B. Love, please see the attached documents, which have been Bates numbered C&L 000001 through C&L 000025.

In response to your request for information regarding whether Criden & Love ("C&L") was a party to referral fee agreements with other California-based law firms or in other cases pending in the federal courts in California, please be advised as follows:

• Regarding California-based law firms and referrals for cases outside California, C&L has received (or will receive) referrals from Lieff Cabraser in: (1) In re Processed Egg Products, 08-md-2002 (E.D. Pa); (2) In re Refrigerant Compressors, 09-md-2042 (E.D. Mich.); and (3) In re Fasteners Antitrust Litig., MDL 1912 (E.D. Pa.).   In addition, C&L received referral fees from The Furth Firm and Cochette Pitre & McCarthy in Puerto Rican Cabotage, MDL 08-1960 (D.P.R.).

• Regarding cases in the federal courts in California, C&L has received (or might receive) a referral:  (1) In re TFT-LCD, MDL 1827 (N.D. Cal) (Kaplan Fox) (Levin Fishbein); In re Optical Disk Drive, MDL 2143 (N.D. Cal) (Kaplan Fox); and In re Lithium Ion Batteries, MDL 2420 (N.D. Cal) (G&E).  Please note that all of these are MDL cases, meaning the MDL panel sent them to California.

Very truly yours,

Robert T. Sullwold

**SER 128**

# EXHIBIT 7

**Criden & Love California Appearances**

| No. | Attorney | Representing | Docket Information |
|-----|----------|-------------|--------------------|
| 1. | Kevin Bruce Love | Edward Siff, Merna Siff, Ricardo Samper | In re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation, United States District Court, **Central** District of California, **8:10-ml-02151-JVS-FMO** |
| 2. | Kevin Bruce Love and Michael E. Criden | CMP Consulting Services, Inc. (see 5/20/14 Sullwold letter re referral fee) | In Re: Optical Disk Drive Products Antitrust Litigation, United States District Court, **Northern** District of California, **3:10-md-02143-RS** |
| 3. | Kevin Bruce Love and Michael E. Criden | CMP Consulting Services, Inc. | CMP Consulting Services, Inc. v. Sony Corporation et al, United States District Court, **Northern** District of California, **3:09-cv-05114-RS** **(Lead case: 3:10-md-02143-RS)** |
| 4. | Kevin Bruce Love and Michael E. Criden | Armond Faris | Faris v. Netflix, Inc. et al, United States District Court, **Northern** District of California, **4:09-cv-00180-PJH (Lead case: 4:09-md-02029-PJH)** |
| 5. | Kevin Bruce Love and Michael E. Criden | Acutron, Inc. | Acutron, Inc. v. Matson Navigation Co., Inc. et al, United States District Court, **Northern** District of California, **3:08-cv-02600-VRW** |
| 6. | Kevin B Love | Duk Soo Moon | In Re Korean Airlines Co., Ltd. Antitrust Litigation, United States District Court, **Central** District of California, **2:07-ml-01891-SJO-AGR** |
| 7. | Kevin Bruce Love | Arch Electronics, Inc. | MDL No. 1917 In Re: Cathode Ray Tube (CRT) Antitrust Litigation, United States District Court, **Northern** District of California, **3:07-cv-05944-SC** |
| 8. | Kevin B Love | Vista Healthplan Inc. | Vista Healthplan Inc. v. Amgen Inc., United States District Court, **Central** District of California, **2:07-cv-03711-PSG-AGR** |
| 9. | Kevin Bruce Love | CMP Consulting, Inc. | CMP Consulting, Inc. v. Cypress Semiconductor Corporation et al., United States District Court, **Northern** District of California, **4:07-cv-01626-CW** **(Lead case: 4:07-md-01819-CW)** |
| 10. | Kevin Bruce Love | CMP Consulting, Inc., Ryan Edwards | In re: Static Random Access Memory (SRAM) Antitrust Litigation, United States District Court, **Northern** District of California, **4:07-md-01819-CW** |

Criden & Love California Appearances

| No. | Attorney | Representing | Docket Information |
|-----|----------|-------------|--------------------|
| 11. | Kevin Bruce Love | Ryan Edwards | Kreitzer et al v. Cypress Semiconductor Corporation et al, United States District Court, **Northern** District of California, **4:07-cv-00969-CW** **(Lead case: 4:07-md-01819-CW)** |
| 12. | Kevin Bruce Love | Brett Cass | Cass v. British Airways, PLC et al, United States District Court, **Northern** District of California, **3:06-cv-07745-CRB** **(Lead case 3:06-md-01793-CRB)** |
| 13. | Kevin Bruce Love | Brett Cass | In re International Air Transportation Surcharge Antitrust Litigation, United States District Court, **Northern** District of California, **3:06-md-01793-CRB** |
| 14. | Michael E. Criden | Martin Halpren | Halpren v. Supportsoft, Inc. et al, United States District Court, United States District Court, **Northern** District of California, **3:05-cv-00283-SI** |
| 15. | Kevin Bruce Love | Dolphin Consulting Inc. | In Re Dynamic Random Access Memory (DRAM) Antitrust Litigation, United States District Court, **Northern** District of California, **4:02-md-01486-PJH** |
| 16. | Michael E. Criden | Dolphin Consulting, Inc. | Dolphin Consulting, Inc. v. Micron Technology, Inc. et al, United States District Court, **Northern** District of California, **4:02-cv-03903-PJH** **(Lead case: 4:02-md-01486-PJH)** |
| 17. | Michael E. Criden | S & M Farm Supply, Inc. | S & M Farm Supply, Inc. v. Pharmacia Corporation et al, United States District Court, **Northern** District of California, **4:01-cv-04403-CW** |
| 18. | Criden & Love | Referral fee for client of Kaplan Fox (see 5/20/14 Sullwold letter) | In Re TFT-LCD (Flat Panel) Antitrust Litigation, United States District Court, United States District Court, **Northern** District of California, **3:07-md-01827-SI** |
| 19. | Criden & Love | Referral fee for client of G&E (see 5/20/14 Sullwold letter) | In Re Lithium Batteries Antitrust Litigation, United States District Court, United States District Court, **Northern** District of California, **4:13-md-02420-YGR** |
| 20. | Criden & Love | Client of California counsel Lieff Cabraser (see 5/20/14 Sullwold letter) | In Re Processed Egg Products, United States District Court, **Eastern** District of Pennsylvania, **08:md-2002-GP**. |

**Criden & Love California Appearances**

| No. | Attorney | Representing | Docket Information |
|-----|----------|-------------|--------------------|
| 21. | Criden & Love | Client of California counsel Lieff Cabraser (see 5/20/14 Sullwold letter) | In Re Refrigerant Compressors, United States District Court, **Eastern** District of Michigan, **09-md-2042-SFC**. |
| 22. | Criden & Love | Client of California counsel Lieff Cabraser (see 5/20/14 Sullwold letter) | In Re Fasteners Antitrust Litigation, United States District Court, **Eastern** District of Pennsylvania, **MDL 1912-RBS**. |
| 23. | Criden & Love | Client of California counsel Cotchett, Pitre & McCarthy and the Furth Firm (see 5/20/14 Sullwold letter) | Puerto Rican Cabotage, United States District Court, Puerto Rico, **MDL 08-1960-DRD**. |

1  Robert H. Bunzel, State Bar No. 99395
   Charles G. Miller, State Bar No. 39272
2  BARTKO, ZANKEL, BUNZEL & MILLER
   A Professional Law Corporation
3  One Embarcadero Center, Suite 800
   San Francisco, California  94111
4  Telephone:    (415) 956-1900
   Facsimile:    (415) 956-1152
5
   Attorneys for Plaintiffs
6  JOSEPH SAVERI LAW FIRM, INC.
   and JOSEPH R. SAVERI
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11

12  JOSEPH SAVERI LAW FIRM, INC., a        )  No. 3:14-cv-1740 EDL
    California corporation, and JOSEPH R.  )
13  SAVERI,                                )  **DECLARATION OF JOSEPH R.**
                                           )  **SAVERI IN SUPPORT OF**
14          Plaintiffs,                    )  **PLAINTIFFS' OPPOSITION TO**
                                           )  **MOTION OF DEFENDANT**
15       v.                                )  **CRIDEN & LOVE TO DISMISS FOR**
                                           )  **LACK OF PERSONAL**
16  MICHAEL E. CRIDEN, P.A. dba CRIDEN &   )  **JURISIDCTION, OR,**
    LOVE, P.A., a Florida corporation,     )  **ALTERNATIVELY, TO TRANSFER**
17                                         )  **TO SOUTHERN DISTRICT OF**
          Defendant.                       )  **FLORIDA**
18                                         )
                                           )  Date:      July 1, 2014
19                                         )  Time:      9:00 a.m.
                                           )  Courtroom: E
20                                         )  Judge:     Hon. Elizabeth D. Laporte
                                           )
21

22

23

24

25

26

27

28

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

I, JOSEPH R. SAVERI, declare:

1.      I am one of the plaintiffs in this matter, and principal of the plaintiff law firm Joseph Saveri Law Firm, Inc.  I have personal knowledge of the within facts except those asserted on belief which I believe to be true, and I am competent to testify thereto if called upon to do so.

2.      Prior to June 2012, I was a partner in the San Francisco office of the law firm Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser").  During the period relevant to this case, and until my departure, Lieff Cabraser was a registered California limited liability partnership.  I am informed and believed that Lieff Cabraser continued and has continued as a registered California limited liability partnership to this day.

3.      I began work at Lieff Cabraser in April of 1992.   Since that period, I have developed substantial expertise and experience in handling antitrust class actions and other complex class actions and other matters.  During that time, I have personally served as Lead Counsel in a number of antitrust class actions and other cases.

**Plaintiffs Have No Agreement with Criden**

4.      I am informed and believe that on or about February 8, 2010, Lieff Cabraser and defendant Michael Criden ("Criden"), a lawyer in Miami, Florida, engaged in an email exchange (the "Email") whereby Lieff Cabraser purportedly agreed to pay defendant Criden a referral fee of 12.5 percent of any fees Lieff Cabraser received in connection with a lawsuit ultimately known as *In re Titanium Antitrust Litigation*, No. 10-cv-00318 RDB, pending in the United States District Court for the District of Maryland (the "TiO2 Action").  Attached hereto as **Exhibit 1** is a true and correct copy of the Email, which was attached to Criden's Statement of Claim in Arbitration.[1]  I am further informed and believe that Criden referred Isaac Industries, Inc. ("Isaac Industries") as a client in the TiO2 Action to be represented by Lieff Cabraser.

5.      The Email communication was not to or from me or Joseph Saveri Law Firm.  The Email does not refer to any law firm other than Lieff Cabraser.  It does not provide that

---

[1]      See accompanying Decl. Robert H. Bunzel, Exh. 1.

2400.001/816864.1         SAVERI DECL. ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS/TRANSFER - Case No. 3:14-cv-1740 EDL

**SER 134**

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   the purported referral obligation applies to any other law firm, person, or lawyers who may depart

2   Lieff Cabraser.

3          6.      The Email between Lieff Cabraser and Criden also provides in one sentence,

4   without an attorney's fees clause, that Lieff Cabraser and Criden shall arbitrate before the

5   American Arbitration Association ("AAA") any disputes related to or arising from their purported

6   agreement. It does not provide for or mention in any way arbitration between Criden and any

7   other entity or person.

8          7.      Neither Joseph Saveri Law Firm nor I signed or made any agreement with

9   Criden.

10  **Underlying TiO2 Action and its Settlement**

11         8.      On or about February 9, 2010, an antitrust class action complaint was filed

12  by plaintiff Haley Paint Company in the United States District Court for the District of Maryland

13  against a number of defendants, alleging a conspiracy to fix prices of titanium dioxide in violation

14  of Section 1 of the Sherman Act (15 U.S.C. § 1),  and commencing the TiO2 Action

15         9.      On February 12, 2010, Isaac Industries filed a complaint in the District of

16  Maryland, which was consolidated with the Haley Paint complaint in the TiO2 Action. Shortly

17  thereafter, Lieff Cabraser appeared in the TiO2 Action on behalf of Isaac. Lieff Cabraser was

18  appointed one of the Co-Lead Class Counsel, and I functioned as the senior and chief lawyer at

19  Lieff Cabraser on the matter.

20         10.    I have reviewed the May 13, 2014 Declaration of Kevin B. Love submitted

21  in support of the current motion, Dkt. 15-3. At ¶ 35 thereof, he identifies a telephone call in May

22  2012 between me and Mr. Love, in which I did advise him that I would be leaving Lieff Cabraser

23  and continuing to participate in the TiO2 Action. Mr. Love raised the referral fee issue at that

24  time, founded on Lieff Cabraser's representation of Isaac Industries. At the time, I did not agree

25  that I or the Joseph Saveri Law Firm would be bound—or intended to be bound—by Lieff

26  Cabraser's agreement with Love with respect to the referral of Isaac Industries. I did not affirm—

27  or manifest any intention to affirm—the Lieff Cabraser referral agreement with Mr. Love on

28  behalf of myself of the Joseph Saveri Law Firm. There is no evidence that I did.

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

-2-

2400.001/816864.1          SAVERI DECL. ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS/TRANSFER - Case No. 3:14-cv-1740 EDL

**SER 135**

11. I did not ask Mr. Love's permission to continue to participate in the TiO2 Action, as neither I nor my firm planned to or ever took any actions adverse or potentially adverse to my former client Isaac Industries.

12. Thereafter, and prior to June 1, 2012, I withdrew as a partner of Lieff Cabraser. On June 1, 2012, Joseph Saveri Law Firm and I entered an appearance in the TiO2 Action as co-counsel for plaintiff East Coast Colorants LLC dba Breen Color Concentrates ("Breen") along with Vincent J. Esades of the law firm of Heins, Mills & Olson of Minneapolis, Minnesota ("Heins"). **Exhibit 2** is a true copy of that Notice of Appearance. On July 29, 2011, Breen had intervened in the TiO2 Action as plaintiff represented by Heins. Criden did not and does not represent Breen.

13. At no time after I left Lieff Cabraser did the Joseph Saveri Law Firm or I enter an appearance on behalf of Isaac Industries.

14. At no time did I or the Joseph Saveri Law Firm enter into a written fee agreement with Isaac Industries.

15. Because the Joseph Saveri Law Firm had filed a Notice of Appearance for Breen and Lieff Cabraser and Criden continued to represent Isaac Industries, the Joseph Saveri Law firm did not seek a court order to withdraw from representing Lieff Cabraser's client.

16. At no time after June 1, 2012, did the Joseph Saveri Law Firm or I advise Isaac Industries, report to Isaac Industries as its counsel or receive instructions from Isaac Industries as a client. I did not cause Isaac Industries in any way to rely on Joseph Saveri Law Firm or me as its counsel (in contrast to my functioning as Co-Lead Class Counsel, discussed below).

17. On August 7, 2012, a Motion to Amend Case Management Order No. 2 was filed in the underlying TiO2 Action, and a true copy of the Memorandum and proposed Order in support of that motion is attached hereto as **Exhibit 3**. The Memorandum noted that on or about May 29, 2012:

> Mr. Saveri left Lieff Cabraser and opened his own law practice, the
> Joseph Saveri Law Firm, where he continues to play a leadership

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-3-

1    role in representing the plaintiffs in the present matter, along with
     Lieff Cabraser and GBCS.

2

3    The Court appointed Joseph Saveri Law Firm and me as Interim Co-Lead Class Counsel shortly

4    thereafter, by entry of the proposed Order, a true copy of which is attached as part of **Exhibit 3**.

5         18.     The other Co-Lead Counsel in the TiO2 Action and I had discussed since

6    early June 2012 that it would benefit the putative class if I were appointed an interim Co-Lead

7    Class Counsel at my new firm.  Thus, when associates in my new firm, Lisa Leebove and Kevin

8    Rayhill, were moved for admission *pro hac vice* by Plaintiffs' Liaison Counsel Robert Levin on

9    July 25, 2012 and June 29, 2012, respectively, Liaison Counsel in identifying them as counsel for

10   "plaintiffs" or for all plaintiffs including Haley Paint (which was never represented by Lieff

11   Cabraser or Joseph Saveri Law Firm) I believe anticipated the Court's appointment of my firm as

12   Co-Lead Class Counsel, rather than reflecting any retention of Joseph Saveri Law Firm by Isaac

13   Industries or by any named plaintiff other than Breen.  *See* Motions for Admission *Pro Hac Vice*

14   attached hereto as **Exhibits 4** and **5**.

15        19.     As Co-Lead Class Counsel, appointed pursuant to Federal Rules of Civil

16   Procedure Rule 23(g)(1) and (3), I understood then and now that I and the Joseph Saveri Law Firm

17   "must fairly and adequately represent the interests of the class."  *Id*., § (g)(4).  In the TiO2 Action,

18   consistent with other antitrust class actions with which I have been involved, the particular firms

19   separately retained by different name plaintiffs maintain their own separate responsibility for

20   communicating with their individual clients, including the gathering and production of client

21   documents, preparation and verification of interrogatory answers, preparation for and

22   representation of name plaintiffs at deposition, and communication regarding approval of

23   settlements.  This is confirmed in the Isaac Industries' retention agreement with Criden, which

24   provides that Criden "and any other firms we may associate with to represent you":

25        ….will keep you closely informed about the lawsuit and seek your
          input with regard to various issues, including any potential

26        settlement.  We will also represent you in any matter in the litigation
          affecting your status as a class representative.[2]

27

28   [2]    See **Exhibit 9** hereto, discussed at ¶ 35 below.

-4-

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

2400.001/816864.1          SAVERI DECL. ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS/TRANSFER - Case No. 3:14-cv-1740 EDL

SER 137

20.     Consistent with this agreement, before I left Lieff Cabraser, Lieff Cabraser and Criden prepared Isaac Industries principal David Avan for deposition held on April 24, 2012.[3] After I started the Joseph Saveri Law Firm and the TiO2 Action was nearing resolution, Lieff Cabraser and Criden (not I or personnel at the Joseph Saveri Law Firm) conferred with Isaac Industries to advise Isaac Industries regarding the proposed settlement, while Gold Bennett Cera and Sidener advised its client, Haley Paint, and Vincent Esades of Heins—with my input—advised our client Breen on the same subject.

21.     In the fall of 2013, after extensive discovery and motion practice (over 90 depositions were taken worldwide), the Court approved settlement of the TiO2 Action for $163.5 million, and the Court awarded $54.5 million in attorney's fees. The TiO2 Action, including the award of attorney's fees, is final, and a Final Judgment has been entered resolving all claims.  The attorney's fees have been allocated and paid to twelve plaintiff law firms, including Criden.

22.     I am informed and believe that Criden has received approximately $2 million in referral fees related to the TiO2 Action, including sums paid to Criden by Lieff Cabraser related to the purported Email referral agreement for work performed by Lieff Cabraser, which included work performed by me prior to May of 2012 while a partner at Lieff Cabraser. Criden has, in addition, received approximately $1 million in attorney's fees for legal work performed by Criden in the TiO2 Action.

23.     Joseph Saveri Law Firm has also received attorney's fees for legal work performed by it in the TiO2 Action subsequent to June 1, 2012.

**California Contacts Supporting Jurisdiction in This Forum**

24.     In its Statement of Claim[4] at ¶¶ 34-35, Criden alleges that the legal work done by my law firm in the TiO2 Action after I left Lieff Cabraser would or should have been done by Lieff Cabraser, allegedly depressing that firm's lodestar and Criden's referral fee interest relative to Lieff Cabraser.  Absent an express contract, Criden claims that a contract was formed

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

---

3     See accompanying Decl. Robert H. Bunzel, Exh. 3, Attachment B at Exh. 1 (chart) thereto.
4     See accompanying Decl. Robert H. Bunzel, Exh. 2.

-5-

SAVERI DECL. ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS/TRANSFER - Case No. 3:14-cv-1740 EDL

1    with me and Joseph Saveri Law Firm under a theory of implied contract. While I believe these

2    assertions are incorrect and untrue, the facts relevant to prosecution and defense of the claims

3    before this Court concern parties, lawyers and work performed in the TiO2 Action, located in this

4    judicial District, and in particular in San Francisco.

5            25.    Lead counsel, who are the most knowledgeable in the TiO2 Action, are

6    Gold Bennett Cera & Sidener, Lieff Cabraser and the Joseph Saveri Law Firm.  All would-be

7    witnesses in this case were the issue of my implied assent to the referral fee agreement litigated

8    are located in San Francisco, as are all of the individual lawyers involved in the TiO2 Action in the

9    lead counsel firms.[5]

10           26.    Attached hereto as **Exhibit 6** is a copy of my Declaration filed October 18,

11   2013 in the TiO2 Action detailing the legal services performed and expenses advanced by Joseph

12   Saveri Law Firm after I disassociated from Lieff Cabraser.  Attached to **Exhibit 6** is a "Lodestar

13   Summary" for the Joseph Saveri Law Firm, identifying the ten (10) billing professionals in my

14   firm whose total hours comprised the hourly component of the Joseph Saveri Law Firm's

15   $3.77 million lodestar in that case.

16           27.    The great majority of the hours billed by the Joseph Saveri Law Firm was

17   for work performed in San Francisco. While I engaged in substantial travel out of this district in

18   connection with depositions, other discovery and court hearings in the TiO2 Action, a substantial

19   portion of the 2,206.89 hours that I personally billed to the TiO2 file was for work done in San

20   Francisco.  In addition, the substantial majority of all other billing professionals' time incurred on

21   the file was spent at the Joseph Saveri Law Firm offices in San Francisco.

22           28.    Since the filing of Criden's motion to dismiss on May 13, 2014, I have

23   reviewed my firm's billing records, which I am personally familiar with and responsible for, and

24   can attest that in excess of approximately 4,000 hours were logged in the TiO2 Action by legal

25   professionals in San Francisco, California.

26

27   _____

28   [5]    *See* http://saverilawfirm.com/; http://www.lieffcabraser.com/About-Us/;
     http://www.gbcslaw.com/About-the-Firm.html.

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

-6-

2400.001/816864.1          SAVERI DECL. ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
                                     DISMISS/TRANSFER - Case No. 3:14-cv-1740 EDL

SER 139

29.     Such San Francisco-based efforts of the Joseph Saveri Law Firm included: (1) case management,  (2) analyzing and organizing documents produced by the parties and non-parties during discovery; (3) drafting discovery, meeting and conferring with defendants regarding that discovery; (4) drafting responses to interrogatories and meeting and conferring regarding that discovery; (5) engaging in developing expert testimony and expert discovery; (6) working with economists to analyze economic information and transactional data; (7) taking the deposition of defendants' expert; (8) briefing oppositions to Daubert motions; (9) opposing motions to amend the class definition and opposing summary judgment motions; (10) preparing for mock trial; (11) completion of a wide variety of pretrial tasks, including drafting jury questionnaires and *voir dire* questions and briefing *in limine* and other pretrial motions; (12) preparing the papers in connection with class action settlement approval; and (13) addressing class member inquiries.

30.     I never expressly assented to represent Isaac Industries through the Joseph Saveri Law Firm, nor expressly assented to any referral fee or arbitration agreement with Criden.

31.     Any claim or theory of implied agreement—or similar claim arising from resort to equitable principles—Criden asserts  must be based on conduct of me, the Joseph Saveri Law Firm, or others, including that described in ¶¶ 26-29 above.  As shown, such conduct occurred predominantly in this judicial District, in San Francisco

32.     On August 8, 2012, I received an unsolicited email from Kevin Love with a copy to Michael Criden sent to me at my law firm in San Francisco in which Mr. Love writes:

> Joe, I saw that you applied to being co-lead in TiO2.  That good news.  Please confirm that you will be paying my firm a referral fee of 12.5% (the same Lieff agreed to pay us in this case).  Thanks.

A true copy is attached hereto as **Exhibit 7**.  I did not respond to this email, as I had taken steps not to represent Isaac Industries in the TiO2 Action but rather represented Breen. I did nothing to confirm by subsequent conduct any referral fee agreement with Criden.

33.     I believe the opposite is true, and that it was obvious and Criden so understood, that when the Joseph Saveri Law Firm and I entered an appearance for Breen—and not Isaac Industries—that neither he Joseph Saveri Law firm nor I was agreeing to pay a referral fee to Criden based on the work done for Breen in the TiO2 Action after I left Lieff Cabraser.

-7-

1   Criden did not make any inquiries as to the significance or intent of the Joseph Saveri Law Firm's

2   appearance for a client that Criden did not represent.  The continuous conduct of not implying such

3   an agreement thereafter largely occurred in this judicial District, in San Francisco, through

4   conclusion of the TiO2 Action until the present.

5              34.     On October 23, 2013, I received that email, a true copy of which is attached

6   hereto as **Exhibit 8,** from Mr. Love with a copy to Mr. Criden, and received by me at my San

7   Francisco office.  This contact was also unsolicited.  Mr. Love wrote:

8              Joe, Michael and I want to congratulate you on achieving such a
               tremendous result in the TiO2 case.  As is our practice, I just wanted
9              to remind you of your firm's 12.5% referral obligation per our
               February 2010 agreement.  I look forward to working with you on
10             some new matters.

11  I am not aware of "new matters" to which Mr. Love refers.  I believe there were none between

12  Criden and Joseph Saveri Law Firm or me after I left Lieff Cabraser.  Consistent with my prior

13  conduct, and the absence of an express or implied contract, I did not respond to this email as I had

14  earlier made clear by conduct that there was no referral fee agreement between Criden and me or

15  my new firm.

16                        **California's Interest in This Dispute**

17             35.     The only known and produced fee agreement signed by Isaac Industries

18  dated February 6, 2010 is attached hereto as **Exhibit 9**.  It is between Criden and Isaac Industries.

19  It authorizes Criden to retain "any other firms we may associate with to represent you as a class

20  representative" in the TiO2 Action.

21             36.     Thereafter, on February 8, 2010, Eric Fastiff of Lieff Cabraser and Mr. Love

22  of Criden engaged in the email exchange attached hereto as **Exhibit 1**, regarding Lieff Cabraser

23  paying Criden a referral fee.  The Email concerns the legal work of licensed California attorneys

24  subject to the California Rules of Professional Conduct, and regards work to be and actually

25  substantially performed in California.

26             37.     I am aware of no informed written consent by Isaac Industries agreeing to

27  prospective splitting of fees, earned by California lawyers at Lieff Cabraser, with Criden or any

28  other firm.

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

-8-

38.     There is no signed written agreement between me or the Joseph Saveri Law Firm and Isaac Industries expressing any informed written consent to the splitting of fees between my California-based law firm and Criden or any other firm.

39.     I am also informed and believe that Criden has appeared regularly in California courts and enters into frequent referral fee arrangements with California lawyers.[6] Certain of those arrangements and representations were in connection with my former firm, Lieff Cabraser, and I know that Criden has California contacts related thereto.

**No Meaningful Contacts with Florida**

40.     The TiO2 Action concerned multiple cases filed in the District of Maryland. While Isaac Industries is headquartered in Florida and conducts its business there, none of the other named plaintiffs were Florida companies or had any relevant transactions in Florida, and all of the defendants were headquartered outside Florida.

41.     No meetings, emails or telephone calls regarding the conspiracy alleged in the TiO2 Action occurred in or emanated from Florida.  Rather, those meetings and conspiratorial conduct took place at the defendants' headquarters in diverse other locations in the United States and at meetings of trade associations and other contacts in cities throughout Europe.  None occurred in Florida.  The only contacts with Florida at issue in the TiO2 Action were limited purchases of TiO2 by Isaac Industries.  Only one deposition (Isaac Industries) out of 90 individual depositions took place in Florida in the TiO2 Action.

42.     It would be highly inconvenient to litigate this matter in the district court in Florida for me and for the many billing professionals in my firm and the other Co-Lead Class Counsel lawyers in the TiO2 Action who are in California and will be witnesses in this case.

43.     In conjunction with objecting to Miami as an appropriate locale for any arbitration and prior thereto, my counsel made clear that "objection to Miami as a venue, and

---

[6]     See accompanying Decl. Robert H. Bunzel, Exhs. 6,7.

-9-

SAVERI DECL. ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS/TRANSFER - Case No. 3:14-cv-1740 EDL

1   preference of San Francisco is made without prejudice to the rights of [the Joseph Saveri] law firm

2   and Saveri to contest arbitration jurisdiction and arbitrability of the Claim."[7]

3         44.    Plaintiffs the Joseph Saveri Law Firm and I never selected Florida or the

4   AAA in Florida as a potential venue for determining the parties' rights under Criden's Email with

5   Lieff Cabraser.  The AAA action was commenced by Criden, and not me or my law firm.  At all

6   times, the Joseph Saveri Law Firm and I have preserved the right to have arbitrability, and the

7   merits of this claim should arbitrability be decided in plaintiffs' favor, adjudicated by this Court.

8         I declare under the laws of the United States of America that the foregoing is true

9   and correct and that this Declaration was executed on May 29, 2014, at San Francisco, California.

10

11                                                    _____
                                                         JOSEPH R. SAVERI
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   _____
     [7]    See accompanying Decl. Robert H. Bunzel, Exh. 3.

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

2400.001/816864.1

SAVERI DECL. ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS/TRANSFER - Case No. 3:14-cv-1740 EDL

# EXHIBIT 1

Page 1 of 1

## Kevin Love

**From:** Fastiff, Eric B. [EFASTIFF@lchb.com]
**Sent:** Monday, February 08, 2010 4:17 PM
**To:** Kevin Love
**Subject:** RE: TIO2 Antitrust Action

Agreed.

Eric B. Fastiff
Lieff, Cabraser, Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000 x.2207
Fax: (415) 956-1008
www.lieffcabraser.com

---

**From:** Kevin Love [mailto:KLove@cridenlove.com]
**Sent:** Monday, February 08, 2010 1:10 PM
**To:** Fastiff, Eric B.
**Subject:** TIO2 Antitrust Action

Eric,

Below is our standard referral agreement. If you agree with the terms below, please confirm by reply e-mail. Thanks.


Lieff Cabraser Heimann & Bernstein, LLP agrees to pay Criden & Love, P.A. a referral fee of 12.5% (Twelve and One Half Percent) of its fees, including any multiples on hours that it receives in this matter ("Total Fees"). Total Fees does not include any monies received for reimbursement of expenses. Lieff Cabraser agrees to pay the referral fee to Criden & Love even if Lieff Cabraser later procures another client in this matter. If Lieff Cabraser receives significantly less than its lodestar in the case, Criden & Love agrees to discuss in good faith a reasonable accommodation to the amount of the referral fee.

Both law firms agree that all disputes related to or arising from this referral agreement shall be resolved by arbitration conducted by the American Arbitration Association ("AAA").

Please confirm this referral arrangement before you file the complaint by reply e-mail.

Thanks.

Kevin

Kevin Bruce Love
Criden & Love, P.A.
7301 SW 57th Court, Suite 515
South Miami, Florida 33143
(t) 305-357-9010
(f) 305-357-9050
klove@cridenlove.com


2/8/2010

**SER 145**

# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### (Northern Division)

| | |
|---|---|
| IN RE TITANIUM DIOXIDE ANTITRUST LITIGATION | Master Docket No. 10-CV-00318 (RDB) |
| THIS DOCUMENT RELATES TO:  ALL ACTIONS | |

### NOTICE OF APPEARANCE

TO THE CLERK OF COURT AND ALL COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Joseph R. Saveri of Saveri Law Firm, enters his appearance of behalf of Plaintiff East Coast Colorants LLC d/b/a Breen Color Concentrates in the above captioned matter.  Mr. Saveri is admitted to practice pro hac vice in this Court.

It is respectfully requested that copies of all pleadings and notices in this matter be served upon him at the email and/or street addresses provided below.

Dated: June 1, 2012

Respectfully submitted,

s/ Joseph R. Saveri
Joseph R. Saveri
SAVERI LAW FIRM
255 California Street,  Suite 450
San Francisco, CA 94111
Tel. (415) 500-6800
Fax (415) 500-6803
jsaveri@saverilawfirm.com

CERTIFICATE OF SERVICE

I hereby certify that, on June 1, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send notification of such filing to all CM/ECF participants.

s/ *Joseph R. Saveri*
Joseph R. Saveri

2

SER 148

# EXHIBIT 3

SER 149

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### (Northern Division)

| | |
|---|---|
| IN RE TITANIUM DIOXIDE ANTITRUST LITIGATION | Master Docket No. 10-CV-00318 (RDB) |
| THIS DOCUMENT RELATES TO ALL ACTIONS. | |

## MOTION TO AMEND CASE MANAGEMENT ORDER NO. 2

Named Plaintiffs Haley Paint Company, Isaac Industries, Inc., and East Coast Colorants LLC ("Plaintiffs"), by and through their counsel of record, hereby move the Court for an order amending Case Management Order No. 2, dated May 31, 2011 (Dkt. No. 106), to include the Joseph Saveri Law Firm as one of Plaintiffs' Interim Co-Lead Class Counsel. This motion is based on this Motion and accompanying Memorandum in Support Thereof, and the accompanying [Proposed] Order Amending Case Management Order No. 2, the arguments, if any, of counsel, and the files and records herein.

Date: August 7, 2012                    Respectfully submitted,

                    /s/ Paul Mark Sandler
                    SHAPIRO SHER GUINOT & SANDLER
                    Paul M. Sandler – Bar No. 00145
                    Robert B. Levin – Bar No. 00695
                    John J. Lovejoy – Bar No. 28905
                    36 South Charles Street, Suite 2000
                    Baltimore, Maryland 21201
                    Telephone: (410) 385-0202

1

Facsimile: (410) 539-7611
pms@shapirosher.com
rbl@shapirosher.com
jjlovejoy@shapirosher.com
*Plaintiffs' Interim Liaison Counsel*

GOLD BENNETT CERA & SIDENER, LLP
Solomon B. Cera *(pro hac vice)*
C. Andrew Dirksen *(pro hac vice)*
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 777-2230
Facsimile: (415) 777-5189
SBC@gbcslaw.com
CAD@gbcslaw.com
*Plaintiffs' Interim Co-Lead Class Counsel*

LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
Eric B. Fastiff *(pro hac vice)*
Daniel M. Hutchinson *(pro hac vice)*
Eduardo Santacana *(pro hac vice)*
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (410) 956-1008
efastiff@lchb.com
dhutchinson@lchb.com
esantacana@lchb.com
*Plaintiffs' Interim Co-Lead Counsel*

Joseph R. Saveri *(pro hac vice)*
Lisa J. Leebove *(pro hac vice)*
Kevin E. Rayhill *(pro hac vice)*
JOSEPH SAVERI LAW FIRM
255 California Street, Suite 450
San Francisco, CA 94111
Telephone: (415) 500-6800
Facsimile: (415) 500-6803
jsaveri@saverilawfirm.com
lleebove@saverilawfirm.com
krayhill@saverilawfirm.com

BERGER & MONTAGUE, P.C.
Eric L. Cramer *(pro hac vice)*
Michael C. Dell'Angelo *(pro hac vice)*

2

**SER 151**

Matthew P. McCahill *(pro hac vice)*
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
mmccahill@bm.net
*Plaintiffs' Executive Committee*

GRANT & EISENHOFER, P.A.
Shelly L. Friedland *(pro hac vice)*
Linda P. Nussbaum *(pro hac vice)*
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (646) 722-8501
sfriedland@gelaw.com
lnussbaum@gelaw.com
*Plaintiffs' Executive Committee*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 7, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. The Court or the CM/ECF system will send notification of such filing to all CM/ECF participants. I further certify that true and correct copies of these documents were sent via U.S. First-Class Mail, postage pre-paid, to all non CM/ECF participants.

/s/ Robert B Levin
Robert B. Levin

3

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### (Northern Division)

| | |
|---|---|
| IN RE TITANIUM DIOXIDE ANTITRUST LITIGATION | Master Docket No. 10-CV-00318 (RDB) |
| THIS DOCUMENT RELATES TO ALL ACTIONS. | |

### MEMORANDUM IN SUPPORT OF MOTION TO AMEND CASE MANAGEMENT ORDER NO. 2

On April 1, 2011, the Court entered Case Management Order No. 2 ("CMO No. 2"). (Dkt. No. 106.)  In CMO No. 2, the Court appointed the law firms of Gold Bennett Cera & Sidener LLP ("GBCS"), and Lieff Cabraser, Heimann & Bernstein, LLP ("Lieff Cabraser"), as Interim Co-Lead Class Counsel in the present action.  At the time of CMO No. 2, attorney Joseph R. Saveri served as head of the antitrust and intellectual property practice group at Lieff Cabraser and had primary responsibility within that firm for representing Plaintiffs in this matter.

Effective May 29, 2012, Mr. Saveri left Lieff Cabraser and opened his own law practice, the Joseph Saveri Law Firm, where he continues to play a leadership role in representing the Plaintiffs in the present matter, along with Lieff Cabraser and GBCS.  All Plaintiffs' counsel of record here support the present request that the Joseph Saveri Law Firm be included with Lieff Cabraser and GBCS as Interim Co-Lead Class Counsel.

Date: August 7, 2012                    Respectfully submitted,


                                        /s/ Paul Mark Sandler
                                        SHAPIRO SHER GUINOT & SANDLER
                                        Paul M. Sandler – Bar No. 00145
                                        Robert B. Levin – Bar No. 00695
                                        John J. Lovejoy – Bar No. 28905
                                        36 South Charles Street, Suite 2000

1

**SER 153**

Baltimore, Maryland 21201
Telephone: (410) 385-0202
Facsimile: (410) 539-7611
pms@shapirosher.com
rbl@shapirosher.com
jjlovejoy@shapirosher.com
*Plaintiffs' Interim Liaison Counsel*

GOLD BENNETT CERA & SIDENER, LLP
Solomon B. Cera *(pro hac vice)*
C. Andrew Dirksen *(pro hac vice)*
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 777-2230
Facsimile: (415) 777-5189
SBC@gbcslaw.com
CAD@gbcslaw.com
*Plaintiffs' Interim Co-Lead Class Counsel*

LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
Eric B. Fastiff *(pro hac vice)*
Daniel M. Hutchinson *(pro hac vice)*
Eduardo Santacana *(pro hac vice)*
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (410) 956-1008
efastiff@lchb.com
dhutchinson@lchb.com
esantacana@lchb.com
*Plaintiffs' Interim Co-Lead Counsel*

Joseph R. Saveri *(pro hac vice)*
Lisa J. Leebove *(pro hac vice)*
Kevin E. Rayhill *(pro hac vice)*
JOSEPH SAVERI LAW FIRM
255 California Street, Suite 450
San Francisco, CA 94111
Telephone: (415) 500-6800
Facsimile: (415) 500-6803
jsaveri@saverilawfirm.com
lleebove@saverilawfirm.com
krayhill@saverilawfirm.com

2

**SER 154**

BERGER & MONTAGUE, P.C.
Eric L. Cramer *(pro hac vice)*
Michael C. Dell'Angelo *(pro hac vice)*
Matthew P. McCahill *(pro hac vice)*
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
mmccahill@bm.net
*Plaintiffs' Executive Committee*

GRANT & EISENHOFER, P.A.
Shelly L. Friedland *(pro hac vice)*
Linda P. Nussbaum *(pro hac vice)*
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (646) 722-8501
sfriedland@gelaw.com
lnussbaum@gelaw.com
*Plaintiffs' Executive Committee*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 7, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. The Court or the CM/ECF system will send notification of such filing to all CM/ECF participants. I further certify that true and correct copies of these documents were sent via U.S. First-Class Mail, postage pre-paid, to all non CM/ECF participants.

/s/ Robert B Levin
Robert B. Levin

3

**SER 155**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| IN RE TITANIUM DIOXIDE ANTITRUST LITIGATION | Master Docket No. 10-CV-00318 (RDB) |
| THIS DOCUMENT RELATES TO ALL ACTIONS. | **[PROPOSED] ORDER AMENDING CASE MANAGEMENT ORDER NO. 2** |

Now, therefore, good cause appearing, the Court HEREBY ORDERS that the first sentence of the first numbered paragraph of CMO No. 2 (Dkt. No. 106) shall be amended to read as follows:

I.      **Organization of Plaintiffs' Counsel**

1.      <u>Plaintiffs' Interim Co-Lead Class Counsel</u>.  Pursuant to Federal Rule of Civil Procedure 23(g)(3), the Court hereby appoints the following counsel as Plaintiffs' Interim Co-Lead Class Counsel:  Gold Bennett Cera & Sidener LLP; Lieff, Cabraser, Heimann & Bernstein LLP; and Joseph Saveri Law Firm (hereinafter "Plaintiffs' Co-Lead Class Counsel").

Dated: August _____, 2012

<div style="margin-left:40%">

_____
Honorable Richard D. Bennett
United States District Judge

</div>

1

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on August 7, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. The Court or the CM/ECF system will send notification of such filing to all CM/ECF participants. I further certify that true and correct copies of these documents were sent via U.S. First-Class Mail, postage pre-paid, to all non CM/ECF participants.

/s/ Robert B Levin
Robert B. Levin

**SER 157**

Case: 15-15534, 09/28/2015, ID: 9698937, DktEntry: 16-2, Page 144 of 228

Case3:14-cv-01740-EDL   Document20-1   Filed05/30/14   Page15 of 34

Case 1:10-cv-00318-RDB   Document 326   Filed 08/07/12   Page 1 of 1
Case 1:10-cv-00318-RDB   Document 325-2   Filed 08/07/12   Page 1 of 2

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### (Northern Division)

| | |
|---|---|
| IN RE TITANIUM DIOXIDE ANTITRUST LITIGATION | Master Docket No. 10-CV-00318 (RDB) |
| THIS DOCUMENT RELATES TO ALL ACTIONS. | **[PROPOSED] ORDER AMENDING CASE MANAGEMENT ORDER NO. 2** |

Now, therefore, good cause appearing, the Court HEREBY ORDERS that the first sentence of the first numbered paragraph of CMO No. 2 (Dkt. No. 106) shall be amended to read as follows:

I.    **Organization of Plaintiffs' Counsel**

1.    **Plaintiffs' Interim Co-Lead Class Counsel.**  Pursuant to Federal Rule of Civil Procedure 23(g)(3), the Court hereby appoints the following counsel as Plaintiffs' Interim Co-Lead Class Counsel:  Gold Bennett Cera & Sidener LLP; Lieff, Cabraser, Heimann & Bernstein LLP; and Joseph Saveri Law Firm (hereinafter "Plaintiffs' Co-Lead Class Counsel").

Dated: August ___7___, 2012

_____
Honorable Richard D.B ennett
United States District Judge

1

# EXHIBIT 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

In re Titanium Dioxide Antitrust Litigation     *

         **Plaintiff(s)**     *

            Case No.: __10-CV-00318-RDB__

         **vs.**     *

E.I. DUPONT DENEMOURS AND COMPANY, et al.     *

         **Defendant(s)**     *

            ******

## MOTION FOR ADMISSION *PRO HAC VICE*

I, __Robert B. Levin__, am a member in good standing of the bar of this Court.

My bar number is _____ 00695 _____ I am moving the admission of _____

__Lisa J. Leebove_____ to appear *pro hac vice* in this

case as counsel for _____ Plaintiffs _____.

We certify that:

1.      The proposed admittee is not a member of the Maryland bar and does not maintain any law office in Maryland

2.      The proposed admittee is a member in good standing of the bars of the following State Courts and/or United States Courts:

| **State Court & Date of Admission** | **U.S. Court & Date of Admission** |
|---|---|
| California, 1996. | N.D. California, 1997; C.D. California, 2002; |
| | E.D. California 2005; and 9th Circuit, 1999. |
| | |

3.      During the twelve months immediately preceding this motion, the proposed admittee has been admitted *pro hac vice* in this Court __zero_____ times.

4.      The proposed admittee has never been disbarred, suspended, or denied admission to practice law in any jurisdiction. (NOTE: If the proposed admittee has been disbarred, suspended, or denied admission to practice law in any jurisdiction, then he/she must submit a statement fully explaining all relevant facts.)

U.S. District Court (Rev. 8/2011) – Pro Hac Vice            Page 1 of 2

**SER 160**

5.    The proposed admittee is familiar with the Maryland Lawyers' Rules of Professional Conduct, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Federal Rules of Appellate Procedure, and the Local Rules of this Court, and understands he/she shall be subject to the disciplinary jurisdiction of this Court.

6.    The proposed admittee understands admission pro hac vice is for this case only and does not constitute formal admission to the bar of this Court.

7.    Either the undersigned movant or ____Paul Mark Sandler_____, is also a member of the bar of this Court in good standing, and will serve as co-counsel in these proceedings.

8.    **The $50.00 fee for admission *pro hac vice* is enclosed.** (Payment may be made by check or money order payable to: Clerk, United States District Court or by major credit card.)

9.    We hereby certify under penalties of perjury that the foregoing statements are true and correct.

Respectfully submitted,

| MOVANT | PROPOSED ADMITTEE |
|---|---|
| Signature | Signature |
| Robert B. Levin | Lisa J. Leebove |
| Printed Name | Printed Name |
| Shapiro Sher Guinot & Sandler | Joseph Saveri Law Firm |
| Firm | Firm |
| 36 South Charles Street | |
| Charles Center South, Suite 2000 | 255 California Street, Suite 450 |
| Address | Address |
| Baltimore, Maryland 21201 | San Francisco, CA 94111 |
| City, State, Zip Code | City, State, Zip Code |
| (410) 385-0202 | 415-500-6800 |
| Telephone Number | Telephone Number |
| (410) 539-7611 | 415-500-6803 |
| Fax Number | Fax Number |
| rbl@shapirosher.com | lleebove@saverilawfirm.com |
| Email Address | Email Address |

**SER 161**

# EXHIBIT 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

In Re: Titanium Dioxide Antitrust Litigation      *
       **Plaintiff(s)**
                                 *       **Case No.:** 10-cv-00318-RDB

               **vs.**
                                   *

      **Defendant(s)**                         *

                                  ******

### MOTION FOR ADMISSION *PRO HAC VICE*

    I,  Robert B. Levin , am a member in good standing of the bar of this Court.

My bar number is _____00695_____ I am moving the admission of __Kevin Rayhill_____

_____to appear *pro hac vice* in this case as

counsel for Plaintiffs Haley Paint Company, Isaac Industries, Inc., and East Coast Colorants, LLC
d/b/a Breen Color Concentrate.

    We certify that:

1.    The proposed admittee is not a member of the Maryland bar and does not maintain any law office in Maryland

2.    The proposed admittee is a member in good standing of the bars of the following State Courts and/or United States Courts:

| State Court & Date of Admission | U.S. Court & Date of Admission |
|---|---|
| California, 12/09, SBN: 267496 | Northern District of California, 6/25/12 |
| | |
| | |

3.    During the twelve months immediately preceding this motion, the proposed admittee has been admitted *pro hac vice* in this Court ___0___ times.

4.    The proposed admittee has never been disbarred, suspended, or denied admission to practice law in any jurisdiction.  (NOTE: If the proposed admittee has been disbarred, suspended, or denied admission to practice law in any jurisdiction, then he/she must submit a statement fully explaining all relevant facts.)

**SER 163**

5.      The proposed admittee is familiar with the Maryland Lawyers' Rules of Professional Conduct, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Federal Rules of Appellate Procedure, and the Local Rules of this Court, and understands he/she shall be subject to the disciplinary jurisdiction of this Court.

6.      The proposed admittee understands admission pro hac vice is for this case only and does not constitute formal admission to the bar of this Court.

7.      Either the undersigned movant or _____Paul Mark Sandler_____, is also a member of the bar of this Court in good standing, and will serve as co-counsel in these proceedings.

8.      **The $50.00 fee for admission *pro hac vice* is enclosed.** (Payment may be made by check or money order payable to: Clerk, United States District Court or by major credit card.)

9.      We hereby certify under penalties of perjury that the foregoing statements are true and correct.

Respectfully submitted,

| MOVANT | PROPOSED ADMITTEE |
|---|---|
| /s/Robert B. Levin | |
| Signature | Signature |
| Robert B. Levin | Kevin E. Rayhill |
| Printed Name | Printed Name |
| Shapiro Sher Guinot & Sandler | Joseph Saveri Law Firm |
| Firm | Firm |
| 36 South Charles Street, Suite 2000 | 255 California Street, Suite 450 |
| Address | Address |
| Baltimore, MD 21201 | San Francisco, CA 94111 |
| City, State, Zip Code | City, State, Zip Code |
| (410) 385-0202 | (415) 500-6800 |
| Telephone Number | Telephone Number |
| (410) 539-7611 | (415) 500-6803 |
| Fax Number | Fax Number |
| rbl@shapirosher.com | krayhill@saverilawfirm.com |
| Email Address | Email Address |

SER 164

# EXHIBIT 6

## UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND
#### (Northern Division)

| | |
|---|---|
| IN RE: TITANIUM DIOXIDE ANTITRUST LITIGATION | Master Docket No. 10-CV-00318 (RDB) |
| THIS DOCUMENT RELATES TO: All Actions | |

### DECLARATION OF JOSEPH R. SAVERI
### IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF
### ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
### FILED ON BEHALF OF THE JOSEPH SAVERI LAW FIRM, INC.

I, Joseph R. Saveri, declare and state as follows:

1.      I am the founder of the Joseph Saveri Law Firm, Inc., one of the counsel to Plaintiffs in this litigation. I am over 18 years of age and competent to testify as to the matters and facts set forth herein. I submit this Declaration in support of Plaintiffs' Motion For An Award Of Attorneys' Fees And Reimbursement Of Expenses, concerning services rendered and expenses incurred by my firm in connection with this litigation on behalf of Plaintiffs. The matters stated in this declaration are true based on my personal knowledge. If called to testify about them, I can and will competently do so.

2.      I have worked intensively on this case since its inception, participating in all phases of the litigation. At the outset of this litigation, I was a partner and chair of the Antitrust

**SER 166**

and Intellectual Property Practice Group at the law firm Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"), which was appointed as Co-Lead Counsel in this action. In May 2012, I established my own law firm, the Joseph Saveri Law Firm, Inc. (the "Joseph Saveri Law Firm"). Since then, my firm was appointed as Co-Lead Counsel by this Court, and I have continued my leadership position in this case, exercising day-to-day management and supervision over the litigation together with the law firms of Gold Bennett Cera & Sidener, LLP, and LCHB, the other court-appointed Co-Lead Counsel with whom I have served.

3.      During the period May 2012 (when I started the Joseph Saveri Law Firm) through September 30, 2013, my firm has been involved in the following activities, among others, on behalf of Plaintiffs: (1) analyzing and organizing documents produced by the parties and non-parties during discovery; (2) drafting discovery, meeting and conferring with Defendants regarding that discovery; (3) drafting responses to Defendants' interrogatories, and meeting and conferring regarding that discovery; (4) engaging in developing expert testimony and extensive expert discovery; (5) working with professional economists to analyze economic information and transactional data from Defendants and Tronox; (6) defending and taking depositions; (7) engaging in extensive motion practice addressing class certification before this Court and the Fourth Circuit; (8) briefing and arguing oppositions to *Daubert* motions; (9) opposing Defendants' motions to amend the class definition to exclude class members who had arbitration, forum selection, class action waiver, and jury waiver clauses within their contracts with Defendants; opposing joint and individual summary judgment motions; participating in mock trial work; (10) completion of a wide variety of pretrial tasks, including drafting the jury questionnaire and *voir dire* questions, briefing and arguing *in limine* and other pretrial motions, and attending the pretrial conference; (11) engaging in extensive settlement discussions that ultimately led to settlements with each Defendant; (12) preparing the papers in connection with

2

class action settlement approval procedures and requirements for the settlements reached in this case; and (13) addressing Class member inquiries. I also regularly participated in case management conferences, both in person or by telephone, as set by the Court.

4.     The schedule attached hereto as **Exhibit 1** is a detailed summary indicating the amount of time spent by the partners, attorneys and other professional support staff of the Joseph Saveri Law Firm in connection with this litigation, and the lodestar calculation based on the firm's current billing rates for the period from May 2012 through September 30, 2013. All the time expended was wholly contingent. The Joseph Saveri Law Firm has not received any compensation or reimbursement for such time. The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm and which are available for review by the Court. The schedule does not include any of the work that I or others performed while I was working at LCHB. It only includes work performed by the Joseph Saveri Law Firm.

5.     The hourly rates for the partners, attorneys and professional support staff in my firm included in **Exhibit 1** are the same as the usual and customary hourly rates charged for their services in non-contingent billable matters.

6.     The total number of hours expended on this litigation by my firm from May 2012 through September 30, 2013 is 6,425.88 hours. The total lodestar for my firm is $3,777,403.50. My firm's lodestar figures are based on the firm's current billing rates.

7.     As detailed in **Exhibit 2**, my firm has incurred a total of $434,266.82 in unreimbursed expenses during the period May 2012 through September 9, 2013, in connection with the prosecution of this litigation on behalf of Plaintiffs. The Joseph Saveri Law Firm has not received any compensation or reimbursement for such expenses.

**SER 168**

8.      The expenses incurred in this action are reflected on the books and records of my

firm. These books and records are prepared from contemporaneously maintained expense

vouchers, check records, invoices, automated cost recovery systems, and other source materials,

and they represent an accurate recordation of the expenses incurred.

I declare under penalty of perjury under the laws of the United States of America and on

personal knowledge that the foregoing is true and correct.

Executed on this 16th day of October, 2013.

Joseph R. Saveri

4

# JOSEPH SAVERI
## L A W   F I R M

505 MONTGOMERY STREET
SUITE 625
SAN FRANCISCO, CA 94111

TEL 415.500.6800
FAX 415.395.9940

*In re Titanium Dioxide Antitrust Litigation*
Master Docket No. 10-cv-00318

<u>Lodestar Summary</u>
Inception through September 30, 2013

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Joseph Saveri | $900.00 | 2206.89 | $1,986,201.00 |
| Joshua Davis | $700.00 | 15.3 | $10,710.00 |
| Kevin Rayhill | $450.00 | 2295.47 | $1,032,961.50 |
| Lisa Leebove | $600.00 | 274.75 | $164,850.00 |
| Ryan McEwan | $450.00 | 569.8 | $256,410.00 |
| James Dallal | $450.00 | 47.8 | $21,510.00 |
| Doug Clevenger | $300.00 | 5.3 | $1,590.00 |
| Gabrielle Saveri | $300.00 | 432.72 | $129,816.00 |
| Prem Lall | $300.00 | 340.1 | $102,030.00 |
| Marielena Adriano | $300.00 | 237.75 | $71,325.00 |
| | | | |
| TOTAL | | 6,425.88 | $3,777,403.50 |

Exhibit 1

SAVERILAWFIRM.COM

SER 170

# JOSEPH SAVERI
## LAW FIRM

505 MONTGOMERY STREET
SUITE 625
SAN FRANCISCO, CA 94111

TEL 415.500.6800
FAX 415.395.9940

*In re Titanium Dioxide Antitrust Litigation*
**Master Docket No. 10-cv-00318**

**Expense Summary**
**Inception through September 30, 2013**

| Description | Cumulative Total |
|---|---|
| Court Reporters/Transcripts | $9,060.14 |
| Court Fees | $392.00 |
| Commercial Copies | $13,512.69 |
| Photocopies | $21,051.25 |
| Postage/Express/Delivery/Messenger | $13,598.20 |
| Travel Expenses | $78,047.77 |
| Telephone | $535.43 |
| Miscellaneous/Other | $3,520.94 |
| Computer Research | $44,548.40 |
| Litigation Fund | $250,000.00 |
| | |
| TOTAL | $434,266.82 |

**Exhibit 2**

SAVERILAWFIRM.COM

# EXHIBIT 7

**Kevin B. Love**

| | |
|---|---|
| **From:** | Kevin Love |
| **Sent:** | Wednesday, August 08, 2012 11:34 AM |
| **To:** | 'Joseph Saveri' |
| **Cc:** | Michael Criden - Work |
| **Subject:** | TIO2 |

Joe,

I saw that you applied to being co-lead in TIO2.  That good news.

Please confirm that you will be paying my firm a referral fee of 12.5% (the same Lieff agreed to pay us in this case).  Thanks.

Kevin

Kevin Bruce Love
Criden & Love, P.A.
7301 SW 57th Court, Suite 515
South Miami, Florida 33143
(t) 305-357-9010
(f) 305-357-9050
klove@cridenlove.com

1

C&L 000024

**SER 173**

# EXHIBIT 8

## Kevin B. Love

| | |
|---|---|
| **From:** | Kevin B. Love |
| **Sent:** | Wednesday, October 23, 2013 3:52 PM |
| **To:** | 'Joseph Saveri' (jsaveri@saverilawfirm.com) |
| **Cc:** | Michael Criden; Kevin Love |
| **Subject:** | TIO2 |

Joe,

Michael and I want to congratulate you on achieving such a tremendous result in the TIO2 case.

As is our practice, I just wanted to remind you of your firm's 12.5% referral obligation, per our February 2010 agreement.

I look forward to working with you on some new matters.

Kevin

Kevin Bruce Love
Criden & Love, P.A.
7301 SW 57th Court, Suite 515
South Miami, Florida  33143
(t) 305-357-9010
(f) 305-357-9050
klove@cridenlove.com

1

C&L 000025

**SER 175**

# EXHIBIT 9

SER 176

CRIDEN & LOVE, P.A.
ATTORNEYS AT LAW

7301 SOUTHWEST 57TH COURT
SUITE 515
SOUTH MIAMI, FLORIDA 33143

TELEPHONE (305) 357-9000
FACSIMILE (305) 357-9050

February 6, 2010

**VIA E-MAIL**
David Avan, President
Isaac Industries, Inc.
7330 N.W. 36th Avenue
Miami, FL 33147

Re:    TIO2 Antitrust Class Action

Dear David:

This is to confirm your agreement to retain the firm of Criden & Love, P.A., Lieff, Cabraser, Heimann & Bernstein, LLP ("Firms") and any other firms we may associate with to represent you as a class representative against Millennium Inorganic Chemicals, Inc. as well as other chemical companies relating to a conspiracy to fix the price of Titanium Dioxide ("TIO2"). We truly appreciate the trust and confidence you have placed in our Firms to represent you in this matter.

As a class representative plaintiff, you may be asked to cooperate in any factual inquiries we may undertake concerning this case. Your deposition may also be necessary. We will keep you closely informed about the lawsuit and seek your input with regard to various issues, including any potential settlements. We will also represent you in any matter in the litigation affecting your status as a class representative. If the case is certified as a class action, our fees and expenses would be awarded by the court out of any recovery obtained. We will advance any and all expenses related to the case. You will therefore have no financial responsibilities to the Firms. As in any case, the Firms reserve the right to withdraw from representation at any time in the event we determine it is no longer practical or financially feasible to continue with the case. While we do not anticipate this occurring, should the Firms decide to discontinue their representation of you, you would owe us nothing for the time and expenses incurred.

Please acknowledge your understanding of the above by signing where indicated. PLEASE PRESERVE ALL DOCUMENTS (INCLUDING THOSE ON YOUR COMPUTERS) RELATING TO YOUR PURCHASES OF TIO2.

Sincerely,

Kevin B. Love

ACCEPTED AND AGREED ON THIS _7_ DAY OF FEBRUARY, 2009.

DAVID AVAN, PRESIDENT
ISAAC INDUSTRIES, INC.
L:\TIO2\avanretainer.wpd

C&L 000010

**SER 177**

Pages 1 - 25

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Elizabeth D. Laporte, Magistrate Judge

JOSEPH SAVERI LAW FIRM, ET AL.,        )
                                       )
             Plaintiff,                )
                                       )
VS.                                    )      NO. C-14-01740 EDL
                                       )
MICHAEL CRIDEN P.A., ET AL.,           )
                                       )
             Defendant.                )
_____)

                        SAN FRANCISCO, CALIFORNIA
                        TUESDAY JULY 1, 2014

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**
**RECORDING (FTR TIME: 9:06 - 9:39 a.m.)**

**APPEARANCES:**

For Plaintiff:          Bartko Zankel Bunzel & Miller
                        One Embarcadero Center, Suite 800
                        San Francisco, CA 94111
                BY:     **ROBERT BUNZEL, ATTORNEY AT LAW**
                        **CHARLES MILLER, ATTORNEY AT LAW**


For Defendant:          Sullwold & Hughes
                        1999 Harrison Street, 18th Floor
                        Oakland, CA 94612
                BY:     **ROBERT SULLWOLD, ATTORNEY AT LAW**




Transcribed:            Carrie E. McKee-Parks
                        Transcriber 510-637-9897
                        McKee-Parks65@att.net

1

| 1 | Tuesday, July 1, 2014 | 9:06 a.m. |

P R O C E E D I N G S

---oOo---

THE CLERK:  Calling case 14cv1740; EDL; the matter of Joseph Saveri Law Firm, Inc., et al v. Michael Criden, P.A.

Counsel, please approach the podium.  State your appearances for the record.

MR. BUNZEL:  Morning, your Honor.  Robert Bunzel on behalf of Joseph Saveri Law Firm and Joseph Saveri.

THE COURT:  Morning.

MR. SULLWOLD:  Morning, your Honor.  Robert Sullwold on behalf of defendant Criden.

THE COURT:  Good morning.

All right.  So my tentative thoughts I do think this probably needs to be analyzed under the usual approach to contracts; albeit, there's a dispute about whether there is a contract, but that is the primary dispute.

And I guess the question is will the defendant's activity within California -- and I guess I need to have specific focus on what, if anything, besides sending e-mails back and forth between the former law firm of Lieff Cabraser.  I think the litigation activity in the lawsuit in which the defendant provided the client company was elsewhere as I understand it. I don't know if there was any activity of the law firm the defendant performed in California in terms of assisting

1    interrogatories, etc., etc.

2            MR. SULLWOLD:  No, your Honor.  Our client in the

3    case was -- the class action was in the District or Maryland.

4    Our client was in the District of -- Southern District of

5    Florida.

6        Once we had referred the client to Saveri -- to legal reach

7    of Mr. Saveri, our obligations under the contract were done.

8        And in fact, you know, although we were involved in --

9            THE COURT:  Well, I know the obligations were done,

10   but I don't think that's the end of the analysis.  I think it's

11   a practical course of dealing within the parties so I want to

12   know what additional dealing was there because I think he just

13   said that you did get stay in law to the litigation to some

14   degree; defendant depositions or something like that.

15           MR. SULLWOLD:  Depositions of the client in Florida.

16           THE COURT:  Uh-huh.

17           MR. SULLWOLD:  There was no -- certainly nothing in

18   the record and nothing to my knowledge, your Honor, that the

19   activity in connection with this case by Criden in California.

20           THE COURT:  Uh-huh.  There is the followup e-mails to

21   Mr. Saveri directly, which are essentially taking a position

22   that the contract extends to him so it's part of the course of

23   dealing.  But there is the case law -- which of course, I want

24   to hear from your side too -- that seems to discount mail; and

25   I assume e-mail; to each the same.  And I guess were there any

1    other communications with -- between Mr. Saveri and the --

2         MR. SULLWOLD:  The only three in the record, your

3    Honor, are the -- with Mr. Saveri, there's only two in the

4    record.

5         THE COURT:  Uh-huh.

6         MR. SULLWOLD:  Two e-mails which really are not, you

7    know, contractual in nature, but just to confirm that

8    Mr. Saveri analogies (phonetic) his obligations under the

9    contract.

10        But your Honor to quite right under the --

11        THE COURT:  Well, they're -- I mean, they're taking

12   the position he has obligations.  So I mean -- frankly -- yeah.

13   Although, it's not particularly relevant to this motion I don't

14   think, I'm amazed that this issue hasn't come up more often and

15   that the contract doesn't expressly address one way or another

16   what happens in this situation given that people move around

17   between law firms so much more often now than in ancient

18   history when I started practicing.

19        MR. SULLWOLD:  As the same is true with me, your

20   Honor.  I'm afraid I can't answer that question.  I don't

21   know -- I'm not aware of any case in which the situation has

22   arisen.

23        But, you know, we obviously have not only -- in the

24   underlying case, not only the contract theory, but also the

25   delectable (phonetic) theories of unjust enrichment and even

1    common constant we hadn't (phonetic) received.

2        And essentially, the position on the underlying case is

3    that Mr. Saveri would have gotten nothing but for Criden's

4    referral of the client to Lieff Cabraser in the first place.

5        He had $10 million instead and he owes us 12 and a half

6    percent of that.  That's it in a nutshell.

7            THE COURT:  Uh-huh.

8        Well, I don't -- I'm not persuaded that there is anything

9    at all improper about addressing where the arbitration should

10   be first and then bringing this lawsuit so I completely

11   discount that argument.

12       All right.  Well, let me hear from the other side.

13           MR. BUNZEL:  Your Honor, morning.

14           THE COURT:  Good morning.

15           MR. BUNZEL:  With respect to the Court's first point

16   on what prong of the purposefulness test should be utilized;

17   here, I understand the Court's predilection to utilize the

18   contractual element given the underlying contract dispute.

19       I was looking at that last night and the case that we cited

20   at footnote two of the opposition, which was also cited in some

21   of the opinions of your Honor.

22           THE COURT:  Which is which case?

23           MR. BUNZEL:  *Yahoo.*

24           THE COURT:  I have it right.

25               (Inaudible due to simultaneous colloquy.)

5

1            MR. BUNZEL:  Which is in Judge W. A. Fletcher's en

2     banc opinion in 2006 with respect to personal jurisdiction; one

3     of the more complete explications from the Ninth Circuit.

4         And that case, I think, has some real bearing in this case.

5     It that matter, the issue was whether non-forum defendants who

6     were French citizens or organizations could be sued for

7     declaratory relief by Yahoo in the Northern District.

8         After they had obtained in France court orders that would

9     compel Yahoo to remove certain Nazi memorabilia from the Yahoo

10    cite in France under penalty of Yahoo having to pay penalties

11    in California.

12        Not really that dissimilar from a Florida lawyer going to

13    the AAA forum and obtaining an order requiring Mr. Saveri to

14    appear in Florida under pain of default and significant

15    penalties.

16        And in the *Yahoo* case, following the fact that this was

17    neither a tort nor a contract case, the Court -- Judge Fletcher

18    believed that the matter should be looked at as a purposeful

19    direction matter and concluded that the French Court's orders

20    are appropriately analyzed under the *Calder* affects test as on

21    page 1209 and that page 1210 to the extent that any financial

22    penalty might be imposed pursuant to the French Court's orders

23    be in bag (phonetic) that penalty would be felt by Yahoo at the

24    corporate headquarters in California," end quote.

25        Finding that there was jurisdiction over parties who had

6

1    nothing to do with California other than attempt to pursue a

2    claim against Yahoo in France; the effect of which would be

3    felt here.

4         So I think -- I think the best way --

5              THE COURT:  That underlying case, I'm not saying

6    there's contract though; right?

7              MR. BUNZEL:  No, it did not have anything to do with

8    contract, your Honor.

9         This case, the present case from Mr. Saveri's perspective,

10   there's certainly no contract between him and the Criden Law

11   Firm.

12             THE COURT:  Right.  I mean, that's the defense.

13             MR. BUNZEL:  Right.  You asked what, if anything, in

14   California Mr. Saveri -- excuse me -- the Criden Firm --

15             THE COURT:  Right.  Because undoubtedly (phonetic)

16   Mr. Saveri does this in California, but I think the cases are

17   pretty clear that that doesn't really count in terms of the

18   analysis.

19             MR. BUNZEL:  Yeah.  In summarizing Criden's relevant

20   conduct -- and I think you have to look at all of the conduct;

21   not just the e-mail and not in isolation.  You have to look at

22   all of that conduct together.  I think the cases talk about

23   directly to that point.

24             THE COURT:  Well, of course.  (Inaudible.)  I agree

25   with that.

7

```
1              MR. BUNZEL:  Right.  And that's central to the Burger
2       King case.
3              THE COURT:  Right.
4              MR. BUNZEL:  And I -- then, of course, in the McGee
5       (phonetic) case, there was nothing but one contract where the
6       Texas insurance company -- but because of the relationship to
7       that contract to the State of California and the regulation of
8       insurance companies, that one contract and nothing more was
9       sufficient to establish jurisdiction.
10             THE COURT:  But it had a lot of California aspects to
11      it.
12             MR. BUNZEL:  Right; as does this case.  Because
13      the -- what the claim here is that -- as to ask a California
14      lawyer licensed by our State Bar to split a fee in violation of
15      Bar rules; at least that's the contention of Mr. Saveri; which
16      directly implicates, you know, California.
17          And that was what was contemplated according to the
18      plaintiff -- excuse me, according to the defendant in this
19      case; the claimant in the arbitration; at the time of contract.
20             THE COURT:  So does that mean (inaudible) illegal
21      contract?
22             MR. BUNZEL:  I believe that if -- when this case gets
23      tried and the merits are determined, it's Mr. Saveri's
24      perspective that that contract was unenforceable.  If Lieff
25      Cabraser chose to abide by it, that's their decision, but we
```

1     believe that the contract is unenforceable under California law

2     and that that directly implicates the interest of California.

3          But, you know, what did the Criden Firm do to get us to

4     this place in this case?  And the first thing that they did; if

5     you read the declarations in this case carefully; is they

6     reached out; reached into California through another law firm

7     into Linda Vespa (phonetic), to obtain a lawyer from whom they

8     could earn a referral fee.  Ms. Vespa (phonetic) was not the

9     beneficiary of that contact.  It was the Criden Law Firm and --

10         THE COURT:  I think it's somewhat mute.  Probably

11    seems to depend how you characterize it whether they reached

12    out; they didn't do it directly; and I think they had an

13    agreement with her and she has nothing to do with California

14    originally, but that case could raise (inaudible) her and then

15    she (inaudible) somebody else to help so.

16         MR. BUNZEL:  Right.  Her declaration is rather artful

17    in its omissions.  The Love declaration at paragraph 17 is

18    relatively clear.  It reads that upon -- at some point between

19    October and December of 2009, Kathy Fox (phonetic) and Vespa

20    (phonetic) decided not the bring the case.

21         Upon that decision; language of Mr. Love; Vespa (phonetic)

22    told me that she would contact Joseph Saveri -- not that she

23    had contacted Joseph Saveri -- to see if they, quote, would,

24    unquote, be under interested in bringing the case.

25         It's quite clear that there was a conversation between the

1    party resisting jurisdiction in this case and this Vespa

2    (phonetic) in which it was agreed that Ms. Vespa (phonetic)

3    would contact the Lieff Cabraser in order to see whether they

4    would be interested in representing the Criden client at the

5    benefit of Criden.

6        So that's the first thing they did.  That's purposeful.

7    That's not accidental.  It didn't fall in anyone's lap.

8        They then sent the referral agreement directly to

9    California to Mr. Fast (phonetic) at Lieff Cabraser.  That's

10   purposeful, as well; whether it's purposeful direction or

11   purposeful availing.

12              THE COURT:  No, but the formation of the contract in

13   cases all say is not sufficient in and of itself.  I mean,

14   that's not a way to characterize this.

15              MR. BUNZEL:  Right.

16              THE COURT:  When you -- any time you contract with a

17   California party, you purposefully contract the California

18   party, but that by itself is not enough.

19              MR. BUNZEL:  I think that's -- that's why you have to

20   look at the totality of the facts.

21              THE COURT:  Right.

22              MR. BUNZEL:  And that point goes to a number of the

23   arguments made by the moving party in this case that, you know,

24   in contract is not automatically conferred jurisdiction or the

25   entry into a contract does not solely give rise to

1    jurisdiction.  We don't dispute those things.  You have to look

2    at all of the facts.

3         That referral of the agreement that the defendant sent into

4    California contemplated that Criden would get a referral fee on

5    legal work done by Lieff Cabraser in California and elsewhere;

6    but substantially in California and that's what was undisputed.

7         And so --

8              THE COURT:  Right.  But the -- I think again, the

9    cases say it's what the defendant did in the course of dealing

10   rather than what the plaintiffs did -- or what the -- yeah.

11             MR. BUNZEL:  I --

12             THE COURT:  I mean, there's no question that it

13   (inaudible) did lots of things in California.

14             MR. BUNZEL:  Correct.  And the contract, you know, it

15   contemplated that.  And the Criden Firm was involved with Lieff

16   Cabraser in doing those things.

17             THE COURT:  Right, but that's what I was trying to

18   focus on.  Where was Mr. Criden plan on doing that.  And

19   according to him, they were doing it in other states and that's

20   why I was asking is there anything that they did in California

21   in carrying out the contract.

22             MR. BUNZEL:  If you look at paragraph 19 and

23   Exhibit 9 to the Saveri declaration, that's the agreement

24   between the Criden Firm and their client, Isaac Industries.

25             THE COURT:  Uh-huh.

1         MR. BUNZEL:  Pressing (phonetic) them to engage other

2    counsel as well.

3        This is not a case -- contrary to counsel's statement --

4    where the contract and party could just sit back and have some

5    percent of some number that would be generated automatically.

6         THE COURT:  No, no.  They did other things in the

7    case and they made them.  But as you said -- that's why I was

8    asking about the defendant's positions and so forth.  But the

9    question is where do they do that?

10       Again, if they did it in California, I think you have a

11   stronger argument, but I do think this is -- quite a lot of

12   these cases are somewhat close cases.  It's (inaudible) apply

13   its rules.

14        MR. BUNZEL:  In paragraph 19, Mr. Saveri describes

15   what the Criden Firm did in conjunction with Lieff Cabraser.

16   Was he in California in the underlying case.

17        THE COURT:  Uh-huh.

18        MR. BUNZEL:  And they did that -- the Criden Firm --

19   pursuant to their agreement, they continued to represent the

20   underlying party with respect to settlement negotiations and

21   deposition and they did it according to Mr. Saveri's firsthand

22   knowledge in conjunction with the Lieff Cabraser Firm in San

23   Francisco.

24       They're doubtless -- many, many e-mails and telephone calls

25   and billing records and the like, which establish that.  It's

1     not a situation where somebody sat on a beach in Florida --

2               THE COURT:  Well, but presumably, they had to go to

3     their office to (inaudible.)

4               MR. BUNZEL:  Could I speak to the e-mail issue just a

5     moment?

6               THE COURT:  Sure.  Yes.

7               MR. BUNZEL:  Because they cited a number of cases

8     about e-mails and phone calls aren't enough.  And all those

9     cases, the e-mails and phone calls are attenuated from the

10    claim.  That's not this case.  I mean, that's closer to

11    absolute red herring to distinguish those cases in our

12    opposition brief.

13       But going back to what they did, they knew that the

14    referral to the agreement would be paid by Lieff Cabraser in

15    California.  They would receive a check from California from

16    Lieff Cabraser.  They knew that that would have to happen and

17    Lieff Cabraser would have to do a lot of work.

18       In 2012 and 2013, the Criden Firm sent unsolicited e-mails

19    into California to Mr. Saveri after he had left Lieff Cabraser.

20    Those e-mails are certainly relevant to the issue here of

21    whether there is an implied contract or some continuing

22    obligation; whether Mr. Saveri new a response to those e-mails;

23    why are they sent and the like; that's further conduct in the

24    course of dealing in the like to try to establish contractual

25    relationships that occurred in California.  And the Criden Firm

1    conducts a very robust referral and -- and he entrusts this in

2    California.

3         The moving party on this motion would have the Court

4    believe that the -- arises from are related to the second prong

5    of the test is limited to a rising firm.  It isn't.  Is this

6    case related substantially to what Criden does in antitrust

7    cases and in the referral fee business?  You betcha.  It's one

8    of dozens of cases where they're appearing in California courts

9    or seeking a referral fee from a California lawyer for

10   referring an antitrust plaintiff or other class action

11   plaintiff and so there's a substantial relationship.

12        You know, I reread over the weekend some of the Supreme

13   Court cases.  I don't think I had read *International Shoe*

14   (phonetic) for a long time.  I know that the Court has -- deals

15   with these personal jurisdiction cases from time to time, but

16   they're a little more rare for us.

17        And in reading, you know, *International Shoe* (phonetic) and

18   the *E* (phonetic), and the latest opinion by Justice Skinsburg

19   (phonetic) *Gameler* (phonetic); and the Ninth Circuit cases, the

20   *Schwarzenegger* case; the *Yahoo* case.  The issue really is

21   substantial justice and fairness.  And in this case --

22             THE COURT:  Well, I think --

23             MR. BUNZEL:  Yeah.

24             THE COURT:  If -- I think the close question is the

25   first prong; and whichever way that goes, I think it decides

1    if -- if under the first prong there was sufficient purposeful

2    availment for whatever purpose was -- is required, I don't

3    there's anything there at all about having the case here.

4              MR. BUNZEL:  Okay.  And then further I can add, your

5    Honor --

6              THE COURT:  Well, when I asked -- I'll let you

7    respond and then let me ask also both of you this question.  In

8    terms of the ADR stipulation proposed selection filled out,

9    you're -- looks like the form was used somewhat unusually.  You

10   check mediation, but then in quote parens, which I think was

11   added by the parties' Magistrate Judge.  So I want to ask first

12   what you meant by that.  Settlement conference; is that what --

13             MR. BUNZEL:  Yes, settlement conference with one of

14   the other Magistrate judges rather than private mediation.

15             THE COURT:  Right.  And normally, we -- the reason

16   the form is that way is if that's what you want, you're

17   supposed to have a phone conference.

18        But nonetheless, I think that that probably is a good idea.

19   And so let me ask you this; doesn't it -- I mean, I do think

20   this is a close question.  (Inaudible), but I'm not sure I'm

21   going to hear anything new based on all these papers.

22        Do you want me to go ahead and rule on this or would it

23   make any sense at all to have you go to a Magistrate Judge for

24   settlement conference before I rule on it?

25             MR. SULLWOLD:  I believe we would like your Honor to

1    rule on the pending motion.

2              THE COURT:  All right.

3              MR. BUNZEL:  It takes two to tango.  I was going to

4    say settlement conference is fine.

5        We had also used the other form somewhat uniquely to bring

6    to the Court's attention.  That's the ADR certification form.

7              THE COURT:  Uh-huh.

8              MR. BUNZEL:  To bring to the Court's attention a

9    Tenth Circuit case, which -- I don't have the citation in front

10   of me.

11             THE COURT:  I don't know I see -- I'm not sure what

12   you're referring to.

13             MR. BUNZEL:  There should be a form that was filed

14   the same day signed by my client and by me.  And we cited a

15   recent case from the Tenth Circuit, which discusses in

16   motions to -- in actions to compel arbitration what is the

17   appropriate judicial function.

18       And in that case, the Tenth Circuit was critical of the

19   trial court for having entertained endless summary judgment

20   motions because the Federal Arbitration Act at Section IV

21   commands that there be a summary jury trial.  And so they sent

22   it back for summary jury trial.

23       And so we believe the case stays in this Court; that A, we

24   should promptly have a settlement conference.  We would do it

25   now.

1          And then second, we would have a relatively quick discovery

2     schedule and a summary trial as soon as the Court would put it

3     on the calendar.

4          THE COURT:  Well, I didn't look at that case, but I

5     guess we'll cross that bridge when we come to it.  I think that

6     time would be a case management conference --

7          MR. BUNZEL:  Yes.

8          THE COURT:  -- to develop that in more details.

9          MR. BUNZEL:  Understood.  I raise it here only

10    because to the extent that there's an allegation of great

11    burden on the defendant for litigating in this forum.

12         THE COURT:  Right.  And I don't -- I don't think that

13    that's the case.

14         MR. BUNZEL:  Okay.

15         THE COURT:  Like I say, I think if -- if -- if the

16    purposeful (inaudible) test (inaudible) test is met, then I

17    think you -- the other factors fall into place on the same

18    (inaudible.)  I don't think (inaudible).  I don't think that's

19    an issue.  (Inaudible) it's not tremendously burdensome on

20    either side necessarily, but -- and you get to have the

21    counting witnesses and so on (inaudible) in front

22    of (inaudible) you've got all the people at Lieff Cabraser

23    (inaudible) litigation regarding the fees, etc.

24         And so then probably, as I say, I don't think those factors

25    (inaudible) in favor of the motion to dismiss, but I think the

1     first prong (inaudible) motion.

2              MR. BUNZEL:  Understood.

3              THE COURT:  All right.  Anything further?

4              MR. SULLWOLD:  Yes, I'd like to address the first

5     prong, your Honor.

6              THE COURT:  Sure.

7              MR. SULLWOLD:  I -- the way I would phrase the test,

8     your Honor -- and your Honor has said this was in your question

9     to counsel -- this focuses on the defendant's activities in the

10    forum state and whether the defendant engaged in activities of

11    conduct for the purpose of promoting the transaction of

12    business in the forum state out of which the cause of action;

13    the claim; arose.

14       Now, in this case, your Honor requests both parties; what

15    is it in the record that Criden and Love did in the State of

16    California to promote the transaction of business out of which

17    the claim arose?  All you would have before you, your Honor, I

18    believe, that's relevant to that issue is the one e-mail sent

19    from Florida to Lieff Cabraser.

20             THE COURT:  I think the subsequent e-mails to

21    Mr. Saveri are also relevant.

22             MR. SULLWOLD:  Okay.  I'll throw -- I'll (inaudible)

23    random all three e-mails.

24       But as the Court pointed out, ever since the *Peterson*

25    case -- and the *Moore* case and I think you even cited it in

1    some of your opinions -- that say the use of e-mails would be

2    (inaudible the language in *Peterson*.

3       The use of the e-mails, telephone, or other international

4    communications simply do not qualify as purposeful activity

5    invoking the benefits of protection in the forum state.  So I

6    think those e-mails are going to do it; it will not do it

7    under those cases.

8       Now, the other --

9          THE COURT:  What about the fact that there's a

10   referral business being operated that has -- this is the way of

11   the referral business and --

12         MR. SULLWOLD:  I think that's stretching related

13   beyond what the Supreme Court or the Ninth Circuit is talking

14   about in the second prong in that test.

15      I mean, the fact is -- one of the cases talks about well,

16   that shows is you're doing business with California, but not

17   doing business in California.

18      In this case --

19         THE COURT:  I'm not sure that I understand that

20   distinction.

21         MR. SULLWOLD:  Well, it's kind of --

22         THE COURT:  What do they mean by that?

23         MR. SULLWOLD:  I think what they mean is this, your

24   Honor; is that if you focus -- if the defendant -- take the

25   *Young* case, which we cited in the reply brief.

1      Basically, the dispute is whether the plaintiff's entitled

2    to additional shares under a merger agreement.  That's the

3    issue in the case.

4      But to support jurisdiction, the plaintiff says well, these

5    defendants have -- are doing all kinds of things in California

6    during the license agreements; they're selling their product;

7    and that; A, establishes general jurisdiction; and B,

8    accomplishes specific jurisdiction.

9      And the Ninth Circuit said it doesn't do either.  It's not

10    enough for general jurisdiction and --

11          THE COURT:  (Inaudible) talk about general.

12          MR. SULLWOLD:  And it's not enough for specific

13    because the test is does this -- does the claim arise out of

14    and (inaudible relate to, but you could impose are limited and

15    must be seen the same context as a rise out of.  I don't think

16    they added anything or changed anything.

17          THE COURT:  It says four so I think it adds

18    something.

19          MR. SULLWOLD:  All right.  But I don't think it's

20    expansion as far as plaintiff would have you go because if

21    there's any other -- if you're engaging in any other business

22    activities in this -- in the forum state and that's enough to

23    bring you within the jurisdiction, I think that essentially

24    takes the second prong out of the test.

25          THE COURT:  Let me switch gears a little and ask one

1    more question --

2              MR. SULLWOLD:  Sure.

3              THE COURT:  And then I'm going to take this under

4    submission.

5         What jurisdictional discovery would you be taking that

6    doesn't get flushed out?

7              MR. BUNZEL:  We would try to focus the questions that

8    we would ask on the jurisdictional issues, but depositions of

9    Mr. Criden and Mr. Love would be taken.  We want to see their

10   billing records and at least an e-mail log of the amount of

11   contacts that they've had with Lieff Cabraser in particular and

12   the other California law firms.  I'm not sure we need the

13   e-mails themselves.  That might be -- I don't want to be overly

14   burdensome or replicate the merits.

15             THE COURT:  What would their billing records show?

16             MR. BUNZEL:  Billing records in the underlying case

17   would show, you know, a telephone conference with California;

18   direction to California with respect to the position of the

19   Florida client.  It's pretty inevitable.  I mean, which is why

20   I don't think we need this discovery, your Honor, but it's

21   pretty inevitable that those things exist.

22        The Criden Firm earned a million dollar plus fee itself of

23   its Lone Star (phonetic) working with Lieff Cabraser on behalf

24   of Isaac Industries being in the lead.  There were probably

25   hundreds of contacts --

```
 1              THE COURT:  In addition to the referral fee, you're
 2    saying they billed directly and (inaudible.)
 3              MR. BUNZEL:  Correct.
 4              THE COURT:  On top of the --
 5              MR. BUNZEL:  It's in the Saveri declaration.
 6              MR. SULLWOLD:  For the representation of the
 7    individual client, your Honor.
 8              THE COURT:  Right, but that has some relationship to
 9    this whole thing (inaudible.)
10              MR. SULLWOLD:  Well, it's the --
11              THE COURT:  If the plaintiffs didn't win, there's
12    nothing that's split up.
13              MR. SULLWOLD:  That's correct.  But the limits
14    Mr. Bunzel is talking about is the fee paid by the Florida
15    client for the representation of its Florida lawyers in the
16    Maryland action.
17              THE COURT:  Didn't they bill per hour or they --
18              MR. SULLWOLD:  I'm sorry.  The Court awarded to the
19    lawyers for their services representing that client.
20              THE COURT:  As co-counsel essentially?
21              MR. SULLWOLD:  I believe --
22              THE COURT:  I mean, all of the --
23                  (Inaudible due to simultaneous colloquy.)
24              MR. SULLWOLD:  There was a referral fee paid by Lieff
25    Cabraser for the class action service.  That, we got.  But I
```

1    thought that the $1 million that Mr. Bunzel was talking about

2    was for the work that was done representing this particular

3    Florida client.

4           THE COURT:  That's right, but -- so what is the

5    significance?

6           MR. BUNZEL:  The $1 million awarded by the Court

7    irrespective of the referral fees was for the low start built

8    up by the Criden Firm in connection with the case.

9      In that case, Lieff was the lead counsel -- a lead lawyer

10    also representing their client.  There were inevitably, you

11    know, hundreds of communications between California and Criden

12    that caused Criden to bill up Lone Star (phonetic) of a million

13    dollars and get that paid by the Court.  Their application, if

14    it's not in the papers, is available on ECF.  We could supply a

15    copy of it to the Court.

16           THE COURT:  Well --

17           MR. BUNZEL:  But it doesn't have the billing records,

18    which is getting back to your point about what jurisdictional

19    discovery would we want.

20           THE COURT:  Right.  They make the point though that

21    the referral fee is automatic regardless of whether they did

22    the work.

23      On the other hand, as I suppose it's also true that unless

24    the whole effort was successful, there's nothing to split.

25           MR. BUNZEL:  And -- yeah.  And frankly, the assertion

1    that the referral fee was automatic is untrue in this case.

2    You have to look at the agreement between Criden and Isaac

3    Industries, which required Criden to stay actively involved.

4    It's Exhibit 9 of the Saveri declaration.  It guided Criden

5    with Lieff Cabraser through the settlement process and obtained

6    the discovery and the like.  A lot of that occurred in Florida,

7    but was handled in conjunction with the California law firm

8    that they located.

9        We would want, in addition, production of relevant travel

10   and telephone records and the --

11            THE COURT:  Well -- but, I mean, wouldn't -- if they

12   had traveled to California, Mr. Saveri would know that

13   (inaudible) in his declaration; right?

14            MR. BUNZEL:  Mr. Saveri left Lieff Cabraser, I want

15   to say, 15, 16 months before this action resolved.  Much of the

16   work was done after he was left Lieff Cabraser and Mr. Saveri

17   was careful not to be representing Isaac Industries and did not

18   maintain communication with Isaac or Criden during that period

19   other than these e-mails.

20            THE COURT:  Although, they point out to the plaintiff

21   (inaudible) is that --

22            MR. BUNZEL:  The record is a little mixed on that.

23   He entered an appearance only on behalf of the new client.  He

24   has said in the declaration under oath in this Court that he

25   had no communication with Isaac Industries.  The clerical

1    effort to withdraw his name from Lieff Cabraser's

2    representation of Isaac Industries did not happen, your Honor;

3    that's correct.

4            THE COURT:  Okay.  Counsel?

5            MR. BUNZEL:  As the world sometimes has strange facts

6    in it, which is why we have to look at all of the facts in this

7    matter.

8            THE COURT:  (Inaudible).  Anyway.  All right.  It's

9    submitted?

10            MR. SULLWOLD:  Can I end with my rhetorical close,

11    your Honor?

12            THE COURT:  Yes.

13            MR. SULLWOLD:  Mr. Bunzel has a rhetorical phrase

14    what he learned over the weekend reading the Supreme Court

15    cases.

16        What I noticed that is essentially what we're talking about

17    in the specific jurisdictions assistance is the quid pro quo

18    theory.  If the defendant does something to invoke the benefits

19    of doing business in the forum state, then he -- it's only fair

20    that the defendant ought to answer if there is a claim arising

21    out of his activities.  If he doesn't -- if she doesn't invoke

22    the benefits, it's not fair.

23        In this case on a record before this Court, you don't have

24    sufficient evidence to find that Criden and Love invoke the

25    benefits of doing business in California; therefore, to use

1    Mr. Bunzel's word, "it's unfair" to allow plaintiff to proceed

2    with this suit in this Court.

3            THE COURT:  All right.  I will take it under

4    submission.  Thank you.

5            MR. BUNZEL:  Thank you.

6            MR. SULLWOLD:  Thank you, your Honor.

7            (Proceedings concluded at 9:39 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## **CERTIFICATE OF REPORTER**

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

DATE 7-22-14

Carrie McKee-Parks                Date
McKee-Parks65@att.net
510-637-9897

**SER 204**

1   ROBERT T. SULLWOLD (SBN 88139)
    JAMES A. HUGHES (SBN 88380)
2   SULLWOLD & HUGHES
    1999 Harrison Street, Suite 1800
3   Oakland, CA  94104
    (510) 496-4616
4   (415) 762-5338 FAX

5   Attorneys for Defendant
    MICHAEL E. CRIDEN, P.A. dba
6   CRIDEN & LOVE, P.A.

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12
    JOSEPH SAVERI LAW FIRM, INC., a California    Case No.: C 14-01740 EDL
13  corporation, and JOSEPH R. SAVERI,
                                                  STIPULATION AND [PROPOSED] ORDER
14                Plaintiffs                      EXTENDING DEFENDANT'S TIME TO
                                                  FILE RESPONSIVE PLEADING
15         v.

16  MICHAEL E. CRIDEN, P.A. dba
    CRIDEN & LOVE, P.A., a Florida corporation,
17
                  Defendant.
18

19         WHEREAS, on February 25, 2014, defendant Michael E. Criden, P.A., dba Criden &

20  Love, P.A. ("Criden"), filed a Demand for Arbitration with the American Arbitration Association (the

21  "AAA arbitration") seeking payment of a referral fee from plaintiffs Joseph Saveri Law Firm, Inc. and

22  Joseph R. Saveri ("Saveri");

23         WHEREAS, on April 15, 2014, Saveri filed this action against Criden seeking, among

24  other things, an injunction prohibiting Criden from prosecuting the AAA arbitration;

25         WHEREAS, on May 13, 2014, Criden filed a motion to dismiss this action for lack of

26  personal jurisdiction, or alternatively, to transfer it to the Southern District of Florida;

27         WHEREAS, the parties stipulated to instruct the American Arbitration Association to

28  stay the AAA arbitration until this Court ruled on Criden's motion to dismiss or transfer;

---

1    WHEREAS, by Order filed on July 23, 2014, this Court denied Criden's motion;

2    WHEREAS, under Federal Rule of Civil Procedure 12(a)(4)(A), Criden's responsive

3    pleading is due on August 6, 2014;

4    WHEREAS, this Court has scheduled a Case Management Conference for August 19,

5    2014;

6    WHEREAS, Criden has decided not to prosecute the AAA arbitration and has agreed to

7    dismiss it upon entry of an Order pursuant to this Stipulation;

8    WHEREAS, Criden needs additional time to prepare an Answer and Counterclaim setting

9    forth his claim for payment of a referral fee.

10    NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by the parties

11    hereto, through their respective counsel of record, as follows:

12    1.    Criden's time to file a responsive pleading is extended to and including August

13    29, 2014.

14    2.    Pursuant to this Court's August 1, 2014 Order, the parties will submit by August

15    12, 2014 a Joint Case Management Conference Statement.

16    SO STIPULATED.

17    DATED:  August 5, 2014

18    SULLWOLD & HUGHES

19

20    By:    /s/ Robert T. Sullwold

21    Robert T. Sullwold
      Attorneys for Defendant

22    MICHAEL É. CRIDEN, P.A. dba
      CRIDEN & LOVE, P.A

23

24

25

26

27

28

---

STIPULATION AND [PROPOSED] ORDER EXTENDING TIME FOR DEFENDANT TO FILE RESPONSIVE PLEADING        3:14-cv-01740 EDL

**SER 206**

1   DATED:  August 5, 2014

2                               BARTKO, ZANKEL, BUNZEL & MILLER
                              A Professional Law Corporation

3

4

5                        By: _____/s/ Robert H. Bunzel_____
                                Robert H. Bunzel

6                              Attorneys for Plaintiffs
                    JOSEPH SAVERI LAW FIRM, INC. and

7                              JOSEPH R. SAVERI

8

9                           **FILER'S ATTESTATION**

          I, Robert T. Sullwold, hereby attest that concurrence in the filing of this document has

10   been obtained from the other signatory and that I received authorization to affix his electronic signature.

11   DATED:  August 5, 2014

12

13

14                            _____/s/ Robert T. Sullwold_____
                              Robert T. Sullwold

15

16

17   IT IS SO ORDERED.

18   DATED:  ___August 6_____

19

20                              _____

21                            United States Magistrate Judge

22

23

24

25

26

27

28

---

1   ROBERT T. SULLWOLD (SBN 88139)
    JAMES A. HUGHES (SBN 88380)
2   SULLWOLD & HUGHES
    1999 Harrison Street, 18th Floor
3   Oakland, CA 94612-3520
    Telephone: 510-496-4616
4   Facsimile: 415-762-5338

5

6   CURTIS JAY MASE (Florida Bar No. 478083)
    CAMERON EUBANKS (Florida Bar No. 85865)
7   MASE LARA
    2601 Bayshore Drive, #800
8   Miami, FL 33133
    Telephone: 305-377-3770
9   Facsimile: 305-377-0080

10  Attorneys for Defendant/Counter-Plaintiff
11  MICHAEL E. CRIDEN, P.A. dba
    CRIDEN & LOVE, P.A.

12

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                 SAN FRANCISCO DIVISION

16
    JOSEPH SAVERI LAW FIRM, INC., a        )    No. C-14-01740 EDL
17  California corporation, and JOSEPH R.  )
    SAVERI,                                )
18                                         )
    Plaintiffs/Counter-Defendants,         )
19                                         )    **DEFENDANT'S RULE 26(a)**
    v.                                     )    **INITIAL DISCLOSURES**
20                                         )
    MICHAEL E. CRIDEN, P.A., dba CRIDEN &  )
21  LOVE, P.A., a Florida corporation,     )
22                                         )
    Defendant/Counter-Plaintiff,           )
23  _____)

24

25

26

27

28

                            1

### INTRODUCTORY STATEMENT

Defendant Criden & Love, P.A. provides the following initial disclosures pursuant to Rule 26(a)(1)(a).  The following disclosures are based on the information reasonably available to defendant as of the date hereof.  By making these disclosures, defendant does not represent that it is identifying every document, tangible thing, or witness that may possibly be relevant to this lawsuit.  Rather, defendant's disclosures represent a good faith effort to identify information it reasonably believes it may use to support its claims or defenses in this action.

Further, defendant's disclosures are made without in any way waiving:  (1) the right to object to the production of any document or tangible thing disclosed herein on the basis of any privilege, the work product doctrine, relevancy, undue burden or any other valid objection; (2) the right to object on the grounds of competency, privilege, relevancy and materiality, hearsay or any other proper ground, to the use of any such information, for any purpose, in whole or in part, in this action or any other action; and (3) the right to object on any and all grounds, at any time, to any other discovery request or proceeding involving or relating to the subject matter of these disclosures.

Finally, defendant reserves the right to revise, correct, supplement, modify, or clarify the information set forth below, although it does not undertake to do so except to the extent required by Rule 26(e) of the Federal Rules of Civil Procedure.  Defendant also reserves the right to call any witness and/or to present any documents at trial not listed in these initial disclosures but which are determined through discovery or investigation to be relevant to the subject of this action.  All of the disclosures set forth below are made subject to the above objections and qualifications.

### A.  Persons Likely to Have Discoverable Information

1. **Joseph Saveri** – C&L's referral agreement with Lieff Cabraser; C&L's referral agreement with Saveri and the SLF; leadership issues in the TIO2 Action; the genesis of the TIO2 Action; legal work and communications in the TIO2 Action; work and fee allocation in the TIO2 Action; usual and customary practices in antitrust class actions.

2. **Michael Criden** –  C&L's referral agreement with Lieff Cabraser; C&L's referral

2

agreement with Saveri and the SLF; leadership issues in the TIO2 Action; the genesis of the TIO2 Action; legal work and communications in the TIO2 Action; usual and customary practices in antitrust class actions.

3. **Kevin Love** – C&L's referral agreement with Lieff Cabraser; C&L's referral agreement with Saveri and the SLF; leadership issues in the TIO2 Action; the genesis of the TIO2 Action; legal work and communications in the TIO2 Action; usual and customary practices in antitrust class actions.

4. **Eric Fastiff** – C&L's referral agreement with Lieff Cabraser; C&L's referral agreement with Saveri and the SLF; leadership issues in the TIO2 Action; the genesis of the TIO2 Action; legal work and communications in the TIO2 Action; work and fee allocation in the TIO2 Action; usual and customary practices in antitrust class actions.

5. **Vince Esades** – Saveri's representation of Breen in the TIO2 Action; usual and customary practices in antitrust class actions.

6. **Sol Cera** – C&L's referral agreement with Lieff Cabraser; C&L's referral agreement with Saveri and the SLF; leadership issues in the TIO2 Action; the genesis of the TIO2 Action; legal work and communications in the TIO2 Action; work and fee allocation in the TIO2 Action; usual and customary practices in antitrust class actions.

7. **Linda Nussbaum** – C&L's referral agreement with Lieff Cabraser; C&L's referral agreement with Saveri and the SLF; leadership issues in the TIO2 Action; the genesis of the TIO2 Action; legal work and communications in the TIO2 Action; usual and customary practices in antitrust class actions

8. **Eric Cramer** – C&L's referral agreement with Berger & Montague; leadership issues in the TIO2 Action; the genesis of the TIO2 Action; legal work and communications in the TIO2 Action; usual and customary practices in antitrust class actions

9. **David Avan** – C&L's referral agreement with Lieff Cabraser; C&L's referral agreement with Saveri and the SLF;

10. **Brendan Glackin** -- Legal work and communications in the TIO2 Action; leadership issues in the TIO2 Action; work and fee allocation in the TIO2 Action; usual and

3

1     customary practices in antitrust class actions.

2

3     **B.** **Documents**

4         1.  Communications between and among Plaintiffs, Defendant, and third parties.

5         2.  Pleadings in the TIO2 Action.

6         3.  C&L's Referral Agreement with Lieff Cabraser

7         4.  C&L's Referral Agreement with Berger & Montague

8         5.  Isaac Industries' Retention Agreement

9         6.  Isaac Industries' Notice and Assent to Division of Fees with SLF

10

11     **C.** **Computation of Damages**

12     (At this point in time, Defendant does not know exactly how much Plaintiffs recovered in the

13     TIO2 Action.  Defendant believes that Plaintiffs recovered approximately $10 million, so the

14     computation of damages below assumes that Plaintiffs' recovery was $10 million.)

15         1.  Count I – 12.5% of $10 million, or $1,250,000;

16         2.  Count II – 12.5% of $10 million, or $1,250,000;

17         3.  Count III – 12.5% of $10 million, or $1,250,000;

18         4.  Count IV – 33 1/3% of $10 million, or $3,300,000;

19         5.  Count V – 12.5% of $10 million, or $1,250,000;

20         6.  Count VI – 12.5% of $10 million, or $1,250,000;

21         7.  Count VII – 12.5% of $10 million, or $1,250,000;

22         8.  Punitive Damages -- $3,750,000;

23         9.  Costs, Pre-judgment Interest and Post-Judgment Interest.

24

25

26

27

28

1

2    **D.  <u>Insurance Agreements</u>**

3        Plaintiffs are not suing Defendant for monetary damages.

4

5    DATED: October 3, 2014                    CURTIS JAY MASE
                                              CAMERON EUBANKS
6                                             MASE LARA

7                                             ROBERT T. SULLWOLD
                                              JAMES A. HUGHES
8                                             SULLWOLD & HUGHES

9

10                                            By: /s/ Curtis J. Mase
                                              Curtis J. Mase
11

12                                            Attorneys for Defendant and Counterclaimant
                                              MICHAEL E. CRIDEN, P.A. dba CRIDEN &
13                                            LOVE, P.A

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

1    Robert H. Bunzel, State Bar No. 99395
     Charles G. Miller, State Bar No. 39272
2    BARTKO, ZANKEL, BUNZEL & MILLER
     A Professional Law Corporation
3    One Embarcadero Center, Suite 800
     San Francisco, California  94111
4    Telephone:  (415) 956-1900
     Facsimile:  (415) 956-1152
5
     Attorneys for plaintiffs and Counterdefendants
6    JOSEPH SAVERI LAW FIRM, INC.
     and JOSEPH R. SAVERI
7

8                      UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12   JOSEPH SAVERI LAW FIRM, INC., a          )    No. 3:14-cv-1740 EDL
     California corporation, and JOSEPH R.    )
13   SAVERI,                                  )    **PLAINTIFFS AND**
                                              )    **COUNTERDEFENDANTS' NOTICE**
14             Plaintiffs,                     )    **OF MOTION AND MOTION FOR**
                                              )    **SUMMARY JUDGMENT OR,**
15        v.                                   )    **ALTERNATIVELY, SUMMARY**
                                              )    **ADJUDICATION; MEMORANDUM**
16   MICHAEL E. CRIDEN, P.A. dba CRIDEN &     )    **OF POINTS AND AUTHORITIES IN**
     LOVE, P.A., a Florida corporation,       )    **SUPPORT**
17                                            )
               Defendant.                     )    Date:       February 10, 2015
18                                            )    Time:       9:00 a.m.
                                              )    Courtroom:  E, 15th Floor
19                                            )    Judge:      Hon. Elizabeth D. Laporte
                                              )                Chief Magistrate Judge
20   _____ )
                                              )
21   MICHAEL E. CRIDEN, P.A. dba CRIDEN &     )
     LOVE, P.A., a Florida corporation,       )
22                                            )
               Counterclaimant,               )
23                                            )
          v.                                   )
24                                            )
     JOSEPH SAVERI LAW FIRM, INC., a          )
25   California corporation, and JOSEPH R.    )
     SAVERI,                                  )
26                                            )
               Counterdefendants.             )
27   _____ )

28

2400.001/863361.2        PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR,
                          ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

SER 213

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     SUMMARY JUDGMENT STANDARD ............................................................2

III.    SUMMARY OF UNDISPUTED FACTS ..........................................................3

        A.      Parties and Legal Status..........................................................................3

        B.      Criden Has No Express Agreement with Plaintiffs ...............................4

        C.      Plaintiffs Made No Agreement Implied by Subsequent
                Conduct....................................................................................................5

        D.      Criden Has Received Full Compensation .............................................10

        E.      Plaintiffs' Compensation Awarded in the TiO2 Action .......................11

IV.     CRIDEN'S CLAIMS FAIL AS A MATTER OF LAW ...................................12

        A.      No Implied Contract to Pay a Referral Fee for the Referral of
                Isaac Industries Exists..........................................................................12

        B.      No Money Had and Received Claim Exists ..........................................16

        C.      There is No Unjust Enrichment ............................................................17

        D.      No Claim for *Quantum Meruit* Exists ..................................................22

        E.      The Fraud Claims Fail ..........................................................................23

                1.      There Was No Misrepresentation or Concealment....................23

                2.      There Was No Duty to Disclose Rule 2-200 ............................24

V.      CONCLUSION...................................................................................................25

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

-i-

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR,
ALTERNATIVELY. SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

**SER 214**

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Barber v. Kimbrell's, Inc.*
577 F.2d 216 (4th Cir. 1978) ...................................................................19

*Beck v. Wecht*
28 Cal. 4th 289 (2002) ...........................................................................25

*Best Western Intern., Inc. v. Furber*
2008 WL 4182827 (D. Ariz. Sept. 5, 2008) ...............................................3

*Beverly Way Associates v. Barham*
226 Cal. App. 3d 49 (1990) ....................................................................15

*Bilan v. City and County of Honolulu*
2006 WL 3201874 (D. Haw. Nov. 2, 2006) ...............................................3

*Binder v. Aetna Life Ins. Co.*
75 Cal. App. 4th 832 (1999) ...................................................................16

*Chambers v. Kay*
29 Cal. 4th 142 (2002) ...........................................................................22

*Committee on Children's Television, Inc. v. General Foods Corp.*
35 Cal. 3d 197 (1983) ............................................................................24

*Division of Labor Law Enforcement v. Transpacific Transportation Co.*
69 Cal. App. 3d 268 (1977) ....................................................................13

*Earhart v. William Low Co.*
25 Cal. 3d 503 (1979) ............................................................................23

*First Nationwide Savings v. Perry*
11 Cal. App. 4th 1657 (1992) .................................................................18

*Guzman v. Visalia Community Bank*
71 Cal. App. 4th 1370 (1999) .................................................................15

*Hollingsworth Solderless Terminal Co. v. Turley*
622 F.2d 1324 (9th Cir, 1980) ................................................................16

*In re Titanium Antitrust Litigation*
No. 10-cv-00318 RDB ..............................................................................4

*Jogani v. Superior Court*
165 Cal. App. 4th 901 (2008) .................................................................17

*Kossian v. American National Insurance Co.*
254 Cal. App. 2d 647 (1967) ..................................................................20

*Maglica v. Maglica*
66 Cal. App. 4th 442 (1998) ...................................................................22

*Margolin v Shemaria*
85 Cal. App. 4th 891 (2000) .............................................................18, 22

*Mathews v. Orion Healthcorp Inc.*
2014 WL 4245986 (N.D. Cal. Aug. 27, 2014) ......................................2, 21

-ii-

2400.001/863361.2

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR. ALTERNATIVELY. SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

SER 215

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

*Pagdilao v. Maui Intercontinental Hotel*
703 F. Supp. 863 (D. Haw. 1988) ...............................................................3

*Palmer v. Gregg*
65 Cal. 2d 657 (1967) ............................................................................22

*Peterson v. Cellco Partnership*
164 Cal. App. 4th 1583 (2008) ................................................................21

*Philpott v. Superior Court*
1 Cal. 2d 512 (1939) .........................................................................16, 17

*Prakashpalan v. Engstrom, Lipscomb & Lack*
223 Cal. App. 4th 1105 (2014) ................................................................24

*Producers Cotton Oil Co. v. Amstar Corp.*
197 Cal. App. 3d 638 (1988) ...................................................................22

*Silva v. Providence Hosp. of Oakland*
14 Cal. 2d 762 (1939) ...........................................................................13

*Tarlesson v. Broadway Foreclosure Investment, LLC*
184 Cal. App. 4th 931 (2010) .................................................................21

*Waddy v. Sears, Roebuck & Co.*
1994 WL 392483 (N.D. Cal. July 8, 1994) ...................................................3

*Weitzenkorn v. Lesser*
40 Cal. 2d 778 (1953) ...........................................................................13

*Younan v. Equifax Inc.*
111 Cal. App. 3d 498 (1980) ...................................................................24

**STATUTES**

California Corporations Code
§ 16306(c) ..........................................................................................21
§ 16703(b) .......................................................................................4, 21

**OTHER AUTHORITIES**

1 *Corbin on Contracts*,
§ 1.18 (rev. ed. 1993) ...........................................................................17

1 Witkin, *Summary of California Law*,
Contracts § 1037 (10th ed. 2005) ............................................................13

5 Witkin, *Summary of California Law*,
Torts § 772 (10th ed. 2005) ....................................................................23
Torts § 793-94 .....................................................................................24

Civil Jury Instructions No. 305 ...............................................................13

*Restatement of the Law Second*,
Contracts 2d § 222 (1993) ......................................................................16

*Restatement of the Law Third*,
Restitution and Unjust Enrichment § 1, com. c. ...........................................18
Restitution and Unjust Enrichment § 31 Vol. 1 ............................................22
Restitution and Unjust Enrichment § 48, Vol. 2 (2011) ...........................2, 19, 20

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-iii-

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR. ALTERNATIVELY. SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

# RULES

Federal Rules of Civil Procedure
    Rule 23(g)(1),(3),(4) ...................................................................................10
    Rule 56...........................................................................................................25
    Rule 56(e)(2)...................................................................................................2

N.D. Cal. Civil Local Rule 11-4 ...................................................................................4

State Bar of California Rules of Professional Conduct
    Rule 2-200.............................................................................................21, 22, 24

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-iv-

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR,
ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

**SER 217**

1   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2              PLEASE TAKE NOTICE that on February 10, 2015, at 9:00 a.m., or as soon

3   thereafter as the matter may be heard in Courtroom E, 15th Floor, of the above captioned Court,

4   located at 450 Golden Gate Avenue, San Francisco, California, plaintiffs/counterdefendants Joseph

5   Saveri Law Firm, Inc. and Joseph R. Saveri ("plaintiffs") will and hereby do move the Court for

6   summary judgment or, alternatively summary adjudication, pursuant to Rule 56 of the Federal

7   Rules of Civil Procedure that defendant/counterclaimant Michael E. Criden, P.A. *dba* Criden &

8   Love, P.A.'s ("Criden & Love") claims for relief against plaintiffs fail as a matter of law.

9              This motion is based on this Notice of Motion, the attached Memorandum of Points

10  and Authorities, the concurrently filed declaration(s) of Joseph R. Saveri and Robert H. Bunzel,

11  and on any additional evidence and arguments that may be presented before or at the hearing on

12  this motion.

13  DATED:  January 6, 2014

14                              BARTKO, ZANKEL, BUNZEL & MILLER
                                A Professional Law Corporation
15

16

17                              By:  _____/s/ Robert H. Bunzel_____
                                            Robert H. Bunzel
18                              Attorneys for Plaintiffs and Counterdefendants
                                JOSEPH SAVERI LAW FIRM, INC.
19                              AND JOSEPH R. SAVERI

20              **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

21  I.       **INTRODUCTION**

22              No legal or equitable basis exists for Criden to collect a referral fee from plaintiffs

23  following Mr. Saveri's departure from Lieff, Cabraser, Heimann & Bernstein ("Lieff Cabraser"),

24  which fully performed its agreement with Criden to pay a referral fee regarding an antitrust case.

25  There is indisputably no express agreement between Criden and plaintiffs.  An implied agreement is

26  equally wanting since it would require proof that plaintiffs intended to accept an offer from Criden,

27  and Criden's attorney-witnesses have now confirmed by sworn testimony their belief that plaintiffs

28  did not so intend.  Criden's fraud claims fail because plaintiffs in a public filing appeared in the case

-1-

2400.001/863361.2      PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR,
ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

SER 218

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL BUNZEL & MILLER
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1  for a non-Criden client, overtly expressing their intent not to pay Criden, and there was no duty on

2  the part of plaintiffs to advise Criden about California ethical rules and division of fees. Concepts of

3  unjust enrichment, moreover, do not create a triable issue because plaintiffs received only fees fully

4  earned and awarded pursuant to a district court Order.

5  As noted in the *Restatement of the Law Third*, Restitution and Unjust Enrichment

6  § 48, p. 159, Vol. 2 (2011), a party seeking restitution of a third-party payment must demonstrate a

7  "better legal or equitable right" than the other party. Following party depositions, it is clear Criden

8  cannot prove a contractual entitlement, and it has no paramount interest in equity.

9  Criden's "unwritten rule" that "you don't mess with the referring attorneys" out of

10  "respect" is inapposite to plaintiffs here who received no client referral from Criden and cannot

11  create a basis for recovery. (Declaration of Robert H. Bunzel and Request for Judicial Notice,

12  hereafter "Bunzel Decl." Exh. C [Criden Depo. 69:14-72:22].)

13  Granting the present motion will avoid wasteful third-party discovery and an

14  expensive trial. This case is tailor made for summary judgment.

II.  **SUMMARY JUDGMENT STANDARD**

16  The standards for summary judgment were recently set forth by this Court in

17  *Mathews v. Orion Healthcorp Inc.*, 2014 WL 4245986, *6 (N.D. Cal. Aug. 27, 2014).

18  The present motion for summary judgment or adjudication concerns all (or each) of

19  Criden's seven claims for relief in its Answer and Counterclaim (Dkt. 44, hereinafter

20  "Counterclaim"), as to which Criden bears the burden of proof. "If the moving party meets its initial

21  burden, the opposing party 'may not rely merely on allegations or denials in its own pleading';

22  rather, it must set forth 'specific facts showing a genuine issue for trial.' *See* Fed. R. Civ. P.

23  56(e)(2); *Anderson*, 477 U.S. at 250. If the nonmoving party fails to show that there is a genuine

24  issue for trial, 'the moving party is entitled to judgment as a matter of law.' *Celotex*, 477 U.S. at

25  323." *Mathews v. Orion Healthcorp Inc.*, *supra* at *6.

26  The crux of the Counterclaim is an alleged implied agreement to pay a referral fee,

27  *see* § IV A, *infra*. Where "there is no issue of fact with respect to plaintiff's claim for breach of

28  implied contract," then "summary judgment on that claim is granted." *Pagdilao v. Maui*

-2-

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

2400.001/863361.2                    PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR.
                    ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

SER 219

1   *Intercontinental Hotel,* 703 F. Supp. 863, 869 (D. Haw. 1988).  *See also, Best Western Intern.,*

2   *Inc. v. Furber*, 2008 WL 4182827, *4 (D. Ariz. Sept. 5, 2008) (when claimant "presented no

3   argument in support of its assertion that reasonable jurors may infer an implied contract and breach,"

4   summary judgment was proper); *Bilan v. City and County of Honolulu*, 2006 WL 3201874, *13 (D.

5   Haw. Nov. 2, 2006); *Waddy v. Sears, Roebuck & Co.*, 1994 WL 392483, *11 (N.D. Cal. July 8,

6   1994).

7       Criden can show no disputed material facts with respect to implied contract and its

8   other claims, and plaintiffs are entitled to judgment as a matter of law.

9   III.    **SUMMARY OF UNDISPUTED FACTS**

10          A.    Parties and Legal Status

11      Prior to June 2012, Mr. Saveri was an attorney and a partner in the San Francisco

12   office of Lieff Cabraser.  (Declaration of Joseph R. Saveri, hereafter "Saveri Decl." ¶ 2.)  During all

13   times relevant to this case, Lieff Cabraser was a law firm and a registered California limited liability

14   partnership.  (Saveri Decl. ¶ 2; Bunzel Decl. Exh. A;  Bunzel Decl. Exhs. D and E [Fastiff Depo.

15   74:18-75:1; Glackin Depo. 33:4-17].)   Criden does not dispute that Lieff Cabraser is a limited

16   liability partnership. (Bunzel Decl. Exh. C [Criden Depo. 50:3-6].)

17      Mr. Saveri has substantial expertise in antitrust class actions and other complex class

18   actions.  He has served as lead counsel in a number of these cases.  (Saveri Decl. ¶ 3.)

19      On April 25, 2012, Mr. Saveri gave Lieff Cabraser written notice of his intent to

20   withdraw from the firm.  (Saveri Decl. ¶ 10, Exh. 2.)  Mr. Saveri founded another law firm sometime

21   in May 2012, which eventually became known and operated as the Joseph Saveri Law Firm, Inc.

22   (Saveri Decl. ¶ 10.)  In late May 2012, Mr. Saveri sent a general email of his withdrawal from Lieff

23   Cabraser and the formation of his new firm.  (Saveri Decl. ¶ 10, Exh. 3.)  The Joseph Saveri Law

24   Firm, Inc. operated as a law firm thereafter.

25      Criden & Love ("Criden") is the name of the law firm of Michael E. Criden, P.A., a

26   Florida Professional Association.  (Counterclaim ¶ 1.)  Mr. Love has the authority to bind the Criden

27   firm. (Bunzel Decl. Exhs. B and C [Love Depo. 13:16-22; Criden Depo. 17:9-19].)   Criden refers

28   clients to class action plaintiff firms in exchange for a referral fee (Counterclaim ¶ 1), an activity that

BARTKO ZANKEL BUNZEL
A LAW CORPORATION

One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

-3-

2400.001/863361.2

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR.
ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

**SER 220**

1    represents about fifty percent of its business.  (Bunzel Decl. Exh. C [Criden Depo. 12:10-16].)  Since

2    2001, Criden has appeared as counsel in California district courts at least 19 times.  Mr. Love has

3    declared his familiarity with the Northern District Local Rules and agreed to abide by the Standards

4    of Professional Conduct at N.D. Cal. Civil Local Rule 11-4.  (Bunzel Decl. Exhs. B [Love Depo.

5    24:14-25:18; 26:14-24]; G and H.)

6           B.    Criden Has No Express Agreement with Plaintiffs

7                  On February 8, 2010, Eric Fastiff, a partner at Lieff Cabraser, and Criden engaged in

8    an email exchange whereby Lieff Cabraser agreed to pay Criden a referral fee of 12.5 percent of any

9    fees Lieff Cabraser received in connection with a lawsuit ultimately known as *In re Titanium*

10   *Antitrust Litigation*, No. 10-cv-00318 RDB, D.C. Maryland (the "TiO2 Action").  (Bunzel Decl.

11   Exh. B [Love Depo. 140:8-16]; Saveri Decl. ¶ 4, Exh. 1.)  The email requested Mr. Fastiff, a partner

12   in Lieff Cabraser, to "confirm" by reply email, if he agreed to the referral arrangement.  Mr. Saveri

13   was a partner at Lieff Cabraser at the time.

14                  It was Criden's practice to send form "confirm" emails to referred attorneys at the

15   outset of a case as a form of offer, in order to "confirm their acceptance" of an agreement to pay the

16   referral.  (Bunzel Decl. Exhs. B [Love Depo. 141:2-142:1] and J.)  The email Mr. Love sent to

17   Mr. Fastiff followed this practice and form.  (Saveri. Decl. Exh. 1.)

18                  Mr. Fastiff responded, confirming acceptance on behalf of Lieff Cabraser. (Saveri

19   Decl. Exh. 1.)  After Lieff Cabraser's acceptance of the terms of the referral, Criden referred Isaac

20   Industries, Inc. ("Isaac Industries") as a client to be represented by Lieff Cabraser.  Criden and Isaac

21   Industries executed an engagement agreement retaining Criden and Lieff Cabraser to represent Isaac

22   Industries in the TiO2 Action. (Saveri Decl. ¶ 4; Bunzel Decl. Exhs. B [Love Depo. 138:9-24] and I.)

23                  Criden admits that its email agreement with Mr. Fastiff on behalf of Lieff Cabraser did

24   not bind individual partners of Lieff Cabraser or apply to partners who leave the firm, as it does not

25   expressly so provide.  (Bunzel Decl. Exh. B [Love Depo. 71:3-14].)[1]

26

27   [1]      It is undisputed that agreements of a limited liability partnership do not extend to individual partners, including partners who subsequently leave the firm.  Cal. Corp. Code §§ 16306(c), 16703(b).

28

-4-

2400.001/863361.2          PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR.
                                         ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

SER 221

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1    At no time—subsequent to Mr. Saveri's announcement of withdrawal or at any time

2    thereafter—did the plaintiffs accept or agree to be bound by the terms of the email agreement

3    between Criden and Lieff Cabraser.  (Saveri Decl. ¶¶ 5-6.)  Criden admits there was no express

4    agreement between Criden and plaintiffs:  Mr. Saveri "didn't say yes, I accept your proposal. . . ."

5    (Bunzel Decl. Exh. B [Love Depo. 188:23-189:4].)  Mr. Love also explicitly admitted at deposition:

6    "we don't have an express breach of contract claim" in the present action. (Bunzel Decl. Exh. B

7    [Love Depo. 75:5-76:15.)

8        C.    Plaintiffs Made No Agreement Implied by Subsequent Conduct

9        The record evidence shows no implied agreement, and rather plaintiffs' conduct

10   demonstrated the absence of an agreement and *manifested the intention not to be bound* by the terms

11   of the Criden/Lieff Cabraser email.

12       On February 9, 2010, an antitrust class action complaint was filed by plaintiff Haley

13   Paint Company, represented by Gold, Bennett, Cera & Sidener ("Gold Bennett"), in the United States

14   District Court for the District of Maryland against a number of defendants, alleging a conspiracy to

15   fix prices of titanium dioxide.  (Saveri Decl. ¶ 7.)  On February 12, 2010, Isaac Industries,

16   represented by Lieff Cabraser, Criden and others, filed a complaint in the same court, and the two

17   cases were subsequently consolidated and comprised the TiO2 Action.

18       On April 22, 2010, Mr. Saveri filed a motion for admission *pro hac vice* on behalf of

19   plaintiff Haley Paint Company and Isaac Industries.  (Bunzel Decl. Exh. 4.)  The Court subsequently

20   appointed Lieff Cabraser, together with Gold Bennett as one of the Co-Lead Class Counsel.

21   Mr. Saveri functioned as the senior lawyer at Lieff Cabraser on the matter until he left Lieff Cabraser.

22   (Saveri Decl. ¶ 8.)

23       Consistent with other antitrust class actions, the firms retained by the named plaintiffs

24   maintained separate attorney-client relationships and responsibilities.  These functions included

25   communicating with their individual clients, including the gathering and production of client

26   documents, preparation and verification of interrogatory answers, preparation for and representation

27   of name plaintiffs at deposition, and communication regarding approval of settlements.  (Saveri Decl.

28   ¶ 17.)  This case was no different.  As confirmed in Isaac Industries' retention agreement with Criden,

BARTKO ZANKEL BUNZEL
A PROFESSIONAL CORPORATION
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-5-

2400.001/863361.2        PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR,
ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

SER 222

BARTKO ZANKEL BUNZEL
*A PROFESSIONAL LAW CORPORATION*
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   Criden and "and any other firms we may associate with to represent you [expressly Lieff Cabraser]"

2   were responsible for keeping Isaac Industries "informed about the lawsuit," including  "potential

3   settlements" and to "represent" Isaac Industries "in any matter in the litigation affecting [its] status as

4   a class representative."  (Bunzel Decl. Exh. B [Love Depo. 138:9-139:6].)  The firms that performed

5   these functions were limited to the parties to the agreement—Criden and Lieff Cabraser.

6   Consequently, Lieff Cabraser and Criden prepared Isaac Industries principal David Avan for

7   deposition.  (Saveri Decl. ¶ 18; Bunzel Decl. Exh. U [Declaration of Brendan P. Glackin In Support

8   of Plaintiffs' Motion for An Award of Attorney's Fees, filed October 18, 2013, ¶ 2].)  Lieff Cabraser

9   and Criden also prepared discovery responses on behalf of Isaac Industries.[2]

10         In May 2012, in preparation for the opening of his new firm, Mr. Saveri called a

11   number of business contacts.  Mr. Saveri contacted Mr. Love of Criden and advised him that he had

12   given notice of withdrawal from Lieff Cabraser and would be founding a new firm. (Saveri Decl.

13   ¶ 9.)  According to Criden, Mr. Saveri asked if he and his new firm could appear on behalf of Criden-

14   referred clients in pending litigation, including TiO2.  Mr. Love says he responded that it was

15   conditioned on Mr. Saveri agreeing to pay Criden the same referral fee agreed to by Lieff Cabraser.

16   (Bunzel Decl. Exh. B [Love Depo. 188:5-20]; *see also* Counterclaim ¶ 62.)  It is admitted that

17   plaintiffs in the May 2012 call did not agree to be bound by Lieff Cabraser's agreement with Criden

18   for the referral of Isaac Industries to Lieff Cabraser.  (Saveri Decl. ¶ 9; Bunzel Decl. Exh. B [Love

19   Depo. 188:23-189:4] and did not manifest any intent to be bound.[3]

20         Consistent with this fact, on June 1, 2012, plaintiffs entered an appearance in the TiO2

21   Action as co-counsel for a different plaintiff, East Coast Colorants LLC *dba* Breen Color

---

22   [2]   Later, Lieff Cabraser and Criden (not plaintiffs) conferred with Isaac Industries regarding

23   the proposed settlement, where Gold Bennett advised its client, Haley Paint, and Vincent Esades of

24   Heins—with Mr. Saveri's input—advised their client Breen on settlement. (Saveri Decl. ¶ 18.)
     This individuated representation is shown in a September 2012 email exchange between Criden
     and plaintiffs who asked Mr. Love to provide information to complete Corporate Affiliation forms

25   for Isaac Industries, Inc. to be used in the Court of Appeal in connection with an attempted review
     of the class certification order under F.R.C.P. 23(f). : "As Isaac Industries, Inc. is *your client*, can
     you get the information from them and send us the completed form by next Wednesday, 9/19."

26   (Saveri Decl. ¶ 19, Exh. 9 [S 00144], emphasis supplied.)

27   [3]   There were no further oral or written statements by plaintiffs to Criden concerning a TiO2
     referral fee until after Judgment in the TiO2 Action and an Order granting an award of attorney's

28   fees were entered. (Saveri Decl. ¶ 9; Bunzel Decl. Exh. B [Love Depo. 216:15-18].)

-6-

2400.001/863361.2                    PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR,
                                      ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

SER 223

Concentrates ("Breen"), along with Heins, Mills & Olson of Minneapolis, Minnesota ("Heins"). (Saveri Decl. ¶ 10, Exh. 4.)[4]  Criden did not and does not represent Breen.  Breen was not referred by Criden. (Saveri Decl. ¶ 10; Bunzel Decl. Exh. B [Love Depo. 62:18-20].)  Upon appearing for Breen, Mr. Saveri and his new firm continued to serve in a leadership capacity, working with Gold Bennett and Lieff Cabraser.

Mr. Love was counsel of record in the TiO2 Action.  He received case filings through the Court's ECF service list (Bunzel Decl. Exh. B [Love Depo. 61:20-22]), and received the June 1, 2012 Notice of Appearance by plaintiffs for Breen in the TiO2 Action. (Bunzel Decl. Exh. B [Love Depo. 191:8-192:4].)  Mr. Love testified that he could not recall when he read the Notice that the plaintiffs were representing Breen, not Isaac Industries.  (Bunzel Decl. Exh. B [Love Depo. 61:23-62:2].)

Criden now admits that plaintiffs' Notice of Appearance in the TiO2 Action for another client constituted Mr. Saveri's communication to Criden of plaintiffs' non-acceptance of the terms of the Lieff Cabraser/Criden email and their lack of intent to pay the requested referral fee or to be bound by any agreement to that effect.  (*Id.* [Love Depo. 61:23-62:11: the Notice of Appearance was an "attempt to support an argument for reducing the amount of the referral fee"]); *see also*, Bunzel Decl. Exh. C [Criden Depo. 55:7-22].)  This testimony demonstrates the basic and complete absence of a meeting of the minds on terms.  Indeed, Mr. Love went further, admitting that the Breen appearance objectively meant Mr. Saveri by "his conduct" did not agree or intend to pay "any" referral fee (there isn't "any other explanation"):

> Q.   And as I understand your testimony, currently, you believe
>       that's accurate, that Saveri's intent in or about June 1, 2012
>       was to avoid any referral obligation?
>
> A.   As I sit here today, yes, that's what I currently believe based
>       on his conduct, yes. There doesn't seem to be any other
>       explanation.

(Bunzel Decl. Exh. B [Love Depo. 94:15-21].)

---

[4]    On July 29, 2011, Breen had intervened in the TiO2 Action as a plaintiff, represented by Heins.  (Saveri Decl. ¶ 9.)

-7-

2400.001/863361.2

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR.
ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

**SER 224**

At no time after separation from Lieff Cabraser did plaintiffs enter an appearance specifically for Isaac Industries.  At no time, did plaintiffs enter into a fee agreement with Isaac Industries.  (Saveri Decl. ¶¶ 11-12.)  At no time, did plaintiffs manifest by word or by deed any intent to be bound by the Criden/Lieff Cabraser email.  At no time, did plaintiffs manifest by work or by deed, any intent to accept Criden's May 2012 proposal for a new referral agreement.  (*Id*.)  There was no reason to seek an order to withdraw from representing Isaac Industries, the client of Criden and Lieff Cabraser, because the Joseph Saveri Law Firm had filed a Notice of Appearance for Breen, while Mr. Saveri continued to function as before in a leadership role together with Gold Bennett (representing Haley) and Lieff Cabraser (representing Isaac Industries).  (Saveri Decl. ¶ 13.)

At no time after June 1, 2012, did the Joseph Saveri Law Firm or Mr. Saveri contact Isaac Industries, report to Isaac Industries as its counsel, communicate legal advice to Isaac Industries or receive instructions from Isaac Industries as a client.  (Saveri Decl. ¶ 14; Bunzel Decl. Exh. C [Criden Depo 57:2-23].)  Plaintiffs took no steps to cause Isaac Industries to rely on plaintiffs as retained counsel (in contrast to functioning as court-appointed Co-Lead Class Counsel, discussed below).  (Saveri Decl. ¶ 14.)

The TiO2 Action proceeded as described above.  The other co-lead counsel in the TiO2 Action and Mr. Saveri had agreed it would benefit the putative class if Mr. Saveri were appointed a co-lead at his new firm.  (Saveri Decl. ¶ 16.)  When plaintiffs' associates Lisa Leebove and Kevin Rayhill were moved for admission *pro hac vice* by plaintiffs' liaison counsel Robert Levin on July 25, 2012 and June 29, 2012, liaison counsel identified them as counsel for "plaintiffs" or for all plaintiffs including Haley Paint (which was never individually represented by Lieff Cabraser or the Joseph Saveri Law Firm), in anticipation of the court's appointment of the Joseph Saveri Law Firm as co-lead class counsel.  Plaintiffs' representation of Isaac Industries was at all times only as a member of the putative, and later certified, class.  (Saveri Decl. ¶ 16, Exhs. 7 and 8.)

On August 7, 2012, plaintiffs filed a Motion to Amend Case Management Order No. 2 in the TiO2 Action (Saveri Decl. ¶ 15, Exh. 5.)  The Memorandum in support noted that on or about May 29, 2012:

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

-8-

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR.
ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

**SER 225**

1           Mr. Saveri left Lieff Cabraser and opened his own law practice, the
2   Joseph Saveri Law Firm, where he continues to play a leadership
    role in representing the plaintiffs in the present matter, along with
    Lieff Cabraser and GBCS.

3   The Court appointed plaintiffs as interim Co-Lead Class Counsel, to continue to serve with Gold

4   Bennett and Lieff Cabraser, shortly thereafter.  (Saveri Decl. ¶ 15, Exh. 6.)

5           On August 8, 2012, Mr. Saveri received an unsolicited email from Mr.  Love with a

6   copy to Mr. Criden:

7

8           Joe, I saw that you applied to being co-lead in TiO2.  That['s] good
    news.  Please *confirm* that you will be paying my firm a referral fee
    of 12.5% (the same Lieff agreed to pay us in this case).  Thanks.
9       (Emphasis supplied.)

10  (Saveri Decl. ¶ 23, Exh. 11.)  The terminology of the email is consistent with—indeed virtually

11  identical to—other emails Criden uses to offer to refer a client in exchange for a referral fee (Bunzel

12  Decl. Exh. J; Saveri Decl. Exh.1.)  As noted above, it was Criden's practice to send form "confirm"

13  emails to referred attorneys at the outset of a case as a form of offer, in order to "confirm their

14  acceptance" of an agreement to pay the referral.  (Bunzel Decl. Exh. B [Love Depo. 141:2-142:1].)

15  The August 8, 2012 email was a reprise of the email Mr. Love sent to Mr. Fastiff on February 8,

16  2010.  (Saveri Decl. Exh. 1.)  Like that email, the August 8, 2012 email from Criden to plaintiffs

17  shows Criden seeking plaintiffs' assent ("please confirm") to a referral fee proposal.  (Bunzel Decl.

18  Exh. B [Love Depo. 207:18-25].)  The difference between what happened next is crucial.  In February

19  2010, Mr. Fastiff assented.  In August 2012, Mr. Saveri did not.

20          Mr. Saveri did not respond to this email.  Indeed, any response would have been

21  illogical and inconsistent with his actions to that point.  On June 1, 2012, plaintiffs had filed a formal

22  appearance for Breen. (Saveri Decl. ¶ 23 and Exh. 4.)  As Criden had not referred Isaac Industries to

23  the Joseph Saveri Law Firm, there was no referral agreement.  The filing of the Notice showed that

24  Mr. Saveri did not intend to pay any referral fee for the referral of Isaac Industries.  (Saveri Decl.

25  ¶ 24).  Criden either actually received that Notice, or is charged with having received it, as he had

26  also filed an appearance and received filings through the Court's ECF system.  The August 8, 2012

27  email shows that, in fact, Criden recognized there was no referral fee contract between plaintiffs and

28

-9-

2400.001/863361.2

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR.
ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

SER 226

BARTKO ZANKEL BUNZEL
BARTKO ZANKEL TARRANT & MILLER
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1    Criden, as Criden reiterated his May 2012 offer to Mr. Saveri, again seeking acceptance that never

2    came.[5]

3           While not representing Isaac Industries individually, Mr. Saveri continued to serve as

4    Co-Lead Class Counsel upon formation of the Joseph Saveri Law Firm.  In that capacity, Mr. Saveri

5    understood he and the Joseph Saveri Law Firm "must fairly and adequately represent the interests of

6    the class." Fed. R. Civ. P. 23(g)(1),(3),(4).  (Saveri Decl. ¶ 17.)

7           D.     Criden Has Received Full Compensation

8           Criden has been more than fully paid for its work in the TiO2 Action, with a multiplier

9    on its lodestar, even if the handsome referral fees it received are ignored.

10          In December 2013, after extensive discovery and motion practice (over 90 depositions

11   were taken worldwide), the Maryland district court approved settlement of the TiO2 Action for

12   $163.5 million and awarded $54.5 million in attorney's fees. (Saveri Decl. ¶ 20, Exh. 10.)  The TiO2

13   Action, including the award of attorney's fees, is final, and a Final Judgment has been entered

14   resolving all claims.  (Saveri Decl. ¶ 20.) The attorney's fees have been allocated and paid to 12

15   plaintiff law firms, including Criden.  (Saveri Decl. ¶ 20.)

16          Criden did not dispute the award of attorney's fees or its allocation.  Criden received

17   four payments with respect to the TiO2 Action.  First, Criden's costs advanced of $39,398.18 were

18   reimbursed in full.  (Bunzel Decl. Exhs. B [Love Depo. 224:1-16 and O].)  Second, Criden's lodestar

19   for its attorney time on the case, submitted at $836,400 (Bunzel Decl. Exhs. B [Love Depo. 214:4-15

20   and N]), was paid to Criden at a 1.2 multiplier totaling $1,003,680.  (Bunzel Decl. Exh. R.)  Third,

21   Criden received a referral fee from Lieff Cabraser equal to 12.5% of Lieff Cabraser's fees, or

22   $917,177.01.[6]  (Bunzel Decl. Exh. Q.)  Fourth, Criden received a referral fee from class counsel

23   Berger Montague in the amount of $799,523.97.  (Bunzel Decl. Exh. P.)

24

25   [5]    Any alternative explanation that Criden was using the "please confirm" language to create
26   the false impression that there was a prior meeting of the minds is objectively contrary to Criden's
     practice and Criden's testimony that Mr. Saveri, by entering the appearance for Breen, was
27   manifesting neither acceptance nor intent to be bound.

28   [6]    Sums paid to Criden by Lieff Cabraser included work performed by Mr. Saveri at Lieff
     Cabraser prior to June 2012.  (Saveri Decl. ¶21; Bunzel Decl. Exh. C [Criden Depo. 88:18-89:10].)

-10-

2400.001/863361.2     PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR.
ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

SER 227

BARTKO ZANKEL BUNZEL
A LAW CORPORATION
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1      Thus, Criden has received referral fees from the TiO2 case equal to $1,716,700.98,

2  plus recovery of its own fees and expenses of $1,041,898.78, for a total of $2,758,422.75.  Criden has

3  been paid by the firms it contracted with, and has been fully paid on its lodestar for the services it

4  rendered in the case.  This disposes of Criden's meritless *quantum meruit* claim.  See § IV D, below.

5      E.      Plaintiffs' Compensation Awarded in the TiO2 Action

6      Mr. Saveri submitted a declaration to the district court in the TiO2 Action describing

7  plaintiffs' lodestar and plaintiffs' costs advanced.  (Bunzel Decl. Exh. W.)  Criden does not dispute

8  the accuracy of these figures. (Bunzel Decl. Exh. B [Love Depo. 213:7-19]), and indeed bases its

9  claims in this case on plaintiffs' entitlement to the awarded fees.  (Counterclaim ¶¶ 37-40; Saveri

10  Decl. Exh. 10.)  Criden did not object to plaintiffs' fee application or assert any interest in plaintiffs'

11  fees to the district court in the TiO2 Action, and Mr. Love testified he would be guessing about what

12  would have happened if Criden had done so. (Bunzel Decl. Exh. B [Love Depo. 220:25-221:25.)

13      Solomon Cera, co-lead class counsel and attorney for Haley Paint which first filed the

14  TiO2 Action, testified about plaintiffs' contributions to the case after Mr. Saveri left Lieff Cabraser:

15      Q.   So you have personal knowledge and experience with respect
16           to Mr. Saveri's contributions to the case after he left Lieff
             Cabraser; correct?
17      A.   Yes.
        Q.   And would you agree that Mr. Saveri and The Joseph Saveri
18           Law Firm made significant contributions that helped achieve
             the positive result in the titanium case?
19      A.   Yes.
        Q.   Can you describe in general the types of contributions that
20           Mr. Saveri at The Joseph Saveri Law Firm and his other
             colleagues contributed to the case?
21      A.   Well, people who work on these cases would understand
22           they're kind of a unique animal, that they take tremendous
             devotion and effort and tenacity and skill to bring home results
23           like we brought home in titanium, and Joe Saveri and his firm
             were definitely a significant part of that. I mean, there was
24           massive discovery going on. There was briefing going on and
             all kinds of issues. There was expert discovery, class
25           certification that happened in August of 2012. The judge had
             us on extremely, you know, accelerated schedule.· The case
26           discovery was conducted throughout the world.· The judge set
             a trial date for September 2013 that he repeatedly said he
27           would not change under any circumstances. So we were facing
28

-11-

2400.001/863361.2          PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR.
                                          ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

SER 228

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKO ZANKEL BUNZEL
A PROFESSIONAL LAW CORPORATION
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   arguments about arbitration and summary judgment, all kinds
2   of things. So Joe was, you know, intimately involved in
    litigating these things in conjunction with us and Lieff
3   Cabraser, and, you know, he was a very significant
    contributor, there is no question.

4   (Bunzel Decl. Exh. F [Cera Depo. 30:9-31:18].) Mr. Criden acknowledged at deposition the

5   "excellent result on behalf of all counsel" who worked on the TiO2 case. (Bunzel Decl. Exh. C

6   [Criden Depo. 63:4-10].)

7   On October 23, 2013, Mr. Love sent another unsolicited email to Mr. Saveri:

8   Joe, Michael and I want to congratulate you on achieving such a
    tremendous result in the TiO2 case. As is our practice, I just wanted
9   to remind you of your firm's 12.5% referral obligation per our
    February 2010 agreement. I look forward to working with you on
10  some new matters. (Saveri Decl. ¶ 25, Exh. 12.)

11  Consistent with prior practice and the absence of an express or implied referral agreement, Mr. Saveri

12  did not respond to this email because there was no such referral obligation. On several occasions he

13  had made it clear—objectively and subjectively to Criden—by not accepting Mr. Love's May 2012

14  and August 2012 proposals, and instead appearing for Breen, that there was no referral fee agreement

15  between Criden and plaintiffs. (Saveri Decl. ¶ 25.)

16  **IV.     CRIDEN'S CLAIMS FAIL AS A MATTER OF LAW**

17      A.      No Implied Contract to Pay a Referral Fee for the Referral of Isaac
18              Industries Exists

19  Criden is not suing for breach of an express contract to pay a referral fee for the

20  referral of Isaac Industries to the Joseph Saveri Law Firm. *Infra*, § II B.

21  Criden does maintain a claim that there was a contract to pay a referral fee for the

22  referral of Isaac Industries that should be implied in fact. This claim is premised on a conversation

23  Mr. Love had with Mr. Saveri in May 2012, when Mr. Saveri advised he was leaving Lieff Cabraser.

24  According to Mr. Love, Mr. Saveri asked for permission to continue representing Criden clients in

25  TiO2 and another action. Mr. Love says he would agree if Mr. Saveri would agree to the terms of the

26  Lieff Cabraser/Criden email regarding Isaac Industries. (Counterclaim ¶ 43.)

27  For purposes of this motion, it will be assumed the May 2012 conversation was as

28  recalled by Mr. Love. It is undisputed that Mr. Saveri did not assent in that call or at any other time.

-12-

2400.001/863361.2          PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR,
                           ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

SER 229

1  (Saveri Decl. ¶ 9; Bunzel Decl. Exh. B [Love Depo. 188:23-189:4].)   Criden instead asserts that

2  plaintiffs by subsequent conduct manifested assent to what was offered in the May 2012 call.  Criden

3  identifies the following:   (i) plaintiffs entering an appearance for Breen without withdrawing as

4  counsel for Isaac Industries, (ii) *pro hac vice* applications filed on behalf of associates of his firm on

5  behalf of all plaintiffs, and (iii) Mr. Saveri moving to be appointed co-lead class counsel while

6  advising the court he would "continue" a leadership role.  (Counterclaim ¶¶ 43-46.)

7  In order to prove an implied contract resulting from conduct, it is necessary to prove

8  by that conduct *mutual* assent, *i.e.* both parties intending to promise or agree.  *Silva v. Providence*

9  *Hosp. of Oakland,* 14 Cal. 2d 762, 773 (1939):   "The true implied contract, then, consists of

10  obligations arising from a mutual agreement and intent to promise where the agreement and promise

11  have not been expressed in words."  *See also, Division of Labor Law Enforcement v. Transpacific*

12  *Transportation Co.*, 69 Cal. App. 3d 268, 275 (1977) ("the very heart of this kind of agreement is an

13  intent to promise.")  All of the elements of an express agreement are required to support an implied

14  contract claim, with the exception that "conduct from which the promise may be implied" must be

15  proved.  *Weitzenkorn v. Lesser*, 40 Cal. 2d 778, 794 (1953).

16  The requisite proof for an implied contract claim is set forth in the California Advisory

17  Committee on Civil Jury Instructions No. 305  ("CACI"):

18
19         Conduct will create a contract if the conduct of both parties is
           intentional and each knows, or has reason to know, that the other
20         party will interpret the conduct as an agreement to enter into a
           contract.

21  An implied contract claim can only be sustained if the "circumstances be such as to warrant the

22  inference that it was the expectation of *both parties* during the time that the services were rendered

23  that compensation should be made." 1 Witkin, *Summary of California Law*, Contracts § 1037, p. 1128

24  (10th ed. 2005).

25  Here, there was undisputed conduct by plaintiffs, which Criden admits unambiguously

26  manifests  plaintiffs' intent not to pay a referral fee in exchange for the referral of Isaac Industries.

27  The Criden May 2012 "proposal" (Bunzel Decl. Exh. B [Love Depo. 188:23-189:22]) was an offer

28  that  Criden agree to refer Isaac Industries if Mr. Saveri agreed to pay the same  referral fee agreed by

-13-

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR.
ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

**SER 230**

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1    Lieff Cabraser.  To the contrary, plaintiffs did not assent but rather filed a Notice of Appearance for

2    another client (Breen) represented by other lawyers in the TiO2 Action, and not referred by Criden.

3    The 'terms' of Mr. Love's proposal were thus never fulfilled.

4             The parties' intent and conduct is likewise unambiguous.  As Mr. Love admits,

5    plaintiffs' Notice of Appearance for Breen[7] was Mr. Saveri's way of telling Criden that plaintiffs did

6    not intend to accept Criden's offer:

8         Q.    So, again, it's your understanding or belief that, by contacting
               Esades and filing a notice of appearance for another plaintiff,
9               Saveri was seeking to avoid the Criden & Love referral fee?
          A.    In TiO2?
10        Q.    Yes.
          A.    Yes, that's my opinion.

11   (Bunzel Decl. Exh. B [Love Depo. 101:7-13; 94:15-21; 100:12-101:13].)  Mr. Criden also admits

12   that plaintiffs demonstrated the intent not to pay a referral fee for the referral of Isaac Industries

13   when they appeared for Breen:

14        Q.    All right. The paragraph reads, "On June 1, 2012, apparently
               hoping to dodge any referral obligation to Criden & Love,
15              Saveri filed a notice of appearance on behalf of a different
               Plaintiff, East Coast Colorants, LLC d/b/a Breen Color
16              Concentrates, Breen, that had intervened in the case six
               months earlier." Do you see that?
17        A.    Yes, I do.
          Q.    Did you review this counterclaim filed in the Northern District
18              of California before it was filed?
          A.    Yes, I believe I did.
19        Q.    And you believe that allegation is accurate?
          A.    Looking back on what's transpired, absolutely.
20
21   (Bunzel Decl. Exh. C [Criden Depo. 55:7-22].)  Mr. Love's and Mr. Criden's frank testimony

22   buttresses that of Mr. Saveri on this crucial fact.  (Saveri Decl. ¶ 10).  There is no dispute regarding

23   plaintiffs' intent.  The implied in fact contract claim fails as a matter of law.

24             Since the Notice of Appearance for Breen was both a rejection of Criden's May 2012

25   "proposal" and an objective manifestation of the intent not to be bound, it is thus unnecessary to parse

26

27   _____
     [7]      While Mr. Love claims he did not see the Notice of Appearance ECF filing at the time, that
28   is irrelevant since the filing acted as notice to all ECF participants, and Criden now admits that the
     filing signaled an intent to not pay it a referral fee. Maryland District Court Local Rule 1(c).

                                    -14-

2400.001/863361.2          PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR.
                                ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

SER 231

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1  Criden's other assertions regarding irrelevant language in subsequent filings in the TiO2 docket. It is

2  hornbook law that: "If the offeree's words or acts either indicate that the offeree is declining the offer

3  or justify the offeror in so inferring, the offeree will be considered to have rejected the offer."

4  *Guzman v. Visalia Community Bank*, 71 Cal. App. 4th 1370, 1376 (1999), citations omitted.

5  Rejection by an offeree "terminates the offer." *Beverly Way Associates v. Barham*, 226 Cal. App. 3d

6  49, 55 (1990). It cannot be later accepted by words or conduct.

7  Criden claims that by moving to be appointed lead counsel, plaintiffs agreed to pay the

8  referral fee for the referral of Isaac Industries. This is incorrect. The motion, filed months after the

9  June 1, 2012 appearance for Breen, says nothing of the sort. (Saveri Decl. ¶ 15 and Exh. 5.) The

10  May 2012 proposal to pay a referral fee, like the Lieff Cabraser agreement, was never conditioned on

11  lead counsel status, but rather on referral of a client that plaintiffs did not accept. The only language

12  Criden points to is a statement in the motion that Mr. Saveri "continues to play a leadership role in

13  representing the plaintiffs in the present matter." Nothing about Isaac Industries. Nothing about a

14  referral fee or agreement with Criden. This statement provides no more support for an agreement

15  between Criden and plaintiffs as it would for a claim between Criden and Gold Bennett.

16  To similar effect are the *pro hac vice* applications for two associates of the Joseph

17  Saveri Law Firm in June 2012.[8] These were not signed by Mr. Saveri or anyone with authority to

18  bind the firm to a referral fee obligation. These were perfunctory filings by junior lawyers intended

19  to accomplish the non-controversial purpose of obtaining admission before the District of Maryland

20  to appear in a class action. Mr. Saveri and his fellow Co-Lead Class Counsel had discussed

21  Mr. Saveri becoming interim co-lead class counsel at the time of plaintiffs' appearance for Breen, and

22  the *pro hac vice* applications were an intended part of the process to provide notice that the Joseph

23  Saveri Law Firm, Joseph Saveri and the other attorneys at the firm would be representing the class.

24  (Saveri Decl. ¶ 16.) It would be similarly unreasonable—absurd—for someone to conclude that the

25  Joseph Saveri Law Firm had taken over individual representation for Haley Paint.

26

27  ───────────────

[8]     The *pro hac vice* applications were form applications reciting the names of the attorneys, their affiliation with the Joseph Saveri Law Firm, their status in good standing with the State Bar of California and other ordinary facts. There was no particularized discussion of any factual matter relevant to the TiO2 Action. (Saveri Decl. Exhs. 7 and 8.)

28

-15-

2400.001/863361.2

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

SER 232

BARTKO ZANKEL BUNZEL
A PROFESSIONAL CORPORATION
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKO ZANKEL BUNZEL
*A LAW CORPORATION*
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1    That Mr. Saveri did not file a formal withdrawal from representing Isaac Industries

2  while continuing to represent the class is of no moment.  Mr. Saveri was clearly not withdrawing

3  from the case and indeed sought appointment of his new firm to represent the class.  Haley Paint

4  continued to be represented by Gold Bennett.  Isaac Industries continued to be represented by Criden

5  and Lieff Cabraser.  Breen was represented by Heins and the Joseph Saveri Law Firm.  (Saveri Decl.

6  ¶ 13.)[9]

7    Finally, plaintiffs' representation of Isaac Industries as a member of the class cannot

8  raise an inference of intent to agree to pay Criden a referral fee, absent an agreement.  When asked at

9  deposition if there have been any circumstances where a firm paid a referral fee to Criden without a

10  written agreement, Mr. Criden and Mr. Love discussed only one other situation. (Bunzel Decl.

11  Exhs. B [Love Depo. 73:5-75:4] and C [Criden Depo. 20:7-25:1].)  Mr. Criden testified "I don't

12  believe there was anything in writing" when a local counsel who became lead paid a referral fee. (*Id.*,

13  Exh. C, 21:3-4.)  Mr. Love clarified that in that same matter, the local counsel at "the beginning" of

14  the case made an oral agreement with Criden, "he said, you know, don't worry about it, I took his

15  word," and at the end of the case the local counsel "sent me an e-mail saying don't worry, I'll pay

16  your 10 percent." (*Id.*, Exh. B, 74:18-75:4.)  Criden's referral fee custom and practice involves

17  written email agreements, [10] and there is none with plaintiffs.

18    Summary judgment must be granted on the implied in fact contract claim.

19  **B.**    **No Money Had and Received Claim Exists**

20    Next, Criden asserts a common count:  money had and received.  Criden claims that a

21  part of the attorney's fees paid to plaintiffs in the TiO2 Action belongs to Criden.  (Counterclaim

22  ¶¶ 52, 54).  As stated in *Philpott v. Superior Court*, 1 Cal. 2d 512, 522 (1939): "[A]n action as upon

---

[9]    In fact, a motion and resulting order of withdrawal would have caused substantial confusion and would have been unnecessary.  Among other things, filing such a document might have resulted in the removal of the Joseph Saveri Law Firm attorneys from the ECF list, disabling them from receiving court filings.

[10]    "We recognize that in conjunction with other factors not present in this case, a course of dealing between the parties can be relevant to inferring the existence of an implied contract." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1337 (9th Cir, 1980);  *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832,850 (1999) ("[I]ntention to make a promise may be manifested in language or by implication from other circumstances, including course of dealing or usage of trade or course of performance."); *Restatement of the Law*, 2d Contracts, § 222.

2400.001/863361.2       PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR.
ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

1    contract will lie for money had and received *wherever one person has received money which belongs*

2    *to another*, and which in 'equity and good conscience,' or in other words, in justice and right, should

3    be *returned*." (Emphasis supplied.)[11]

4             As in other class actions, all plaintiffs' counsel in the TiO2 Action filed an

5    application for an award of their fees and reimbursement of costs.[12] This included a supporting

6    declaration from Mr. Saveri reflecting the legal work of plaintiffs, not Criden, that had benefitted the

7    class. (Bunzel Decl. Exh.W.)  Criden did not assert at that time a right to a referral fee from

8    plaintiffs, and did not object to plaintiffs' fee application (Bunzel Decl. Exh. B [Love Depo. 220:25-

9    221:25].)  Nor does Criden dispute that plaintiffs' fee hours were actually expended, and its costs

10   appropriately incurred and properly accounted or quarrel in any way with the entitlement or amount

11   of plaintiffs' fees requested.  (Bunzel Decl. Exh. B [Love Depo. 213:7-19].)  The fees earned by the

12   Joseph Saveri Law Firm were never the property of Criden.

13            Had plaintiffs received, for instance by accident, a referral fee that belonged to

14   Criden, it would be returnable as "money had and received."  But plaintiffs did not receive a referral

15   fee which must be paid back.  Like Criden and the other attorneys in the TiO2 Action, they received

16   attorney's fees based on the work they performed in the case, which were awarded by the Court in a

17   Final Judgment and duly allocated by Co-Lead Counsel pursuant to the powers given them by Court

18   Order.  (Saveri Decl. ¶¶ 21, 23.)  Summary judgment should be granted to as to Count II of the

19   Counterclaim.

20            C.    There is No Unjust Enrichment

21            Acknowledging the weakness of his legal claims, Criden falls back on a nebulous

22   equitable claim.  Criden claims that "had Criden & Love not referred Isaac Industries to Saveri and

23   Lieff Cabraser, [plaintiffs] would have never had a 'leadership role' in the TiO2 case prior to seeking

---

[11]      A "common count[ ] for money had and received" is an "action[ ] for Assumpsit," and "the action is one at law."  *Philpott v. Superior Court*, *supra*, at p. 512.  "Assumpsit" has "the literal meaning 'he promised.'"  1 *Corbin on Contracts*, § 1.18, p. 51 (rev. ed. 1993); *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 906 (2008).  As a creature of promise (implied or express), the money had and received common count here also fails for the same reasons that Criden's implied contract fails (*Infra*, § IV A.).

[12]      The Court in the TiO2 Action approved an incentive payment  to Isaac Industries of $25,000, which Criden supported. (Saveri Decl. ¶ 4, Exh. 11.)

-17-

2400.001/863361.2    PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR. ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

**SER 234**

1   a Co-Lead Class Counsel appointment," which enabled plaintiffs to earn substantial fees.

2   (Counterclaim ¶ 66). The claim fails on multiple levels.

3        First, a referring lawyer is entitled to a referral fee if it refers a client under an

4   enforceable agreement to pay the referral fee; equitable principles are not given much weight.

5   *Margolin v Shemaria*, 85 Cal. App. 4th 891, 893 (2000).

6        Second, Criden did not refer Isaac Industries to plaintiffs. Criden referred Isaac

7   Industries to Lieff Cabraser, and Lieff Cabraser agreed to and did pay a handsome referral fee to

8   Criden. "Criden & Love has been paid by Lieff Cabraser and Berger and Montague under their

9   respective referral agreements in the TIO2 Action." (Bunzel Decl. Exh. V, p. 5.)

10        Third, plaintiffs appeared in the TiO2 Action for Breen, a client not referred by

11   Criden. As Mr. Criden testified, in circumstances where a lawyer finds her own client in a plaintiff

12   side antitrust case, no referral fee is due:

13       A.   If she finds a client from another source?
       Q.   Or on her own.

14       A.   Well, there's no -- you don't pay a referral fee to yourself, so —

15       Q.   Correct.
       A.   —if Grant & Eisenhofer, where [Linda Nussbaum] works now,

16            were to find — have their own client, there would be no need

17            for a referral fee, they would proceed on their own behalf.
       Q.   And there would be nothing wrong with that?

18       A.   Of course not.

19   (Bunzel Decl. Exh. C [Criden Depo. 73:16-74:1].)

20        Fourth, slapping an "equitable" label on Criden's claims does not cure their

21   deficiencies, change summary judgment standards or create triable issues of fact where there are

22   none. Unjust enrichment arises when a party receives something it was not entitled to, at the expense

23   of another. The "fact that one person benefits another is not, by itself, sufficient to require restitution.

24   The person receiving the benefit is required to make restitution only if the circumstances are such

25   that, as between the two individuals, it is unjust for the person to retain it. (Rest., Restitution, supra,

26   § 1, com. c.)." *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1663 (1992).

27        There is no unjust enrichment—and no jury should be asked to consider the claim—

28   where the district court in Maryland awarded attorney's fees to class counsel, including plaintiffs,

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-18-

2400.001/863361.2   PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR.
ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

SER 235

1    based on the twelve factors set forth in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir.

2    1978).[13]   (Saveri Decl. ¶ 20, Exh. 10.)   Criden does not contend that plaintiffs (or any of the other

3    counsel involved in TiO2) did not deserve their awarded fees.

4              In the absence of a contract claim, Criden urges it is "unfair" for plaintiffs not to pay a

5    referral fee because Criden had a role in in the inception of the TiO2 Action, which occurred when

6    Mr. Saveri was a partner at Lieff Cabraser and prior to the formation of the Joseph Saveri Law Firm.

7    Simply because Criden had some role—it was tangential or insubstantial at best[14]—in the beginning

8    stages of the TiO2 Action, Criden believes it is unfair for it not to receive some compensation for that

9    which occurred later.  This attenuated reasoning ignores actual causation for plaintiffs' fees benefiting

10   the TiO2 class (plaintiffs' hard work), and does not establish unjust enrichment.

11             Unjust enrichment is a "highly restrictive" equitable doctrine. The doctrine arises from

12   principles of restitution. The general rule concerning restitution of payments made by third parties,

13   under an unjust enrichment theory, is described in the *Restatement of the Law Third*, Restitution and

14   Unjust Enrichment § 48 pp. 144-145, as follows:

15             If a third person makes a payment to the defendant to which (as
             between claimant and defendant) the claimant has a better legal or
16           equitable right, the claimant is entitled to restitution from the
             defendant as necessary to prevent unjust enrichment.
17                                      *    *    *
18             As used in this section, the words "better legal or equitable right"
             refer to a paramount interest of a kind recognized in law or equity—
19           not to the personal merit or desert of the persons involved, or to
             considerations of fairness independent of preexisting entitlements.
20           See Comment *i*.

21   _____

22   [13]      "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised;
     (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity
23   costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's
     expectations at the outset of the litigation; (7) the time limitations imposed by the client or
24   circumstances; (8) the amount in controversy and the results obtained; (9) the experience,
     reputation and ability of the attorney; (10) the undesirability of the case within the legal
25   community in which the suit arose; (11) the nature and length of the professional relationship
     between attorney and client; and (12) attorneys' fees awards in similar cases."

26   [14]      The record shows that Linda Nussbaum first brought the case to Lieff Cabraser.  (Affidavit
     Linda Nussbaum filed May 15, 2014, Dkt. 15-2, ¶ 6.)  Criden referred Isaac Industries to
27   Ms. Nussbaum's current firm Grant & Eisenhofer, but it waived any referral fee even though Grant
     & Eisenhofer did in fact appear for Isaac Industries. (Bunzel Decl. Exh. C [Criden Depo. 34:8-
28   35:11].)

-19-

BARTKO ZANKEL BUNZEL
*a professional law corporation*
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

2400.001/863361.2    PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR.
ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

**SER 236**

In Comment *i,* the Reporters of the Restatement explain:

> Although the rule of § 48 is stated very broadly, *its scope is much narrower* than the language of the provision might suggest to a non-lawyer. *Properly interpreted, the requirement that the claimant demonstrate "a better legal or equitable right" to the benefit in question is actually highly restrictive.* The requirement is satisfied in some instances (as in Illustration 1) by proof of a clear legal entitlement. In other cases the claimant's entitlement is drawn from equity jurisprudence. But *the requirement, in either case, is that the claimant identify a right in the disputed assets that is both recognized, and accorded priority over the interest of the defendant, under the law of the jurisdiction.* Proof merely that the defendant has received a windfall, that the claimant has been ill-treated, and that the third party's payment to the defendant (or the defendant's retention of payment as against the claimant) violates rules of good faith, basic fairness, or common decency, does not suffice to make out a claim in restitution under § 48 or any other provision of this Restatement.  (Emphasis supplied.)

Thus, for Criden to recover under an unjust enrichment theory, it needs to show a right that is both recognized and accorded priority over the interest of plaintiffs in the awarded fees.

Criden has no contract right, as demonstrated above. Any equitable claim of "unfairness" cannot trump plaintiffs' fully adjudicated and legal right to plaintiffs' earned and awarded fees.  (Saveri Decl. ¶ 20 and Exh. 10.)  There is no authority for the proposition that Criden has some sort of superior equitable right or other vague concept so as to reapportion or redistribute class action attorney's fees.

Restitution under an unjust enrichment theory would be appropriate "when the defendant has been compensated or reimbursed by a third party for costs or expenditures incurred by the claimant." *Restatement Third*, Restitution and Unjust Enrichment, § 48 Comment (e), p. 148. See, *Kossian v. American National Insurance Co.*, 254 Cal. App. 2d 647, 651 (1967).  Criden provided *no* costs or services that formed the basis of plaintiffs' fee award—indeed the time and expenses incurred by plaintiffs far outstripped that of Criden.  Instead, *all* of plaintiffs' awarded fees were based on the work of plaintiffs, not Criden.  Criden has no superior right.

Criden's equitable claim is also untenable to the extent Criden is seeking to hold Mr. Saveri liable for an obligation of his former limited liability partnership.  (Counterclaim ¶¶ 16,

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-20-

2400.001/863361.2

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR. ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

SER 237

1   77-79 and Exh. A thereto).[15]  Since Lieff Cabraser is a limited liability partnership, and Mr. Saveri is

2   a former limited liability partner, Criden's claim that Mr. Saveri fulfill some asserted obligation

3   undertaken by the partnership cannot as a matter of statutory policy be a "superior" or "paramount"

4   right.  California Corporations Code § 16306(c) provides: "a partner in a registered limited liability

5   partnership is not liable . . . for debts, obligations, or liabilities . . . of . . . the partnership."  Similarly,

6   a "disassociated" (former) limited liability partner such as Mr. Saveri is not liable for obligations of

7   the partnership even if incurred prior to withdrawal. *Id*. at § 16703(b).

8          A claim for a referral fee under an unjust enrichment theory will not be allowed where

9   it would frustrate the law or public policy.  *Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583,

10  1595 (2008); *Tarlesson v. Broadway Foreclosure Investment, LLC*, 184 Cal. App. 4th 931, 938

11  (2010).  The strong statutory policy insulating limited liability partners from partnership obligations

12  forbids Criden's unfairness claim.

13         Lastly, plaintiffs do not believe the Court needs to construe California's ethical rules

14  related to division of fees to decide this motion, since there is no express or implied agreement to pay

15  a referral fee and all other legal and equitable bases for Criden's claims fail.[16]  If the Court concludes

16  there are triable issues unless Rule 2-200 is addressed, then:

17         •   Mr. Saveri is a California licensed attorney subject to the California Rules of

18  Professional Conduct (Saveri Decl. ¶ 1), and he is being asked to have his firm split a fee with

19  another lawyer.  Criden acknowledged those rules.  (Bunzel decl. Exh. H.)

20         •   Even though Criden has obtained the consent of Isaac Industries to a division of

21  fees, there is no evidence that plaintiffs' client Breen (for whom plaintiffs appeared in the TiO2

22  Action) has consented.  (Saveri Decl. ¶ 26.)[17]

23

24  _____
    [15]        Criden admitted at deposition its referral fee agreements contain no express provision for
25  personal liability of law firm partners. (Bunzel Decl. Exh. C [Criden Depo. 59:4-10].)

    [16]        Plaintiffs' Complaint, Dkt. 1, ¶¶ 33-34 and Answer to Counterclaim, Dkt. 48, at
26  Affirmative Defense No. 1, assert that the absence of informed written consent by plaintiffs' client
    in the TiO2 Action (Breen) to a division of fees with Criden would violate Rule 2-200 of the Rules
27  of Professional Conduct of the State Bar of California.

28  [17]       *See* Saveri Decl. ¶ 26.  Criden has the burden to prove otherwise. *Mathews v. Orion
    Healthcorp Inc., supra*, at *6 "On an issue where the nonmoving party will bear the burden of

-21-

BARTKO ZANKEL BUNZEL
A PROFESSIONAL LAW CORPORATION
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

**SER 238**

- Any implied agreement inconsistent with Rule 2-200 is unenforceable and void. *See, e.g. Chambers v. Kay*, 29 Cal. 4th 142,150 (2002); *Restatement of the Law Third*, Restitution and Unjust Enrichment § 31, p. 481, Vol. 1 (restitution on an unjust enrichment theory will not be allowed if it "would defeat the policy of the law that makes the agreement unenforceable.")

- In *Margolin v. Shemaria*, *supra*, 85 Cal. App. 4th at 901, the court rejected an equitable estoppel argument by a referring attorney seeking a referral fee absent written client consent: "failure to share his fees under the fee sharing agreement does not constitute his *unjust enrichment* sufficient to support application of the doctrine of equitable estoppel, since rule 2–200 exists for the benefit of clients."

Again, plaintiffs do not invite the Court's application of the Rule 2-200 to the facts here unless the other bases to reject all of Criden's claims including unjust enrichment are found insufficient.

D.   No Claim for *Quantum Meruit* Exists

Criden at Counterclaim Count IV incorrectly claims entitlement to all benefit plaintiffs obtained following Criden's referral of Isaac Industries to Lieff Cabraser.   (Counterclaim ¶ 74). Unbridled by reason or seriousness, Criden seeks a shocking one-third of plaintiffs' fee, or approximately $3.3 million, all of which was awarded based on the legal work of plaintiffs, not Criden.

This claim turns principles of equity on their head.  The measure of *quantum meruit* is the reasonable value of *Criden's* services rendered.  The reasonable value of services is *not* measured by how the defendant was "benefited."  *Maglica v. Maglica*, 66 Cal. App. 4th 442, 449-50 (1998). "The measure of recovery in *quantum meruit* is the reasonable value of the services rendered, *provided* they were of direct benefit to the defendant."[18]  *Palmer v. Gregg*, 65 Cal. 2d 657, 660 (1967); *see also*, *Producers Cotton Oil Co. v. Amstar Corp.*, 197 Cal. App. 3d 638, 659 (1988);

---

proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case."

[18]    "[I]t is one thing to require that the defendant be benefited by services, it is quite another to *measure* the reasonable value of those *services* by the value by which the defendant was 'benefited' as a *result* of them."  *Id.* at 450.

-22-

2400.001/863361.2                    PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR. ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

SER 239

BARTKO ZANKEL BUNZEL
A PROFESSIONAL LAW CORPORATION
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   *Earhart v. William Low Co.*, 25 Cal. 3d 503, 510 (1979) [law implies an obligation to restore a

2   benefit unfairly retained by the defendant].)  Here, Criden has been fully paid for its services, having

3   received an attorney's fee award of $1,003,680 representing full payment of its attorney's fees

4   incurred, at a 1.2 lodestar premium.

5          There is no authority for the proposition that *quantum meruit* principles are applicable

6   to referral fees.  Criden's *quantum meruit* claim fails because it is wholly speculative and not properly

7   valued.  Summary judgment on Count IV should be granted.

8          E.      The Fraud Claims Fail

9                  1.      There Was No Misrepresentation or Concealment

10          Acknowledging the weakness of its contract and equitable claims, Criden lastly

11  repackages them as a hodgepodge of fraud and misrepresentation claims.  In Count V, Criden re-

12  bundles the implied contract claim into a misrepresentation claim that plaintiffs, by the same conduct

13  that assertedly implied a contract to pay a referral fee, fraudulently represented they would pay it.

14  (Counterclaim ¶ 79.)  The concealment claim contained in Count VII is virtually identical except that

15  it alleges plaintiffs concealed they did not intend to pay a referral fee.  (Counterclaim ¶¶ 94 and 95).

16  Criden's claims fare no better in these different guises.

17          The theory of the fraud claims is that if plaintiffs had advised Criden they would not

18  be bound by the Lieff Cabraser/Criden email or separately agree to pay a referral fee in exchange for

19  the referral of Isaac Industries, Criden would have objected to plaintiffs' request to become co-lead

20  class counsel.  (Counterclaim ¶ 81.)  The claims hinge on the theory  that plaintiffs' actions in

21  entering an appearance in the TiO2 Action, not withdrawing from representing Isaac Industries, and

22  seeking to be appointed co-lead class counsel were all intended to 'deceive' Criden into believing

23  plaintiffs agreed to  be bound by a referral agreement.

24          To state a fraud claim based on misrepresentation, the following must be proven:  (a) a

25  misrepresentation; (b) knowledge of falsity (or "scienter"); (c) intent to defraud to induce reliance;

26  (d) justifiable reliance; and (e) resulting damage.  5 Witkin, *Summary of California Law*, Torts § 772,

27  p. 1121 (10th ed. 2005).

28

BARTKO ZANKEL BUNZEL
A PROFESSIONAL LAW CORPORATION
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

-23-

2400.001/863361.2                  PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR,
                                   ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

SER 240

Whether styled as misrepresentation or concealment, Counts V and VII fail for the reasons detailed at § IV A, *infra*. Criden has admitted plaintiffs could not have intended to deceive when they filed the Notice of Appearance for Breen, as this was an open and notorious communication objectively signaling the intent *not* to pay. It was the antithesis of misrepresentation or concealment.

Criden now claims it did not see or read the ECF filing at the time. Even if believed—the evidence showed that Criden religiously followed the court filings and billed time for it[19]—this is no excuse. Maryland District Court Local Rule 1(c) provides: "If a document is filed electronically, the notice of electronic filing constitutes a certificate of service as to all parties to whom electronic notice is sent." Criden has appeared as counsel of record in dozens of federal cases (Bunzel Decl. Exh. G) and is—or should be—well aware of its duties to keep abreast of court filings.

### 2.   There Was No Duty to Disclose Rule 2-200

Criden's constructive fraud claim is contained in Count VI of the Counterclaim, and asserts a duty on the part of plaintiffs to advise Criden regarding ethical rules on the division of fees. Because the Court can dispose of all of Criden's claims without reference to Rule 2-200 (*see* § IV C, *infra*), Criden can have no conceivable injury related to the Rule and Count VI can be dismissed on that basis alone.[20]

To the extent the Court reaches Rule 2-200 in connection with Count VI on this motion, the claim fails for the additional reason that Criden cannot establish any "confidential or fiduciary duty" on the part of plaintiffs to disclose such information to Criden. 5 Witkin, *supra*, § 793-94, pp. 1148-49.[21] Because attorneys have fiduciary relationships with their clients, there is—

---

[19]   *See* Bunzel Decl. Exh. O Since 50% of Criden's income comes from its referral business so one would imagine that its lawyers would pay keen attention to such developments. (Bunzel Decl. Exh. C [Criden Depo. 12:10-16].)

[20]   The elements of a constructive fraud cause of action are "(1) a fiduciary or confidential relationship; (2) nondisclosure; (3) intent to deceive, and (4) reliance and resulting injury (causation)"].) *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1132 (2014), citing *Younan v. Equifax Inc*., 111 Cal. App. 3d 498, 516, fn. 14 (1980).

[21]   "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 221 (1983).

-24-

2400.001/863361.2

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR. ALTERNATIVELY, SUMMARY ADJUDICATION - Case No. 3:14-cv-1740 EDL

SER 241

BARTKO ZANKEL BUNZEL
A PROFESSIONAL CORPORATION
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1    in order to protect the undivided loyalty attorneys owe to clients—a "bright-line rule" that co-counsel

2    are *not* each other's fiduciaries. *Beck v. Wecht*, 28 Cal. 4th 289, 298 (2002).

3          Moreover, a party cannot be liable for concealing from another information the latter

4    is charged with knowing. Criden agreed in court filings to be familiar with California's Rules of

5    Professional Conduct. (Bunzel Decl. Exhs. B [Love Depo. 24:14-25:18; 26:14-24] G and H.)

6          For these reasons, Criden's fraud claims fail, and summary judgment should be

7    granted on Counts IV, V and VI.

8    V.      **CONCLUSION**

9          For the above reasons, the Court should grant summary judgment for plaintiffs on

10   Criden's Counterclaim and terminate this action by a judgment for plaintiffs, and award plaintiffs

11   their costs. Alternatively, the Court should summarily adjudicate and eliminate each and any

12   claim for relief in the Counterclaim that fails under Rule 56.

13   DATED: January 6, 2014

14

15                              BARTKO, ZANKEL, BUNZEL & MILLER
                                A Professional Law Corporation
16

17          By:  _____
                        /s/ Robert H. Bunzel
18                       Robert H. Bunzel
                  Attorneys for Plaintiffs and Counterdefendants
19                   JOSEPH SAVERI LAW FIRM, INC.
                       AND JOSEPH R. SAVERI

20

21

22

23

24

25

26

27

28

-25-

**SER 242**

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152